IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARYLAND SHALL ISSUE, INC.
for itself and its members,
  1332 Cape St. Claire Rd #342
  Annapolis, MD 21409

ATLANTIC GUNS, INC.
  944 Bonifant Street
  Silver Spring, MD 20910

ANA SLIVEIRA
  44512 Gray Wolf Street
  California, MD 20619

DEBORAH KAY MILLER
  297 Aston Forest Lane
  Crownsville, MD 21032-1605

SUSAN BRANCATO VIZAS
  8002 Bull Rush Court
  Frederick, Maryland 21701-1508

CHRISTINE BUNCH
  6322 Jacob's Ct.
  Eldersburg, MD 21784,

Plaintiffs

  v.

LAWRENCE HOGAN, in his capacity of
GOVERNOR OF MARYLAND
  100 State Circle
  Annapolis, MD 21401

and

WILLIAM M. PALLOZZI, in his capacity of
SUPERINTENDENT, MARYLAND
STATE POLICE
  1201 Reisterstown Road
  Pikesville, Maryland 21208,

Defendants

Case # 16-cv-3311-MJG

**FIRST AMENDED COMPLAINT**

COME NOW the above-named plaintiffs, by and through counsel, stating as follows:

**INTRODUCTION**

1)      In 2013, Maryland passed some of the most restrictive firearms legislation in the nation, stripping all Maryland residents of the constitutional right to purchase a handgun until they have complied with an extremely burdensome licensing scheme.

2)      Maryland's requirement for a "Handgun Qualification License" ("HQL") before residents may exercise their constitutional rights reduces those rights to mere privileges to be granted or denied at the whim of public officials and private individuals, accountable to no one, to whom the State has impermissibly delegated the authority to review applicants.

3)      Maryland's Handgun Qualification License process is lengthy (averaging a month), expensive (totaling hundreds of dollars in fees, costs and travel, not counting time off of work), invasive (including fingerprints and a full background investigation), and completely unnecessary.  Every handgun purchaser must already pass a background check under federal law which the federal government has streamlined via computer to take place in mere minutes. Under prior Maryland law, as it remains to this day, every handgun purchaser is subjected to the same background check required for a Handgun Qualification License for every purchase of every handgun, including purchases taking place immediately after receipt of the Handgun Qualification License.

4)      This lawsuit seeks to relieve the Maryland taxpayer of the burden of an unnecessary and expensive process and to restore to Maryland residents their constitutional right to purchase a handgun.

## THE PARTIES

5)      Plaintiff Ana Sliveira is a natural person and a citizen of the United States and of the State of Maryland.

6)      Ms. Sliveira is employed in a national security position as a Department of Defense federal contractor employee.  She holds a security clearance with the government.

7)      Ms. Sliveira is a single mother of young children who live at home with her.  Ms. Sliveira does not currently own a firearm, but she would like to purchase a handgun for the protection of herself and her family in the home, as well as other lawful purposes.

8)      Ms. Sliveira does not currently have an HQL, which is necessary under current law before she may purchase a handgun.

9)      But for Maryland's requirement for a HQL, Ms. Sliveira could lawfully purchase and own a handgun.  Ms. Sliveira has been deterred from purchasing a handgun because of the expense and inconvenience of the HQL application process and its constituent parts.

10)     Ms. Sliveira was a victim of the recent Office of Personnel Management ("OPM") data breach in which her detailed personal information was hacked by unknown criminals and thus subject to sale or misuse by persons in Maryland and elsewhere.  This breach and resulting disclosure of her personal information heightens her concerns for her safety and well-being as well as that of her children.

11)     Plaintiff Deborah Kay Miller is a natural person and a citizen of the United States and of the State of Maryland.

12)     Ms. Miller is a General Member of Plaintiff organization, Maryland Shall Issue ("MSI").  Ms. Miller would like to purchase a handgun for self-defense, target practice, and other lawful purposes.

13)     Ms. Miller does not currently have an HQL, which is necessary under current law before she may purchase a handgun.

14)     But for Maryland's requirement for an HQL, Ms. Miller could lawfully purchase and own a handgun.  Ms. Miller has been deterred from purchasing a handgun because of the expense and inconvenience of the HQL application process and its constituent parts.

15)     Plaintiff Susan Brancato Vizas is a natural person and a citizen of the United States and of the State of Maryland.

16)     Ms. Vizas is a 44 year old mother of three (ages 9-15), who has taken (and passed) Hunter Safety Training.  However, the subsequent steps for obtaining an HQL are sufficiently burdensome that she has not moved forward.

17)     Ms. Vizas would like to purchase a handgun for self-defense, target practice, and other lawful purposes.

18)     Ms. Vizas does not currently have an HQL, which is necessary under current law before she may purchase a handgun.

19)     But for Maryland's requirement for an HQL, Ms. Vizas could lawfully purchase and own a handgun.  Ms. Vizas has been deterred from purchasing a handgun because of the expense and inconvenience of the HQL application process and its constituent parts.

20)     Plaintiff Christine Bunch is a natural person and a citizen of the United States and of the State of Maryland.

21)     Ms. Bunch would like to purchase a handgun for self-defense, target practice, and other lawful purposes.

22)     Ms. Bunch does not currently have an HQL, which is necessary under current law before she may purchase a handgun.

4

23)     But for Maryland's requirement for an HQL, Ms. Bunch could lawfully purchase and own a handgun.

24)     Ms. Bunch cannot afford the time or excessive cost of acquiring an HQL.  Thus, Ms. Bunch has been deterred from purchasing a handgun because of the expense and inconvenience of the HQL application process and its constituent parts.

25)     Plaintiff Maryland Shall Issue, Inc. ("MSI") is a non-profit membership organization incorporated under the laws of Maryland with its principal place of business in Annapolis, Maryland. MSI has approximately 772 members statewide.  MSI is an all-volunteer, non-partisan organization dedicated to the preservation and advancement of gun owners' rights in Maryland. It seeks to educate the community about the right of self-protection, the safe handling of firearms, and the responsibility that goes with carrying a firearm in public.  The purposes of MSI include promoting the exercise of the right to keep and bear arms; and education, research, and legal action focusing on the Constitutional right to privately own, possess and carry firearms.  MSI brings this action on behalf of itself and its members. Maryland's HQL requirements directly harm MSI as an organization by undermining its message and acting as an obstacle to the organization's objectives and purposes.  The membership of MSI includes individuals who do not possess an HQL and who are subject to the HQL requirements and the implementing regulations and practices issued by the Maryland State Police and individuals who have been deterred from purchasing a handgun because of the expense and inconvenience of the HQL application process and its constituent parts.  MSI membership includes persons who are Qualified Handgun Instructors under Maryland law and who are thus qualified by Maryland to provide the training required by MD Code, Public Safety, § 5-117.1 and the implementing regulations issued by the Maryland State Police.

26)     Plaintiff Atlantic Guns, Inc. is a business headquartered in the State of Maryland and duly authorized to do business in the State.  Atlantic Guns is a federally-licensed firearms dealer and Maryland Regulated Firearms Dealer in good standing in the business of lawfully and responsibly selling firearms throughout the state and elsewhere.  The constitutional rights of Atlantic Guns, its owners, and its customers are being violated by the HQL requirement.  As a result of the legislation challenged herein, Atlantic Guns, is not able to provide handguns to those Maryland residents who lack Handgun Qualification Licenses and are deterred from purchasing a handgun because of the expense and inconvenience of the HQL application process and its constituent parts.  Atlantic Guns has suffered and continues to suffer a significant reduction in its business due to the HQL requirement.  Atlantic Guns is an aggrieved party and a proper plaintiff.  In addition to bringing suit on its own behalf, Atlantic Guns represents the interests of its customers.  Specifically, Atlantic Guns represents the interests of all of its customers who are unable to purchase a handgun because of the unconstitutional HQL requirement.  Atlantic Guns' customers routinely express an interest in purchasing handguns, but Atlantic Guns cannot sell them handguns because of the HQL requirement.  Many of these customers are deterred from completing the HQL application process because of the expense and inconvenience of the HQL application process and its constituent parts.  The result is the complete deprivation of the customers' Second Amendment right to obtain and keep a handgun for self-defense in the home.

27)     Defendant Lawrence Hogan is the Governor of the State of Maryland.  As such he is the executive branch official with the ultimate responsibility for the enforcement of Maryland's licensing scheme for the ownership of handguns.  Together with the co-defendant, Governor Hogan is ultimately responsible for executing and administering the State of

6

Maryland's laws, customs, practices, and policies at issue in this lawsuit.  Governor Hogan has enforced the challenged laws, customs and practices against plaintiffs, and is in fact presently enforcing the challenged laws, customs and practices against plaintiffs.  Defendant Hogan is sued in his official capacity as the Governor of the State of Maryland.

28)     Defendant William M. Pallozzi is the Secretary and Superintendent of the Maryland State Police. Defendant Pallozzi is directly responsible for executing and administering the State of Maryland's laws, customs, practices, and policies at issue in this lawsuit; has enforced the challenged laws, customs and practices against plaintiffs, and is in fact presently enforcing the challenged laws, customs and practices against plaintiffs. Defendant Pallozzi is sued in his capacity as the official in charge of issuing Handgun Qualification Licenses and adopting regulations and practices governing Handgun Qualification Licenses.  MD Code, Public Safety, § 5-117.1(d), (n).  The Secretary has in fact issued such regulations, as codified in MD COMAR ADC 29.03.01.01, *et seq*.  The Secretary of the Maryland State Police has likewise adopted practices that bear on the issues presented in this Complaint.

## JURISDICTION AND VENUE

29)     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202, and 42 U.S.C. § 1983.  This Court has supplemental jurisdiction over the state law claims alleged this complaint under 28 U.S.C. § 1367.  Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## STATEMENT OF FACTS

30)     The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

31)     The Second Amendment guarantees to law-abiding individuals a fundamental right to purchase, possess, sell and own handguns.

32)     The Second Amendment right to keep and bear arms applies as against the states by operation of the Fourteenth Amendment.

33)     The Second Amendment includes the right to keep and bear handguns.

34)     The Second Amendment right to keep and bear handguns necessarily includes the rights to purchase, sell, rent, lease, receive and provide a handgun.

35)     Maryland generally prohibits a person from purchasing, renting, or receiving a handgun absent a valid HQL.

36)     Maryland prohibits all persons, including a federal firearms licensee and dealer, from selling, renting or transferring a handgun to a purchaser, lessee, or transferee unless the purchaser, lessee, or transferee presents to the dealer or other person a valid handgun qualification license issued to the purchaser, lessee, or transferee by the Secretary of the Maryland State Police under MD Code, Public Safety, § 5-117.1, or is otherwise exempt from the HQL requirement under Section 5-117.1.

37)     To qualify for an HQL, Maryland and the Maryland State Police, through their implementing regulations and practices, require that an applicant must:

a) file an application on-line through the Internet, disclosing one's name, address, driver's license or photographic identification soundex number, place and date of birth, height, weight, race, sex, eye and hair color, occupation, and home and work telephone;

b) own or obtain access to a computer with an internet connection for electronic submission of the HQL application (applications are not accepted in hard copy);

c) own or have access to a scanner to scan and copy the certification issued by a State-certified handgun instructor as part of the application electronic submission (the State Police make no provisions for applying without access to a scanner);

d) have a fixed address and telephone number;

8

e) submit, as part of the application, a complete set of the applicant's fingerprints, taken and submitted in the manner prescribed by the Secretary on the application; As implemented by the Maryland State Police, fingerprints will be accepted only if the prints are taken via "livescan" technology and only by a State-certified vendor; the application generally must be submitted within 72 hours of the time the prints are taken;

f) pay the State-certified livescan fingerprint vendor's fees, which include a Livescan Fingerprinting fee of $17.00, a State of Maryland criminal records check fee of $18.00 (service provided by the Maryland Department of Public Safety and Correctional Services) and a Federal criminal records check fee of $14.50 (service provided by the Federal Bureau of Investigation), as further detailed in COMAR 12.15.01.15.

g) complete a 4-hour Firearms Safety Training Course taught by a private, State-approved Qualified Handgun Instructor within 3 years prior to the submission of an HQL application covering the following:

(1) State Firearm Law. Overview of the State firearm laws, including discussion of what constitutes a regulated firearm, how to properly purchase or transfer a firearm, where allowed to carry or transport a firearm, when necessary to possess a carry permit, and who is prohibited from possessing firearms.

(2) Home Firearm Safety. Overview of handgun and firearm safety in the home, including discussion of access to minors, locking and storing of firearms, and use of safety devices, such as secure lock boxes.

(3) Handgun Mechanisms and Operation. Overview of the proper operation and safe handling of a handgun, including cleaning and maintenance, the loading and unloading of ammunition, and the differences between revolvers and semi-automatic handguns.

(4) Operation and Handling Demonstration. Orientation that demonstrates the applicant's safe operation and handling of a firearm, including a practice component in which the applicant safely fires at least one round of live ammunition.

h) locate and contact a private State-certified training instructor, arrange for training and travel to the Firearms Safety Training Course offered by such instructor (Maryland makes no provisions for those who cannot afford to travel);

i) pay the instructor directly for the Firearms Safety Training Course; instructors are free to charge any fee in any amount for providing instruction (Maryland makes no provisions for those who cannot afford to pay);

9

j) travel to and attend the training course, which means, because the Maryland State Police has required the discharge of live ammunition as part of the training, the applicant must travel to a shooting range for completion of the training and pay whatever fees the range charges;

k) pay a $50.00 application fee, or a $20.00 fee to renew the HQL, which expires every 10 years (Maryland makes no provisions for those who cannot afford to pay these fees);

l) have a credit or debit card (the State Police make no provision for payment in cash or check); and

m) wait 27 to 28 days on average before an HQL is received, during which time, the applicant's constitutional right to purchase a handgun is totally denied (Maryland makes no provision for an immediate or emergency issuance of a HQL).

38)     Maryland residents are completely barred from purchasing, renting, or receiving a handgun prior to applying for an HQL and while their HQL application is pending.

39)     The average time reported by the State Police to process a completed HQL is 27 to 28 days.

40)     The requirement for an HQL effectively amounts to a 27 to 28 day waiting period before purchasing a handgun.  This is in addition to the seven day waiting period for handgun purchases.

41)     In order to implement the HQL requirement, the Maryland State Police Licensing Division adopted Standard operating Procedure Index # 29-1403 (SOP 29-1403).

42)     SOP 29-1403.06(D) reflects that the initial background check performed after an HQL Application is received is limited to searches of computer databases.  If the computer database search raises no concern, the applicant is approved.

43)     In the vast majority of cases, database searches required by the HQL take mere minutes.  In cases of such approvals without further review, there is no technological or practical

reason why the State Police could not perform the statutorily-mandated collection and processing of HQL applications within 24 hours.

44)     The amount of time permit applicants are required to wait for approval is unduly burdensome, particularly for people who hunt for food, require a firearm to earn a living, are elderly, terminally ill and/or who have an urgent need for firearms for self-defense because they live in a high crime area or have been threatened.  The HQL requirements contain no provisions for the immediate issuance of a HQL in any circumstances, thus effectively depriving persons the means of timely acquiring a handgun needed for self-defense.

45)     Even after receipt of an HQL, Maryland law, MD Code, Public Safety, § 5-123, imposes an additional 7-day waiting period before a purchaser may actually receive a purchased handgun.

46)     The HQL requirements imposed by the Maryland State Police regulations heavily discriminates against and effectively act as a complete barrier to the acquisition of the HQL by the poor or disadvantaged citizens of Maryland who live in urban areas, where access to a public shooting range is effectively non-existent, such as the City of Baltimore.  The underlying intent and practical effect of these requirements is the disenfranchisement of Second Amendment rights for the poor and disadvantaged who may be concentrated in such urban areas and who may lack the means to travel to rural areas for live fire instruction.  A similar barrier is created by the mandated use of private, State-certified live-scan fingerprint vendors and private State-certified instructors.  Such vendors or instructors are not readily available in many areas of the State and yet the Maryland State Police have refused to provide these services or provide alternatives. These and the other requirements imposed by the HQL, the regulations and Maryland State Police practices, separately and taken together, form undue and effective practical barriers to,

and undue burdens on, the exercise of fundamental constitutional rights preserved by the Second Amendment and are, thus, unconstitutional.

## COUNT I (SECOND AMENDMENT - 42 U.S.C. § 1983)

47)     All paragraphs of this Complaint are incorporated herein by reference.

48)     The requirement for an HQL in general and the specific demands made by Maryland before an HQL is issued are neither longstanding in Maryland or elsewhere in the United States.

49)     The HQL requirement itself violates the Second Amendment because it is a redundant regulatory requirement that unnecessarily chills the exercise of Second Amendment rights and deters law-abiding, responsible individuals from purchasing handguns. The purported purpose of HQL requirements – to ensure purchasers of handguns are law-abiding, responsible citizens – is fully satisfied by the 77R background check process, which is conducted each and every time an individual purchases a handgun in Maryland, despite the individual having a valid HQL.

50)     Marylanders who are not otherwise exempt from the HQL requirement, including Plaintiffs, may only exercise their Second Amendment right to obtain and keep a handgun after undergoing an onerous, expensive and lengthy application process, receiving an HQL, and then undergoing a separate 77R background check, which, for decades, has been adequate to ensure that only qualified individuals obtain handguns.[1]  This two-step process required to exercise

---

[1] Plaintiffs are not challenging the 77R background check process, which include the federally-mandated NICS check, that Maryland has enacted and applies to all transfers of regulated firearms.  Rather, their challenged is isolated to the redundant HQL requirement, which is nothing more than a lengthy process to receive permission from the government to undergo the now-unnecessary 77R background check.

constitutional rights would not be permitted with respect to any other fundamental right, and cannot be countenanced with respect to the Second Amendment right at issue here.

51)    The requirement for an HQL in general and the specific demands made by Maryland before an HQL is issued, collectively and individually, do not implicate historically-recognized limitations or prohibitions on Second Amendment activity.  The requirements imposed by Section 5-117.1, taken in their totality, are unrelated to and do not reasonably advance any compelling governmental interest in public safety.  In particular, the required training and other requirements imposed by Section 5-117.1 are far more onerous, expensive and time-consuming than the requirements imposed by any other jurisdiction in the United States for the purchase of a handgun for possession in the home.

52)    Even if the HQL requirement itself were not constitutionally infirm, the onerous requirements of the HQL application process collectively violate the Second Amendment.

53)    As set forth in detail above, the HQL application process requires 1) in-person training, with a live-fire component, 2) access to an internet-connected computer, 3) a debit/credit card, 4) a fixed address, and 5) the provision of fingerprints.

54)    These portions of the HQL application process act in concert to effect an unconstitutional burden on the exercise of Plaintiffs' fundamental Second Amendment rights that cannot withstand any level of heightened scrutiny.

55)    Additionally, the individual component parts of the HQL process listed above are themselves individual unconstitutional restrictions on the exercise of the Second Amendment right to acquire a handgun for self-defense in the home under any level of heightened scrutiny. Each of these requirements is not sufficiently tailored to achieve a legitimate government interest because there are obvious, effective, less restrictive alternatives to each of them.  The 77R

process is a less restrictive alternative that demonstrates the infirmity of the HQL application process.  The burdens caused by the HQL application's requirements affect most strongly the economically disadvantaged. The result is that those most in need of a means to protect themselves are those least able to meet Defendants' draconian requirements and, therefore, are those most likely to be unable to exercise their constitutional rights.

56)     The requirement for an HQL in general and the specific demands made by Maryland in its implementation, individually and taken as a whole, were enacted and/or implemented with the specific intent of discouraging the citizens of Maryland, including the membership of plaintiff MSI and plaintiff Atlantic Guns, from exercising their Second Amendment right to purchase, sell, rent and receive handguns.

57)     The HQL requirement, facially and as implemented by the Maryland State Police in its regulations and practices, acts and was intended to act, as a rationing of Second Amendment rights by discouraging and burdening the exercise of a law-abiding citizen's right to purchase or acquire a handgun.  The principal purpose and the objective of the HQL requirement, facially and as implemented by the Maryland State Police, are to limit and restrict the number of handguns that are purchased or acquired in Maryland.  These requirements act as especially effective barriers to the otherwise lawful acquisition of a handgun by the poor and the disadvantaged, including minorities (who, due to historical socio-economic factors, are disproportionately poor).  That purpose and effect is to discourage and ration the exercise of the Second Amendment fundamental constitutional right to purchase or acquire a handgun.  That is illegitimate and unconstitutional.

## COUNT II (DUE PROCESS - 42 U.S.C. § 1983)

58)     All paragraphs of this Complaint are incorporated herein by reference.

59)     The HQL requirement violates the Due Process Clause of the Fourteenth

Amendment because: a) it vests private "Qualified Handgun Instructors" chosen by the State

with the absolute authority to grant or deny an individual his or her Second Amendment Rights

without any appeal or recourse to the courts; and b) the terms "receive" or "receipt" as used in

the relevant statute are void for vagueness.

60)     The Code of Maryland Regulations (COMAR MD ADC 29.03.01.29) requires

that an individual's application for an HQL must be accompanied by a "Firearms Safety Training

Certificate issued by a Qualified Handgun Instructor."

61)     HQL applicants bear the burden of proof of their entitlement to the "right" to bear

arms; receive no hearing before their entitlement to this right is initially determined, and

receive no post-deprivation judicial review when and if such certification is denied by an

instructor.  No provision is made in law or through regulation for an appeal to the courts or

otherwise of the private instructor's decision not to issue a Firearms Safety Training Certificate.

Although the challenged laws do provide an appeal for the denial of an HQL application itself,

an HQL application cannot be submitted without a firearms safety training certificate.

Accordingly, individuals who have been denied a certificate of completion have no recourse,

because they cannot actually initiate the only process from which they could take an appeal.

62)     Before a constitutional right may be denied, an individual is entitled to notice and

an opportunity to be heard as well as eventual review by a court of appropriate jurisdiction.

63)     Section 5-117.1 provides that a person may not "purchase, rent, or receive a

handgun" without an HQL.  MD Code, Public Safety, § 5-144(a)(1) makes a knowing

participation in "the receipt of a regulated firearm in violation of this subtitle" a crime,

punishable upon conviction by "imprisonment not exceeding 5 years or a fine not exceeding $10,000 or both."

64)     MD Code, Public Safety, § 5-101 defines the term "rent" and the meaning of "purchase" is reasonably apparent, but the terms "receive" or "receipt" are entirely undefined in either the statute or in the Maryland State Police implementing regulations.

65)     Maryland Shall Issue, in its comments timely filed with the Maryland State Police during the rule making proceedings, specifically requested the Maryland State Police to define these terms "receive" and "receipt." The Maryland State Police refused and failed to do so without explanation and without addressing the concerns and objections set forth in those comments. Members of Maryland Shall Issue handle handguns routinely in the presence of persons, including family and friends, who do not or may not possess an HQL but who may nonetheless wish to participate in handgun shooting at a range or receive handgun training involving the temporary receipt of a handgun. MSI and its members are irreparably harmed by the Maryland State Police's refusal to define these terms "receipt" and "receive." That refusal, and the statute's failure to define these terms, exposes such members to the threat of arbitrary and discriminatory criminal prosecution under Section 5-144.

66)     The usage of the terms "receive" in Section 5-117.1 and "receipt" in Section 5-144 are fatally vague and ambiguous and lead to absurd results under Maryland law, including possibly criminalizing conduct that no reasonable person would believe or understand to be wrongful. Such conduct could include the temporary receipt of a handgun by a spouse, family member or friend, who may lack an HQL, at a firing range, or in the home or such receipt while conducting firearms instruction for such persons lacking an HQL. These terms could be read to criminalize such innocent conduct and are so standardless that they authorize or encourage

16

seriously discriminatory enforcement.  Persons, including the plaintiffs and members of

Maryland Shall Issue, regulated by these provisions have a constitutional right, protected by the

Due Process Clause of the Fourteenth Amendment to know to a reasonable certainty what is

required of them so they may act accordingly.  The undefined terms "receive" as used in Section

5-117.1 and "receipt" as used in Section 5-144 fail this test and are thus void under the Due

Process Clause of the Fourteenth Amendment.

67)     Without limitation and for purposes of example only, the failure to define

"receive" and "receipt" in the statute leaves persons woefully uninformed as to whether the

following innocent conduct is unlawful: a) in the event that an individual lawfully carrying a

handgun on his or her person is medically incapacitated, may a spouse or other family member

secure the handgun?; b) in the event of an automobile accident involving a car in which a

handgun was lawfully being transported, may a spouse or other family member secure the

handgun until police arrive?;  c) in the event of a divorce involving a handgun declared marital

property, may a spouse sell the handgun?; d) may a responsible, otherwise law-abiding adult

handle a handgun at a gun store without an HQL?; and e) may an HQL holder and handgun

owner briefly permit his or her handgun to be fired by someone else in the presence of the HQL

holder at a firing range?  There are many more examples.

68)     The refusal or failure of the Maryland State Police to define "receive" as used in

Section 5-117.1 and "receipt" as used in Section 5-144, despite a specific request to do so in the

pertinent rule making proceeding, was arbitrary and capricious, unreasonable, and an abuse of

discretion under Maryland administrative law which provides that reviewing courts have an

inherent power to review illegal, unreasonable, arbitrary or capricious administrative action.

69)     The HQL process as currently implemented in Maryland denies applicants due process of law.

70)     Because of the administration and enforcement of the above provisions of the Firearms Safety Act of 2013 by the defendants, the plaintiffs have been, and will continue to be, subjected to irreparable harm.

71)     At all times herein, the defendants were acting under color of state law.

72)     All of the statutes, regulations, court actions, customs and practices referenced herein constitute state action within the meaning of the Constitution.

73)     At all times herein, the actions of the defendants have been intentional or in reckless disregard of the clearly established rights of the plaintiffs.

## COUNT III (Ultra Vires)

74)     All paragraphs of this Complaint are incorporated herein by reference.

75)     This Count is brought under Maryland state law pursuant to this Court's supplemental jurisdiction granted by 28 U.S.C. § 1367.

76)     Maryland Shall Issue participated in and submitted objections and comments in the rule making proceeding conducted by the Maryland State Police prior to its issuance of the final regulations concerning the HQL requirements.

77)     Section 5-117.1 of the Firearms Safety Act of 2013 provides that:

…the Secretary ***shall issue*** a handgun qualification license to a person who the Secretary finds:

(1) is at least 21 years old;

(2) is a resident of the State;

(3) except as provided in subsection (e) of this section, has demonstrated satisfactory completion, within 3 years prior to the submission of the application, of a firearms safety training course approved by the Secretary that includes: (i) a

18

minimum of 4 hours of instruction by a qualified handgun instructor; (ii) classroom instruction on: 1. State firearm law; 2. home firearm safety; and 3. handgun mechanisms and operation; and (iii) a firearms orientation component that demonstrates the person's safe operation and handling of a firearm; and

(4) based on an investigation, is not prohibited by federal or State law from purchasing or possessing a handgun

78)    The Secretary is further instructed under Section 5-117.1 to conduct a background check and obtain a complete set of fingerprints as part of the application process for an HQL, but the Maryland State Police is not precluded by Section 5-117.1 from providing such services; it has chosen not to.

79)    While Section 5-117.1(g) states that the applicant for an HQL should submit an application in the manner and format designated by the Secretary, the Secretary is not empowered to impose additional barriers and restrictions beyond those set forth in Section 5-117.1.

80)    The statutory requirements to obtain an HQL do not include any of the following elements which the State Police nevertheless impose or require prior to issuing a HQL:

a) owning or obtaining access to a computer with an internet connection (applications are not accepted by the Maryland State Police in hard copy);

b) owning or having access to an electronic document scanner (the State Police make no provisions for applying without access to a scanner);

c) having a fixed address and telephone number;

d) while Section 5.117.1(f)(3)(i) requires the Secretary to obtain a complete set of the applicant's legible fingerprints taken in a format approved by the Director of the Central Repository and the Director of the Federal Bureau of Investigation, nothing in these provisions requires the Maryland State Police to accept only those fingerprints obtained through a State-certified live-scan vendor or refusing to provide fingerprinting services at Maryland State Police facilities;

e) having a credit card or debit card (the State Police make no provision for payment in cash or check);

f)  requiring training by a private State certified instructor, and refusing to provide any training by the Maryland State Police

g) imposing a practice component in the training requirement in which the applicant fires at least one round of live ammunition, thereby requiring access to a shooting range.

81)     The Secretary has unnecessarily made these requirements even more onerous by completely refusing or failing to approve any alternative training courses that would otherwise exempt individuals from the HQL training requirement, as authorized and contemplated by Section 5-117.1(e)(1).  That provision expressly provides that a person need not complete the HQL training if the applicant "has completed a certified firearms training course approved by the Secretary."  Such fully sufficient training is readily available from National Rifle Association ("NRA") certified instructors through well-established courses such as the NRA Basic Pistol Course, the NRA Personal Protection In The Home Course and the NRA Personal Protection Outside The Home Course and the Defensive Pistol Course.

82)     In creating and enforcing the requirements listed above, and in failing to approve alternative training courses, the State Police have acted arbitrarily, unreasonably and beyond the statutory authority granted by elected representatives and are thus contrary to law and authority within the meaning of the Maryland State Administrative Procedure Act, MD Code, State Government, § 10-125(d)(2).

83)     In creating and enforcing the requirements listed above, the State Police have acted contrary to the Second Amendment to the Constitution of the United States within the meaning of MD Code, State Government, § 10-125(d)(1).

84)     In creating and enforcing the requirements listed above, the Maryland State Police have failed to comply with statutory requirements for adoption of these regulations within the meaning of MD Code, State Government, § 10-125(d)(3).

85)     The Firearms Safety Act of 2013 only provides for "a nonrefundable application fee to cover the costs to administer the program of up to $50."  MD Public Safety §  5-117.1(g)(2).

86)     Despite this fifty dollar legislative limitation on any fees to cover the costs to administer the program, the State Police impermissibly shifted the burden of paying for the required training to the applicant.  In doing so, the State Police have exceeded their statutory authority within the meaning of the Maryland State Administrative Procedure Act, MD Code, State Government, § 10-125(d)(2).

87)     The foregoing actions of the Maryland State Police in issuing its HQL regulations and shifting the costs of training to applicants, and in particular, imposing a one-shot live-fire requirement, were arbitrary and capricious, unreasonable and an abuse of discretion under Maryland administrative law which provides that reviewing courts have an inherent power to review illegal, unreasonable, arbitrary or capricious administrative action.

**PRAYER FOR RELIEF**

Wherefore, the plaintiffs respectfully request that this Honorable Court issue:

a. An order declaring that  MD Code, Public Safety, § 5-117.1, both on its face and as applied through foregoing implementing regulations and practices adopted by defendants, violates the Second Amendment of United States Constitution in violation of 42 U.S.C. § 1983;

b. An order declaring that  MD Code, Public Safety, § 5-117.1, both on its face and as applied through foregoing implementing regulations and practices adopted by defendants, violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution in violation of 42 U.S.C. § 1983;

c.  An order permanently enjoining defendants from applying, enforcing or otherwise giving effect to MD Code, Public Safety, § 5-117.1 and to the implementing regulations and practices adopted by the Maryland State Police;

d.  An order declaring that the Maryland State Police regulations and implementing practices concerning Section 5-117.1 are in excess of legal authority, contrary to the Second Amendment to the United States Constitution and do not comply with the statutory requirements of MD Code, State Government, § 10-125(d);

e.  An order declaring that the terms "receive" and "receipt" in Section 5-117.1 and Section 5-144, respectively, are void for vagueness and thus unenforceable under the Due Process Clause of the Fourteenth Amendment;

f.  An order declaring that the refusal or failure of the Maryland State Police to define or clarify the meaning of the terms "receive" and "receipt" in Section 5-117.1 and Section 5-144, respectively, as requested by plaintiff Maryland Shall Issue during rule making proceedings, or to respond to the comments submitted on this subject by plaintiff Maryland Shall Issue, was arbitrary, capricious, unreasonable and abuse of discretion;

g.  An order enjoining defendants from enforcing the terms "receive" and "receipt" in Section 5-117.1 and Section 5-144, respectively, until such time as the Maryland State Police properly promulgate binding regulations defining these terms in a

manner that satisfies all applicable procedures and laws and the Constitution of the

United States;

      h.  An order awarding reasonable attorneys' fees and costs pursuant to 42 U.S.C.

§ 1988;

      i.  Any further relief that the Court may find to be just and proper.

                    Respectfully submitted,

                    HANSEL LAW, PC

                    _____/s/_____
                    Cary J. Hansel, No. 14722
                    2514 N. Charles Street
                    Baltimore, MD 21218
                    Phone: 301-461-1040
                    Facsimile: 443-451-8606
                    cary@hansellaw.com