# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT COURT OF MARYLAND

MARYLAND SHALL ISSUE, INC.*, et al.*,   *

    *Plaintiffs,*   *

    v.   *   Civil Case No. 16-cv-3311-MJG

LAWRENCE HOGAN, *et al.,*   *

    *Defendants*.   *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## DEFENDANTS' REPLY IN SUPPORT OF
## MOTION TO DISMISS AMENDED COMPLAINT

In their opening memorandum, the defendants demonstrated that, based on established case law, intermediate scrutiny is the applicable standard of review to apply to the plaintiffs' Second Amendment challenge to Maryland's Handgun Qualification License ("HQL") requirements, and that the HQL statute easily satisfies that standard of review because the minimal burdens imposed by the challenged aspects of that law are reasonably adapted to the State's compelling interest in public safety.  In response, the plaintiffs argue the Court is not permitted to select and apply the appropriate means-end scrutiny test at the pleadings stage and that discovery must be necessary in this case because it was allowed in certain other Second Amendment challenges.  On the contrary, the Fourth Circuit's recent en banc decision in *Kolbe v. Hogan* compels that intermediate scrutiny is the appropriate standard of review and further indicates that this Court may look to evidence in the public record to find that the law at issue is reasonably adapted to the State's substantial interests.

The plaintiffs' other claims are equally flawed.  With regard to Count II, the plaintiffs rely on purely speculative claims about the role of qualified handgun instructors to support their due process claim.  They further rely on interpretations of the law they themselves claim are absurd to support their vagueness challenge.  In support of Count III, the plaintiffs either apply the incorrect standard to the regulations at issue or misapprehend the statute's plain language.  For the reasons stated in the defendants' opening brief and below, the plaintiffs' amended complaint should be dismissed.

I.   **THE PLAINTIFFS' SECOND AMENDMENT CLAIM FAILS BECAUSE THE HQL REQUIREMENTS ARE REASONABLY ADAPTED TO THE STATE'S SUBSTANTIAL GOVERNMENT INTERESTS.**

   A.   **This Court May Select and Apply the Appropriate Standard of Review at the Pleading Stage, Because the HQL Requirements Do Not Severely Burden Conduct Protected by the Second Amendment and Substantial Evidence Supporting the State's Judgment Is Available in the Public Record.**

In response to the State's motion to dismiss the plaintiffs' Second Amendment challenge, the plaintiffs chiefly counter that they are entitled to discovery on their claims that the HQL requirements of the State's Firearm Safety Act ("FSA") violate the Constitution.  The plaintiffs assert four bases for this claim, none of which has merit.

First, the plaintiffs are wrong that this Court cannot select the appropriate means-end scrutiny test at the pleadings stage.  They misplace reliance on the remands in *United States v. Chester*, 628 F.3d 673 (4th Cir. 2010) and *Heller v District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) (*Heller II*).  In both cases, the remands were to allow the government to enhance the record in support of the laws at issue, not to select the appropriate level of scrutiny.  In fact, both courts held that intermediate scrutiny was the appropriate standard

of review to be applied on remand because the laws, on their face, did not severely burden conduct protected by the Second Amendment. *Chester*, 628 F.3d at 682-83; *Heller II*, 670 F.3d at 1253. Here too, as explained in the defendants' opening memorandum, intermediate scrutiny is the appropriate standard of review because the HQL requirements "do[] not severely burden the core protection of the Second Amendment, i.e., the right of law-abiding, responsible citizens to use arms for self-defense in the home." *Kolbe v. Hogan*, 849 F.3d 114, 138 (4th Cir. 2017).

Moreover, the law is plainly not, as the plaintiffs contend, "a complete restriction on their ability to acquire and possess the 'quintessential self-defense weapon,'" Pls.' Mem. (ECF No. 29) at 20, and no discovery is needed to reveal that. Rather, the law merely requires that individuals who desire to purchase, rent, or receive a handgun be fingerprinted, pass a background check, receive four hours of firearms training, and submit an application for a HQL. Although the HQL requirement imposes these basic, common-sense requirements, it does not ban the possession of any particular firearm anywhere, much less in the home, nor does it regulate the types of weapons available for self-defense. And although the plaintiffs complain about the purported expense and inconvenience of these requirements, they fail to articulate any plausible claim that the requirements constitute a "complete restriction" on their ability to possess a handgun for self-defense. Because the HQL requirements do "not effectively disarm" law-abiding citizens "or substantially affect their ability to defend themselves," they are subject to intermediate scrutiny. *Kolbe*, 849 F.3d at 139 (citation omitted); *see also Heller II*, 670 F.3d at 1258 (applying intermediate scrutiny to District's similar registration requirements because

"none of the . . . requirements prevents an individual from possessing a firearm in his home or elsewhere, whether for self-defense or hunting, or any other lawful purpose"); *cf. Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (applying intermediate scrutiny to content-neutral time, place, and manner restrictions on speech).

Second, the plaintiffs purport to need discovery into the intent of the legislature in enacting the HQL requirements before this Court may select and apply the appropriate standard or review. However, as the Fourth Circuit recently articulated, the selection of the appropriate means-end scrutiny "depends on the nature of the conduct being regulated and the degree to which the challenged law burdens the right." *Kolbe*, 849 F.3d at 133 (quoting *Chester*, 628 F.3d at 682)). The intent of the State in enacting the legislation is irrelevant. Nor is the State's intent relevant to the application of the appropriate means-end scrutiny, which involves the fit between the challenged law and the State's interests. *Id.* Tellingly, the plaintiffs do not rely on any Second Amendment case for their argument, relying instead on an inapposite First Amendment retaliation cause of action, where courts have held that the "specific intent" of the governmental actor alleged to have engaged in discriminatory conduct is relevant. *E.g.*, *Shapiro v. McManus*, 203 F. Supp. 3d 579, 2016 WL 4445320, at *10 (D. Md. 2016).

Third, the plaintiffs contend that they need discovery to counter evidence in the public record amassed by the State in support of its policy judgment. However, the issue for this Court is not whether the publicly-available evidence supporting the State's policy judgment is more persuasive than evidence supporting the plaintiffs' preferred policy alternative. Rather, the question is whether substantial evidence exists to support the

4

judgment of the General Assembly.  As the Fourth Circuit recently explained, "[t]he judgment made by the General Assembly of Maryland in enacting the FSA is precisely the type of judgment that legislatures are allowed to make without second-guessing by a court." *Kolbe*, 849 F.3d at 140.  "That is, '[i]t is the legislature's job, not [the courts'], to weigh conflicting evidence and make policy judgments.'"  *Id.* (quoting *Woollard v. Gallagher*, 712 F.3d 865, 881 (4th Cir. 2013) (citation omitted)).  This Court's "obligation is simply 'to assure that, in formulating its judgments, [the legislature] has drawn reasonable inferences based on substantial evidence." *Id.* (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 666 (1994) ("*Turner I*")).  And in conducting this analysis, this Court "must 'accord substantial deference to the predictive judgments of [the legislature].'" *Id.* (quoting *Satellite Broad. & Commc'ns Ass'n v. FCC*, 275 F.3d 337, 356 (4th Cir. 2001) (quoting *Turner I*, 512 U.S. at 666)).  Accordingly, it would be pointless to engage in lengthy and costly discovery when substantial evidence supporting the State's judgment is available in the public record and thus subject to judicial notice.  *See* Defs.' Mem. (ECF No. 18-1) at 12-16 (describing publicly-available statistical evidence and case law). Discovery cannot erase that evidence.

The plaintiffs' final contention relates not to the substance of their Second Amendment claim, but to standing.  The plaintiffs argue that they need not establish all the elements of standing at the pleading stage, citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 802 F.3d 412, 425-26 (4th Cir. 2015) for the proposition that pre-discovery, "a plaintiff may only have so much information at his disposal at the outset."  Pls.' Mem. (ECF No. 29) at 10.  But *Black & Decker* involved a Sherman Act anti-trust claim, where the court

explained that, prior to discovery, a plaintiff may not be able to allege with specificity that a defendant entered an agreement to restrain trade.  Here, the plaintiffs cannot legitimately argue that they require discovery to identify whether any named plaintiff or member of plaintiff Maryland Shall Issue ("MSI") suffered an injury from the various requirements they challenge.  On the contrary, to invoke federal jurisdiction, the plaintiffs must allege that a "concrete and particularized" injury arose from the provisions of the law they are challenging.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Hunt v. Wa. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977) (associational standing exists where, among other requirements, the association's "members would otherwise have standing to sue in their own right").  Because none of the individual plaintiffs, nor MSI with regard to any of its members, alleges lack of access to a computer, the Internet, an electronic document scanner, a credit or debit card, a fixed address or telephone number, a qualified handgun instructor, a "livescan" fingerprint vendor, or a shooting range, their challenges to these provisions must be dismissed for lack standing.  *See Heller v. District of Columbia*, 45 F. Supp. 3d 35, 71 (D.D.C. 2014) (dismissing for lack of standing a challenge to the District's requirement that a firearm registrant "not [be] blind," because none of the plaintiffs in that case was blind), *aff'd in part, rev'd in part on other grounds*, *Heller v. District of Columbia*, 801 F.3d 264 (D.C. Cir. 2015) (*Heller III*).

### B.    The HQL Requirements Satisfy Intermediate Scrutiny.

In their opening memorandum, the defendants explained why the fingerprinting, background check, and training aspects of Maryland's HQL requirement satisfy intermediate scrutiny and why the costs associated with these provisions also are

6

constitutional, because these provisions are reasonably adapted to the State's substantial governmental interests in advancing public safety and reducing the negative effects of firearms violence. *See* Defs. Mem. (ECF No. 18-1) at 12-19. The plaintiffs do not raise any serious argument that these provisions do not satisfy intermediate scrutiny. Instead, the plaintiffs rely on a series of meritless arguments to distract from the analysis the Fourth Circuit, sitting en banc, has recently confirmed applies to Second Amendment challenges. *See Kolbe*, 849 F.3d at 133 ("The less onerous standard of intermediate scrutiny requires the government to show that the challenged law 'is reasonably adapted to a substantial governmental interest.'" (quoting *United States v. Masciandaro*, 638 F.3d 458, 471 (4th Cir. 2011))).

First, although the plaintiffs argue that strict scrutiny should apply, as discussed above, intermediate scrutiny is the appropriate standard of review based on the limited degree of the burden that the HQL requirements impose on conduct protected under the Second Amendment. Indeed, to date, only two federal appellate courts have determined to apply strict scrutiny to *any* laws challenged under the Second Amendment, one in a case challenging an absolute ban on possession of all firearms by individuals who had previously been committed to a mental institution, and the second in a case challenging a ban on assault weapons and large-capacity magazines. Both were subsequently vacated by en banc decisions that applied intermediate scrutiny. *Tyler v. Hillsdale County Sheriff's Dept*, 775 F.3d 308 (6th Cir. 2014), *vacated on reh'g en banc*, 837 F.3d 678 (6th Cir. 2016); *Kolbe v. Hogan*, 813 F.3d 160 (4th Cir. 2016), *vacated on reh'g en banc*, 2017 WL 679687.

7

In contrast to those laws, Maryland's HQL requirement does not ban possession of any type of firearm nor does it ban any category of person from firearm possession.

Second, the plaintiffs claim that strict scrutiny is required because they allege that the burden of the HQL requirements "taken as a whole" is "severe". Pls.' Mem. (ECF No. 29) at 21 n.7. But the Court "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (citations omitted). The plaintiffs cannot survive a motion to dismiss by making bald assertions, without plausible supporting factual allegations, that a collection of minimal requirements aggregates to become a severe burden. In making this argument, the plaintiffs misplace reliance on *Ezell v. City of Chicago*, 846 F.3d 888, 894 (7th Cir. 2017), which examined two zoning restrictions that combined to "severely limit where shooting ranges may locate" within the city of Chicago. Because the court could not "evaluate the degree to which these zoning regulations, standing alone, encumber Second Amendment rights and are responsible for the absence of commercial shooting ranges in the city," the court treated them as "a single regulatory package for purposes of Second Amendment scrutiny." *Id.* The same is not true here, where, like the District of Columbia's handgun registration requirements, the HQL requirements, whether considered together or separately, "do[] not severely limit the possession of firearms." *Heller II*, 670 F.3d at 1257 (citation omitted); *see also Heller III*, 801 F.3d at 280-81 (applying intermediate scrutiny to each provision of the District's registration requirement, standing alone, and upholding provisions requiring registrants be fingerprinted, pay fees, and complete a firearms safety and training course).

8

Third, the plaintiffs contend that the State did not properly analyze the plaintiffs' facial challenge under the two-step framework adopted by the Fourth Circuit.  Pls.' Mem. (ECF No. 29) at 15-17.  On the contrary, as the Fourth Circuit itself has done in several cases, *Woollard*, 712 F.3d at 876; *Masciandaro*, 638 F.3d at 473-74, the State assumed, for purposes of argument, that the HQL requirements burden conduct protected by the Second Amendment, and argued that the plaintiffs' facial challenge fails precisely because, under the appropriate means-end scrutiny, the challenged requirements are reasonably adapted to the state's important interests in promoting public safety and reducing the negative effects of firearms violence.  *See, e.g.*, Defs.' Mem. (ECF No. 18-1) at 12 (fingerprint provision); *id.* at 16 (safety training course); *id.* at 18 (application period); *id.* at 20 (live fire requirement).  Moreover, to the extent that the plaintiffs contend that the State somehow erred in not applying the two-step framework to requirements that the plaintiffs have not alleged are unconstitutional as applied to them, *id.* at 16, 20-22, their argument is meritless. In the absence of a claim that a restriction is unconstitutional as applied to them, the plaintiffs have not stated a claim on which relief can be granted at all.  *See Woollard*, 712 F.3d at 882 (rejecting facial challenge out of hand where challenged provision was constitutional as applied to plaintiff); *Masciandaro*, 638 F.3d at 474 (plaintiffs may not challenge law "on the ground that [it] may conceivably be applied unconstitutionally to others, in other situations not before the Court" (citation omitted)).

Fourth, the plaintiffs' bald assertion that the HQL's fingerprint-based background check is simply duplicative of the State's separate pre-purchase background check requirement is unsupported and wrong as a matter of law.  *See* Pls. Mem. (ECF No. 29) at

9

18, 21.   Unlike the more robust background check conducted as part of the HQL application, the pre-purchase background check is based only on state-issued identification, not fingerprints.  Md. Code Ann., Pub. Safety § 5-118(b).  As the defendants explained in their opening brief, evidence in the public record establishes that "background checks using fingerprints are more reliable than background checks conducted without fingerprints, which are more susceptible to fraud."  Defs.' Mem. (ECF No. 18-1) at 13 (quoting *Heller III*, 801 F.3d at 276).  Further, the more robust HQL background check is conducted only once every 10 years, Pub. Safety § 5-117.1(i), while the pre-purchase background check is conducted prior to every sale during the intervening decade.

Fifth, contrary to the plaintiffs' contention, the D.C. Circuit did not strike down a "virtually identical" provision of Maryland's firearm training requirement.  *See* Pls. Mem. (ECF No. 29) at 18.   Rather, the D.C. Circuit held unconstitutional the District's requirement that a handgun registrant "demonstrate satisfactorily, in accordance with a test prescribed by the Chief [of Police], a knowledge of the laws of the District of Columbia pertaining to firearms," D.C. Code Ann. § 7-2502.03, particularly because "only a few of the 15 questions in the test actually prescribed by the Chief plausibly reflect a concern with public safety."  *Heller III*, 801 F.3d at 279 (holding only that the "test of legal knowledge" of the District's firearms laws was unconstitutional).  Maryland law, by contrast, requires only that firearms safety training include classroom instruction on "State firearm law" among other subjects, Pub. Safety § 5-117.1(d)(3)(ii)(1), and does not require that applicants prove their knowledge of State law on subjects unrelated to public safety.  Tellingly, this provision of Maryland law received barely a mention in the plaintiffs'

10

amended complaint, and the plaintiffs have failed to respond to the State's arguments in its opening brief explaining how common sense dictates that training in the proper and safe handling of firearms is reasonably adapted to the State's interest in promoting public safety. See Defs.' Mem. (ECF No. 18-1) at 15-16.

Finally, the plaintiffs' argument for a more onerous intermediate scrutiny standard than that adopted by the Fourth Circuit and most recently applied in *Kolbe* must fail. The plaintiffs argue that intermediate scrutiny requires that the law be "narrowly tailored" to the State's objectives. Pls.' Mem. (ECF No. 29) at 22. Notably, the same argument about "narrow tailoring" was made to the Fourth Circuit in *Kolbe*,[1] and the Court implicitly rejected that argument, holding that the "less onerous standard of intermediate scrutiny . . . does not demand that the challenged law 'be the least intrusive means of achieving the relevant government objective, or that there be no burden whatsoever on the individual right in question.'" *Kolbe*, 849 F.3d at 133 (quoting *Masciandaro*, 638 F.3d at 474). "In other words, there must be 'a fit that is 'reasonable, not perfect.'" *Id.* (quoting *Woollard*, 712 F.3d at 878 (citation omitted)). The plaintiffs simply ignore this binding Fourth Circuit precedent, misplacing reliance on First Amendment cases and the D.C. Circuit's different articulation of the standard in *Heller II*, all of which were decided before *Kolbe*.

For all of these reasons and those set forth in the defendants' opening brief, Count I of the amended complaint must be dismissed.

---

[1] The argument was pressed repeatedly to the Fourth Circuit in *Kolbe* by the same counsel to plaintiffs in that case who now represent Atlantic Guns. *See Kolbe v. Hogan*, Appeal No. 14-1945 (4th Cir.), ECF No. 26 at 33, 2014 WL 5680384, at *46; ECF No. 61 at 14-15, 2015 WL 217266, at *14-15; ECF No. 66.

## II. THE PLAINTIFFS' DUE PROCESS CLAIM FAILS BECAUSE THE STATUTE DOES NOT GIVE PRIVATE HANDGUN INSTRUCTORS AUTHORITY TO DENY SECOND AMENDMENT RIGHTS AND THE WORDS "RECEIVE" AND "RECEIPT" ARE NOT VAGUE.

### A. The Statute Does Not Give Private Handgun Instructors Authority to Grant or Deny Second Amendment Rights.

In their opening brief, the defendants argued that the plaintiffs' due process claim based on the role of private handgun instructors in the HQL process must be dismissed because the complaint fails to identify *any* actual deprivation of their Second Amendment right, by state action or otherwise. Defs.' Mem. (ECF No. 18-1) at 23-25. In the absence of alleging facts sufficient to identify a plausible deprivation of their Second Amendment right caused by state action, the plaintiffs have not stated a claim on which relief can be granted. *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013).

The plaintiffs do not respond to this argument at all. Instead, essentially conceding that they cannot identify a single actual deprivation, the plaintiffs make only the entirely speculative claim that "an individual's exercise of Second Amendment rights *can be prevented* by the action of a private instructor." Pls.' Mem. (ECF No. 29) at 25 (emphasis added). The plaintiffs' failure to identify an actual deprivation is fatal to their claim.

Even if they had identified an actual deprivation, the plaintiffs' claim would fail for the independent reason that they have not identified any deprivation by "state action." *See* Defs.' Mem. (ECF No. 18-1) at 25. The Supreme Court has held that "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

The complaint does not contain any allegation that a private handgun instructor has ever refused to validate that training occurred, much less that an instructor has been significantly encouraged or coerced by the state to do so.[2]

Moreover, even if a single private handgun instructor were to refuse to validate an applicant's training, that would still not preclude the applicant from completing an HQL application because there are more than 1,100 qualified handgun instructors from whom an applicant could obtain training.  *See* Defs.' Mem. (ECF No. 18-1) at 5.

### B.     The Terms "Receive" and "Receipt" Are Not Void for Vagueness.

The plaintiffs raise several points in support of their claim that the terms "receive" and "receipt" are void for vagueness, none of which have merit.  The plaintiffs initially argue that the word "receipt" has been interpreted by federal courts to be satisfied by mere possession, and so it is possible to read the word receipt similarly in the Maryland statute. Even if it were proper to look to federal law to define the meaning of a different term used

---

[2] The cases on which the plaintiffs purport to rely, Pls.' Mem. (ECF No. 29), provide them no support.  In *Blum*, the Supreme Court decided that a private actor's decisions regarding the treatment of Medicaid patients did not constitute state action in the absence of "coercive power" or "significant encouragement" by the state.  457 U.S. at 1004-05. The plaintiffs also rely on three pre-1937 decisions by the Supreme Court overturning legislation that provided private actors with actual authority to regulate other private actors. *Carter v. Carter Coal Co.*, 298 U.S. 238 (1936) (challenge to law giving authority over business operations of coal producers to other coal producers); *State of Washington ex rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116 (1928) (zoning law required the approval of nearby property owners for changes); *Eubank v. City of Richmond*, 226 U.S. 137 (1912) (private property owners were allowed to establish "building lines" preventing construction by other private property owners).  Private handgun instructors are given no such authority. The final case on which the plaintiffs rely is similarly inapposite, as the Fourth Circuit determined that a law allowing a public official to deny a permit on the basis of "public sentiment" lacked rationality.  *Geo-Tech Reclamation Indus., Inc. v. Hamrick*, 886 F.2d 662, 667 (4th Cir. 1989).

in a State statute, the plaintiffs' argument relies, erroneously, on federal cases that concern either:   (1) 18 U.S.C. § 922(g), which prohibits the *possession* of firearms by certain categories of individuals;[3] or (2) a long-superseded predecessor version of § 922(g), then designated § 922(h), which was interpreted broadly in light of the congressional purpose "to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous," and who were therefore intended to be "comprehensively barred by the Act from acquiring firearms by any means." *Barrett v. U.S.*, 423 U.S. 212, 218 (1976).[4]

The plaintiffs, after misstating the defendants' position and failing to respond at all to several of the defendants' arguments, argue that this Court should ignore the decision of the Court of Appeals in *Chow* because that decision interpreted the scope of Maryland's regulated firearms laws in the context of the word "transfer," and they have raised an issue with the word "receipt."  Pls.' Mem. (ECF No. 29) at 27-29.  However, the primary piece of evidence the plaintiffs identify as confirming their belief that "transfer" and "receipt" cannot possibly refer to two sides of the same transaction is that both terms are used in § 5-144 of the Public Safety Article, which prohibits participating in the "sale, rental, transfer, purchase, possession, or receipt" of a firearm.  Pls.' Mem. (ECF No. 29) at 29-30.  Given that "sale" and "purchase" are also both used in the same list, the plaintiffs' contention is frivolous.  As explained in the defendants' opening brief, just as with "sale"

---

[3] *See United States v. Gilbert*, 430 F.3d 215 (4th Cir. 2005); *United States v. Lane*, 267 F.3d 715 (7th Cir. 2001); *United States v. Adkins*, 196 F.3d 1112 (10th Cir. 1999); *United States v. Casteel*, 717 F.3d 635 (8th Cir. 2013).

[4] *United States v. Turnmire*, 574 F.2d 1156 (4th Cir. 1978); *United States v. Scales*, 599 F.2d 78 (5th Cir. 1979).

and "purchase," the statute uses "transfer" and "receive" to refer to two sides of the same transaction, which Maryland's highest court has determined is a permanent gratuitous transfer of ownership. Defs.' Mem. (ECF 18-1) at 27-29.

Finally, the plaintiffs contend that interpreting "receipt" to cover temporary transfers would be inconsistent with the "live fire" requirement, because if someone is not permitted to possess temporarily a handgun without first obtaining an HQL, they would never be able to complete the training necessary to obtain the HQL. Pls.' Mem. (ECF No. 29) at 31. Far from supporting the plaintiffs' argument, this example demonstrates yet again that their proposed interpretation of the term "receipt" as encompassing temporary gratuitous transfers is untenable. *See also* Defs.' Mem. (ECF No. 18-1) at 27, 29-30.

For all of these reasons and those set forth in the defendants' opening brief, Count II of the amended complaint must be dismissed.

## III.   THE PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR VIOLATION OF MARYLAND LAW UPON WHICH RELIEF CAN BE GRANTED IN COUNT III.

The plaintiffs recognize that the proper test of the validity of regulations is whether they "'contradict the language or purpose of the statute.'" Pls.' Mem. (ECF No. 29) at 32 (quoting *Medstar Health v. Maryland Care Comm'n*, 376 Md. 1, 21 (2003)). As discussed in the defendants' opening brief, the regulations challenged by the plaintiffs easily satisfy that standard. Defs.' Mem. (ECF No. 18-1) at 30-35. In their response, the plaintiffs defend only two of their claims. As to one – the "live fire" requirement – the plaintiffs fail to apply the correct test. As to the second – the cost of administering the program – the plaintiffs misapprehend the plain language of the statute.

First, the plaintiffs contend that the regulatory requirement that HQL training include "a practice component in which the applicant safely fires at least one round of live ammunition," COMAR 29.03.01.29(C)(4), is "neither mandate[d] nor authorize[d]" by the statutory requirement that the training include "'a firearms orientation component that demonstrates the person's safe operation and handling of a firearm.'"  Pls.' Mem. (ECF No. 29) at 31-32 (quoting Md. Code Ann., Pub. Safety § 5-117.1(d)(3)(iii)).  However, the plaintiffs fail to make any serious effort to explain how a regulatory requirement to fire a firearm a single time *contradicts* a requirement to demonstrate the applicant's "safe operation and handling" of the firearm, as would be required to sustain their claim.  The plaintiffs have offered no legitimate argument that the live fire requirement is in any way in conflict with the statute.[5]

_____

[5] The other arguments the plaintiffs offer with respect to the live fire requirement bear no relationship to the test for determining whether the regulations are sustainable under § 10-125 of the State Government Article.  Although the plaintiffs consider the live fire requirement unnecessary, Pls. Mem. (ECF No. 29) at 32, that does not render the Secretary's decision invalid.  Similarly, that the General Assembly did not adopt legislation that would have required training on firearms "proficiency" is entirely irrelevant to whether a regulation requiring firing a single round is a valid implementation of a statutory requirement to provide training so as to "demonstrate[] . . . safe operation" of a firearm.  Finally, the plaintiffs' new constitutional avoidance argument, *id.* at 33-34, fails for several independent reasons:  (1) constitutional avoidance only provides a basis for choosing between alternative reasonable interpretations of a statute, and the plaintiffs have not identified any reasonable interpretation of the statute that would preclude a live fire requirement; (2) these plaintiffs lack standing to challenge the application of the requirement to the "poor or disadvantaged citizens of Maryland who live in urban areas, where access to a public shooting range is effectively non-existent," Am. Compl. (ECF No. 14) ¶ 46; and (3) the plaintiffs' claims in this regard are entirely devoid of plausible factual support, *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 71 (4th Cir. 2016) (factual allegations in a complaint "must be enough to raise a right to relief above the speculative level") (quotation omitted).

16

The only other requirement that the plaintiffs even mention in their defense of Count III is their claim that the Secretary should bear the burden of the costs of training and fingerprinting within the $50 application fee authorized by the statute "to administer the program."  Pls.' Mem. (ECF No. 29) at 34-35.  However, to "administer" means "'to manage or conduct,'" *In Defense of Animals, Dreamcatcher Wild Horse & Burro Sanctuary v. U.S. Dep't of Interior*, 751 F.3d 1054, 1067 (9th Cir. 2014) (quoting *Black's Law Dictionary* 65 (4th ed. 1968)), not to cover the costs of applicants in complying with statutory requirements.  The plaintiffs' contention that the Secretary is obligated by the statute to bear these costs is meritless.

Finally, the plaintiffs, relying on federal administrative law, argue that the regulations are somehow deficient because, although the Maryland State Police implemented some changes to the original draft regulations in response to comments from plaintiff MSI, the State Police did not expressly respond to two other such comments, (1) the request to promulgate definitions of "receipt" and "receive"; and (2) MSI's complaints about the live fire requirement.  Pls.' Mem. (ECF No. 29) at 34.  However, the plaintiffs do not identify any requirement that a Maryland agency respond to comments made on proposed regulations, and there is no such requirement.  *See generally* Md. Code Ann., State Gov't §§ 10-109 – 10-118 (statutory provisions applicable to the proposal and adoption of regulations by Maryland agencies).  As set forth in the defendants' opening brief, the Maryland State Police adopted the regulations in full conformance with Maryland law.  Defs.' Mem. (ECF No. 18-1) at 4.

17

For all of these reasons and those set forth in the defendants' opening brief, Count III of the amended complaint must be dismissed.

## CONCLUSION

The Court should dismiss the amended complaint in its entirety.

Respectfully Submitted,

BRIAN E. FROSH
Attorney General

_____/s/_____

JENNIFER L. KATZ (Fed. Bar #28973)
MATTHEW J. FADER (Fed. Bar # 29294)
Assistant Attorneys General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-7005 (tel.); 410-576-6955 (fax)
jkatz@oag.state.md.us

Dated: March 20, 2017                     Attorneys for Defendants

18