IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARYLAND SHALL ISSUE, INC.,          *
et al.
               Plaintiffs          *

        vs.          * CIVIL ACTION NO. MJG-16-3311

LAWRENCE HOGAN, in his capacity          *
Of GOVERNOR OF MARYLAND, et al.
                             *
               Defendants
*          *          *          *          *          *          *          *          *

MEMORANDUM AND ORDER RE: DISMISSAL

    The Court has before it Defendants' Motion to Dismiss the Amended Complaint [ECF No. 18] and the materials submitted relating thereto. The Court has held a hearing and has had the benefit of the arguments of counsel.

I.    BACKGROUND

    In 2013, the Maryland General Assembly passed the Firearm Safety Act of 2013 ("FSA"), to regulate the sale and possession of firearms within the state. The FSA includes a Handgun Qualification License provision ("HQL Provision" or "Provision"), Md. Code Ann., Pub. Safety § 5-117.1, which forbids the sale, rental, transfer, purchase, or receipt of a handgun by any person without a valid HQL issued by the Secretary, with certain exceptions.

    Plaintiffs Maryland Shall Issue, Inc., Atlantic Guns, Inc., Ana Sliveira, Deborah Kay Miller, Susan Brancato Vizas,

and Christine Bunch (collectively "Plaintiffs") assert claims against Defendants Lawrence Hogan, in his official capacity as Governor of the State of Maryland, and William M. Pallozzi, in his official capacity as Secretary and Superintendent of the Maryland State Police (collectively "Defendants").

The Plaintiffs have filed the instant lawsuit, seeking an order declaring the HQL Provision unconstitutional on its face and as applied to the Plaintiffs, and to enjoin enforcement of Md. Code Ann., Pub. Safety § 5-117.1 and the implementing regulations and practices adopted by the Maryland State Police ("MSP").

Plaintiffs' Amended Complaint [ECF No. 13] presents three Counts:

Count I.    Second Amendment (42 U.S.C. § 1983);

Count II.   Fourteenth Amendment, Due Process (42 U.S.C. § 1983);

Count III. Ultra Vires (violation of Md. Code Ann., State Gov't § 10-125(d)).

By the instant motion, Defendants seek dismissal of the Amended Complaint pursuant to Rule[1] 12(b)(6) for failure to state a claim upon which relief can be granted.

II.  <u>DISMISSAL STANDARD</u>

A motion to dismiss filed pursuant to Rule 12(b)(6) tests

_____

[1]     All "rule" references herein are to the Federal Rules of Civil Procedure.

the legal sufficiency of a complaint. A complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). When evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff. However, conclusory statements or "a formulaic recitation of the elements of a cause of action will not [suffice]." Id. A complaint must allege sufficient facts "to cross 'the line between possibility and plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557).

Inquiry into whether a complaint states a plausible claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Twombly, 550 U.S. at 557). Thus, if "the well-pleaded facts [contained within a complaint] do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (alteration in original)).

III. <u>DISCUSSION</u>

A. <u>Handgun Qualification License Provision</u>

Plaintiffs challenge the HQL Provision of the FSA. The Provision provides that "[a] dealer or any other person may not sell, rent, or transfer a handgun" unless the purchaser, lessee, or transferee presents a valid handgun qualification license ("HQL"). Md. Code Ann., Pub. Safety § 5-117.1(b).

Furthermore, "[a] person may purchase, rent, or receive a handgun only if the person:

(1)  possesses a valid HQL [or meets certain statutory exceptions][2] and

(2)  is not otherwise prohibited from purchasing or possessing a handgun under State or federal law."

<u>Id.</u> § 5-117.1(c).

The statute states that the Secretary shall issue an HQL to a person who is (1) 21 years old, (2) a Maryland resident, (3) not prohibited by federal or state law from purchasing or possessing a handgun, and (4) has "demonstrated satisfactory

---

[2]    A person does not need an HQL if he or she:
* * *
(ii) possesses valid credentials from a law enforcement agency or retirement credentials from a law enforcement agency;
(iii) is an active or retired member of the armed forces of the United States or the National Guard and possesses a valid military identification card; or
(iv) is purchasing, renting, or receiving an antique, curio, or relic firearm, as defined in federal law or in determinations published by the Bureau of Alcohol, Tobacco, Firearms and Explosives.
§ 5-117.1 (c).

4

completion" of a firearms safety training course approved by the Secretary within the three years prior to the application.  Id. § 5-117.1(d).  The training course is required to include:

(a)   a minimum of 4 hours of instruction by a qualified handgun instructor;

(b)   classroom instruction on:
    (1)   State firearm law;
    (2)   home firearm safety; and
    (3)   handgun mechanisms and operation; and

(c)   a firearms orientation component that demonstrates the person's safe operation and handling of a firearm.

Id.  Certain individuals are exempt from the training course requirement.[3]

HQL applicants must submit:

(1)   an application in the manner and format designated by the Secretary;
(2)   a nonrefundable application fee to cover the costs to administer the program of up to $50;

---

[3]   An HQL applicant does not have to complete a firearms safety training course if the applicant:
"(1) has completed a certified firearms training course approved by the Secretary;
(2) has completed a course of instruction in competency and safety in the handling of firearms prescribed by the Department of Natural Resources under § 10-301.1 of the Natural Resources Article;
(3) is a qualified handgun instructor;
(4) is an honorably discharged member of the armed forces of the United States or the National Guard;
(5) is an employee of an armored car company and has a permit issued under Title 5, Subtitle 3 of the Public Safety Article; or
(6) lawfully owns a regulated firearm."
§ 5-117.1 (e).

(3) (i) proof of satisfactory completion of [an approved
        firearms safety training course]; or
        (ii) a valid firearms instructor certification;

    (4) any other identifying information or documentation
        required by the Secretary; and

    (5) a statement made by the applicant under the penalty
        of perjury that the applicant is not prohibited
        under federal or State law from possessing a
        handgun.

Id. § 5-117.1(g).

     After receiving an application, the Secretary must complete

a State and national criminal history records check using the

applicant's fingerprints.  The fees for these records checks are

$18.00 and $14.50 respectively.

     Within thirty days[4] of receiving a complete application, the

Secretary will issue an approval or a written denial containing

the reason for denial and a statement of the applicant's appeal

rights.[5]  An HQL is valid for ten years and may be renewed for

successive ten-year periods as long as the applicant possesses

the qualifications for the HQL and pays a $20.00 application

fee.  Id. §§ 5-117.1(i),(j).

     A person whose HQL application is denied or whose HQL is

revoked may request a hearing within thirty days of the

---

[4]    According to Plaintiffs, the average wait time is 27-28
days before an HQL is received. Amended Compl. [ECF No. 13] ¶39.
[5]    Even if a purchaser has an HQL, he or she must wait seven
days after purchasing a handgun before receiving it.  Md. Code.
Ann., Pub. Safety § 5-123.

revocation or denial, and the hearing will be granted within fifteen days of the request.  Id. § 5-117.1(l).

B. The HQL Regulations

The FSA authorizes the Secretary of the Maryland State Police ("MSP") to adopt regulations to implement the HQL requirement.  Id. § 5-117.1(n).  Accordingly, the MSP has adopted regulations and practices after a notice and comment period.

The MSP regulations require an HQL application to be submitted online, and the application must include the "applicant's name, address, driver's license or photographic identification soundex number, place and date of birth, height, weight, race, sex, eye and hair color, occupation, and home and work telephone numbers" and a nonrefundable payment of $50.00. Md. Code Regs. 29.03.01.28 (2017).  Plaintiffs claim that, as a matter of practice, the MSP will accept only fingerprints taken by a State-certified vendor using "livescan" technology.  The fee for fingerprinting is $17.00.  ¶[6] 37.

Applicants are also required to submit "a Firearms Safety Training Certificate issued by a Qualified Handgun Instructor" that "constitute[s] proof that the applicant satisfactorily completed a Firearms Safety Training Course."  Md. Code Regs.

---

[6]    All ¶ references herein are to the Amended Complaint [ECF No. 13].

29.03.01.29 (2017).  In addition to the statute's requirements

for the course content, the regulations specify that the course

must include "a practice component in which the applicant safely

fires at least one round of live ammunition."  Id.  An applicant

will have to pay any charged fee for the training course in

addition to the $50.00 application fee.

### C. The Plaintiffs

#### 1. Individual Plaintiffs

The Individual Plaintiffs are four women who reside in

Maryland and are over the age of 21.  They do not currently own

handguns and are "deterred from purchasing a handgun because of

the expense and inconvenience of the HQL application process and

its constituent parts."  ¶¶ 9, 14, 19, 24.  But for the HQL

requirement, they could lawfully purchase and own handguns.

Plaintiff Ana Sliveira is a single mother who is employed

as a Department of Defense federal contractor employee.  She

holds a government security clearance and was a victim of the

Office of Personnel Management data breach.  She has heightened

concern for her family's safety because her personal information

has been disclosed as a result of that breach.  She would like

to purchase a handgun to protect herself and her family inside

of her home.  She does not own any other firearms.

Plaintiff Deborah Kay Miller is a General Member of

Plaintiff organization Maryland Shall Issue, Inc.  Ms. Miller
wants a handgun for self-defense, target practice, and other
lawful purposes.

Plaintiff Susan Brancato Vizas has passed Hunter Safety
Training and would like to purchase a handgun for self-defense,
target practice, and other lawful purposes, but has not taken
further steps to obtain an HQL because the process is
burdensome.  Ms. Vizas is a mother of three school-aged
children.

Plaintiff Christine Bunch wants a handgun for self-defense,
target practice, and other lawful purposes; however, she "cannot
afford the time or excessive cost of acquiring an HQL."  ¶ 24.

### 2. Plaintiffs Maryland Shall Issue

Plaintiff Maryland Shall Issue, Inc. ("MSI") is a Maryland
non-profit organization "dedicated to the preservation and
advancement of gun owners' rights in Maryland."  ¶ 25.  MSI
"seeks to educate the community about the right of self-
protection, the safe handling of firearms, and the
responsibility that goes with carrying a firearm in public."
Id.  MSI claims that the HQL requirements undermine its message
and objectives.

MSI brings this action on behalf of itself and its
approximately 772 members.  Some MSI members do not possess HQLs

and "have been deterred from purchasing a handgun because of the expense and inconvenience of the HQL application process and its constituent parts." Id.

### 3. Plaintiff Atlantic Guns

Plaintiff Atlantic Guns, Inc. ("Atlantic Guns") is a federally-licensed firearms dealer and Maryland Regulated Firearms Dealer.

Atlantic Guns is unable to sell handguns to persons without HQLs and persons who are deterred by the HQL application process. Atlantic Guns has experienced a "significant reduction in its business due to the HQL requirement." ¶ 26. Atlantic Guns also represents the interests of customers who would like to purchase handguns but cannot buy them because of the HQL requirement.

### D. Constitutional Claims

Plaintiffs contend that the HQL Provision and implementing regulations violate individuals' Second Amendment rights to purchase or acquire a handgun and the Due Process Clause of the Fourteenth Amendment.

The Plaintiffs present their federal constitutional claims pursuant to 42 U.S.C. § 1983 (2012). To establish a § 1983 claim, a plaintiff must prove that a defendant acted under color

of state law and deprived him/her of a right secured by the Constitution.

### 1. Color of State Law

There is no doubt that all pertinent actions of Defendants were performed under color of state law, i.e., acting as state officials.

### 2. Deprivation of Rights

#### a. Count I: Second Amendment Claims

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. At its core, the Second Amendment protects an individual right of "law-abiding, responsible citizens to use arms in defense of hearth and home." District of Columbia v. Heller, 554 U.S. 570, 635 (2008); see also McDonald v. City of Chicago, 561 U.S. 742, 748 (2010)(holding that the Second Amendment is applicable to the States).

Although the Supreme Court has not delineated the exact scope of the Second Amendment, the Heller Court cautioned that "nothing in our opinion should be taken to cast doubt on . . . laws imposing conditions and qualifications on the commercial

sale of arms," which are "presumptively lawful."[7]  Id. at 626-27

& n.26.  The Fourth Circuit has not had the occasion to address

a law requiring persons to obtain a license before possessing a

handgun.

The United States Court of Appeals for the Fourth Circuit

follows a two-step analysis when assessing laws regulating

firearms.

> The first question is "whether the challenged law
> imposes a burden on conduct falling within the scope
> of the Second Amendment's guarantee." . . . If the
> challenged regulation burdens conduct that was within
> the scope of the Second Amendment as historically
> understood, then we move to the second step of
> applying an appropriate form of means-end scrutiny.

United States v. Chester, 628 F.3d 673, 680 (4th Cir.

2010)(internal citations omitted).

At step two, the level of scrutiny applied "depends on the

nature of the conduct being regulated and the degree to which

the challenged law burdens the right."  Id. at 682.

> A severe burden on the core Second Amendment right of
> armed      self-defense      should      require      strong
> justification.  But less severe burdens on the right,
> laws that merely regulate rather than restrict, and
> laws that do not implicate the central self-defense
> concern of the Second Amendment, may be more easily

---

[7]    Since Heller, the Fourth Circuit has upheld several gun
regulations, including laws banning assault weapons, Kolbe v.
Hogan, 849 F.3d 114, 161 (4th Cir. 2017), prohibiting possession
of loaded firearms in a national park, United States v.
Masciandaro, 638 F.3d 458, 460 (4th Cir. 2011), and requiring
persons to demonstrate a "good and substantial reason" before
receiving a concealed carry permit, Woollard v. Gallagher, 712
F.3d 865, 882 (4th Cir. 2013).

justified.

Id. (quoting United States v. Skoien, 587 F.3d 803, 813-14 (7th Cir. 2009)), reh'g en banc granted, opinion vacated, No. 08-3770, 2010 WL 1267262 (7th Cir. Feb. 22, 2010), and on reh'g en banc, 614 F.3d 638 (7th Cir. 2010).

Defendants do not deny that the HQL Provision and implementing regulations burden conduct within the scope of the Second Amendment, namely, the ability of a law-abiding citizen to attain a handgun for use in the home for self defense.  See Heller, 554 U.S. at 629 (recognizing that the handgun is considered to be "the quintessential self-defense weapon").

However, the Defendants contend that:

1. Plaintiffs lack standing to challenge certain aspects of the HQL requirements;

2. The HQL requirements are nevertheless valid under intermediate scrutiny; and

3. Plaintiffs fail to allege facts sufficient to maintain a facial or as-applied challenge.

These assertions will be addressed in turn.

i.  Standing

To have standing, an individual plaintiff must allege a concrete injury, causation, and redressability.  An association has standing only when its individual members have standing in their own rights.  See Lujan v. Defenders of Wildlife, 504 U.S.

555, 560 (1992); Hunt v. Wa. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)(quoting Lujan v. National Wildlife Federation, 497 U.S. 871, 889 (1990)).

Generally, a person may not bring a constitutional challenge to a statute on grounds that do not apply to that plaintiff. See Broadrick v. Oklahoma, 413 U.S. 601, 610 (1973) ("[C]onstitutional rights are personal and may not be asserted vicariously.").

Plaintiffs allege that the HQL Provision and regulations are "unduly burdensome, particularly for people who hunt for food, require a firearm to earn a living, are elderly, terminally ill and/or who have an urgent need for firearms for self-defense because they live in a high crime area or have been threatened." ¶ 44. Plaintiffs also allege that the MSP regulations are burdensome because they require computer and internet access, a scanner to scan and attach the supporting documentation to an HQL application, a permanent home address and phone number, and a credit or debit card to pay the fee.

Additionally, Plaintiffs allege that the MSP regulations

discriminate against and act as a barrier to "the poor or disadvantaged citizens of Maryland who live in urban areas" who lack access or means to travel to State-certified "livescan" fingerprint vendors, handgun training course instructors, or a public shooting range for live fire instruction.   ¶ 46.

Defendants contend that the Plaintiffs lack standing to bring a facial or as-applied Second Amendment claim based on this alleged discrimination (other than time and cost) because none of the Plaintiffs allege that they themselves or one of their members or customers are negatively impacted by those requirements, i.e., they do not allege that there is any pertinent individual with a need to hunt for food, who lacks access to the internet or a scanner, or lives in an urban area with no access to a shooting range, etc.   See Heller v. District of Columbia, 45 F. Supp. 3d 35, 71 (D.D.C. 2014) aff'd in part, rev'd in part on other grounds, Heller v. District of Columbia, 801 F.3d 264 (D.C. Cir. 2015) (determining that plaintiffs lacked standing to challenge the D.C. gun registry provision that a registrant not be blind because none of the plaintiffs were blind).

The Amended Complaint does not contain even general factual allegations that any individual Plaintiff or any member/customer of the entity Plaintiffs are affected by aspects of the Provision other than time and cost, nor do they make allegations

that would allow the Court to derive an inference that they are burdened by some of these provisions, such as the need for access to a computer, a debit card, or a fixed address.

However, MSI, a gun advocacy organization, contends that at least some of its many members across the state are affected by all of these burdens, and that it can identify specific individuals after discovery. ¶ 25 ("MSI has approximately 772 members statewide."). "[T]he Supreme Court has made it clear that 'the presence of one party with standing is sufficient to satisfy Article Ill's case-or-controversy requirement.'" Bostic v. Schaefer, 760 F.3d 352, 370 (4th Cir. 2014)(quoting Rumsfeld v. Forum for Academic & Institutional Rights, Inc., 547 U.S. 47, 52 n.2, (2006)).

Taken in a light most favorable to Plaintiffs, with all inferences that can be derived from the facts alleged, it is plausible that some MSI members do hunt for their food or live in urban areas, and thus have standing as to those challenges. Ultimately, to prevail, Plaintiffs must prove the identity of specific individuals who are personally injured or deterred by each contested aspect of the challenged requirements in order to have standing. Count I shall not be dismissed for lack of standing.

ii.  <u>Standard of Scrutiny</u>

Plaintiffs disagree with Defendants' position that intermediate scrutiny applies and assert that it is inappropriate for the Court to select and apply means-end scrutiny prior to discovery.

The facts and Statute at issue in this case are different from those previously addressed by the Fourth Circuit, thus the issue of what scrutiny should or could apply is unsettled.[8]  For example, in <u>Kolbe</u>, the <u>en banc</u> panel held that assault weapons and large-capacity magazines are not constitutionally protected, and even if they were, only intermediate scrutiny applies because those weapons did not fall under the core protection of the Second Amendment.  <u>Kolbe</u>, 849 F.3d at 137-38.  Similarly, in <u>Chester</u>, the Fourth Circuit held that intermediate scrutiny applied because the defendant's claim did not implicate the core right of the Second Amendment because he was not a law-abiding citizen. 628 F.3d at 683.  The Plaintiffs' claims in the instant

---

[8]    <u>But see</u> <u>Wrenn v. D.C.</u>, No. 16-7025, 2017 WL 3138111, at *11 (D.C. Cir. July 25, 2017)(noting that the Second Amendment is subject to longstanding restrictions, including licensing requirements); <u>Kwong v. Bloomberg</u>, 723 F.3d 160, 168 (2d Cir. 2013)(finding in review of a summary judgment motion that heightened scrutiny does not apply unless a restriction "operates as a substantial burden"  on an individual's Second Amendment rights, such as a <u>complete prohibition</u> of handgun ownership); <u>Heller v. D.C.</u>, 670 F.3d 1244, 1254-55, 1257 (D.C. Cir. 2011)(applying intermediate scrutiny to gun registration laws because they "are self- evidently de minimis, for they are similar to other common registration or licensing schemes").

case, however, do implicate the core right of the Second Amendment.

Even Kwong v. Bloomberg, 723 F.3d 160 (2d Cir. 2013), wherein the United States Court of Appeals for the Second Circuit applied intermediate scrutiny to a New York City handgun licensing law and a $340.00 fee, noted that "[t]his challenge does not present us with the hypothetical situation where a plaintiff was unable to obtain a residential handgun license on account of an inability to pay the $340 fee." Id. at 167 n.12.

The HQL Provision and regulations do not effect an absolute ban on handguns, but, based on the facts alleged in the Amended Complaint, at least one Plaintiff, Ms. Bunch, cannot afford the fees or time necessary to get an HQL, and therefore allegedly has been prevented from owning a handgun under the FSA. ¶ 24.

The Court concludes that it is wise to have a fully developed record before weighing in on this matter of first impression. See id. at 683 (noting the importance of having evidence on the record to assess whether the government had established a substantial relationship to an important state goal); Heller v. D.C., 670 F.3d 1244, 1259 (D.C. Cir. 2011) (remanding the case to district court for further evidentiary proceedings because the parties failed to produce sufficient evidence to enable the court to apply intermediate scrutiny).

Thus, it is premature to select and apply a form of scrutiny to assess the merits of Plaintiffs' claims without giving the parties a chance to conduct discovery.[9] See Tobey v. Jones, 706 F.3d 379, 387 (4th Cir. 2013)(acknowledging that a Rule 12(b)(6) motion does not resolve the merits of a claim).

### iii. Adequacy of As-Applied Challenge

Defendants assert that Plaintiffs do not allege facts sufficient to present a plausible claim that their Second Amendment rights have been burdened.

The Individual Plaintiffs allege that they do not have handguns and want to obtain handguns for self-defense and other lawful purposes, but are deterred by the expense and inconvenience of the HQL application process. Similarly, MSI alleges that some of its members, including Ms. Miller, want to obtain handguns but have been deterred or prevented by the HQL requirements. Atlantic Guns alleges that it suffers business losses because the HQL Provision prevents it from selling to

_____

[9] Although Defendants contend that it is appropriate for the Court to take judicial notice of certain statistics and studies, the Court concludes that it would be inappropriate to rely on those pieces of evidence, which are disputed by Plaintiffs, without providing Plaintiffs an opportunity to conduct discovery and/or contest the validity of Defendants' evidence. Cf. Giovani Carandola, Ltd. v. Bason, 303 F.3d 507, 516 (4th Cir. 2002)(allowing a governmental entity to rely on evidentiary foundation established in other cases "unless the plaintiff produces clear and convincing evidence to the contrary").

customers who want a handgun, which in turn, burdens the Second Amendment rights of its customers.[10]

The Amended Complaint details the burdens associated with the application process, including the specific costs[11] and the 27 or more days of wait time to receive an HQL.  It is not necessary for a Plaintiff to explain why she specifically lacks the resources to pay for the application.  Common-sense allows an inference that a person could be burdened in some capacity by the HQL application process, which could cost hundreds of dollars, requires at least four hours of training time, plus time spent on completing forms and getting fingerprints, and many days of wait time.  These allegations are sufficient to plead a Second Amendment claim.  The extent of the burden is relevant to the analysis on the merits.

Accepting the pleadings as true, the Court finds that the Plaintiffs allege adequate facts to present a plausible claim that the HQL Provision and regulations have deprived them (or their members or customers) of the Second Amendment right to possess a handgun in the home for self-defense.  Accordingly, Count I shall not be dismissed.

---

[10]  See Craig v. Boren, 429 U.S. 190, 195 (1976)("[V]endors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function.").

[11]  At least $99.50, plus whatever is charged for a training course.

iv.  Facial Challenge

"As the Supreme Court has repeatedly observed, [a] facial challenge to a legislative Act is, of course, the most difficult to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.  The fact the [relevant statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid . . . ."  Jordan by Jordan v. Jackson, 15 F.3d 333, 343 (4th Cir. 1994)(quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).

An exception relating to third party rights exists in the First Amendment context for overbreadth claims, but no circuit has accepted such a Second Amendment overbreadth challenge. United States v. Chester, 514 F. App'x 393, 395 (4th Cir. 2013); United States v. Masciandaro, 638 F.3d 458, 474 (4th Cir. 2011)(calling a Second Amendment overbreadth challenge a "novel notion," but declining to reach the issue).

Plaintiffs contend that the HQL Provision and regulations are facially unconstitutional because they were intended to act "as a rationing of Second Amendment rights by discouraging and burdening the exercise of a law-abiding citizen's right to purchase or acquire a handgun," and thus the Provision is illegitimate and unconstitutional.  ¶ 57.  In addition, Plaintiffs contend that the HQL requirements are facially

unconstitutional because they bar a person from exercising the Second Amendment right until or unless that person has "borne all the burdens imposed by the HQL Statute and navigated all the obstacles." Pls.' Opp'n [ECF No. 29] at 17.

Defendants assert that the Amended Complaint fails to present a facial challenge because the HQL Provision has a legitimate sweep and because Plaintiffs either do not have standing or have not alleged facts to support a claim that the individual burdens, such as cost or access to a shooting range, impose an unconstitutional burden in every circumstance.

The Court has already addressed the standing issue, and concludes that if it is later determined that the law is constitutional as-applied to Plaintiffs, at that point it will be unnecessary to address the facial challenges. See United States v. Masciandaro, 638 F.3d 458, 474 (4th Cir. 2011) ("[W]e conclude that a person, . . . to whom a statute was constitutionally applied, 'will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.'")(quoting Broadrick, 413 U.S. at 610); see also Woollard v. Gallagher, 712 F.3d 865, 882-83 (4th Cir. 2013).

Accordingly, the claims in Count I remain pending.

### b. Count II: Fourteenth Amendment Due Process Claims

Plaintiffs allege that the HQL requirement violates the Fourteenth Amendment Due Process Clause[12] in two ways:

(1) the MSP regulations vest "Qualified Handgun Instructors" with unreviewable authority to grant or deny an individual the certification needed to apply for an HQL, and

(2) the terms "receive" or "receipt" used in the HQL Provision are void for vagueness.

These contentions will be addressed in turn.

### i. Instructor Certification Requirement

The MSP regulations provide that an HQL applicant must submit "a Firearms Safety Training Certificate issued by a Qualified Handgun Instructor" to prove that the applicant "satisfactorily completed a Firearms Safety Training Course." Md. Code Regs. 29.03.01.29 (2017). Plaintiffs' claims are based on the possibility that an Instructor could refuse to issue such a certificate, thereby preventing an applicant from successfully completing the application and being considered to receive an HQL. The statute and the regulations do not provide for a hearing or judicial review of an Instructor's denial of a Certificate.

---

[12] "[N]or shall any state deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

To state a procedural due process claim, Plaintiffs must show that:

>   (1)  they had a constitutionally cognizable life, liberty, or property interest;

>   (2)  the deprivation of that interest was caused by some form of state action; and

>   (3)  the procedures employed were constitutionally inadequate.

See Sansotta v. Town of Nags Head, 724 F.3d 533, 540 (4th Cir. 2013).

Plaintiffs' procedural due process claims are speculative and fail to meet this standard because they do not allege a deprivation due to the denial of a Training Certificate.[13] Plaintiffs are not harmed by merely complying with the regulation, and would be harmed only if an Instructor wrongfully denied a Certificate.[14] Nor have Plaintiffs pointed to any part of the regulations that vest Training Instructors with a discretionary determination.

---

[13]  In this way, Plaintiffs' claims are also not ripe. See Andrew v. Lohr, 445 F. App'x 714, 715 (4th Cir. 2011)(finding case "not fit for review" when the constitutional violation rested on contingent future events and plaintiff had not demonstrated any present hardship).

[14]  At which point a person could possibly have a valid claim. See State of Washington ex rel. Seattle Title Trust Co. v. Roberge, 278 U.S. 116, 121–22 (1928)(finding a due process violation when private citizens were delegated authority to control the use of a landowner's property for any reason without being subject to official review).

Accordingly, Plaintiffs have failed to plausibly allege that the Instructor Certification Requirement violates procedural due process.

## ii. <u>Vagueness Challenge</u>

The HQL Provision provides that a person may not "purchase, rent, or receive a handgun" without an HQL.  Md. Code Ann., Pub. Safety § 5-117.1(c).  Section 5-144(a) of the Maryland Public Safety Code prohibits the "receipt of a regulated firearm in violation of this subtitle."  Md. Code Ann., Pub. Safety § 5-144(a)(2011 Repl. Vol., 2016 Supp.).  Plaintiffs assert that the HQL Provision is void for vagueness because the terms "receive" and "receipt" are undefined by the Code and regulations.

MSI submitted comments to the MSP during the rulemaking proceedings and requested that the MSP define those terms, but the MSP failed to do so.  MSI contends that its members without HQLs who wish to temporarily handle a handgun at home or a shooting range or to receive training are exposed to the threat of arbitrary prosecution under § 5-144 due to the ambiguous meaning of the terms "receive" and "receipt."

A statute is impermissibly vague under the Due Process Clause only if it "[1] fails to provide a person of ordinary intelligence fair notice of what is prohibited, or [2] is so standardless that it authorizes or encourages seriously

discriminatory enforcement." United States v. Passaro, 577 F.3d 207, 217 (4th Cir. 2009)(quoting United States v. Williams, 553 U.S. 285 (2008)). Although "the standard of certainty is higher" for criminal statutes, "[s]triking down ordinances . . . as facially void for vagueness is a disfavored judicial exercise." Schleifer by Schleifer v. City of Charlottesville, 159 F.3d 843, 853 (4th Cir. 1998)(quoting Kolender v. Lawson, 461 U.S. 352, 359 n.8 (1983)). "In evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered." Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 n.5 (1982).

Defendants contend that the words "receive" and "receipt" are not vague in light of the structure of the statute, which pairs "transfer" in § 5-117.1 subsection (b), with "receive" in subsection (c). The Maryland Court of Appeals has defined the word "transfer" as used in § 5-124 of the Maryland Public Safety Article, to refer only to "permanent gratuitous transfers," Chow v. State, 903 A.2d 388, 401-02 (Md. 2006); thus, Defendants argue that "receipt" means a permanent receipt of a firearm.

To address Defendants' arguments, the Court would have to analyze the merits of Plaintiffs' vagueness claim, which is inadvisable and unnecessary at the motion to dismiss stage.

It suffices now to note that Plaintiffs adequately allege a plausible claim that the HQL Provision is impermissibly vague[15] and thus deprives them of due process under the Fourteenth Amendment. Specifically, MSI alleges that its members routinely handle handguns in the presence of other people who do not possess HQLs, yet who wish to temporarily possess the handgun for training or shooting, or MSI members are not certain of what the law forbids regarding temporary possession of a handgun by nonlicensed guests in their homes.

Accordingly, Count II shall not be dismissed.


E. Count III: Ultra Vires Claim

In Count III, Plaintiffs bring a claim under the Maryland Administrative Procedure Act, which provides that "[a] person may file a petition for a declaratory judgment on the validity of any regulation" and "the court shall declare a provision of a regulation invalid if the court finds that:

(1) the provision violates any provision of the United States or Maryland Constitution;

---

[15] The Court does not read the Amended Complaint to present a facial vagueness challenge. See McCree v. State, 76 A.3d 400, 409 (Md. Ct. App. 2013), aff'd, 105 A.3d 456 (Md. 2014)(noting that "we normally do not evaluate whether the statute is of questionable applicability in foreseeable marginal situations" unless "the statute appears to impinge upon fundamental constitutional rights such as the First Amendment guarantees of free speech" (internal citations omitted)).

(2) the provision exceeds the statutory authority of the unit; or

(3) the unit failed to comply with statutory requirements for adoption of the provision."

Md. Code Ann., State Gov't § 10-125(a),(d).  An agency's rules or regulations should be upheld "as long as they d[o] not contradict the language or purpose of the statute."  Christ by Christ v. Maryland Dep't of Nat. Res., 644 A.2d 34, 39 (Md. 1994).

Plaintiffs contend that the MSP regulations are invalid because MSP:

- imposed requirements[16] for the application process beyond what was specified by § 5-117.1;

- acted arbitrarily and unreasonably in failing to approve alternative handgun training courses as contemplated by § 5-117.1(e)(1); and

- "impermissibly shifted the burden of paying for the required training to the applicant" by not including the training and fingerprinting fees in the $50 fee limitation in § 5-117.1(g)(2). ¶ 86.

Plaintiffs also allege that the regulations violate the Second Amendment.

The Maryland Court of Appeals has held "[i]t is proper to dismiss a declaratory judgment action only where there is a lack of jurisdiction or where a declaratory judgment is not an

---

[16]     Such as the live fire training requirement, requiring applications to be submitted online, requiring training by a private State-certified instructor and not providing training by the MSP, not providing fingerprinting at the MSP, and requiring payments to be made by credit or debit card.  See ¶ 80.

available or appropriate type of remedy." <u>Christ by Christ</u>, 644

A.2d at 37.  When considering a motion to dismiss a claim under

Maryland's declaratory judgment statute,

> "it is immaterial that the ultimate ruling may be
> unfavorable to the plaintiff. The test of the
> sufficiency of the [complaint] is not whether it shows
> that the plaintiff is entitled to the declaration of
> rights or interest in accordance with his theory, but
> whether he is entitled to a declaration at all; so,
> even though the plaintiff may be on the losing side of
> the dispute, if he states the existence of a
> controversy which should be settled, he states a cause
> of suit for a declaratory decree."

<u>Id.</u> at 38 (quoting <u>Shapiro v. County Comm.</u>, 149 A.2d 396, 399

(Md. 1959)).  Therefore, Plaintiffs have adequately pled an

<u>ultra</u> <u>vires</u> claim under § 10-125.[17]

Accordingly, Count III shall not be dismissed.

---

[17]    In their Opposition Memorandum, Plaintiffs contend that
this Court can also set aside MSP's actions as "arbitrary and
capricious" under the common law and Md. Code Ann., State Gov't
§ 10-222.  However, § 10-222 governs judicial review of a
decision in a "contested case," not the promulgation of a
regulation.  And the scope of a court's inherent authority to
review an agency's quasi-legislative actions, which is the type
of action involved here, is "limited to 'assessing whether the
agency was acting within its legal boundaries.'"  <u>See</u> <u>Maryland</u>
<u>Bd. of Pub. Works v. K. Hovnanian's Four Seasons at Kent Island,</u>
<u>LLC</u>, 42 A.3d 40, 58 n.15 (Md. 2012)(quoting <u>Schade v. Board of</u>
<u>Elections</u>, 930 A.2d 304, 326 (Md. 2007)).

V.   <u>CONCLUSION</u>

For the foregoing reasons:

1.   Defendants' Motion to Dismiss the Amended Complaint [ECF No. 18] is GRANTED in part and DENIED in part.

   a. Counts I and III remain pending.

   b. As to Count II:

      i. The challenge to the Instructor Certification Requirement is DISMISSED.

      ii. The void for vagueness challenge remains pending.


SO ORDERED, on <u>Tuesday, September 05, 2017</u>.

_____/s/_____
Marvin J. Garbis
United States District Judge