IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARYLAND SHALL ISSUE, INC., *et al.*,  )
        Plaintiffs,  )
        v.  )  Case No. 16-cv-3311-MJG
LAWRENCE HOGAN, in his capacity of GOVERNOR OF MARYLAND, *et al.*,  )
        Defendants.  )

### PLAINTIFF ATLANTIC GUNS, INC.'S MOTION TO COMPEL

Plaintiff, Atlantic Guns, Inc., by counsel, respectfully moves the Court to enter an Order compelling Defendant William Pallozzi ("Col. Pallozzi") to respond fully to certain interrogatories and requests for production of documents served by Plaintiff.

On October 25, 2017, Atlantic Guns served its First Set of Interrogatories and First Set of Requests for Production of Documents. On December 29, 2017, Col. Pallozzi propounded his Answers to the First Set of Interrogatories and Responses to the First Set of Requests for Production of Documents. As detailed in the chart below, several of Col. Pallozzi's Answers and Responses are deficient.

| Discovery Request | Answer/Response | Deficiency |
|---|---|---|
| <u>Interrogatory No. 1</u>:<br><br>Identify the number of handgun transfers in Maryland each year from 2012 through 2016. | Col. Pallozzi states that [Maryland State Police ("MSP")] does not maintain records of the number of handgun transfers each year in Maryland. Rather, MSP maintains records of the number of applications made to transfer regulated firearms in Maryland each year, and pursuant to Rule 33(d) of the Federal Rules of Civil | Rather than provide numbers of transfers, Col. Pallozzi produced a voluminous number of the MSP Licensing Division Weekly Reports on the number of applications received. Col. Pallozzi indicated that MSP had requested data from the Maryland Automated Firearms Services System, maintained by the Maryland |

-1-



| | | |
|---|---|---|
| | Procedure, Col. Pallozzi is producing business from which this information can be derived at Bates range MSP000578–1089. Col. Pallozzi further states that MSP has requested data from the Maryland Automated Firearms Services System, maintained by the Maryland Department of Public Safety and Correctional Services, which tracks the number of handgun transfers that are not disapproved in Maryland each year, and Col. Pallozzi will supplement this answer pursuant to Rule 26(e) of the Federal Rules of Civil Procedure when that data is received. | Department of Public Safety and Correctional Services, which tracks the number of handgun transfers annually. |
| Interrogatory No. 2:<br><br>Identify the number of handgun transfers disapproved in Maryland each year from 2012 through 2016, including the reasons for disapproval and the number of disapprovals for each reason. | Col. Pallozzi objects to this interrogatory on the ground it is vague and ambiguous and seeks discovery of matters that are not relevant to any party's claims or defenses under Rule 26(b)(1), insofar as it seeks information about disapproval of regulated firearm transfers that have no relation to the HQL requirement that is the subject of this lawsuit. Without waiving these objections, Col. Pallozzi states that MSP does not maintain records of the number of handgun transfers in Maryland that are disapproved each year. Rather, MSP maintains records of the number of applications made to transfer regulated firearms that are disapproved, and pursuant to Rule 33(d) of the Federal Rules of Civil | Col. Pallozzi provided numerical responses for the years 2014, 2015, and 2016, but did not provide a reason for these disapprovals. There are spreadsheets provided that one could presumably correlate to the response, but the aforementioned spreadsheets have no identifying Bates number on them with which to correspond with the Answer. In addition, the spreadsheets for the year 2013 appear to have denials listed on them, but do not provide a reason. Further, Col. Pallozzi did not provide any numerical response for the year 2013, leaving Atlantic Guns to wonder if the spreadsheet provided is at odds with Col. Pallozzi's null response. |

| | | |
|---|---|---|
| | Procedure, Col. Pallozzi is producing business from which this information can be derived at Bates range MSP 1090-1175. Col. Pallozzi further states that the number of applications for regulated firearm transfers that were disapproved due to the applicant not having an HQL from 2012 through 2016 are as follows: 40 in 2014, 49 in 2015, and 7 in 2016. | |
| Interrogatory No. 4:<br><br>Identify the number of HQL applications denied each year from 2013 through 2017, including the reasons for any such denial, including the instances in which a person was denied an HQL solely because of information obtained from fingerprints. | Pursuant to Rule 33(d) of the Federal Rule of Civil Procedure, Col. Pallozzi will produce business records from which the information sought by this interrogatory can be derived at Bates range MSP000578-1089, 1090-1167, 1176-1217. | Col. Pallozzi referred back to the voluminous number of MSP Licensing Division Weekly Reports produced, and to a Bates stamps reference for which there were no corresponding documents produced. Should Atlantic Guns make the assumption that certain unstamped documents are intended to be responsive to this question, the spreadsheets for the year 2013 appear to have denials listed on them, but do not provide a reason. |
| Interrogatory No. 5:<br><br>Identify the number of HQL applications not completed each year from 2013 through 2017. | Col. Pallozzi objects to this interrogatory on the ground that the term "not completed" is undefined, vague and ambiguous. Without waiving these objections, Col. Pallozzi states that MSP does not have this information within its possession. | Atlantic Guns would like to clarify that it requests information on the number of HQL applications which were started in the MSP system – as all HQL applications are required to be in an electronic format submitted online, per Col. Pallozzi's own statements – but were never submitted as final to the MSP. |
| Interrogatory No. 6:<br><br>Identify all citizen inquiries into the burden/difficulty in meeting HQL requirements. | Col. Pallozzi objects to this interrogatory on the ground that it is overly broad, unduly burdensome and seeks information that is not proportionate to the needs of | As is clear from the face of the Amended Complaint, Atlantic Guns' position is to seek to relieve the Maryland taxpayer "of the burden of an unnecessary and expensive |

| | | |
|---|---|---|
| | the case. Col. Pallozzi also objects on the ground that this interrogatory does not contain a timeframe. Without waiving his objections, Col. Pallozzi states that he will produce copies of written inquiries that the MSP received from citizens relating to the burden/difficulty in meeting HQL requirements from October 1, 2013 to the present, if any, that can be located through a reasonably diligent search of MSP's records. | process" rendering this interrogatory integral to Atlantic Guns' position. To the extent that Col. Pallozzi objected on the ground that the interrogatory did not contain a timeframe, Plaintiff limits the inquiry to all citizen inquiries into the burden/difficulty in meeting HQL requirements from October 1, 2013, through present, in accordance with Col. Pallozzi's suggestion. |
| Interrogatory No. 7: Identify the shortest, longest, and average amount of time to process an HQL application. | Col. Pallozzi objects to this interrogatory on the ground that it does not contain a timeframe and is therefore overly broad and unduly burdensome. Col. Pallozzi further objects on the ground that this interrogatory is vague and ambiguous. Without waiving his objections, Col. Pallozzi states that the amount of time it takes to process an HQL application is fact-dependent and varies based on a number of factors that can be associated with any given application, including but not limited to: an applicant providing the incorrect authorization code to a fingerprint vendor; awaiting transmission of fingerprints from the vendor to the Department of Public Safety and Correctional Services; awaiting an applicant's submission of certification of prior training for a training-exempt HQL application; the lack of a disposition listed on an applicant's criminal history | After providing several boilerplate objections, Col. Pallozzi stated MSP has complied with the statutory provision that the processing period not exceed 30 days. If Col. Pallozzi can state that MSP has complied with the provision that the processing period should not exceed 30 days, then it appears that Col. Pallozzi has information pertaining to the amount of time to process an HQL application.<br><br>In response to Col. Pallozzi's objections that the interrogatory is "vague and ambiguous," Atlantic Guns clarifies that it is only requesting information on the amount of time for processing once an application for an HQL has been submitted to MSP. |

| | | |
|---|---|---|
| | for a potential disqualifying charge, and any follow-up investigation to determine that disposition; the number of applications received on a particular day; an applicant providing incorrect answers on an application; awaiting verification from a qualified handgun instructor that the applicant completed the necessary training; an applicant's incorrect submission of a qualified handgun instructor's verification code; among other factors.<br><br>Col. Pallozzi further states that HQL applications have been processed the same business day that they are received, and that MSP has complied with the statutory provision that the processing period not exceed 30 days. | |
| <u>Interrogatory No. 11</u>:<br><br>Identify all requests from citizens to accept alternative means of payment for the HQL application fee other than credit or debit card, and whether MSP accepted alternative means of payment, such as cash, check, or money order. | Col. Pallozzi objects to this interrogatory on the ground that it is overly broad, unduly burdensome and seeks information that is not proportionate to the needs of the case. Col. Pallozzi also objects on the ground that this interrogatory does not contain a timeframe. Without waiving his objections, Col. Pallozzi states that he will produce copies of written inquiries that the MSP received from citizens from October 1, 2013 to the present to accept alternative means of payment for the HQL application fee other than credit or debit card that can be located through a | To the extent Col. Pallozzi objected because the interrogatory did not contain a timeframe, Plaintiff agrees to narrow the timeframe as being from October 1, 2013, through present, in accordance with Col. Pallozzi's counsel's suggestion. Col. Pallozzi also objected on the ground that it is "overly broad, unduly burdensome and seeks information that is not proportionate to the needs of the case." However, as the Amended Complaint sets forth, Plaintiff asserts that the Secretary has "impose[d] additional barriers and restrictions beyond those set |

| | | |
|---|---|---|
| | reasonably diligent search of MSP's records. Col. Pallozzi further states that MSP does not accept alternative means of payment for the HQL application fee other than credit or debit card. Col. Pallozzi further states that to the best of his knowledge all of the individuals who have attempted to pay for the HQL application fee using alternate means of payment, of which he is aware, ultimately submitted electronic applications along with payment by credit or debit card for the application fee. | forth in Section 5-117.1" including having a credit or debit card. |
| Interrogatory No. 15:<br><br>Identify all requests from citizens to waive or reimburse fees for HQL applications, fingerprinting, and/or Firearms Safety Course training requirements. | Col. Pallozzi objects to this interrogatory on the ground that it is overly broad, unduly burdensome and seeks information that is not proportionate to the needs of the case. Col. Pallozzi also objects on the ground that this interrogatory does not contain a timeframe. Without waiving his objections, Col. Pallozzi states that he will produce copies of written inquiries that the MSP received from citizens from October 1, 2013 to the present to waive or reimburse fees for HQL applications, fingerprinting, and/or Firearms Safety Course training requirements, if any, that can be located through a reasonably diligent search of MSP's records. | To the extent Col. Pallozzi objected because the interrogatory did not contain a timeframe, Plaintiff agrees to narrow the timeframe as being from October 1, 2013, through present, in accordance with Col. Pallozzi's counsel's suggestion. Col. Pallozzi also objected on the ground that the interrogatory seeks information that is "not proportionate to the needs of the case." However, as the Amended Complaint clearly states, Plaintiff asserts that despite a $50.00 legislative limit on any fees to cover the costs to administer the program, "the State Police impermissibly shifted the burden of paying for the required training to the applicant" as they similarly did with the fingerprinting requirement – a service which the Amended Complaint notes |

| | | |
|---|---|---|
| | | that the Defendant has chosen not to provide. |
| Interrogatory No. 16:<br><br>Identify applications submitted in person, on paper, or otherwise non-electronically, for each year from 2013 through 2017 and state the ultimate disposition of the applications. | MSP does not accept HQL applications in non-electronic form. Col. Pallozzi states that an applicant may apply in-person at MSP's Licensing Division located at 1111 Reisterstown Road, Pikesville, Maryland, 21208, by using a computer located there to prepare and submit the electronic application, but that MSP does not track the number of applications submitted in this manner. Col. Pallozzi further states that he is producing copies of written correspondence with individuals who attempted to submit paper copies and/or payment by personal check or money order at Bates range MSP001290-1411. Col. Pallozzi further states that to the best of his knowledge, all of the individuals who have attempted to submit paper copies of the HQL application and/or pay for the initial HQL application fee by personal check or money order, of which he is aware, ultimately submitted electronic applications. The disposition of these applications is as follows: 2 were approved in 2014; 1 was approved in 2015; 6 were approved in 2016 and 1 was denied in 2016 due to the applicant's criminal record; 2 were approved in 2017. | Col. Pallozzi indicated that he was producing copies of written correspondence with individuals who attempted to submit paper copies and/or payment by personal check or money order at Bates range MSP001290-1411, however, no documents labeled with that number or matching the description of the documents were produced. |

| | | |
|---|---|---|
| Interrogatory No. 17:<br><br>Identify all requests from citizens to waive the fingerprinting, Firearms Safety Course training, and/or "Live Fire" requirements. | Col. Pallozzi objects to this interrogatory on the ground that it is overly broad, unduly burdensome and seeks information that is not proportionate to the needs of the case. Col. Pallozzi also objects on the ground that this interrogatory does not contain a timeframe. Without waiving his objections, Col. Pallozzi states that he will produce copies of written inquiries that the MSP received from citizens from October 1, 2013 to the present to waive the fingerprinting, Firearms Safety Course training, and/or "Live Fire" requirements, if any, that can be located through a reasonably diligent search of MSP's records. | Col. Pallozzi objected to this interrogatory on the ground that it is "overly broad, unduly burdensome and seeks information that is not proportionate to the needs of the case." However, as the Amended Complaint makes clear, it is Atlantic Guns' position that the Secretary "is not empowered to impose additional barriers and restrictions beyond those set forth in Section 5-117.1," which would include the livescan fingerprinting requirement, live fire requirement, and a training certificate provided by a private instructor. To the extent Col. Pallozzi objected because the interrogatory did not contain a timeframe, Plaintiff agrees to narrow the timeframe as being from October 1, 2013, through present, in accordance with Col. Pallozzi's counsel' suggestion. |
| Interrogatory No. 18:<br><br>Identify any and every instance a Firearms Safety Course instructor failed to provide verification to support an HQL application. | Col. Pallozzi objects to this interrogatory on the ground that it is overly broad, unduly burdensome and seeks information that is not proportionate to the needs of the case. Col. Pallozzi also objects on the ground that this interrogatory does not contain a timeframe. Without waiving his objections, Col. Pallozzi states that the MSP does not have this information in its possession. | In several of the documents produced – spreadsheets that are neither Bates stamped nor labeled so as to prevent any identifying reference— Plaintiff observes instances where notations were made such as "instructor signed off training" or "training verified" to indicate that an HQL disapproval was subsequently overturned, seemingly due to a Firearm Safety Course that previously did not have verification. |

| | | |
|---|---|---|
| Interrogatory No. 21:<br><br>Identify all requests from citizens to define, explain, or clarify "Receive" or "Receipt" received by MSP. | Col. Pallozzi objects to this interrogatory on the ground that it is overly broad, unduly burdensome and seeks information that is not proportionate to the needs of the case. Col. Pallozzi also objects on the ground that this interrogatory does not contain a timeframe. Without waiving his objections, Col. Pallozzi states that he will produce copies of written inquiries that the MSP received from citizens from October 1, 2013 to the present to define, explain, or clarify "Receive" or "Receipt," if any, that can be located through a reasonably diligent search of its records. | As the Amended Complaint makes clear, it is Atlantic Guns' position that the usage of the terms "receive" in Section 5-117.1 and "receipt" in Section 5-144 are fatally vague and ambiguous. To the extent Col. Pallozzi objected because the interrogatory did not contain a timeframe, Plaintiff agrees to narrow the timeframe as being from October 1, 2013, through present, in accordance with Col. Pallozzi's counsel's suggestion. |
| Request for Documents No. 2:<br><br>All documents considered, relied upon, or reviewed in responding to interrogatories or preparing initial disclosures. | The documents responsive to this request that are in the possession of the MSP will be produced. | Col. Pallozzi identified documents in response to Interrogatories 1, 5 7, and 16. Col. Pallozzi, however, did not produce these documents. |

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court enter an Order compelling Defendant Col. Pallozzi to respond fully to the above-identified interrogatories and requests for production of documents served by Plaintiff.

/s/ John Parker Sweeney
John Parker Sweeney (Bar No. 08761)
T. Sky Woodward (Bar No. 10823)
James W. Porter, III (Bar No. 19416)
Marc A. Nardone (Bar No. 18811)
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036

Phone: (202) 719-8216
Facsimile: (202) 719-8316
JSweeney@bradley.com

*Attorneys for Plaintiff Atlantic Guns, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of January, 2018, a copy of Plaintiff Atlantic Guns, Inc.'s Motion to Compel was sent via electronic mail and U.S. Mail, postage prepaid to:

Jennifer L. Katz
Robert A. Scott
Assistant Attorneys General
Maryland Office of the Attorney General
200 Saint Paul Street, 20th floor
Baltimore, Maryland 21202
jkatz@oag.state.md.us
rscott@oag.state.md.us


/s/ John Parker Sweeney
John Parker Sweeney, No. 08761