## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MARYLAND SHALL ISSUE, INC., *et al.*,   \*

    *Plaintiffs,*       \*

    v.         \*      Civil Case No. 16-cv-3311-MJG

LAWRENCE HOGAN, *et al.*,     \*

    *Defendants.*      \*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## DEFENDANT WILLIAM PALLOZZI'S RESPONSE IN OPPOSITION
## TO PLAINTIFF ATLANTIC GUNS, INC.'S MOTION TO COMPEL

Defendant William M. Pallozzi, superintendent of the Maryland State Police, hereby responds to the motion to compel discovery filed by Plaintiff, Atlantic Guns, Inc. ("Atlantic Guns") and states as follows:

### BACKGROUND

Col. Pallozzi served his answers to plaintiff Atlantic Guns' interrogatories and responses to requests for production of documents on the date they were due, December 29, 2017, along with a large number of responsive documents sent on a compact disc. *See* Def.'s Ex.1, Col. Pallozzi's discovery responses. On January 30, 2018, more than 30 days after Col. Pallozzi served his discovery responses, Atlantic Guns sent two emails raising – for the first time – alleged deficiencies concerning four of the defendant's discovery responses. Later that same day, Atlantic Guns served Col. Pallozzi with a motion to compel, having given him no meaningful opportunity to meet and confer about the four alleged discovery deficiencies raised for the very first time in emails sent just a few hours

EXHIBIT
B

earlier and ten other alleged deficiencies raised for the very first time in the motion itself. *See* Def.'s Ex. 2, Emails dated Jan. 30, 2018.

Although the plaintiff served his motion to compel out of time under Local Rule 104.8 (providing for 30 days after receipt of discovery to serve a motion to compel), Col Pallozzi has met and conferred with Atlantic Guns and has made every effort to provide supplemental information and documents in an attempt to resolve the alleged deficiencies set forth in Atlantic Guns' motion. *See, e.g.*, Def.'s Ex. 3, Emails dated Feb. 9 & 20, 2018; Def.'s Ex. 4, Suppl. Answers to Interrogs. As described below, Col. Pallozzi is not withholding any responsive documents or information that is relevant to this lawsuit. The defendant has complied fully with his obligations under the discovery rules, and the plaintiff's motion to compel should be denied.

## ARGUMENT

This Court should summarily deny Atlantic Guns' motion to compel as untimely and for failing to provide Col Pallozzi any meaningful opportunity to meet and confer prior to service. As outlined above, Atlantic Guns waited more than 30 days to raise its claims that certain of Col. Pallozzi's discovery responses were purportedly deficient, and then filed its motion to compel later that same day. This does not comply with either the letter or the spirit of the local rules, which require prompt and meaningful discussions to resolve alleged deficiencies in a party's discovery responses. That did not take place in this case.

To the extent this Court chooses to consider the issues raised in Atlantic Guns' untimely motion, the motion should be denied because Col. Pallozzi has produced, or is in the process of producing, all relevant responsive material within the possession of the

2

Maryland State Police ("MSP").   The only disputes that remain involve requests for information that is irrelevant to this lawsuit, and that Col. Pallozzi has explained the MSP does not keep in the regular course of business, does not have a manageable way to collect, and would be unduly burdensome to produce.

Interrogatory No. 1:   Plaintiff sought "the number of handgun transfers in Maryland each year from 2012 through 2016." Col. Pallozzi responded that MSP does not possess the information responsive to the interrogatory but would attempt to collect it from the Maryland Automated Firearms Services System maintained by the Maryland Department of Public Safety.  Col. Pallozzi has since produced the requested information. Col. Pallozzi believes Atlantic Guns' concerns with respect to his response to this interrogatory have been resolved.

Interrogatory No. 2:   Plaintiff sought "the number of handgun transfers disapproved in Maryland each year from 2012 through 2016, including the reasons for disapproval and the number of disapprovals for each reason."  Col. Pallozzi has objected to this interrogatory under Rule 26(b)(1), because it seeks information that is not relevant to any party's claims or defenses, insofar as the interrogatory seeks information about the disapproval of regulated firearm transfers that have no relation to the HQL requirement that is the subject of this lawsuit.  Col. Pallozzi has produced information specific to the HQL requirement, and without waiving his relevancy objection, has produced documents kept in the regular course of business that log applications to transfer a regulated firearm that have been disapproved by MSP and note the reason for each disapproval ("firearm transfer disapproval logs").

3

In its motion to compel, Atlantic Guns has not offered any argument that the data sought through this interrogatory is relevant to any of the party's claims or defenses, and thus has waived any such argument. Moreover, the basis for the alleged deficiency appears to be that Atlantic Guns had not reviewed the documents identified in the interrogatory response to ensure they were responsive to the request. Upon review and after the parties met and conferred following service of this motion, the plaintiff has clarified that it seeks follow-up information specific to the 2013 firearm transfer disapproval log. Col. Pallozzi has reiterated his relevancy objection, because these transfer applications do not concern the HQL requirement that is the subject of this lawsuit. Without waiving the objection, Col. Pallozzi has produced the clarifying information sought by the plaintiff that was not unduly burdensome to produce. *See* Def.'s Ex. 3. Accordingly, Col. Pallozzi believes Atlantic Guns' concerns with respect to his response to this interrogatory have been resolved.

**Interrogatory No. 4:** Plaintiff sought "the number of HQL applications denied each year from 2013 through 2017, including the reasons for any such denial . . . ." In response, Col. Pallozzi produced documents kept in the regular course of business that log the disapproved HQL applications and note the reason for each disapproval ("HQL disapproval logs"). The basis for the alleged deficiency appears to be that Atlantic Guns had not reviewed the documents identified in the interrogatory response to ensure they were responsive to the request. Upon review and after the parties met and conferred following service of this motion, the plaintiff has clarified that it seeks follow-up information specific to the 2013 HQL disapproval log. Col. Pallozzi has provided the information responsive

4

to the plaintiff's follow-up request.  Col. Pallozzi believes Atlantic Guns' concerns with respect to his response to this interrogatory have been resolved.

**Interrogatory No. 5:** Plaintiff sought "the number of HQL applications not completed each year from 2013 through 2017," and further clarified that it sought "the number of applications which were started in the MSP system . . . but were never submitted as final to the MSP."  Col. Pallozzi has objected to this interrogatory on the ground that it seeks information that is not relevant to any party's claims or defenses under Rule 26(b)(1), and because it is overly broad and unduly burdensome.  Col. Pallozzi has explained that although this information is not currently tracked by MSP, it might be possible to capture the raw number of applications that have been initiated through MSP's website and the raw number of applications that have been submitted as final.  Col. Pallozzi has further explained that to the extent MSP is able to produce this raw number, it is not reliable or relevant for a number of reasons, including that  this raw number would not indicate (1) whether an individual who initiated an application that has not yet been submitted as final intends to submit the application in the future, (2) whether an individual began one type of application (a standard application, a training-exempt application, or a permit-exempt application) and then began another type of application, thus never submitting the initial application, (3) whether an individual had initiated multiple accounts because of a forgotten username or password or for some other reason, or (4) whether an individual who initiated an application ever intended to submit it; for example, MSP personnel set up fabricated accounts to test the system, and some qualified handgun instructors set up fabricated accounts during training sessions to demonstrate to potential applicants how to

5

initiate an application.  Moreover, this raw data would not indicate why an application was initiate but not submitted as final.  *See* Def.'s Ex. 5, D. Armstrong Decl.  Accordingly, the raw data is not relevant to Plaintiffs' claims in this case that the HQL application process is burdensome.  Plaintiffs' Motion should be denied with respect to Interrogatory No. 5.

**Interrogatory No. 7:**  Plaintiff sought "the shortest, longest, and average amount of time to process an HQL application."  Col. Pallozzi stated several objections to this interrogatory.  Without waiving those objections, Col. Pallozzi responded that, based on the personal knowledge of MSP personnel who process HQL applications, MSP has processed HQL applications on the same day they were received by MSP and that MSP has complied with its statutory obligation to process the applications within 30 days.  Col. Pallozzi further stated that MSP does not track the average amount of time it takes to process HQL applications and explained that the processing time of any given application can vary based on myriad factors.  The alleged deficiency stated by Atlantic Guns appears to be its disbelief that MSP does not possess information related to the average processing time.  Col. Pallozzi has provided a supplemental discovery response explaining in detail that MSP does not track the time it takes to process an application from the date it was submitted to the date it was approved or disapproved, nor does MSP track the average amount of time it takes to process HQL applications.  Col. Pallozzi further explained that any attempt to calculate the average time would be unduly burdensome because it would require a manual, individual examination of each of the more than 90,000 applications submitted since the HQL requirement's inception.  Further, in support of his relevancy

6

objection, Col. Pallozzi explained that the average time to process an HQL is not relevant to any party's claim or defense in this case, because the processing of each HQL application is subject to the myriad factors identified in the initial response. *See* Def.'s Ex. 4, Suppl. Answer to Interrog. 7. Col. Pallozzi believes Atlantic Guns' concerns with respect to his response to this interrogatory have been resolved.

**Interrogatories 6, 11, 15, 16, 17:** The parties have agreed that Col. Pallozzi has produced responsive documents identified in his responses to these interrogatories subject to the Court's entry of the parties' stipulated confidentiality order. *See* Def.'s Ex. 3.

**Interrogatory No. 18:** Plaintiff asked Col. Pallozzi to identify "any and every instance a Firearms Safety Course instructor failed to provide verification to support an HQL application." Without waiving objections, Col. Pallozzi stated that MSP does not have this information in its possession. The apparent basis for Atlantic Guns' alleged deficiency arises from a misreading of a document Col. Pallozzi produced in discovery in which MSP tracks applications that have been submitted as final but contain certain deficiencies. These deficiencies can be related to the HQL training requirement, and some notations on the document refer to "instructor signed off training" or "training verified" to indicate when the deficiency was resolved. These notations, however, do not indicate that "a Firearms Safety Course instructor failed to provide verification to support an HQL application." On the contrary, the notations indicate that the training has been verified and, unless the applicant is prohibited from obtaining an HQL for other reasons, the application has been approved. Moreover, as Col. Pallozzi has explained, the document in question does not indicate, and MSP does not track, the cause of the deficiency, which can arise for

7

a number of reasons including that the applicant had not submitted the proper instructor verification code in an application, the applicant had not yet received the required training, the applicant is exempt from training but completed the standard application form, or that a Firearms Safety Course instructor had not yet verified that the applicant had undergone the required training at the time MSP began to process the application. *See* Def.'s Ex. 3. As stated in Col. Pallozzi's initial answer, MSP does not possess the information sought through the interrogatory. Col. Pallozzi believes Atlantic Guns' concerns with respect to his response to this interrogatory have been resolved.

**Request for Production of Documents 2:** Atlantic Guns requested all documents considered, relied upon, or reviewed in responding to interrogatories or preparing initial disclosures. All of the documents responsive to this request have been produced.

**CONCLUSION**

For the reasons discussed above, plaintiff Atlantic Guns' motion to compel should

be denied.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

_/s/ Jennifer L. Katz_____
JENNIFER L. KATZ (Fed. Bar # 28973)
ROBERT A. SCOTT (Fed. Bar # 24613)
Assistant Attorneys General
200 St. Paul Place
Baltimore, Maryland  21202
jkatz@oag.state.md.us
(410) 576-7005; (410) 576-6955 (fax)

Dated:  March 20, 2018                    Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 20th day of March, 2018, the foregoing document was served by electronic mail on

>       John Parker Sweeney, Esq. (JSweeney@bradley.com)
>       T. Sky Woodward, Esq. (SWoodward@bradley.com)
>       Bradley Arant Boult Cummings LLP
>       1615 L Street N.W., Suite 1350
>       Washington, D.C. 20036
>
>       Cary J. Hansel (cary@hansellaw.com)
>       2514 N. Charles Street
>       Baltimore, MD 21218

>                                     _/s/ Jennifer L. Katz_____
>                                     Jennifer L. Katz

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MARYLAND SHALL ISSUE, INC., *et al.*,   *

    *Plaintiffs,*   *

    v.   *        Civil Case No. 16-cv-3311-MJG

LAWRENCE HOGAN, *et al.*,   *

    *Defendants.*   *

*   *   *   *   *   *   *   *   *   *   *   *   *   *

### DEFENDANT WILLIAM M. PALLOZZI'S ANSWERS TO PLAINTIFF ATLANTIC GUNS, INC.'S FIRST SET OF INTERROGATORIES

Defendant, William M. Pallozzi, by his attorneys, hereby responds as follows to Plaintiff Atlantic Guns, Inc.'s First Set of Interrogatories served upon him and states as follows:

A.    The word usage and sentence structure used in these answers is that of the attorneys who in fact prepared these answers and the language does not purport to be the exact language of the executing party.

B.    The Interrogatories have been interpreted and answered in accordance with the Federal Rules of Civil Procedure.

C.    Defendant Col. Pallozzi expressly reserves the right to supplement these answers at a later date should it become necessary to do so.

### GENERAL OBJECTIONS

1.    Col. Pallozzi objects to every Interrogatory to the extent it seeks information and/or documents protected by the attorney-client and/or work product privileges.

2.      Col. Pallozzi objects to the extent that the Interrogatories, including subparts, exceed the number permitted under the Federal Rules of Civil Procedure.

3.      Col. Pallozzi objects to the extent the Interrogatories seek information in possession of parties other than Col. Pallozzi or the Maryland State Police ("MSP"). These answers are based solely on the knowledge and information in the possession of Col. Pallozzi and MSP, and not on knowledge or information possessed by any other person or entity.

4.      Subject to and without waiving the foregoing general objections, Col. Pallozzi responds to the Interrogatories as follows:

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:**      Identify the number of handgun transfers in Maryland each year from 2012 through 2016.

**ANSWER:**   Col. Pallozzi states that MSP does not maintain records of the number of handgun transfers each year in Maryland.  Rather, MSP maintains records of the number of applications made to transfer regulated firearms in Maryland each year, and pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Col. Pallozzi is producing business from which this information can be derived at Bates range MSP000578-1089. Col. Pallozzi further states that MSP has requested data from the Maryland Automated Firearms Services System, maintained by the Maryland Department of Public Safety and Correctional Services, which tracks the number of handgun transfers that are not disapproved in

2

Maryland each year, and Col. Pallozzi will supplement this answer pursuant to Rule 26(e) of the Federal Rules of Civil Procedure when that data is received.

**INTERROGATORY NO. 2:**     Identify the number of handgun transfers disapproved in Maryland each year from 2012 through 2016, including the reasons for disapproval and the number of disapprovals for each reason.

**ANSWER:**   Col. Pallozzi objects to this interrogatory on the ground it is vague and ambiguous and seeks discovery of matters that are not relevant to any party's claims or defenses under Rule 26(b)(1), insofar as it seeks information about disapproval of regulated firearm transfers that have no relation to the HQL requirement that is the subject of this lawsuit.  Without waiving these objections, Col. Pallozzi states that MSP does not maintain records of the number of handgun transfers in Maryland that are disapproved each year.   Rather, MSP maintains records of the number of applications made to transfer regulated firearms that are disapproved, and pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Col. Pallozzi is producing business from which this information can be derived at Bates range MSP1090-1175.  Col. Pallozzi further states that the number of applications for regulated firearm transfers that were disapproved due to the applicant not having an HQL from 2012 through 2016 are as follows:  40 in 2014, 49 in 2015, and 7 in 2016.

**INTERROGATORY NO. 3:**     Identify the number of HQLs issued each year from 2013 through 2017.

**ANSWER:**  Pursuant to Rule 33(d) of the Federal Rule of Civil Procedure, Col. Pallozzi will produce business records from which the information sought by this interrogatory can be derived at Bates range MSP000578-1089.

**INTERROGATORY NO. 4:**     Identify the number of HQL applications denied each year from 2013 through 2017, including the reasons for any such denial, including the instances in which a person was denied an HQL solely because of information obtained from fingerprints.

**ANSWER:**  Pursuant to Rule 33(d) of the Federal Rule of Civil Procedure, Col. Pallozzi will produce business records from which the information sought by this interrogatory can be derived at Bates range MSP000578-1089, 1090-1167, 1176-1217.

**INTERROGATORY NO. 5:**     Identify the number of HQL applications not completed each year from 2013 through 2017.

**ANSWER:**  Col. Pallozzi objects to this interrogatory on the ground that the term "not completed" is undefined, vague and ambiguous.  Without waiving these objections, Col. Pallozzi states that MSP does not have this information within its possession.

**INTERROGATORY NO. 6:**     Identify  all  citizen  inquiries  into  the burden/difficulty in meeting HQL requirements.

**ANSWER:**  Col. Pallozzi objects to this interrogatory on the ground that it is overly broad, unduly burdensome and seeks information that is not proportionate to the needs of the case.  Col. Pallozzi also objects on the ground that this interrogatory does not contain a timeframe.  Without waiving his objections, Col. Pallozzi states that he will produce copies of written inquiries that the MSP received from citizens relating to the

4

burden/difficulty in meeting HQL requirements from October 1, 2013 to the present, if any, that can be located through a reasonably diligent search of MSP's records.

**INTERROGATORY NO. 7:** Identify the shortest, longest, and average amount of time to process an HQL application.

**ANSWER:**   Col. Pallozzi objects to this interrogatory on the ground that it does not contain a timeframe and is therefore overly broad and unduly burdensome.   Col. Pallozzi further objects on the ground that this interrogatory is vague and ambiguous. Without waiving his objections, Col. Pallozzi states that the amount of time it takes to process an HQL application is fact-dependent and varies based on a number of factors that can be associated with any given application, including but not limited to: an applicant providing the incorrect authorization code to a fingerprint vendor; awaiting transmission of fingerprints from the vendor to the Department of Public Safety and Correctional Services; awaiting an applicant's submission of certification of prior training for a training-exempt HQL application; the lack of a disposition listed on an applicant's criminal history for a potential disqualifying charge, and any follow-up investigation to determine that disposition; the number of applications received on a particular day; an applicant providing incorrect answers on an application; awaiting verification from a qualified handgun instructor that the applicant completed the necessary training; an applicant's incorrect submission of a qualified handgun instructor's verification code; among other factors.

Col. Pallozzi further states that HQL applications have been processed the same business day that they are received, and that MSP has complied with the statutory provision that the processing period not exceed 30 days.

5

**INTERROGATORY NO. 8:**     Identify the shortest, longest, and average amount of time to notify an applicant of HQL approval.

**ANSWER:**  Col. Pallozzi objects to this interrogatory on the ground that it does not contain a timeframe and is therefore overly broad and unduly burdensome.  Col. Pallozzi further objects on the ground that this interrogatory is vague and ambiguous. Without waiving his objections, Col. Pallozzi states that, generally, once an application is approved, the HQL is printed within 24 hours of the approval, and the HQL is placed in the mail to the applicant within 24 hours of printing.

**INTERROGATORY NO. 9:**     Identify the cost of processing each HQL application.

**ANSWER:**  Col. Pallozzi objects on the ground that this interrogatory does not contain a timeframe.  Without waiving his objection, Col. Pallozzi states that the current cost of processing each HQL application is at least $51.34.   Col. Pallozzi further states that this cost accounts for the salaries, benefits, and overtime costs to employ the civilian and sworn personnel who process HQL applications, and the materials required to create an HQL, including the cards, printers, ink, and laminate. Col. Pallozzi further states that this cost figure does not take into account the salary and benefits of MSP Command staff who routinely deal with HQL issues; the computers and computer software used to process the applications; equipment for sworn personnel, including vehicles, fuel, and other costs; and infrastructure costs related to MSP's Licensing Division, including building expenses, electricity, and telephone service, among other expenses.  Factoring in these other costs, the cost of processing each HQL exceeds $51.34

6

**INTERROGATORY NO. 10:** Identify all individuals involved in the MSP decision to set the HQL application fee at $50.00, and any documents related to the $50.00 application fee requirement, and state the reasons for that decision.

**ANSWER:** Col. Pallozzi objects to this interrogatory to the extent it seeks information protected by the deliberate process privilege or attorney-client privilege. Without waiving those objections, Col. Pallozzi identifies former Director of MSP's Planning and Research Division, Thomas Williams; former Assistant Commander of MSP's Licensing Division, Lt. John Cook; and former MSP Fiscal Impact Analyst, Sgt. Graham Lange. Col. Pallozzi further states that the decision to set the HQL application fee at $50.00 was based on a fiscal analysis that was performed to prepare the Fiscal Note Summary for the Firearm Safety Act, showing that the estimated cost to process an HQL application was in excess of $50.00 and is being produced at Bates range MSP001228-1289.

**INTERROGATORY NO. 11:** Identify all requests from citizens to accept alternative means of payment for the HQL application fee other than credit or debit card, and whether MSP accepted alternative means of payment, such as cash, check, or money order.

**ANSWER:** Col. Pallozzi objects to this interrogatory on the ground that it is overly broad, unduly burdensome and seeks information that is not proportionate to the needs of the case. Col. Pallozzi also objects on the ground that this interrogatory does not contain a timeframe. Without waiving his objections, Col. Pallozzi states that he will produce copies of written inquiries that the MSP received from citizens from October 1,

7

2013 to the present to accept alternative means of payment for the HQL application fee other than credit or debit card that can be located through a reasonably diligent search of MSP's records. Col. Pallozzi further states that MSP does not accept alternative means of payment for the HQL application fee other than credit or debit card. Col. Pallozzi further states that to the best of his knowledge all of the individuals who have attempted to pay for the HQL application fee using alternate means of payment, of which he is aware, ultimately submitted electronic applications along with payment by credit or debit card for the application fee.

**INTERROGATORY NO. 12:** Identify all requests from citizens to waive the HQL's Maryland driver's license identification requirement, and whether MSP accepted alternative forms of identification, such as a Maryland non-driver identification card.

**ANSWER:** Col. Pallozzi objects to this interrogatory on the ground that the term "HQL's Maryland driver's license identification requirement" is undefined, vague and ambiguous. Without waiving his objections, Col. Pallozzi states that there is no statutory requirement that an individual possess a Maryland driver's license to obtain an HQL, and that COMAR 29.03.01.28 requires that the HQL application shall include the applicant's "driver's license or photographic identification soundex number."

**INTERROGATORY NO. 13:** Identify the location, availability (in hours), and cost of all Law Enforcement fingerprinting services, and state which of these are open to members of the public to use for an HQL application.

**ANSWER:** The MSP does not have this information in its possession, but does provide a link on its website to the Maryland Department of Public Safety & Correctional

8

Services' webpage that lists fingerprinting service providers throughout the State. *See* http://mdsp.maryland.gov/Organization/Pages/CriminalInvestigationBureau/LicensingDi vision/Fingerprinting.aspx.

**INTERROGATORY NO. 14:** Identify how MSP uses and/or disseminates fingerprints received with HQL applications, and whether, when, and how the fingerprint data is destroyed.

**ANSWER:** Col. Pallozzi objects to this interrogatory on the ground that the term "fingerprint data" is undefined, vague and ambiguous. Without waiving his objections, Col. Pallozzi states that the MSP does not receive or disseminate fingerprints in connection with HQL applications. Rather, MSP receives the State or federal identification number that corresponds with an individual's fingerprints and uses that data to conduct a background investigation prior to issuance of an HQL. MSP also generates regular reports using the State or federal identification numbers that correspond with licensees' fingerprints to determine whether a licensee is subsequently convicted of a disqualifying offense after obtaining an HQL.

**INTERROGATORY NO. 15:** Identify all requests from citizens to waive or reimburse fees for HQL applications, fingerprinting, and/or Firearms Safety Course training requirements.

**ANSWER:** Col. Pallozzi objects to this interrogatory on the ground that it is overly broad, unduly burdensome and seeks information that is not proportionate to the needs of the case. Col. Pallozzi also objects on the ground that this interrogatory does not contain a timeframe. Without waiving his objections, Col. Pallozzi states that he will

9

produce copies of written inquiries that the MSP received from citizens from October 1, 2013 to the present to waive or reimburse fees for HQL applications, fingerprinting, and/or Firearms Safety Course training requirements, if any, that can be located through a reasonably diligent search of MSP's records.

**INTERROGATORY NO. 16:** Identify applications submitted in person, on paper, or otherwise non-electronically, for each year from 2013 through 2017 and state the ultimate disposition of the applications.

**ANSWER:**   MSP does not accept HQL applications in non-electronic form.  Col. Pallozzi states that an applicant may apply in-person at MSP's Licensing Division located at 1111 Reisterstown Road, Pikesville, Maryland, 21208, by using a computer located there to prepare and submit the electronic application, but that MSP does not track the number of applications submitted in this manner.  Col. Pallozzi further states that he is producing copies of written correspondence with individuals who attempted to submit paper copies and/or payment by personal check or money order at Bates range MSP001290-1411.  Col. Pallozzi further states that to the best of his knowledge, all of the individuals who have attempted to submit paper copies of the HQL application and/or pay for the initial HQL application fee by personal check or money order, of which he is aware, ultimately submitted electronic applications.  The disposition of these applications is as follows: 2 were approved in 2014; 1 was approved in 2015; 6 were approved in 2016 and 1 was denied in 2016 due to the applicant's criminal record; 2 were approved in 2017.

**INTERROGATORY NO. 17:** Identify all requests from citizens to waive the fingerprinting, Firearms Safety Course training, and/or "Live Fire" requirements.

**ANSWER:** Col. Pallozzi objects to this interrogatory on the ground that it is overly broad, unduly burdensome and seeks information that is not proportionate to the needs of the case. Col. Pallozzi also objects on the ground that this interrogatory does not contain a timeframe. Without waiving his objections, Col. Pallozzi states that he will produce copies of written inquiries that the MSP received from citizens from October 1, 2013 to the present to waive the fingerprinting, Firearms Safety Course training, and/or "Live Fire" requirements, if any, that can be located through a reasonably diligent search of MSP's records.

**INTERROGATORY NO. 18:** Identify any and every instance a Firearms Safety Course instructor failed to provide verification to support an HQL application.

**ANSWER:** Col. Pallozzi objects to this interrogatory on the ground that it is overly broad, unduly burdensome and seeks information that is not proportionate to the needs of the case. Col. Pallozzi also objects on the ground that this interrogatory does not contain a timeframe. Without waiving his objections, Col. Pallozzi states that the MSP does not have this information in its possession.

**INTERROGATORY NO. 19:** Identify all individuals involved in the MSP decision to require "Live Fire" training and any documents related to the "Live Fire" requirement, and state the reasons for that decision.

**ANSWER:** Col. Pallozzi objects to the extent this interrogatory to the extent it seeks information protected by the deliberative process privilege or attorney-client privilege. Without waiving these objections, Col. Pallozzi identifies former Director of MSP's Planning and Research Division, Thomas Williams; and former Assistant

11

Commander of MSP's Licensing Division, Lt. John Cook. Col. Pallozzi further states that the decision to require "Live Fire" training arose from the statutory requirement that applicants receive firearms safety training that includes "a firearms orientation component that demonstrates the person's safe operation and handling of a firearm," such that completing one round of live fire is a demonstration of the applicant's basic orientation in the operation of a firearm.

**INTERROGATORY NO. 20:** Identify any public safety advancement identified by MSP obtained through each of the HQL-specific requirements of fingerprinting, Firearms Safety Course training, "Live Fire" requirement, and Maryland driver's license identification requirement.

**ANSWER:**   Col. Pallozzi objects to this interrogatory on the ground that the term "public safety advancement" is undefined, vague and ambiguous.  Col. Pallozzi further objects because there is no requirement that an applicant have a Maryland driver's license to obtain an HQL.   In addition, Col. Pallozzi objects to this interrogatory because "contention interrogatories are more appropriate after a substantial amount of discovery has been conducted." *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 110 (D.N.J. 1990); *see also In re Convergent Techs. Secs. Litig.*, 108 F.R.D. 328, 336 (N.D. Cal. 1985) ("the wisest general policy is to defer propounding and answering contention interrogatories until near the end of the discovery period."). Discovery (fact and expert) is not complete, and therefore, Col. Pallozzi reserves the right to rely on any legal theories, facts, documents, testimony, or evidence which may come to light during fact and expert discovery.

12

Subject to and without waiving his objections, Col. Pallozzi states that the HQL-specific requirements of fingerprinting, Firearms Safety Course training, and "Live Fire" promote public safety by, among other things, reducing the likelihood that an individual prohibited from possessing a firearm will gain access to handguns; enhancing and promoting safe handling, operation, and storage of handguns and other firearms owned or possessed by those who have undergone the training and live fire requirements; and thereby reducing the incidence of accidental and/or intentional injury and death caused by improper use of handguns and other firearms and reducing the use of firearms in criminal activity.

Col. Pallozzi further states that Maryland's requirement that HQL applicants obtain a set of fingerprints for purposes of conducting enhanced background checks substantially serves the State's interest in promoting public safety by making it more difficult for a prohibited person to obtain access to a firearm. *See Heller v. District of Columbia*, 801 F.3d 264, 276-77 (D.C. Cir. 2015) ("*Heller III*") (holding the District could reasonably conclude that the fingerprint requirement would "advance public safety by preventing at least some ineligible individuals from obtaining weapons"). Robust background checks animate the State's policy of keeping firearms out of the possession of felons, a "presumptively lawful" and longstanding firearms restriction. *District of Columbia v. Heller*, 554 U.S. 570, 626-27 & n.26 (2008) ("*Heller I*"). Further, "background checks using fingerprints are more reliable than background checks conducted without fingerprints, which are more susceptible to fraud." *Heller III*, 801 F.3d at 276. An investigation conducted by the U.S. General Accounting Office ("GAO") revealed that undercover agents using counterfeit driver's licenses succeeded, without exception, in

13

purchasing firearms from federally-licensed firearms dealers. *Id.* The report "concluded that federal background checks conducted by the firearm dealers [without fingerprinting] 'cannot ensure that the prospective purchaser is not a felon or other prohibited person whose receipt and possession of a firearm would be unlawful.'" *Id.* (quoting GAO–01–427, Firearms Purchased from Federal Firearm Licensees Using Bogus Identification 2 (2001)).

The State's interest in promoting public safety is particularly acute when it comes to keeping handguns out of the hands of criminals. Handguns are the firearms most frequently used by criminals in Maryland. *Woollard v. Gallagher*, 712 F.3d 865, 877 (4th Cir.), *cert. denied*, 134 S. Ct. 422 (2013). According to data collected by the FBI, there were 430 murders in Maryland in 2016, 328 of which involved a firearm. Of those 328, 309 involved handguns. Federal Bureau of Investigation, 2016 Crime in the United States, Table 12, Murder by State, Types of Weapons, 2016, *available at* https://ucr.fbi.gov/crime-in-the-u.s/2016/crime-in-the-u.s.-2016/tables/table-12 (last visited December 19, 2017). Thus, murders with handguns comprised more than 94% of murders with firearms and more than 71% of all murders in Maryland. *Id.*

Further, empirical studies of the effects of laws that require individuals to obtain a license to purchase a firearm and pass a background check based on fingerprints have found that these laws are associated with a reduction in the flow of guns to criminals.[1] A study

---

[1] Daniel Webster *et al.*, *Preventing the Diversion of Guns to Criminals through Effective Firearm Sales Laws*, in *Reducing Gun Violence in America: Informing Policy with Evidence and Analysis* 109-22 (Webster, *et al.*, eds., Johns Hopkins Univ. Press 2013).

of Connecticut's law – which includes requirements for enhanced background checks with fingerprints and completion of an approved handgun safety course, Conn. Gen. Stat. § 29-36(f), (g) – found that the licensing requirement to purchase a firearm was associated with a statistically significant reduction in Connecticut's firearm homicide rates during the first decade that the law was in place, with no similar reduction in non-firearm homicides.[2]

Similarly supportive is the experience of Missouri, which went in the opposite direction after it repealed its handgun licensing requirement. After repeal, firearm-related homicide rates increased abruptly, with no similar increase in surrounding states or the nation, and the state experienced an increase in the percentage of crime guns recovered by police that had been originally sold by in-state retailers.[3] Studies of Missouri's and Connecticut's experiences also have found the presence of firearm licensing laws to be associated with lower rates of firearm-related suicides.[4]

Further, common sense supports the General Assembly's conclusion that Maryland's requirement that HQL applicants receive training in the proper and safe operation, handling, and storage of a handgun, will lead to a decrease in accidental deaths by firearm. Handguns are necessarily and purposely dangerous, and requiring minimal training in how to avoid unintended harm from their ownership promotes public safety.

---

[2] Kara E. Rudolph, *et al.*, *Association Between Connecticut's Permit-to-Purchase Handgun Law and Homicides*, 105 Am. J. of Public Health 8, e49 (Aug. 2015).

[3] Daniel Webster, *et al.*, *Effects of the Repeal of Missouri's Handgun Purchaser Licensing Law on Homicides*, 91 J. of Urban Health 2, 293 (2014).

[4] Cassandra K. Crifasi, *et al.*, *Effects of Changes in Permit-to-Purchase Handgun Laws in Connecticut and Missouri on Suicide Rates*, 79 Preventive medicine 43 (2015).

15

*See Heller III*, 801 F.3d at 278-79 (holding District's mandatory firearms safety training was constitutional based on the District's presentation of "substantial evidence from which it could conclude that training in the safe use of firearms promotes public safety by reducing accidents involving firearms"). Indeed, in Maryland, law enforcement officers are required to receive extensive training on the operation, handling, and storage of handguns, including in the home. *See* COMAR 12.04.02.03 − .05; 12.04.02.03.10(D). These longstanding training requirements strongly support the utility of the relatively brief, four hours of training that civilian handgun purchasers must receive. *See Heller III*, 801 F.3d at 279 & n.3 (relying on "anecdotal evidence showing the adoption of training requirements 'in most every law enforcement profession that requires the carrying of a firearm' and a professional consensus in favor of safety training"). Given the popularity of handguns for in-home self-defense, *see Heller I*, 554 U.S. at 628, and the potential dangers that arise when handguns are improperly stored or handled in the home, Maryland's requirement of a four-hour training course bolsters the State's goal of reducing firearm-related deaths.

Col. Pallozzi further states that the public safety benefits of the HQL requirements are the subject of testimony supporting the Firearms Safety Act before the General Assembly, and are discussed in the academic journal articles and other documents that are being produced in discovery.

**INTERROGATORY NO. 21:** Identify all requests from citizens to define, explain, or clarify "Receive" or "Receipt" received by MSP.

**ANSWER:**  Col. Pallozzi objects to this interrogatory on the ground that it is overly broad, unduly burdensome and seeks information that is not proportionate to the needs of the case.  Col. Pallozzi also objects on the ground that this interrogatory does not contain a timeframe.  Without waiving his objections, Col. Pallozzi states that he will produce copies of written inquiries that the MSP received from citizens from October 1, 2013 to the present to define, explain, or clarify "Receive" or "Receipt," if any, that can be located through a reasonably diligent search of its records.

**INTERROGATORY NO. 22:** Identify all arrests and disposition of any charges for an illegal "Receipt."

**ANSWER:**  Col. Pallozzi objects to this interrogatory on the ground that it is vague, overly broad, unduly burdensome, and seeks information that is not relevant to any party's claim or defense in this action, nor proportionate to the needs of the case.  Without waiving these objections, Col. Pallozzi states that he is not aware of any arrest or disposition of any charges arising solely from a violation of the law requiring that an individual, not otherwise prohibited from possessing a firearm, obtain an HQL prior to receiving or being in receipt of a handgun.

**INTERROGATORY NO. 23:** Identify all arrests and disposition of any charges for false statements on an HQL application or Form 77R, or for "straw purchase" of a handgun.

**ANSWER:** Col. Pallozzi objects to this interrogatory on the ground that it is overly broad, unduly burdensome, contains no timeframe, and seeks information that is not relevant to any party's claim or defense in this action, nor proportionate to the needs of the

case. Without waiving these objections, Col. Pallozzi states that pursuant to Rule 33(d) of the Federal Rule of Civil Procedure, he will produce business records from which the information sought by this interrogatory can be derived at Bates range MSP001437-1492.

**INTERROGATORY NO. 24:** Identify any deterrent effect of the HQL fingerprinting requirement to an individual attempting to make a "straw purchase" of a handgun identified by MSP.

**ANSWER:** Col. Pallozzi objects to this interrogatory as unduly burdensome to the extent that it seeks the premature disclosure of expert witness materials in violation of the Court's scheduling order. In addition, Col. Pallozzi objects to this interrogatory because "contention interrogatories are more appropriate after a substantial amount of discovery has been conducted." *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 110 (D.N.J. 1990); *see also In re Convergent Techs. Secs. Litig.*, 108 F.R.D. 328, 336 (N.D. Cal. 1985) ("the wisest general policy is to defer propounding and answering contention interrogatories until near the end of the discovery period."). Discovery (fact and expert) is not complete, and therefore, Col. Pallozzi reserves the right to rely on any legal theories, facts, documents, testimony, or evidence which may come to light during fact and expert discovery.

Subject to and without waiving these objections, Col. Pallozzi states that evidence and experience of law enforcement personnel demonstrates that by requiring potential handgun purchasers to undergo a fingerprint background check they are less willing to act as a straw purchaser, thus reducing the incidence of straw purchases. Col. Pallozzi further

18

identifies testimony supporting the Firearms Safety Act before the General Assembly, and the academic journal articles and other documents that are being produced in discovery.

**INTERROGATORY NO. 25:** Identify each and every reason and fact relied upon by you to support the utility of each of the HQL requirements in promoting public safety and reducing the negative effects of firearms violence.

**ANSWER:** Col. Pallozzi objects to this interrogatory as unduly burdensome to the extent that it seeks the premature disclosure of expert witness materials in violation of the Court's scheduling order. In addition, Col. Pallozzi objects to this interrogatory because "contention interrogatories are more appropriate after a substantial amount of discovery has been conducted." *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 110 (D.N.J. 1990); *see also In re Convergent Techs. Secs. Litig.*, 108 F.R.D. 328, 336 (N.D. Cal. 1985) ("the wisest general policy is to defer propounding and answering contention interrogatories until near the end of the discovery period."). Discovery (fact and expert) is not complete, and therefore, Col. Pallozzi reserves the right to rely on any legal theories, facts, documents, testimony, or evidence which may come to light during fact and expert discovery.

Subject to and without waiving these objections, Col. Pallozzi refers to his answers to Interrogatories 20 and 24. Col. Pallozzi further identifies the testimony supporting the Firearms Safety Act before the General Assembly, and the academic journal articles and other documents that are being produced in discovery.

BRIAN E. FROSH
Attorney General


/s/ Jennifer L. Katz
JENNIFER L. KATZ (Fed. Bar # 28973)
ROBERT A. SCOTT (Fed. Bar # 24613)
Assistant Attorney General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-7005 (tel.); 410-576-6955 (fax)
jkatz@oag.state.md.us

Dated: December 29, 2017                    Attorneys for Defendants

## **VERIFICATION**

I, Col. William M. Pallozzi hereby execute these answers to interrogatories in my official capacity as Superintendent of the Maryland State Police.  Some of the information set forth in these answers was collected by others and such information is not necessarily within my personal knowledge.  However, in my official capacity, I solemnly affirm under the penalties of perjury that the foregoing Answers to Interrogatories are true to the best of my knowledge, information and belief.


<u>  12/29/17  </u>                    <u>                              </u>
Date                                              Signature

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 29th day of December, 2017, a copy of the

foregoing Defendant's Responses to Interrogatories was sent by first class mail, postage

pre-paid, and e-mail to:

> Cary J. Hansel (cary@hansellaw.com)
> 2514 N. Charles Street
> Baltimore, MD 21218

> John Parker Sweeney, Esq. (JSweeney@bradley.com)
> T. Sky Woodward, Esq. (SWoodward@bradley.com)
> Bradley Arant Boult Cummings LLP
> 1615 L Street N.W., Suite 1350
> Washington, D.C. 20036

_____
Robert A. Scott

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARYLAND SHALL ISSUE, INC., *et al.*,   *

    *Plaintiffs,*               *

    v.                         *        Civil Case No. 16-cv-3311-MJG

LAWRENCE HOGAN, *et al.*,      *

    *Defendants.*         *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**DEFENDANT WILLIAM M. PALLOZZI'S RESPONSES
TO PLAINTIFF ATLANTIC GUNS, INC.'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS**

Defendant, William M. Pallozzi ("Col. Pallozzi"), by his attorneys, hereby responds as follows to the Request for Production of Documents served upon him by Plaintiff Atlantic Guns, Inc., and states as follows:

A.      The word usage and sentence structure used in these Responses is that of the attorneys who in fact prepared these Responses and the language does not purport to be the exact language of the executing party.

B.      The Requests for Production of Documents (the "Requests") have been interpreted and answered in accordance with the Federal Rules of Civil Procedure.

C.      Col. Pallozzi expressly reserves the right to supplement these Responses at a later date should it become necessary to do so.

## GENERAL OBJECTIONS

1.      Defendant Col. Pallozzi objects to the instructions and definitions contained in the requests (collectively, the "Instructions") to the extent that they purport to impose

upon him any obligation greater than, or inconsistent with, that required by the Federal Rules of Civil Procedure.

2.    Col. Pallozzi objects to the Instructions and the Requests to the extent that they are overly broad, unduly burdensome and oppressive.

3.    Col. Pallozzi objects to the Instructions and the Requests to the extent that they seek, or a response would disclose, material that is subject to the attorney-client privilege or the attorney work-product doctrine.

4.    Col. Pallozzi objects to the Instructions and the Requests to the extent that they seek, or a response would disclose, trial preparation materials.

5.    Col. Pallozzi objects to the Instructions and the Requests to the extent that they seek irrelevant information.

6.    Col. Pallozzi reserves the right to modify, revise, supplement and/or update any response supplied herein up to the date of trial.

7.    Col. Pallozzi objects to the Requests to the extent that they purport to request documents from non-parties to this action.  Col. Pallozzi will only produce documents in his possession, custody and control, or the possession, custody and control of the Maryland State Police ("MSP"), and not documents in the possession of other persons or entities.

8.    Col. Pallozzi further objects to the extent the Requests purport to require him to review for responsiveness all of the e-mails and other electronic data in his possession or the possession of MSP.  Col. Pallozzi will only produce those documents that can be located through a reasonably diligent search of MSP's records.

2

Subject to and without waiving the foregoing general objections, Col. Pallozzi responds to the Requests as follows:

## RESPONSES TO REQUESTS FOR DOCUMENT PRODUCTION

**REQUEST NO. 1.**        All documents identified or referred to in interrogatory responses or initial disclosures.

**RESPONSE NO. 1.**        The documents responsive to this request that are in the possession of the MSP will be produced.

**REQUEST NO. 2.**        All documents considered, relied upon, or reviewed in responding to interrogatories or preparing initial disclosures.

**RESPONSE NO. 2.**        The documents responsive to this request that are in the possession of the MSP will be produced.

**REQUEST NO. 3.**        All documents likely to be relied upon in support of or opposition to summary judgment or at trial, including any and all legislative or regulatory records upon which Defendants intend to rely.

**RESPONSE NO. 3.**        Col. Pallozzi objects to this request on the ground that it is premature. At this time, Col Pallozzi has not completed discovery, prepared for trial or determined what documents he is likely to rely upon in support of or opposition to summary judgment or at trial. Col. Pallozzi with supplement this response at the appropriate time.

**REQUEST NO. 4.**        All documents constituting or reflecting the legislative history of the HQL.

3

**RESPONSE NO. 4.**      Col. Pallozzi objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine and/or the executive privilege. Without waiving his objections, Col. Pallozzi states that he will produce any non-privileged documents in the possession of the MSP that are responsive to this request at Bates ranges MSP000001-114, 128-132, 139-143, 153-54, 167-75, 179-81, 192-221.

**REQUEST NO. 5.**      All documents constituting or reflecting the regulatory history of the MSP HQL Regulations.

**RESPONSE NO. 5.**      Col. Pallozzi objects to this request on the ground that the term "regulatory history" is undefined, vague and ambiguous.  Col. Pallozzi further objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine and/or the executive privilege.  Without waiving those objections, Col. Pallozzi states that the MSP HQL Regulations were published in draft form in the Maryland Register on September 20, 2013, at Volume 40, Issue 19, Pages 1568-83, and granted emergency status on October 18, 2013, as reflected in the Maryland Register at Volume 40, Issue 21, Page 1772, and on November 26, 2013, MSP adopted the final regulations, which were then published in the Maryland Register on December 13, 2013, at Volume 40, Issue 25, Pages 2072-73.

**REQUEST NO. 6.**      All documents summarizing or reflecting the number of handgun transfers in Maryland each year from 2012 through 2016.

**RESPONSE NO. 6.**      Col. Pallozzi objects to this request on the ground that it requests "all documents" related to the number of handgun transfers, which is overly

4

broad, unduly burdensome and would require the production of information that is duplicative, not relevant to any party's claim or defense, and not proportionate to the needs of the case. Col. Pallozzi further objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine and/or the executive privilege. Without waiving these objections, Col. Pallozzi states that MSP does not maintain records of the number of handgun transfers in Maryland each year. Rather, MSP maintains records of the number of applications made to transfer regulated firearms in Maryland each year. Col. Pallozzi further states that he will produce documents reflecting the number of non-disapproved applications to transfer regulated firearms in Maryland each year from 2012 through 2016 at Bates range MSP000578-1089.

**REQUEST NO. 7.**       All documents summarizing or reflecting the number of handgun transfers disapproved in Maryland each year from 2012 through 2016.

**RESPONSE NO. 7.**       Col. Pallozzi objects to this request on the ground that it requests "all documents" related to the number of disapproved handgun transfers, which is overly broad, unduly burdensome and would require the production of information that is duplicative, not relevant to any party's claim or defense, and not proportionate to the needs of the case. Col. Pallozzi further objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine and/or the executive privilege. Without waiving these objections, Col. Pallozzi states that MSP does not maintain records of the number of handgun transfers in Maryland that are disapproved each year. Rather, MSP maintains records of the number of applications made to transfer regulated firearms that are disapproved in Maryland each year. Col. Pallozzi further states

5

that he will produce documents reflecting the number of disapproved applications to transfer regulated firearms in Maryland each year from 2012 through 2016 at Bates Range 1090-1175.

**REQUEST NO. 8.**        All documents summarizing or reflecting the number of HQLs issued each year from 2013 through 2017.

**RESPONSE NO. 8.**        Col. Pallozzi objects to this request on the ground that it requests "all documents" related to the number of HQL's issued, which is overly broad, unduly burdensome and would require the production of information that is duplicative, not relevant to any party's claim or defense, and not proportionate to the needs of the case. Col. Pallozzi further objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine and/or the executive privilege. Without waiving his objections, Col. Pallozzi states that he will produce documents reflecting the number of HQLs issued by the MSP each year from 2013 through 2017 at Bates range MSP000710-1089.

**REQUEST NO. 9.**        All documents summarizing or reflecting the number of HQLs denied each year from 2013 through 2017.

**RESPONSE NO. 9.**        Col. Pallozzi objects to this request on the ground that it requests "all documents" related to the number of HQL's denied, which is overly broad, unduly burdensome and would require the production of information that is duplicative, not relevant to any party's claim or defense, and not proportionate to the needs of the case. Col. Pallozzi further objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine and/or the executive privilege. Without

6

waiving his objections, Col. Pallozzi states that he will produce documents reflecting the number of HQL applications denied by the MSP each year from 2013 through 2017 at Bates 1090-1217.

**REQUEST NO. 10.**        All documents summarizing or reflecting the number of HQL applications not completed each year from 2013 through 2017.

**RESPONSE NO. 10.**        Col. Pallozzi objects to this request on the ground that the term "not completed" is undefined, vague and ambiguous.  Col. Pallozzi further objects to this request on the ground that it requests "all documents" related to the number of HQL's "not completed," which is potentially overly broad, unduly burdensome and could require the production of information that is duplicative, not relevant to any party's claim or defense, and not proportionate to the needs of the case.  Col. Pallozzi further objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine and/or the executive privilege.  Without waiving his objections, Col. Pallozzi states that the MSP is not in possession of documents reflecting the number of applications that were "not completed" by the applicant each year from 2013 to 2017.

**REQUEST NO. 11.**        All documents constituting or relating to requests from citizens to be relieved of some or all HQL requirements.

**RESPONSE NO. 11.**        Col. Pallozzi objects to this request on the ground that it requests "all documents" related to requests from citizens to be relieved of some or all HQL requirements, which is overly broad, unduly burdensome and would require the production of information that is duplicative, not relevant to any party's claim or defense, and not proportionate to the needs of the case.  Col. Pallozzi further objects to this request

7

to the extent it seeks information protected by the attorney-client privilege, work product doctrine and/or the executive privilege. Col. Pallozzi further objects to the extent this request seeks confidential, personal information of citizens, such as birth dates and social security numbers. Without waiving his objections, Col. Pallozzi states that he will produce non-privileged documents constituting requests from citizens to be relieved of some or all HQL requirements that can be located through a reasonably diligent search of MSP's records with personal confidential information redacted and/or subject to an appropriate confidentiality order.

**REQUEST NO. 12.**      All documents constituting or relating to citizen inquiries into the burden and/or difficulty in meeting HQL requirements.

**RESPONSE NO. 12.**      Col. Pallozzi objects to this request on the ground that it requests "all documents" related to citizen inquiries into the burden and/or difficulty in meeting HQL requirements, which is overly broad, unduly burdensome and would require the production of information that is duplicative, not relevant to any party's claim or defense, and not proportionate to the needs of the case. Col. Pallozzi further objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine and/or the executive privilege. Col. Pallozzi further objects to the extent this request seeks confidential, personal information of citizens, such as birth dates and social security numbers. Without waiving his objections, Col. Pallozzi states that he will produce non-privileged documents constituting citizen inquiries into the burden and/or difficulty in meeting HQL requirements that can be located through a reasonably diligent

8

search of MSP's records with personal confidential information redacted and/or subject to an appropriate confidentiality order.

**REQUEST NO. 13.**     All documents summarizing or reflecting the shortest, longest, and average amount of time to process an HQL application.

**RESPONSE NO. 13.**     Col. Pallozzi objects to this request on the ground that it requests "all documents" related to the amount of time to process an HQL application, which is overly broad, unduly burdensome and would require the production of information that is duplicative, not relevant to any party's claim or defense, and not proportionate to the needs of the case. Col. Pallozzi further objects on the ground that this request is vague and ambiguous and does not provide a timeframe. Col. Pallozzi further objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine and/or the executive privilege. Without waiving his objections, Col. Pallozzi states that he will produce records summarizing the processing time of HQL applications, as captured on MSP Licensing Division weekly reports created and maintained by MSP at Bates range MSP000882-1089.

**REQUEST NO. 14.**     All documents summarizing or reflecting the shortest, longest, and average amount of time to notify an applicant of HQL approval.

**RESPONSE NO. 14.**     Col. Pallozzi objects to this request on the ground that it requests "all documents" related to the amount of time to notify an applicant of HQL approval, which is overly broad, unduly burdensome and would require the production of information that is duplicative, not relevant to any party's claim or defense, and not proportionate to the needs of the case. Col. Pallozzi further objects on the ground that this

9

request is vague and ambiguous and does not provide a timeframe. Col. Pallozzi further objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine and/or the executive privilege. Without waiving his objections, Col. Pallozzi states that the MSP is not in possession of responsive records.

**REQUEST NO. 15.**      All documents summarizing or reflecting the MSP's cost of processing each HQL application.

**RESPONSE NO. 15.**      Col. Pallozzi objects to this request on the ground that it requests "all documents" summarizing or reflecting the MSP's cost of processing each HQL application, which is overly broad, unduly burdensome and would require the production of information that is duplicative, not relevant to any party's claim or defense, and not proportionate to the needs of the case. Col. Pallozzi further objects on the ground that this request does not provide a timeframe. Col. Pallozzi further objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine and/or the executive privilege. Without waiving his objections, Col. Pallozzi states that he will produce any non-privileged documents responsive to this request that can be located through a reasonably diligent search of MSP's records.

**REQUEST NO. 16.**      All documents reflecting or relating to the MSP decision to set the HQL application fee at $50.00.

**RESPONSE NO. 16.**      Col. Pallozzi objects to this request on the ground that it requests "all documents" reflecting or relating to the MSP decision to set the HQL application fee at $50.00, which is overly broad, unduly burdensome and would require the production of information that is duplicative, not relevant to any party's claim or defense,

10

and not proportionate to the needs of the case.  Col. Pallozzi further objects on the ground that this request does not provide a timeframe.  Col. Pallozzi further objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine and/or the executive privilege.  Without waiving his objections, Col. Pallozzi states that he will produce non-privileged documents responsive to this request at Bates range MSP001228-1289, MSP001518.

**REQUEST NO. 17.**      All documents constituting or relating to requests from citizens to accept alternative means of payment for the HQL application fee other than a debit or credit card, and whether MSP accepted alternative means of payment, such as cash, check or money order.

**RESPONSE NO. 17.**      Col. Pallozzi objects to this request on the ground that it requests "all documents" constituting or relating to requests from citizens to accept alternative means of payment for the HQL application fee, which is overly broad, unduly burdensome and would require the production of information that is duplicative, not relevant to any party's claim or defense, and not proportionate to the needs of the case. Col. Pallozzi further objects on the ground that this request does not provide a timeframe. Col. Pallozzi further objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine and/or the executive privilege.  Col. Pallozzi further objects to the extent this request seeks confidential, personal information of citizens, such as birth dates and social security numbers.  Without waiving his objections, Col. Pallozzi states that he will produce documents constituting requests from citizens to accept alternative means of payment for the HQL application fee at Bates range

11

MSP001290-1411 and any other non-privileged responsive documents that can be located through a reasonably diligent search of MSP's records with personal confidential information redacted or subject to an appropriate confidentiality order.

**REQUEST NO. 18.**      All documents constituting or relating to requests from citizens to waive the HQL's Maryland driver's license identification requirement, and whether MSP accepted alternative identification such as a Maryland non-driver identification card.

**RESPONSE NO. 18.**      Col. Pallozzi objects to this request on the ground that the term "HQL's Maryland driver's license identification requirement" is undefined, vague and ambiguous. Col. Pallozzi further objects on the ground that Maryland does not require a driver's license in order to obtain a HQL.

**REQUEST NO. 19.**      All documents reflecting or relating to the location, availability (in hours), and cost of all Law Enforcement fingerprinting services, and which of these are open to members of the public for using in the HQL application.

**RESPONSE NO. 19.**      Col. Pallozzi states that MSP does not maintain documents responsive to this request, but MSP does provide a link on its website to the Maryland Department of Public Safety & Correctional Services' webpage that lists fingerprinting       service       providers       throughout       the       State,       at http://mdsp.maryland.gov/Organization/Pages/CriminalInvestigationBureau/LicensingDivision/Fingerprinting.aspx.

**REQUEST NO. 20.**        All documents summarizing or reflecting the number of individuals for whom fingerprints were submitted via non-livescan technology for purposes of being used in the HQL application.

**RESPONSE NO. 20.**        Col. Pallozzi states that the MSP has no documents responsive to this request.

**REQUEST NO. 21.**        All documents reflecting or relating to how MSP uses and/or disseminates fingerprint data received with HQL applications and whether, when, and how the fingerprint data is destroyed.

**RESPONSE NO. 21.**        Col. Pallozzi objects to this request on the ground that it is vague and ambiguous.  Without waiving his objections, Col. Pallozzi states that MSP has no documents responsive to this request.

**REQUEST NO. 22.**        All documents constituting or relating to requests from citizens to waive or reimburse fees for HQL applications, fingerprinting, and/or Firearms Safety Course training requirements.

**RESPONSE NO. 22.**        Col. Pallozzi objects to this request on the ground that it requests "all documents" constituting or relating to requests from citizens to waive or reimburse fees for HQL applications, fingerprinting, and/or Firearms Safety Course training requirements, which is overly broad, unduly burdensome and would require the production of information that is duplicative, not relevant to any party's claim or defense, and not proportionate to the needs of the case.  Col. Pallozzi further objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine and/or the executive privilege.  Col. Pallozzi further objects to the extent this

13

request seeks confidential, personal information of citizens, such as birth dates and social security numbers. Without waiving his objections, Col. Pallozzi states that he will produce non-privileged documents constituting requests from citizens to waive or reimburse fees for HQL applications, fingerprinting, and/or Firearms Safety Course training requirements that can be located through a reasonably diligent search of MSP's records with personal confidential information redacted or subject to an appropriate confidentiality order.

**REQUEST NO. 23.**       All documents summarizing or reflecting applications submitted in person, on paper, or otherwise non-electronically each year from 2013 through 2017, and the ultimate disposition of the application.

**RESPONSE NO. 23.**       Col. Pallozzi objects to this request on the ground that it requests "all documents" summarizing or reflecting applications submitted in person, on paper, or otherwise non-electronically, and the ultimate disposition of the application, which is overly broad, unduly burdensome and would require the production of information that is duplicative, not relevant to any party's claim or defense, and not proportionate to the needs of the case. Col. Pallozzi further objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine and/or the executive privilege. Col. Pallozzi further objects to the extent this request seeks confidential, personal information of citizens, such as birth dates and social security numbers. Col. Pallozzi further objects to this request because it seeks the disposition of applications that were not properly submitted electronically and, thus, were not reviewed for disposition. Without waiving his objections, Col. Pallozzi states that he will produce documents reflecting applications submitted non-electronically each year from 2013

14

through 2017 at Bates range MSP001290-1411 with personal confidential information redacted or subject to an appropriate confidentiality order.

**REQUEST NO. 24.**      All documents reflecting or relating to the location, availability (in hours), and cost of MSP-certified HQL Firearms Safety Course training, and for each whether MSP has approved the curriculum.

**RESPONSE NO. 24.**      Col. Pallozzi objects to this request on the ground that it requests "all documents" reflecting or relating to the location, availability (in hours), and cost of MSP-certified HQL Firearms Safety Course training, and for each whether MSP has approved the curriculum, which is overly broad, unduly burdensome and would require the production of information that is duplicative, not relevant to any party's claim or defense, and not proportionate to the needs of the case. Col. Pallozzi further objects on the ground that this request does not provide a timeframe. Col. Pallozzi further objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine and/or the executive privilege.  Without waiving his objections, Col. Pallozzi states that he will produce documents responsive to this request at Bates range MSP001493-1506 and MSP000286-313.

**REQUEST NO. 25.**      All documents constituting or relating to requests from citizens to waive the fingerprinting, Firearms Safety Course, and/or "Live Fire" requirements.

**RESPONSE NO. 25.**      Col. Pallozzi objects to this request on the ground that it requests "all documents" constituting or relating to requests from citizens to waive the fingerprinting, Firearms Safety Course, and/or "Live Fire" requirements, which is overly

15

broad, unduly burdensome and would require the production of information that is duplicative, not relevant to any party's claim or defense, and not proportionate to the needs of the case. Col. Pallozzi further objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine and/or the executive privilege. Col. Pallozzi further objects to the extent this request seeks confidential, personal information of citizens, such as birth dates and social security numbers. Without waiving his objections, Col. Pallozzi states that he will produce non-privileged documents constituting requests from citizens to waive the fingerprinting, Firearms Safety Course, and/or "Live Fire" requirements that can be located through a reasonably diligent search of MSP's records with personal confidential information redacted or subject to an appropriate confidentiality order.

**REQUEST NO. 26.**     All documents reflecting or relating to any instance in which an applicant has begun Firearms Safety Course classroom and/or "Live Fire" training, but has not been certified.

**RESPONSE NO. 26.**     Col. Pallozzi objects to this request on the ground that it is vague and ambiguous. Without waiving his objections, Col. Pallozzi states that the MSP has no documents responsive to this request.

**REQUEST NO. 27.**     All documents reflecting or relating to the MSP decision to require "Live Fire" training.

**RESPONSE NO. 27.**     Col. Pallozzi objects to this request on the ground that it is vague and ambiguous. Col. Pallozzi further objects on the ground that the request for "all documents" relating to the MSP decision to require "Live Fire" training is overly

16

broad, unduly burdensome and would require the production of information that is not relevant to any party's claim or defense, and not proportionate to the needs of the case. Col. Pallozzi further objects to this request to the extent that it seeks information protected by the attorney-client privilege, work product doctrine and/or the executive privilege.

**REQUEST NO. 28.**     All documents constituting or relating to requests from citizens to define, explain, or clarify "Receive" or "Receipt."

**RESPONSE NO. 28.**     Col. Pallozzi objects to this request on the ground that it requests "all documents" constituting or relating to requests from citizens to define, explain, or clarify "Receive" or "Receipt," which is overly broad, unduly burdensome and would require the production of information that is duplicative, not relevant to any party's claim or defense, and not proportionate to the needs of the case. Col. Pallozzi further objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine and/or the executive privilege. Col. Pallozzi further objects to the extent this request seeks confidential, personal information of citizens, such as birth dates and social security numbers. Without waiving his objections, Col. Pallozzi states that he will produce documents responsive to this request at Bates range MSP001517 and any other non-privileged responsive documents constituting requests from citizens to define, explain, or clarify "Receive" or "Receipt" that can be located through a reasonably diligent search of MSP's records with personal confidential information redacted or subject to an appropriate confidentiality order.

**REQUEST NO. 29.**     All documents reflecting or relating to all arrests, and the disposition of any charges, for an illegal "Receipt" of a handgun.

**RESPONSE NO. 29.**      Col. Pallozzi objects to this request on the ground that it requests "all documents" relating to all arrests, and the disposition of any charges, for an illegal "Receipt" of a handgun, which is overly broad, unduly burdensome and would require the production of information that is duplicative, not relevant to any party's claim or defense, and not proportionate to the needs of the case. Col. Pallozzi further objects to this request to the extent it seeks information protected by the attorney-client privilege, work product doctrine and/or the executive privilege. Col. Pallozzi further objects to the extent this request seeks confidential, personal information of citizens, such as birth dates and social security numbers. Without waiving these objections, Col. Pallozzi states that MSP has no documents reflecting or relating to any arrests or disposition of charges arising solely from a violation of the law requiring that an individual, not otherwise prohibited from possessing a firearm, obtain an HQL prior to receiving or being in receipt of a handgun.

**REQUEST NO. 30.**      All documents reflecting or relating to all arrests, and the disposition of any charges, for false statements on an HQL application or Form 77R, or for "straw purchase" of a handgun.

**RESPONSE NO. 30.**      Col. Pallozzi objects to this request on the ground that it requests "all documents" relating to all arrests, and the disposition of any charges, for false statements on an HQL application or Form 77R, or for "straw purchase" of a handgun, which is overly broad, unduly burdensome and would require the production of information that is duplicative, not relevant to any party's claim or defense, and not proportionate to the needs of the case. Col. Pallozzi further objects to this request to the extent it seeks

18

information protected by the attorney-client privilege, work product doctrine and/or the executive privilege. Col. Pallozzi further objects to the extent this request seeks confidential, personal information of citizens, such as birth dates and social security numbers. Without waiving these objections, Col. Pallozzi states that he will produce documents responsive to this request at Bates range MSP001437-1492.


BRIAN E. FROSH
Attorney General


/s/ Jennifer L. Katz
JENNIFER L. KATZ (Fed. Bar # 28973)
ROBERT A. SCOTT (Fed. Bar # 24613)
Assistant Attorney General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-7005 (tel.); 410-576-6955 (fax)
jkatz@oag.state.md.us


Dated: December 29, 2017          Attorneys for Defendants


19

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 29th day of December, 2017, a copy of the

foregoing Defendant's Responses to Requests for Production of Documents was sent by

first class mail, postage pre-paid, and e-mail to:

Cary J. Hansel (cary@hansellaw.com)
2514 N. Charles Street
Baltimore, MD 21218

John Parker Sweeney, Esq. (JSweeney@bradley.com)
T. Sky Woodward, Esq. (SWoodward@bradley.com)
Bradley Arant Boult Cummings LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036

_____
Robert A. Scott

# EXHIBIT 2

| | |
|---|---|
| **From:** | Sweeney, John P. |
| **To:** | Scott, Robert; Katz, Jennifer |
| **Cc:** | "Cary Hansel (cary@hansellaw.com)"; Woodward, Sky; Porter, Jay; Nardone, Marc |
| **Subject:** | RE: MSI v. Hogan - |
| **Date:** | Tuesday, January 30, 2018 2:39:45 PM |
| **Attachments:** | Pallozzi"s Responses to Atl. Gun"s RFPDs.pdf |
| | Pallozzi"s Answers to Atl. Gun"s ROGs.pdf |

Counsel:

In addition to the inquiry in my earlier email today set forth below, Plaintiff requested the number of HQL applications not completed each year from 2013 through 2017. You objected that the term "not completed" was "undefined, vague and ambiguous." Plaintiff would like to clarify that it requests information on the number of HQL applications which were started in the MSP system – as all HQL applications are required to be in an electronic format submitted online, per Defendant Pallozzi's own statements in response to discovery – but were never submitted as final to the Maryland State Police. Please promptly supplement your client's answer to this interrogatory to include this information promptly.

Further, Plaintiff requested identification of the shortest, longest, and average amount of time to process an HQL application. You presented boilerplate objections and stated only that MSP has complied with the statutory provision that the processing period not exceed 30 days. If Defendant Pallozzi can state that MSP has complied with the provision that the processing period should not exceed 30 days, then it appears that Defendant Pallozzi has information pertaining to the amount of time to process an HQL application, possibly even including the shortest, longest, and average amount of time. Plaintiff Atlantic Guns renews its requests for the Defendant to identify the shortest period of time it has taken the MSP to process an HQL application, in days; the longest period of time it has taken the MSP to process an HQL application, in days; and the average amount of time it takes the MSP to process an HQL application in days. In response to Defendant Pallozzi's objections that the interrogatory is "vague and ambiguous" please allow Plaintiff to clarify that Plaintiff is only requesting information on the amount of time for processing once an application for an HQL has been submitted to MSP.

Plaintiff also requested all documents summarizing or reflecting the MSP's cost of processing each application. In your response to, you made a vague response to Interrogatory 9 that indicated the cost excides $51.34, and in the Response to the Production of Documents you indicated you would be producing any non-privileged documents. We have yet to receive that any such documents. Am I correct that is because you have yet to serve it? And if that is the case, when may we expect to receive it?

I am available to discuss the above by telephone at your earliest convenience.

**John Parker Sweeney**
Partner | Bradley
jsweeney@bradley.com
202.719.8216

**John Parker Sweeney**
Partner | Bradley
jsweeney@bradley.com
202.719.8216

**From:** Sweeney, John P.
**Sent:** Tuesday, January 30, 2018 1:59 PM
**To:** 'Scott, Robert' <rscott@oag.state.md.us>; Katz, Jennifer <jkatz@oag.state.md.us>
**Cc:** Cary Hansel (cary@hansellaw.com) <cary@hansellaw.com>; Woodward, Sky <swoodward@bradley.com>; Porter, Jay <jporter@bradley.com>; Nardone, Marc <mnardone@bradley.com>
**Subject:** RE: MSI v. Hogan -

Counsel:

In Defendant Pallozzi's  interrogatory responses to you stated:

Col Pallozzi further states that MSP has requested data from the Maryland Automated Firearms Services System, maintained by the Maryland Department of Public Safety and Correctional Services, which tracks the number of handgun transfers that are not disapproved in
Maryland each year, and Col. Pallozzi will supplement this answer pursuant to Rule 26(e) of the Federal Rules of Civil Procedure when that data is received.

We have yet to receive that information. Am I correct that is because you have yet to serve it? And if the is the case, when may we expect to receive it?

**John Parker Sweeney**
Partner | Bradley
jsweeney@bradley.com
202.719.8216

**From:** Scott, Robert [mailto:rscott@oag.state.md.us]
**Sent:** Friday, December 29, 2017 1:04 PM
**To:** Sweeney, John P. <JSweeney@bradley.com>; Cary Hansel (cary@hansellaw.com) <cary@hansellaw.com>; Woodward, Sky <SWoodward@bradley.com>
**Cc:** Katz, Jennifer <jkatz@oag.state.md.us>
**Subject:** MSI v. Hogan -

**[External Email]**

Counsel –

Attached are Defendants' (1) Amended Rule 26(a)(1)(A) disclosures; (2) Answers to Interrogatories; and (3) Responses to Requests for Production of Documents.  Copies of these are also being sent to you by first class mail.

You will also be receiving by mail a CD with the documents we are producing in response to your requests.

In addition to the documents on the CD, we also have prepared for production a large number of emails that will be subject to the confidentiality order.  As soon as the court enters that order, we will send you those documents.

Thank you for your courtesy and cooperation.

Rob


Robert A. Scott
Assistant Attorney General
Civil Division
Office of the Attorney General
200 St. Paul Place, 20th Floor
Baltimore, MD 21202
410-576-7055
rscott@oag.state.md.us

---

Confidentiality Notice: This e-mail is from a law firm and may be protected by the attorney-client or work product privileges. If you have received this message in error, please notify the sender by replying to this e-mail and then delete it from your computer.

# EXHIBIT 3

| From: | Katz, Jennifer |
|---|---|
| To: | "Sweeney, John P."; Woodward, Sky; Nardone, Marc; Porter, Jay; "Cary Hansel" |
| Cc: | Scott, Robert |
| Subject: | RE: MSI v. Hogan, follow-up to Feb. 2 meet and confer |
| Date: | Tuesday, February 20, 2018 5:07:00 PM |
| Attachments: | Pallozzi"s Supplemental Interrogatory Responses.pdf |

John,

Good afternoon. Attached to this email are supplemental responses to interrogatories 5, 7, and 9 that we had previously discussed Col. Pallozzi would serve. In addition, please find below responses to the follow-up questions that you sent on February 13, 2018. I have general availability tomorrow afternoon or all day Thursday to meet and confer by phone.

Interrogatory No. 1: Upon further review, there are significant discrepancies in the MAFSS data contained in MSP3206, and MSP is investigating the cause. We will get back to you when we have an answer and will provide answers to your other questions about the MAFSS data at that time.

Interrogatory No. 2: We continue to object to this interrogatory on the ground that the reasons for disapproval of applications to transfer regulated firearms is not relevant to any party's claims or defenses, insofar as it seeks information about disapproval of regulated firearm transfers that have no relation to the HQL requirement that is the subject of this lawsuit. We have provided the number of applications denied annually for lack of an HQL since the inception of the Firearm Safety Act. Without waiving that objection, MSP has provided the definitions of the codes contained in the 2013 disapproval log as stated in the table below.

| DISAPPROVAL CODES | |
|---|---|
| SM | State Misdemeanor |
| SF | State Felony |
| FP | Federal Prohibitor |
| CL | Common Law |
| FG | Fugitive |
| AD | Adjudicated Delinquent |
| M | Mental |
| IA | Illegal Alien |
| UA | Under Age |
| SP | Supervised Probation |
| DV | Domestic Violence |
| CO | Court Order |
| SG | Stolen Gun |
| O | Other |
| Admin | Administrative |
| PO | Protective Order |

Interrogatory No. 4: MSP has provided the definitions of the codes contained in the 2013 disapproval log as stated in the table above. Further, MSP is working to provide notations

for HQL disapprovals in 2013, and any information discovered through a reasonable search of MSP's records will be produced. In regard to documents identified as MSP001176-1217, in July 2015, MSP began to track applications that were submitted as final but found to have administrative deficiencies and, thus, were administratively denied. This log is reflected at MSP1176-1217. As the data contained in this log demonstrates, in the vast majority of cases, these deficiencies are corrected and the application is approved if the applicant is not otherwise prohibited from obtaining an HQL. If the application ultimately is formally disapproved, the disapproval is captured on the disapproval logs that have been produced to you at MSP001130-1146, MSP1147-1167, MSP1176-1192.

Interrogatory No. 18: As described above, MSP maintains a log of applications with administrative deficiencies. These deficiencies can be related to the HQL training requirement. Some notations on the document refer to "instructor signed off training" or "training verified" to indicate when the deficiency was resolved. These notations, however, do not indicate that "a Firearms Safety Course instructor failed to provide verification to support an HQL application." On the contrary, the notations indicate that the training has been verified and, unless the applicant is prohibited from obtaining an HQL for other reasons, the application has been approved. Moreover, the document in question does not indicate, and MSP does not track, the specific cause of the deficiency, which can arise for a number of reasons including that the applicant has not submitted the proper instructor verification code in an application, the applicant has not yet received the required training, the applicant is exempt from training but completed the standard application form, or that a Firearms Safety Course instructor has not yet verified that the applicant has undergone the required training at the time MSP began to process the application. As stated in Col. Pallozzi's initial answer, MSP does not possess the information sought through this interrogatory.

Best,
Jennifer


Jennifer Katz
Assistant Attorney General, Civil Division
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
jkatz@oag.state.md.us
(410) 576-7005


Please consider the environment before printing this email

LEGAL DISCLAIMER - The information contained in this communication (including any attachments) may be confidential and legally privileged. This email may not serve as a contractual agreement unless explicit written agreement for this purpose has been made. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication or any of its contents is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender indicating that it was received in error and delete the original message and any copy of it from your computer system.

**From:** Sweeney, John P. [mailto:JSweeney@bradley.com]
**Sent:** Tuesday, February 13, 2018 9:34 AM
**To:** Katz, Jennifer <jkatz@oag.state.md.us>
**Cc:** Scott, Robert <rscott@oag.state.md.us>; Woodward, Sky <SWoodward@bradley.com>; Nardone, Marc <mnardone@bradley.com>; Porter, Jay <jporter@bradley.com>; 'Cary Hansel' <Cary@hansellaw.com>
**Subject:** RE: MSI v. Hogan, follow-up to Feb. 2 meet and confer

Thank you, Jennifer, for your email below regarding Col. Pallozzi's discovery deficiencies outlined in Atlantic Guns' Motion to Compel and his forthcoming supplemental responses. I agree our meet and confer call was productive and your commnets below are very helpful. My responses are below.

Interrogatory No. 1: Thank you for supplementing this response with MSP3206. We believe this document requires additional explanation. First, please confirm what the categories Gun Types A, R, S, X, and O signify. Second, does any governmental agency track the number of firearm transfers between non-dealers? If yes, please supplement your response accordingly. Additionally, please supplement the response to Document Request No. 2 to include not only MSP3206, but all other documents Col. Pallozzi considered, reviewed, or relied upon in making his supplemental response that will be served next week.
There are very significant discrepancies among the transfer data provide in Kolbe, the application data previously provided in this case and the MAFFS data provided with MSP3206. We simply cannot rely upon that summary document when these differences are so glaring and remain unexplained.

Interrogatory No. 2:  Upon a review of those documents, it appears that for the year 2013, the reasons for disapproval are primarily in code. (see, e.g., MSP1090–1109 (listing inter alia "SP" "SM" and "Admin" as "Disapproval Code"). We cannot determine what these codes mean. Please supplement your response for year 2013 to provide the written reason for disapproval where there is none or interpretation of the disapproval codes.

Interrogatory No. 4:  As we discussed, we have received the MSP Weekly Reports.  Upon a review of these documents (MSP1090-1167), it appears that for the year 2013, there are primarily only codes listed for disapproval of HQLs nearing year-end.  We ask that you supplement your response for year 2013 to provide the written reason for disapproval where there is none or interpretation of the disapproval codes.  For the years 2014–2017, written reasons for disapproval are provided and so do not appear to require any further interpretation at this time.  As to the documents identified as MSP001176–1217 (undated disapprovals), however, we ask for additional information as to the reason(s) for denial.  For example, the reason listed is only a single-word such as "livescan" or "training" or "instructor."  Please elaborate on the reason(s) for denial. I am happy to discuss this further, as needed, but we otherwise look forward to Col. Pallozzi's supplemental response.

Interrogatory No. 5: We look forward to Col. Pallozzi's supplemental response.

Interrogatories Nos. 6, 11, 15, and 17: We acknowledge receipt of emails appearing to correspond with the aforementioned interrogatories. We are reviewing these documents to ensure

responsiveness. Please note that these discovery requests are ongoing. Col. Pallozzi must supplement his response timely if he receives additional responsive documents.

Interrogatory No. 7: We believe that Col. Pallozzi is withholding information. Col. Pallozzi's response indicates that he knows that at least two applications have been processed the same business day they were received and that no application has taken longer than 30 days to process. It necessarily follows that he has information regarding every application and therefore can provide the requested information. Col. Pallozzi cannot simultaneously disclaim knowledge and provide a substantive response. Please supplement this response accordingly. Additionally, Col. Pallozzi must supplement his response to Document Request No. 2 to include the applications he relied upon to provide both his response and supplemental response.

Further, MSP3196 references a "Licensing Portal" run by MSP that "has received and processed 52,356 applications" since January 1, 2017. This portal tracks appears to track the date each application is received and how quickly MSP processed each application (i.e., "HQL currently has (0) zero applications over 15 days"). MSP appears to have kept this information since at least August 1, 2012 (see MSP00578), as it kept information regarding the date applications were received and whether they were held or disapproved.

Interrogatory No. 16: We received Bates stamped documents MSP1290–1411. We are reviewing these documents to ensure responsiveness. Please note that these discovery requests are ongoing. Col. Pallozzi must supplement his response timely if he receives additional responsive documents.

Interrogatory No. 18: Please refer to Atlantic Guns' deficiency statement in its Motion to Compel. It appears that the MSP does indeed possess this information. Please supplement this response and the response to Document Request No. 2 accordingly.

Document Request No. 2:
- Interrogatory No. 1: See above.
- Interrogatory No. 5: We look forward to Col. Pallozzi's supplemental response and will address any deficiencies at that time.
- Interrogatory No. 7: See above.
- Interrogatory No. 16: See above.


Best regards,

**John Parker Sweeney**
Partner | Bradley
jsweeney@bradley.com
202.719.8216


**From:** Katz, Jennifer [mailto:jkatz@oag.state.md.us]
**Sent:** Friday, February 09, 2018 4:34 PM
**To:** Sweeney, John P. <JSweeney@bradley.com>; Woodward, Sky <SWoodward@bradley.com>;

Nardone, Marc <mnardone@bradley.com>; Porter, Jay <jporter@bradley.com>; 'Cary Hansel'
<Cary@hansellaw.com>
**Cc:** Scott, Robert <rscott@oag.state.md.us>
**Subject:** MSI v. Hogan, follow-up to Feb. 2 meet and confer

**[External Email]**

Counsel,

After a very productive meet-and-confer call on February 2, I wanted to clarify whether any disputes
remain concerning discovery responses served by Col. Pallozzi that require a substantive response to
your motion to compel.   So that we have adequate time to address any remaining issues prior to the
deadline for responding to your motion, I request that you kindly respond to this email by Tuesday,
February 13, 2018.

Interrogatory No. 1:
We discussed that the supplemental response to Interrogatory 1, which will be served next week,
will reflect that Col. Pallozzi has produced document Bates number MSP003206 (attached to this
email), which consists of the data obtained from MAFSS reflecting the number of firearm transfers,
broken down by type of firearm, from 2000 through 2017.    Additionally, we discussed that the
weekly reports produced contain the annual number of firearm transfer applications received by
MSP, and the number of those applications that are disapproved.

Interrogatory No. 2:
We discussed that the disapproval logs produced in discovery and referenced in Col. Pallozzi's
answer contained the information sought in Interrogatory 2 for the years 2013-2017.  I believe you
were going to inform me whether, as your motion contends, those documents were inadvertently
not produced or lacked the Bates numbers indicated in the responses.  Having not heard from you, I
assume that you are in possession of these documents.  We further discussed that to the extent you
needed to follow up to discern any notations on these disapproval logs, we can work with you to
provide that information.

Interrogatory No.4:
We discussed that the documents referenced in this answer contain all of the data requested in this
interrogatory.  I believe you were going to inform me whether, as your motion contends, those
documents were inadvertently not produced or lacked the Bates numbers indicated in the
responses.  Having not heard from you, I assume that you are in possession of these documents.  We
further discussed that to the extent you needed to follow up to discern any notations on the
disapproval logs provided in response, we can work with you to provide that information.

Interrogatory No. 5:
We discussed that, in response to your clarification as to the number of applications which were
started in the MSP system but were never submitted as final to the MSP, MSP does not have access
to these documents because they have not yet been submitted as final.  A supplemental answer
addressing the clarification will be produced next week.

Interrogatories 6, 11, 15, and 17:
We discussed that all of the responsive documents located through MSP's reasonably diligent search were produced by first-class mail on January 12, 2018 after the Court entered the stipulated confidentiality order. I believe you were going to be in contact with us if you were unable to locate or identify those documents. Having not heard from you, I assume that you are in possession of these documents.

Interrogatory No. 7:
We discussed that MSP does not track and is not able to identify the average length of time it has taken to process applications since the statute's inception. You stated that you would test the information provided in this answer during depositions of MSP personnel. Given that MSP is not withholding any information from your client, there is no dispute as to this matter. If you believe that not to be the case, please let me know the basis for that dispute.

Interrogatory No. 16:
We discussed that these documents were produced to you by first-class mail on January 12, 2018 after the Court entered the stipulated confidentiality order. I believe you were going to be in contact with us if you were unable to locate or identify those documents. Having not heard from you, I assume that you are in possession of these documents.

Interrogatory No. 18:
Based on my notes, it appears as though we may not have discussed the substance of this dispute in our call. As stated in our response, MSP does not have possession of the information sought by this interrogatory.

Request for Production of Documents 2:
Interrogatory 1: as noted above, the supplemental document Bates number MSP003206 is attached to this email;
Interrogatory 5: MSP does not have documents responsive to this request and did not identify responsive documents;
Interrogatory 7: MSP does not have documents responsive to this request and did not identify responsive documents;
Interrogatory 16: as noted above, these documents were produced to you by first-class mail on January 12, 2018 after the Court entered the stipulated confidentiality order.

In addition, although not contained within your motion, in response to inquiries made in emails sent on January 30, 2018, Col. Pallozzi responds as follows:

A supplemental response to Interrogatory No. 9, which will be served next week, will reflect that Col. Pallozzi has produced document Bates number MSP003197 (attached to this email) and Bates number MSP001518 (served with the initial production), which contain data reflecting the cost to process an HQL application.

Unrelated to your motion, also attached to this email are documents (1) Bates numbered MSP003198-3200 and MSP003201-3205, two news articles which will be listed on forthcoming

supplemental disclosures; and (2) Bates numbered MSP003189-3192 and MSP003193-3196, which consist of the Licensing Division Weekly Reports to close out 2017.

I look forward to hearing from you.

Best,
Jennifer


Jennifer Katz
Assistant Attorney General, Civil Division
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
jkatz@oag.state.md.us
(410) 576-7005

Please consider the environment before printing this email

LEGAL DISCLAIMER - The information contained in this communication (including any attachments) may be confidential and legally privileged. This email may not serve as a contractual agreement unless explicit written agreement for this purpose has been made. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication or any of its contents is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender indicating that it was received in error and delete the original message and any copy of it from your computer system.

Confidentiality Notice: This e-mail is from a law firm and may be protected by the attorney-client or work product privileges. If you have received this message in error, please notify the sender by replying to this e-mail and then delete it from your computer.

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| MARYLAND SHALL ISSUE, INC., *et al.*, | * | |
| *Plaintiffs,* | * | |
| v. | * | Civil Case No. 16-cv-3311-MJG |
| LAWRENCE HOGAN, *et al.*, | * | |
| *Defendants.* | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**DEFENDANT WILLIAM M. PALLOZZI'S SUPPLEMENTAL ANSWERS TO
PLAINTIFF ATLANTIC GUNS, INC.'S FIRST SET OF INTERROGATORIES**

Defendant, William M. Pallozzi, by his attorneys, hereby supplements his responses

to Plaintiff Atlantic Guns, Inc.'s First Set of Interrogatories and states as follows:

A.    The word usage and sentence structure used in these answers is that of the

attorneys who in fact prepared these answers and the language does not purport to be the

exact language of the executing party.

B.    The Interrogatories have been interpreted and answered in accordance with

the Federal Rules of Civil Procedure.

C.    Defendant Col. Pallozzi expressly reserves the right to supplement these

answers at a later date should it become necessary to do so.

**<u>GENERAL OBJECTIONS</u>**

1.    Col. Pallozzi objects to every Interrogatory to the extent it seeks information

and/or documents protected by the attorney-client and/or work product privileges.

2.      Col. Pallozzi objects to the extent that the Interrogatories, including subparts, exceed the number permitted under the Federal Rules of Civil Procedure.

3.      Col. Pallozzi objects to the extent the Interrogatories seek information in possession of parties other than Col. Pallozzi or the Maryland State Police ("MSP").  These answers are based solely on the knowledge and information in the possession of Col. Pallozzi and MSP, and not on knowledge or information possessed by any other person or entity.

4.      Subject to and without waiving the foregoing general objections, Col. Pallozzi responds to the Interrogatories as follows:

### ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 5:**      Identify the number of HQL applications not completed each year from 2013 through 2017.

**ANSWER:**   Col. Pallozzi objects to this interrogatory on the ground that the term "not completed" is undefined, vague and ambiguous.  Without waiving these objections, Col. Pallozzi states that MSP does not have this information within its possession.

**SUPPLEMENTAL ANSWER:**  In response to Atlantic Guns' clarification that this interrogatory seeks "information on the number of HQL applications which were started in the MSP system . . . but were never submitted as final to the MSP," Col. Pallozzi objects to this interrogatory on the grounds that it seeks information that is not relevant to any party's claims or defenses under Rule 26(b)(1) nor proportional to the needs of the case, and is overly broad and unduly burdensome.  In support of these objections,

2

Col. Pallozzi states that although this information is not currently tracked by MSP, it would be possible for the Licensing Division's information technology personnel to capture the raw number of applications that have been initiated through MSP's website and the raw number of applications that have been submitted as final. Given the large number of applications on the server, it would take approximately one week to 10 days just to capture this raw data. Moreover, this raw data would not indicate whether an applicant who initiated an application that has not yet been submitted as final intends to submit the application in the future. Further, because an application cannot be deleted once it has been initiated, this raw data would not indicate if an applicant began one type of application (a standard application, a training-exempt application, or a permit-exempt application) and then began another type of application, thus never submitting the initial application. Nor would this raw data indicate why an application was initiated but not submitted as final.

**INTERROGATORY NO. 7:** Identify the shortest, longest, and average amount of time to process an HQL application.

**ANSWER:** Col. Pallozzi objects to this interrogatory on the ground that it does not contain a timeframe and is therefore overly broad and unduly burdensome. Col. Pallozzi further objects on the ground that this interrogatory is vague and ambiguous. Without waiving his objections, Col. Pallozzi states that the amount of time it takes to process an HQL application is fact-dependent and varies based on a number of factors that can be associated with any given application, including but not limited to: an applicant providing the incorrect authorization code to a fingerprint vendor; awaiting transmission of fingerprints from the vendor to the Department of Public Safety and Correctional

3

Services; awaiting an applicant's submission of certification of prior training for a training-exempt HQL application; the lack of a disposition listed on an applicant's criminal history for a potential disqualifying charge, and any follow-up investigation to determine that disposition; the number of applications received on a particular day; an applicant providing incorrect answers on an application; awaiting verification from a qualified handgun instructor that the applicant completed the necessary training; an applicant's incorrect submission of a qualified handgun instructor's verification code; among other factors.

Col. Pallozzi further states that HQL applications have been processed the same business day that they are received, and that MSP has complied with the statutory provision that the processing period not exceed 30 days.

**SUPPLEMENTAL ANSWER:** In response to plaintiff's clarification that this request seeks "information on the amount of time for processing once an application for an HQL has been submitted to MSP," Col. Pallozzi objects to this interrogatory on the grounds that it seeks information that is not relevant to any party's claims or defenses under Rule 26(b)(1) nor proportional to the needs of the case, and is overly broad and unduly burdensome. In support of these objections, Col. Pallozzi further states that other than each Licensing Division employee who processes applications ensuring that HQL applications are processed within the 30-day statutory time period, MSP does not track the amount of time it takes to process each individual application nor does it track the average amount of time to process HQL applications. In order to collect this information retrospectively, it would require an examination of each individual application, of which there have been more than 90,000, to determine the amount of time that elapsed between the date the

4

application was received by MSP and the date that application was approved or disapproved in order to then calculate the average time across all of the applications processed by MSP. Further, given the 30-day statutory period for processing HQL applications and that the processing of each HQL application is subject to the myriad factors listed above, the average time to process an HQL is not relevant to any party's claim or defense in this case.

**INTERROGATORY NO. 9:**     Identify the cost of processing each HQL application.

**ANSWER:**  Col. Pallozzi objects on the ground that this interrogatory does not contain a timeframe. Without waiving his objection, Col. Pallozzi states that the current cost of processing each HQL application is at least $51.34.   Col. Pallozzi further states that this cost accounts for the salaries, benefits, and overtime costs to employ the civilian and sworn personnel who process HQL applications, and the materials required to create an HQL, including the cards, printers, ink, and laminate.  Col. Pallozzi further states that this cost figure does not take into account the salary and benefits of MSP Command staff who routinely deal with HQL issues; the computers and computer software used to process the applications; equipment for sworn personnel, including vehicles, fuel, and other costs; and infrastructure costs related to MSP's Licensing Division, including building expenses, electricity, and telephone service, among other expenses.  Factoring in these other costs, the cost of processing each HQL exceeds $51.34

**SUPPLEMENTAL ANSWER:**  Without waiving his objection stated above, Col. Pallozzi states that the current cost of processing each HQL application is at least $50.49.

5

By way of further explanation, Col. Pallozzi states that the majority of this cost accounts for the salaries, benefits, and overtime costs to employ the civilian and sworn personnel who process HQL applications. As identified in MSP001518, the annual total cost of compensation for sworn and civilian personnel in the HQL section of MSP's Licensing Division is $1,158,136.84. As identified in MSP003193-96, in 2017, MSP received 23,888 HQL applications, of which only 566 were disapproved. Dividing the total cost of compensation for HQL personnel by the total number of processed applications, the average cost to review each HQL application is $48.48. Further, as identified in MSP003197, the cost to produce each HQL is $2.06, which accounts for the costs of the cards, printers, ink, and laminate, and amounted to approximately $48,043 to process the 23,322 non-disapproved HQL applications in 2017. Spreading that cost of production over the total number of applications received, the production cost approximates $2.01 per HQL application. Accounting solely for the HQL personnel and card production costs, the cost per HQL in 2017 was at least $50.49. Col. Pallozzi further states that this cost figure does not take into account the salary and benefits of MSP Command staff who routinely deal with HQL issues; the computers and computer software used to process the applications; equipment for sworn personnel, including vehicles, fuel, and other costs; and infrastructure costs related to MSP's Licensing Division, including building expenses, electricity, and telephone service, among other expenses. Factoring in these other costs, the cost of processing each HQL exceeds $50.49.

BRIAN E. FROSH
Attorney General


/s/ Jennifer L. Katz
JENNIFER L. KATZ (Fed. Bar # 28973)
ROBERT A. SCOTT (Fed. Bar # 24613)
Assistant Attorney General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-7005 (tel.); 410-576-6955 (fax)
jkatz@oag.state.md.us

Dated: February 20, 2018          Attorneys for Defendants

7

## VERIFICATION

I, Col. William M. Pallozzi hereby execute these supplemental answers to interrogatories in my official capacity as Superintendent of the Maryland State Police. Some of the information set forth in these answers was collected by others and such information is not necessarily within my personal knowledge. However, in my official capacity, I solemnly affirm under the penalties of perjury that the foregoing Answers to Interrogatories are true to the best of my knowledge, information and belief.

_2/20/18_
Date

_____
Signature

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 20th day of February, 2018, a copy of the
foregoing Defendant's Supplemental Responses to Interrogatories was sent by electronic
mail to:

John Parker Sweeney, Esq. (JSweeney@bradley.com)
T. Sky Woodward, Esq. (SWoodward@bradley.com)
Bradley Arant Boult Cummings LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036

Cary J. Hansel (cary@hansellaw.com)
2514 N. Charles Street
Baltimore, MD 21218


__/s/ Jennifer L. Katz_____
Jennifer L. Katz

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| MARYLAND SHALL ISSUE, INC., *et al.,* | * |
| *Plaintiffs,* | * |
| v. | *    No. 1:16-cv-03311-MJG |
| LAWRENCE HOGAN, *et al.* | * |
| *Defendants.* | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DECLARATION OF DIANE ARMSTRONG**

I, Diane Armstrong, declare under penalty of perjury, that the following is true and correct:

1.     I am over the age of 18 and am competent to testify upon person knowledge to the matters stated below.

2.     I am the Office Supervisor with the Maryland State Police ("MSP") Licensing Division, located at 1201 Reisterstown Road, Pikesville, MD 21208.  I have held this position since February, 2016.  I started my employment with MSP in August, 2013 as an Office Services Clerk.

3.     In my role as Office Supervisor, I am responsible for responding to emails received by MSP related to the Handgun Qualification License ("HQL") application process, and I receive numerous phone calls daily from citizens related to the HQL application process.

4.      Currently, MSP does not track the number of HQL applications on the MSP server that have been initiated through the MSP website and not yet submitted as final to MSP.

5.      Identifying the number of initiated but not submitted applications on the MSP server would not identify the number of individuals who initiated but ultimately did not submit an HQL application.  This is true for a number of reasons.

6.      First, an application that is currently incomplete may ultimately be submitted as final.  In my experience responding to citizen requests, I have received numerous emails and phone calls from citizens who have initiated applications weeks and even months before they are submitted as final to MSP.

7.      Second, I have received numerous emails and phone calls from applicants who begin one type of application and then ultimately submit another type of application.  For example, many individuals are exempt from the training requirement of the HQL and, thus, must submit a "training-exempt" application.  Although the different types of application are clearly marked in the drop-down menu on the MSP website, many applicants initiate a "standard" application before realizing that they must submit a "training exempt" application.  Thus, these applicants initiate a second application that is submitted to MSP.  Similarly, many applicants mistakenly initiate a "training-exempt" application before realizing that they must submit a "standard" application.  Because an application that has been initiated cannot be deleted from the server, it is impossible to discern how many individuals made this type of error and initiated one application but ultimately submitted another.

2

8.      Third, because the application process requires an applicant to create a unique username and password, many individuals create multiple accounts through the MSP server because they forget their username and/or password when they attempt to log back into an initiated application. I routinely assist citizens who have inadvertently created multiple accounts and initiated multiple applications.

9.      Fourth, I am aware that at least one Qualified Handgun Instructor has been creating fictional accounts in order to walk his students through the HQL application process. This is possible because the system only requires users to provide a last name and date of birth to create an account. There is no email, text, or other type of verification to activate and isolate user accounts. There is no way to determine how many accounts this instructor has created or how many instructors are doing the same.

10.     Fifth, through my experience handling citizen inquiries, I am aware that a number of applications are initiated by individuals who are younger than 21 years old who then do not submit their applications because of their age.

11.     Sixth, it is not possible to discern whether an individual who initiates an application intends to submit an application. For example, MSP personnel have initiated numerous applications for testing purposes.

12.     The raw data contained on the MSP server would not include any information as to whether any of the initiated but not submitted applications were left incomplete because an applicant was deterred from purchasing a handgun because of the HQL requirements.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

3/20/18 .

Date

Diane Armstrong

4