IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARYLAND SHALL ISSUE, INC., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 16-cv-3311-MJG |
| LAWRENCE HOGAN, in his capacity of GOVERNOR OF MARYLAND, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

## PLAINTIFF ATLANTIC GUNS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY

Plaintiff, Atlantic Guns, Inc., by counsel, hereby submits this Reply in Support of its Motion to Compel ("Motion") Defendant William Pallozzi ("Col. Pallozzi") to respond fully to certain interrogatories and requests for documents served by Atlantic Guns.

### I.    The Court Should Not Summarily Deny the Motion.

Col. Pallozzi raises two preliminary, meritless arguments, to suggest this Court should not consider Atlantic Guns' Motion. Response, at pp. 1–2. First, Atlantic Guns fulfilled its suggested conference of counsel duties under Local Rule 104(8)(b). This Local Rule makes clear that "[c]ounsel are encouraged to confer with one another before *or immediately after* a motion to compel is served." (emphasis added). Counsel held a meet-and-confer teleconference just three days after Atlantic Guns served its Motion, satisfying this rule. *See* Exhibit 1. Further, Col. Pallozzi concedes that Atlantic Guns satisfied this rule. *See* Response, at p. 2 ("Col. Pallozzi has met[-]and[-]conferred with Atlantic Guns."). Counsel for the parties have conducted several meet-and-



EXHIBIT
C

confer discussions by telephone and in person, in addition to numerous good faith email exchanges.

Second, the Court should not summarily deny the Motion because Atlantic Guns served it one day past its deadline. Courts in this District "prefer[] to resolve motions on the merits" and are loath to deny motions on harmless, technical issues. *Marcas, L.L.C. v. Bd. of Cty. Comm'rs of St. Mary's Cty.*, No. WGC-07-196, 2013 WL 12244454, at *1 (D. Md. Mar. 12, 2013) (holding that "[t]he delay in filing by five (5) calendar days or three (3) business days is not egregious enough to warrant a denial on this basis. The Court prefers to resolve motions on the merits"); *see also Coomer v. Coomer*, 217 F.3d 838, at *6 (4th Cir. 2000) (unpublished) (stating that "our judicial system expresses a preference for having cases and motions resolved on the merits after both sides have a full and fair opportunity to develop the disputed issues"). Atlantic Guns missed its motion service deadline by only one day, during which it was responding to Col. Pallozzi's meet-and-confer email objecting to claimed deficiencies in Atlantic Guns' own discovery responses, Exhibit 2, which Atlantic Guns has since fully satisfied. Col. Pallozzi's counsel failed to respond to Atlantic Guns' request to extend the time to serve its motion to compel by two days, and Atlantic Guns served its motion a day late. *Id.* This short delay did not harm Col. Pallozzi. He did not file a response to that motion for another 49 days, and even then sought (and was readily given) a one day extension. Exhibit 3.

**II.     Col. Pallozzi Must Respond Fully to Atlantic Guns' Discovery Requests.**

Through the extensive meet-and-confer process described above, the parties have resolved Atlantic Guns' concerns with respect to Interrogatories Nos. 2, 4, 6, 11, and 15–18. The parties have not resolved, and Col. Pallozzi must supplement his answers to, Interrogatories Nos. 1, 5 and 7 and Request for Documents No. 2.

**Interrogatory No. 1**: Atlantic Guns' concerns with respect to this Interrogatory are not resolved. Col. Pallozzi has produced two spreadsheets that purportedly reflect the number of firearms transfers, organized by firearm category (semi-automatic handgun, revolver, etc.), in Maryland each year from 2000 through 2017, as reported by Maryland Automated Firearms Services Systems ("MAFSS"). Counsel for Col. Pallozzi conceded that the first spreadsheet contained "significant discrepancies in the MAFSS data" and promised to "investigat[e] the cause [and] provide answers to [undersigned counsel's] other questions about the MAFSS data." Exhibit 4. Col. Pallozzi then produced without explanation a second spreadsheet with "updated information." Exhibit 5. But this information is inconsistent with previous document productions upon which the Maryland State Police ("MSP") has relied previously. These inconsistencies raise obvious concerns as to the accuracy of this critically important information. (Col. Pallozzi does not object on relevancy grounds.) Atlantic Guns is seeking to depose Rule 30(b)(6) designees of the MSP this week and has included several deposition topics regarding MAFFS in the deposition notice. MSP has objected to those areas of testimony on the ground that the data is maintained by Maryland Department of Public Safety and Correctional Services ("MDPS"). Exhibit 6. Atlantic Guns has served a Rule 30(b)(6) subpoena duces tecum on MDPS, which has not yet responded, even though Atlantic Guns has been advised that the Office of the Attorney General, which is representing Col. Pallozzi and MSP, will also be representing MDPS. Atlantic Guns reserves the right to pursue its concerns regarding Col. Pallozzi's answers to Interrogatory No. 1 if it cannot obtain documents or testimony explaining the discrepancies in the MAFFS data.

**Interrogatory No. 5**: Col. Pallozzi admits "it might be possible to capture the raw number of [Handgun Qualifying License ("HQL")] applications that have been initiated through MSP's website and the raw number of applications that have been submitted as final." Response, at p. 5.

Yet, even though he admits he "is able to produce this raw number," he refuses to do so because he contends it is not relevant or reliable for a number of reasons. *Id.*, at pp. 5–6. Col. Pallozzi's objections are wholly unfounded. The number of HQL applications initiated but not submitted as final evidences the existence and extent of the burden that the HQL requirements and applications process place upon law-abiding, responsible Maryland citizens seeking to exercise their right to acquire a handgun for self-defense in the home. This information is relevant to the parties' claims and defenses. Rule 26(b)(1) of the Federal Rules of Civil Procedure makes clear: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Case law in this Court is equally clear: "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *In re Coventry Healthcare, Inc., ERISA Litig.*, 290 F.R.D. 471, 473 (D. Md. 2013) (citing *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 434 (D. Md. 2012)). The objection raised by MSP – that the data cannot show why some applications were left uncompleted – goes to the weight of the evidence or possibly to its admissibility, but not to its relevance or discoverability. MSP cannot avoid its discovery obligations by unilaterally declaring discoverable information to be "not relevant or reliable" because it does not want to have to explain what it obviously believes is damaging evidence.

**Interrogatory No. 7**: Col. Pallozzi has stated under oath that "HQL applications have been processed the same business day that they are received, and that MSP has complied with the statutory provision that the processing period not exceed 30 days." Exhibit 7. He has further stated under oath that "each Licensing Division employee who processes applications ensur[es] that HQL applications are processed within the 30-day statutory time period." Exhibit 8. Given Col.

Pallozzi's responses to the Atlantic Guns' discovery requests, it is apparent that MSP tracks the amount of time it takes to process each individual application and has this information readily available. Col. Pallozzi cannot simultaneously provide a substantive, favorable response and choose not to provide the facts to support it. Finally, again, Col. Pallozzi's objection that "the processing of each HQL application is subject to myriad factors" (Response, at p. 7) goes to the weight of this evidence, or possibly to its admissibility, but not to its relevancy. Atlantic Guns should be allowed to discover information showing how often MSP fails to meet its statutory 30-day deadline to process HQL applications that would impeach Col. Pallozzi's sworn statement that MSP meets the statutory deadline. Col. Pallozzi's unsupported ipse dixit regarding this issue is plainly insufficient, and he must supplement this response accordingly.

**Document Request No. 2**: Col. Pallozzi states he has produced all responsive documents (Response, at p. 8), but elsewhere admits he "is in the process of producing[] all relevant responsive material within the possession of the Maryland State Police ...." *Id.* at pp. 2–3. As Col. Pallozzi's own statement makes clear, he has not produced all documents he considered, relied upon, or reviewed, at least with respect to Interrogatories Nos. 1, 5 and 7. He must do so.

Respectfully submitted,

/s/ John Parker Sweeney
John Parker Sweeney (Bar No. 08761)
T. Sky Woodward (Bar No. 10823)
James W. Porter, III (Bar No. 19416)
Marc A. Nardone (Bar No. 18811)
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
Phone: (202) 719-8216
Facsimile: (202) 719-8316
JSweeney@bradley.com

*Attorneys for Plaintiff Atlantic Guns, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of March, 2018, a copy of the foregoing was

sent via electronic mail to:

> Jennifer L. Katz
> Robert A. Scott
> Assistant Attorneys General
> Maryland Office of the Attorney General
> 200 Saint Paul Street, 20th floor
> Baltimore, Maryland 21202
> jkatz@oag.state.md.us
> rscott@oag.state.md.us
>
> Cary J. Hansel
> 2514 N. Charles Street
> Baltimore MD 21218
> cary@hansellaw.com
>
> /s/ John Parker Sweeney
> John Parker Sweeney, No. 08761

## Sweeney, John P.

| | |
|---|---|
| **From:** | Katz, Jennifer <jkatz@oag.state.md.us> |
| **Sent:** | Friday, February 09, 2018 4:34 PM |
| **To:** | Sweeney, John P.; Woodward, Sky; Nardone, Marc; Porter, Jay; 'Cary Hansel' |
| **Cc:** | Scott, Robert |
| **Subject:** | MSI v. Hogan, follow-up to Feb. 2 meet and confer |
| **Attachments:** | MSP003189-MSP003192.pdf; MSP003193-MSP003196.pdf; MSP003197-MSP003197.pdf; MSP003198-MSP003200.pdf; MSP003201-MSP003205.pdf; MSP003206-MSP003206.pdf |

**[External Email]**

Counsel,

After a very productive meet-and-confer call on February 2, I wanted to clarify whether any disputes remain concerning discovery responses served by Col. Pallozzi that require a substantive response to your motion to compel.   So that we have adequate time to address any remaining issues prior to the deadline for responding to your motion, I request that you kindly respond to this email by Tuesday, February 13, 2018.

Interrogatory No. 1:
We discussed that the supplemental response to Interrogatory 1, which will be served next week, will reflect that Col. Pallozzi has produced document Bates number MSP003206 (attached to this email), which consists of the data obtained from MAFSS reflecting the number of firearm transfers, broken down by type of firearm, from 2000 through 2017.   Additionally, we discussed that the weekly reports produced contain the annual number of firearm transfer applications received by MSP, and the number of those applications that are disapproved.

Interrogatory No. 2:
We discussed that the disapproval logs produced in discovery and referenced in Col. Pallozzi's answer contained the information sought in Interrogatory 2 for the years 2013-2017. I believe you were going to inform me whether, as your motion contends, those documents were inadvertently not produced or lacked the Bates numbers indicated in the responses.  Having not heard from you, I assume that you are in possession of these documents. We further discussed that to the extent you needed to follow up to discern any notations on these disapproval logs, we can work with you to provide that information.

Interrogatory No.4:
We discussed that the documents referenced in this answer contain all of the data requested in this interrogatory.  I believe you were going to inform me whether, as your motion contends, those documents were inadvertently not produced or lacked the Bates numbers indicated in the responses.  Having not heard from you, I assume that you are in possession of these documents.  We further discussed that to the extent you needed to follow up to discern any notations on the disapproval logs provided in response, we can work with you to provide that information.

Interrogatory No. 5:
We discussed that, in response to your clarification as to the number of applications which were started in the MSP system but were never submitted as final to the MSP, MSP does not have access to these documents because they have not yet been submitted as final.  A supplemental answer addressing the clarification will be produced next week.

Interrogatories 6, 11, 15, and 17:
We discussed that all of the responsive documents located through MSP's reasonably diligent search were produced by first-class mail on January 12, 2018 after the Court entered the stipulated confidentiality order.  I believe you were going

**EXHIBIT 1**

to be in contact with us if you were unable to locate or identify those documents. Having not heard from you, I assume that you are in possession of these documents.

Interrogatory No. 7:
We discussed that MSP does not track and is not able to identify the average length of time it has taken to process applications since the statute's inception. You stated that you would test the information provided in this answer during depositions of MSP personnel. Given that MSP is not withholding any information from your client, there is no dispute as to this matter. If you believe that not to be the case, please let me know the basis for that dispute.

Interrogatory No. 16:
We discussed that these documents were produced to you by first-class mail on January 12, 2018 after the Court entered the stipulated confidentiality order. I believe you were going to be in contact with us if you were unable to locate or identify those documents. Having not heard from you, I assume that you are in possession of these documents.

Interrogatory No. 18:
Based on my notes, it appears as though we may not have discussed the substance of this dispute in our call. As stated in our response, MSP does not have possession of the information sought by this interrogatory.

Request for Production of Documents 2:
Interrogatory 1: as noted above, the supplemental document Bates number MSP003206 is attached to this email;
Interrogatory 5: MSP does not have documents responsive to this request and did not identify responsive documents;
Interrogatory 7: MSP does not have documents responsive to this request and did not identify responsive documents;
Interrogatory 16: as noted above, these documents were produced to you by first-class mail on January 12, 2018 after the Court entered the stipulated confidentiality order.

In addition, although not contained within your motion, in response to inquiries made in emails sent on January 30, 2018, Col. Pallozzi responds as follows:

A supplemental response to Interrogatory No. 9, which will be served next week, will reflect that Col. Pallozzi has produced document Bates number MSP003197 (attached to this email) and Bates number MSP001518 (served with the initial production), which contain data reflecting the cost to process an HQL application.

Unrelated to your motion, also attached to this email are documents (1) Bates numbered MSP003198-3200 and MSP003201-3205, two news articles which will be listed on forthcoming supplemental disclosures; and (2) Bates numbered MSP003189-3192 and MSP003193-3196, which consist of the Licensing Division Weekly Reports to close out 2017.

I look forward to hearing from you.

Best,
Jennifer

Jennifer Katz
Assistant Attorney General, Civil Division
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
jkatz@oag.state.md.us
(410) 576-7005

Please consider the environment before printing this email

2

LEGAL DISCLAIMER - The information contained in this communication (including any attachments) may be confidential and legally privileged. This email may not serve as a contractual agreement unless explicit written agreement for this purpose has been made. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication or any of its contents is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender indicating that it was received in error and delete the original message and any copy of it from your computer system.

Confidentiality Notice: This e-mail is from a law firm and may be protected by the attorney-client or work product privileges. If you have received this message in error, please notify the sender by replying to this e-mail and then delete it from your computer.

**Sweeney, John P.**

| From: | Sweeney, John P. |
|---|---|
| **Sent:** | Tuesday, January 30, 2018 6:26 PM |
| **To:** | 'Katz, Jennifer'; 'Scott, Robert' |
| **Cc:** | Woodward, Sky; Porter, Jay; Nardone, Marc; 'cary@hansellaw.com' |
| **Subject:** | RE: Discovery matters in Maryland Shall Issue, et al. v. Hogan, et al., 16-cv-3311-MJG |
| **Attachments:** | Pallozzi motion to compel.pdf |

Counsel:

Having received no response to my previous email, please find enclosed our motion to compel. I look forward to discussing this on Friday. Please advise when you are available.

**John Parker Sweeney**
Partner | Bradley
jsweeney@bradley.com
202.719.8216

**From:** Sweeney, John P.
**Sent:** Tuesday, January 30, 2018 3:39 PM
**To:** 'Katz, Jennifer' <jkatz@oag.state.md.us>; Scott, Robert <rscott@oag.state.md.us>
**Cc:** Woodward, Sky <swoodward@bradley.com>; Porter, Jay <jporter@bradley.com>; Nardone, Marc <mnardone@bradley.com>; cary@hansellaw.com
**Subject:** RE: Discovery matters in Maryland Shall Issue, et al. v. Hogan, et al., 16-cv-3311-MJG

Thank you for your response, Jennifer, although I regret that you seem to be too busy preparing your motion to compel to meet and confer in order to obviate any need for a motion. Rule 104.8 provides that its deadlines may be extended by agreement of the parties precisely to avoid this sort of contretemps.

I am requesting that you extend the time for me to serve you our motion to compel until two business days after we have discussed the matters raised by me in my earlier emails. I am happy to discuss them with you at your convenience Friday. Just as I am happy to extend your time to serve your motion until two business days following our meet and confer discussion.

**John Parker Sweeney**
Partner | Bradley
jsweeney@bradley.com
202.719.8216

**From:** Katz, Jennifer [mailto:jkatz@oag.state.md.us]
**Sent:** Tuesday, January 30, 2018 2:47 PM
**To:** Sweeney, John P. <JSweeney@bradley.com>; Scott, Robert <rscott@oag.state.md.us>
**Cc:** Woodward, Sky <SWoodward@bradley.com>; Porter, Jay <jporter@bradley.com>; Nardone, Marc <mnardone@bradley.com>; cary@hansellaw.com
**Subject:** RE: Discovery matters in Maryland Shall Issue, et al. v. Hogan, et al., 16-cv-3311-MJG

EXHIBIT
2

John,

As my email suggested, I am happy to attempt to resolve this discovery dispute by telephone after I serve on you, not the Court, the defendants' motion to compel. Under Local Rule 104.8, we have only 30 days to serve a motion to compel. That is why I asked that you respond to my initial letter by January 18. Instead, you waited until January 29. It is my hope that, as the local rules require, we will continue to meet and confer to resolve our dispute prior to serving any motion on the Court. However, because the 30-day time period is quickly coming to a close, I will be serving the motion to compel on Thursday in order to preserve my clients' interests. I am available Friday or any day next week to discuss the issues raised in that motion.

Best,
Jennifer


Jennifer Katz
Assistant Attorney General, Civil Division
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
jkatz@oag.state.md.us
(410) 576-7005

Please consider the environment before printing this email

LEGAL DISCLAIMER - The information contained in this communication (including any attachments) may be confidential and legally privileged. This email may not serve as a contractual agreement unless explicit written agreement for this purpose has been made. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication or any of its contents is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender indicating that it was received in error and delete the original message and any copy of it from your computer system.


**From:** Sweeney, John P. [mailto:JSweeney@bradley.com]
**Sent:** Tuesday, January 30, 2018 1:47 PM
**To:** Katz, Jennifer <jkatz@oag.state.md.us>; Scott, Robert <rscott@oag.state.md.us>
**Cc:** Woodward, Sky <SWoodward@bradley.com>; Porter, Jay <jporter@bradley.com>; Nardone, Marc <mnardone@bradley.com>; cary@hansellaw.com
**Subject:** RE: Discovery matters in Maryland Shall Issue, et al. v. Hogan, et al., 16-cv-3311-MJG

Well then, Jennifer, you will have failed to comply with either the spirit or the letter of the meet and confer rules. We managed to litigate the Kolbe case with your office without ever resorting to the Court to resolve a discovery dispute because Matt Fader would pick up the telephone and we would discuss and work out our differences. I stand ready to do so here. Please advise the Court in your motion to compel that you declined my offer to discuss this dispute by telephone.

**John Parker Sweeney**
Partner | Bradley
jsweeney@bradley.com
202.719.8216

**From:** Katz, Jennifer [mailto:jkatz@oag.state.md.us]
**Sent:** Tuesday, January 30, 2018 12:35 PM
**To:** Sweeney, John P. <JSweeney@bradley.com>; Scott, Robert <rscott@oag.state.md.us>
**Cc:** Woodward, Sky <SWoodward@bradley.com>; Porter, Jay <jporter@bradley.com>; Nardone, Marc <mnardone@bradley.com>; cary@hansellaw.com
**Subject:** RE: Discovery matters in Maryland Shall Issue, et al. v. Hogan, et al., 16-cv-3311-MJG

John,

Thank you for your letter. Given the timing of your response, we do not believe that a discussion by telephone will be fruitful before the time in which we must serve our motion to compel under the local rules, which is Thursday, February 1. There will be ample time to discuss how we may narrow our disputes after you have read and responded to our motion.

Best,
Jennifer

Jennifer Katz
Assistant Attorney General, Civil Division
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
jkatz@oag.state.md.us
(410) 576-7005

Please consider the environment before printing this email

LEGAL DISCLAIMER - The information contained in this communication (including any attachments) may be confidential and legally privileged. This email may not serve as a contractual agreement unless explicit written agreement for this purpose has been made. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication or any of its contents is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender indicating that it was received in error and delete the original message and any copy of it from your computer system.


**From:** Sweeney, John P. [mailto:JSweeney@bradley.com]
**Sent:** Monday, January 29, 2018 5:59 PM
**To:** Katz, Jennifer <jkatz@oag.state.md.us>; Scott, Robert <rscott@oag.state.md.us>
**Cc:** Woodward, Sky <SWoodward@bradley.com>; Porter, Jay <jporter@bradley.com>; Nardone, Marc <mnardone@bradley.com>; cary@hansellaw.com
**Subject:** RE: Discovery matters in Maryland Shall Issue, et al. v. Hogan, et al., 16-cv-3311-MJG

Counsel,

Attached please find our response to your January 12 meet and confer letter. As stated, I suggest we set a mutually convenient time to discuss by telephone the issues you raise and our response.

**John Parker Sweeney**
Partner | Bradley
jsweeney@bradley.com
202.719.8216

**From:** Katz, Jennifer [mailto:jkatz@oag.state.md.us]
**Sent:** Friday, January 12, 2018 12:12 PM
**To:** Sweeney, John P. <JSweeney@bradley.com>; Woodward, Sky <SWoodward@bradley.com>; Porter, Jay <jporter@bradley.com>; Nardone, Marc <mnardone@bradley.com>; cary@hansellaw.com
**Cc:** Scott, Robert <rscott@oag.state.md.us>
**Subject:** Discovery matters in Maryland Shall Issue, et al. v. Hogan, et al., 16-cv-3311-MJG

**[External Email]**

Counsel,

Attached is a letter attempting to resolve issues arising out of the discovery responses served by plaintiff Atlantic Guns, Inc., on January 2, 2018.

In addition, a dvd containing additional discovery materials from the Defendants that have been marked confidential and that are covered by the Stipulated Confidentiality Order will be placed in the mail today.

Best,
Jennifer

Jennifer Katz
Assistant Attorney General, Civil Division
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
jkatz@oag.state.md.us
(410) 576-7005

Please consider the environment before printing this email

LEGAL DISCLAIMER - The information contained in this communication (including any attachments) may be confidential and legally privileged. This email may not serve as a contractual agreement unless explicit written agreement for this purpose has been made. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication or any of its contents is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender indicating that it was received in error and delete the original message and any copy of it from your computer system.

Confidentiality Notice: This e-mail is from a law firm and may be protected by the attorney-client or work product privileges. If you have received this message in error, please notify the sender by replying to this e-mail and then delete it from your computer.

**Sweeney, John P.**

| | |
|---|---|
| **From:** | Scott, Robert <rscott@oag.state.md.us> |
| **Sent:** | Tuesday, March 20, 2018 2:01 PM |
| **To:** | Sweeney, John P.; Katz, Jennifer |
| **Cc:** | Woodward, Sky; Nardone, Marc; Porter, Jay; Cary Hansel |
| **Subject:** | RE: MSP Discovery Responses and Depositions |
| **Attachments:** | Def. Pallozzi's Opp. to Atlantic Guns motion to compel(final).pdf |

John -- Attached please find Defendant's response to your motion to compel.

Robert A. Scott
Assistant Attorney General
Civil Division
Office of the Attorney General
200 St. Paul Place, 20th Floor
Baltimore, MD 21202
410-576-7055
rscott@oag.state.md.us

-----Original Message-----
From: Sweeney, John P. <JSweeney@bradley.com>
Sent: Monday, March 19, 2018 4:36 PM
To: Scott, Robert <rscott@oag.state.md.us>; Katz, Jennifer <jkatz@oag.state.md.us>
Cc: Woodward, Sky <SWoodward@bradley.com>; Nardone, Marc <mnardone@bradley.com>; Porter, Jay
<jporter@bradley.com>; Cary Hansel <Cary@hansellaw.com>
Subject: RE: MSP Discovery Responses and Depositions

Understood. Thank you, Robb.

I am getting inquiries from the court reporter over Wednesday's deposition as the forecast becomes increasingly
dire. May we agree to reschedule Lt. Col. Brady's deposition to a mutually convenient date?

John Parker Sweeney
Partner | Bradley
202.719.8216

-----Original Message-----
From: Scott, Robert [mailto:rscott@oag.state.md.us]
Sent: Monday, March 19, 2018 4:29 PM
To: Sweeney, John P. <JSweeney@bradley.com>; Katz, Jennifer <jkatz@oag.state.md.us>
Cc: Woodward, Sky <SWoodward@bradley.com>; Nardone, Marc <mnardone@bradley.com>; Porter, Jay
<jporter@bradley.com>; Cary Hansel <Cary@hansellaw.com>
Subject: RE: MSP Discovery Responses and Depositions

1

**EXHIBIT
3**

John -- We're going to need an extra day to finalize the opposition to your motion to compel. We'll get it to you tomorrow.


Robert A. Scott
Assistant Attorney General
Civil Division
Office of the Attorney General
200 St. Paul Place, 20th Floor
Baltimore, MD 21202
410-576-7055
rscott@oag.state.md.us




-----Original Message-----
From: Sweeney, John P. <JSweeney@bradley.com>
Sent: Monday, March 19, 2018 2:53 PM
To: Scott, Robert <rscott@oag.state.md.us>; Katz, Jennifer <jkatz@oag.state.md.us>
Cc: Woodward, Sky <SWoodward@bradley.com>; Nardone, Marc <mnardone@bradley.com>; Porter, Jay <jporter@bradley.com>; Cary Hansel <Cary@hansellaw.com>
Subject: RE: MSP Discovery Responses and Depositions

Rob and Jennifer,

Please find attached a subpoena and deposition notice for Department of Public Safety and Corrections relative to the handgun transfer database information that you have advised that agency has and that Maryland Department of State Police lacks. Due to the approaching discovery deadline, I have subpoenaed the agency for Friday March 30 at 10 am at your office. I am happy to discuss a mutually convenient date, time and location. Please advise promptly if you will not accept service on behalf of Department of Public Safety and Corrections so that we may arrange service.

We can discuss this at 3pm.

Best regards,

John Parker Sweeney
Partner | Bradley
202.719.8216


-----Original Message-----
From: Scott, Robert [mailto:rscott@oag.state.md.us]
Sent: Monday, March 19, 2018 9:36 AM
To: Sweeney, John P. <JSweeney@bradley.com>; Woodward, Sky <SWoodward@bradley.com>; Nardone, Marc <mnardone@bradley.com>; Porter, Jay <jporter@bradley.com>; Cary Hansel <Cary@hansellaw.com>
Cc: Katz, Jennifer <jkatz@oag.state.md.us>
Subject: RE: MSP Discovery Responses and Depositions

John -- Attached please find MSP's amended objections to the 30(b)(6) deposition notice.  MSP's objections to subject area No. 5 were inadvertently omitted from the original objection.   We look forward to speaking with you later today.

Rob


Robert A. Scott
Assistant Attorney General
Civil Division
Office of the Attorney General
200 St. Paul Place, 20th Floor
Baltimore, MD 21202
410-576-7055
rscott@oag.state.md.us


-----Original Message-----
From: Katz, Jennifer
Sent: Monday, March 12, 2018 2:39 PM
To: Sweeney, John P. <JSweeney@bradley.com>; Woodward, Sky <SWoodward@bradley.com>; Nardone, Marc <mnardone@bradley.com>; Porter, Jay <jporter@bradley.com>; Cary Hansel <Cary@hansellaw.com>
Cc: Scott, Robert <rscott@oag.state.md.us>
Subject: RE: MSP Discovery Responses and Depositions

John,

Upon review of the notice of deposition, Atlantic Guns has broadened the scope of the topics and we are in the process of determining whether Cpt. Johnson can cover all of these subjects.  He has been on vacation since Wednesday, so we are still in the process of making this determination.  However, we can state that Col. Pallozzi will not have any unique information to share as to these topics and we do not believe his deposition is necessary.

Attached are the formal objections of MSP to the Rule 30(b)(6) deposition notice and the accompanying subpoena duces tecum.  In addition, attached are 8 Bates numbered documents that are a supplement to the emails that have been produced in response to the discovery served on Col. Pallozzi and fall within the scope of the confidentiality order.

Best,
Jennifer

Jennifer Katz
Assistant Attorney General, Civil Division Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
jkatz@oag.state.md.us
(410) 576-7005

Please consider the environment before printing this email

3

LEGAL DISCLAIMER - The information contained in this communication (including any attachments) may be confidential and legally privileged. This email may not serve as a contractual agreement unless explicit written agreement for this purpose has been made. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication or any of its contents is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender indicating that it was received in error and delete the original message and any copy of it from your computer system.

-----Original Message-----
From: Sweeney, John P. <JSweeney@bradley.com>
Sent: Tuesday, March 6, 2018 5:57 PM
To: Katz, Jennifer <jkatz@oag.state.md.us>
Cc: Scott, Robert <rscott@oag.state.md.us>; Cary Hansel <Cary@hansellaw.com>; Woodward, Sky <SWoodward@bradley.com>; Nardone, Marc <mnardone@bradley.com>; Porter, Jay <jporter@bradley.com>
Subject: MSP Discovery Responses and Depositions

Jennifer,

Thank you for discussing the outstanding discovery issues after today's deposition. I offer the below summary to memorialize our discussion. Please let me know if I have misstated or omitted any material aspect of our discussion.

1.      MAFSS - We advised that we had amended the areas of designated testimony for the Maryland State Police ("MSP") 30(b)(6) deposition to include topics #44-52 on MAFSS and provided you a hard copy of the revised, redlined notice. We agreed also to send you a copy by email, which is attached. You stated that you would inquire with MSP personnel as to the depth of their knowledge and whether a designee would be able to testify on the requested area and would get back to us as to whether MSP will be able to satisfy our need for this information.

2.      Initiated but not submitted HQL applications - We reiterated our request that you provide data regarding the number of initiated but not submitted HQL applications in the system. You indicated that you do not believe the information is relevant, but, in our view, your arguments go to weight rather than relevancy. We have reiterated our request and intend to file a motion to compel if the information is not provided. You have agreed to get back to us on this issue. We amended the attached areas of designated testimony to include items #53-54 to address the concern you raised about identifying the individuals whose applications had been initiated but not submitted, as well as your assertion that we had only identified four individuals who had been deterred from obtaining an HQL by its burdensome requirements.

3.      We agreed the following depositions would take place at your offices at 10 am on the date indicated.

4.      Deposition of Chief James Johnson - We have agreed on March 13th for his deposition. We indicated that we would request any documents Chief Johnson reviewed or consulted in preparing for his testimony. You indicated that if there were many documents, his deposition might need to be rescheduled, but you would get back to us once you have had a chance to speak with him and find out more information. You agreed to accept service of a subpoena for him (attached), which we appreciate.

5.      Deposition of Lt. Col. Brady - We tentatively agreed on a date of March 21 for her deposition, but that is subject to her availability, about which you will inquire.

6.     Depositions of MSP and Capt. Andrew Johnson - In the interests of efficiency, we agreed to take the fact deposition of Capt. Johnson along with his testimony as the MSP designee. We have set these depositions for March 22, also at your office. You agreed to accept service of subpoenas for MSP and Capt. Andrew Johnson (attached), which we appreciate.

7.     Deposition questions regarding public inquiries of MSP about the HQL process - You indicated that Capt. Johnson should be able to testify as to public inquiries and MSP responses thereto, but if necessary Diane Armstrong would be made available as necessary to answer further questions.

8.     Deposition of Col. Pallozzi - We agreed that if you can represent that Col. Pallozzi does not have any unique information and that we can get any information we need from the MSP designee, we would not need to take Col. Pallozzi's deposition.

Thank you again for your time.

Regards,

John Parker Sweeney
Partner | Bradley
202.719.8216


-----Original Message-----
From: Katz, Jennifer [mailto:jkatz@oag.state.md.us]
Sent: Tuesday, March 06, 2018 3:50 PM
To: Sweeney, John P. <JSweeney@bradley.com>
Cc: Scott, Robert <rscott@oag.state.md.us>; Cary Hansel <Cary@hansellaw.com>; Woodward, Sky <SWoodward@bradley.com>; Nardone, Marc <mnardone@bradley.com>; Porter, Jay <jporter@bradley.com>
Subject: RE: Depositions

Counsel,

Dalaine Brady is available to testify on Wednesday, March 21.  I am authorized to accept service on her behalf.

Chief Johnson is available on March 13 and is prepared to bring documents he has relied on to support his opinions with him at that time.  I am authorized to accept service on his behalf.

We are following-up with MSP about the MAFSS topics and the number of initiated applications on the server.

Best,
Jennifer

Jennifer Katz
Assistant Attorney General, Civil Division Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
jkatz@oag.state.md.us
(410) 576-7005


Please consider the environment before printing this email

LEGAL DISCLAIMER - The information contained in this communication (including any attachments) may be confidential and legally privileged. This email may not serve as a contractual agreement unless explicit written agreement for this purpose has been made. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication or any of its contents is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender indicating that it was received in error and delete the original message and any copy of it from your computer system.

-----Original Message-----
From: Sweeney, John P. [mailto:JSweeney@bradley.com]
Sent: Monday, March 5, 2018 12:22 PM
To: Katz, Jennifer <jkatz@oag.state.md.us>
Cc: Scott, Robert <rscott@oag.state.md.us>; Cary Hansel <Cary@hansellaw.com>; Woodward, Sky <SWoodward@bradley.com>; Nardone, Marc <mnardone@bradley.com>; Porter, Jay <jporter@bradley.com>
Subject: Re: Depositions

Thank you, Jennifer

John Parker Sweeney
Cell: 410-458-5653


> On Mar 5, 2018, at 11:30 AM, Katz, Jennifer <jkatz@oag.state.md.us> wrote:
>
> Yes, John.  That sounds good.  See you tomorrow.
>
> Best,
> Jennifer
>
> Jennifer Katz
> Assistant Attorney General, Civil Division
> (410) 576-7005
>
>
> -----Original Message-----
> From: Sweeney, John P. [mailto:JSweeney@bradley.com]
> Sent: Monday, March 5, 2018 10:36 AM
> To: Katz, Jennifer <jkatz@oag.state.md.us>
> Cc: Scott, Robert <rscott@oag.state.md.us>; Cary Hansel
> <Cary@hansellaw.com>; Woodward, Sky <SWoodward@bradley.com>; Nardone,
> Marc <mnardone@bradley.com>; Porter, Jay <jporter@bradley.com>
> Subject: RE: Depositions
>
> Thank you, Jennifer. May we plan to discuss the status of the Defendants' discovery response and scheduling of depositions after the Atlantic Guns' deposition tomorrow?
>
> John Parker  Sweeney
> Partner | Bradley
> 202.719.8216
>
>

> -----Original Message-----
> From: Katz, Jennifer [mailto:jkatz@oag.state.md.us]
> Sent: Friday, March 02, 2018 12:22 PM
> To: Sweeney, John P. <JSweeney@bradley.com>
> Cc: Scott, Robert <rscott@oag.state.md.us>; Cary Hansel
> <Cary@hansellaw.com>; Woodward, Sky <SWoodward@bradley.com>; Nardone,
> Marc <mnardone@bradley.com>; Porter, Jay <jporter@bradley.com>
> Subject: RE: Depositions
>
> John,
>
> We can confirm that Cpt. Andy Johnson, the Commander of MSP's Licensing Division will be the MSP
designee. He is available to testify anytime on March 22. Depending on the depth of your questioning, we may
need to designate another witness or two, who also will be available to testify on March 22 or March 23.
>
> Best,
> Jennifer
>
> Jennifer Katz
> Assistant Attorney General, Civil Division Office of the Attorney
> General
> 200 Saint Paul Place, 20th Floor
> Baltimore, Maryland 21202
> jkatz@oag.state.md.us
> (410) 576-7005
>
> Please consider the environment before printing this email
>
> LEGAL DISCLAIMER - The information contained in this communication (including any attachments) may
be confidential and legally privileged. This email may not serve as a contractual agreement unless explicit
written agreement for this purpose has been made. If you are not the intended recipient, you are hereby notified
that any dissemination, distribution, or copying of this communication or any of its contents is strictly
prohibited. If you have received this communication in error, please re-send this communication to the sender
indicating that it was received in error and delete the original message and any copy of it from your computer
system.
>
>
> -----Original Message-----
> From: Sweeney, John P. [mailto:JSweeney@bradley.com]
> Sent: Wednesday, February 28, 2018 2:40 PM
> To: Katz, Jennifer <jkatz@oag.state.md.us>
> Cc: Scott, Robert <rscott@oag.state.md.us>; Cary Hansel
> <Cary@hansellaw.com>; Woodward, Sky <SWoodward@bradley.com>; Nardone,
> Marc <mnardone@bradley.com>; Porter, Jay <jporter@bradley.com>
> Subject: Re: Depositions
>
> Jennifer and Rob,
>
> I'm following up on scheduling depositions. We had been looking at the MSP depositions the week of March
19, and Chief Johnson earlier in the month. VSn we confirm MSP witnesses for specific dates and times the
week of March 19. Could we depose Chief Johnson late the previous week, perhaps March 15 or 16?

>
> Thank you.
>
>
>
> John Parker Sweeney
> Cell: 410-458-5653
>
>
> On Feb 14, 2018, at 6:47 PM, Sweeney, John P.
<JSweeney@bradley.com<mailto:JSweeney@bradley.com>> wrote:
>
> Thank you, Jennifer.
>
> I attach a designation of areas of testimony for MSP 30(b)(6) witness(es). We will prepare a deposition notice
when dates have been arranged. Please look at March 7-9 and the week of March 12 (except the 14th) for
available dates.
>
> Cary, pleased advise of your availability as well.
>
> John Parker Sweeney
> Partner | Bradley<http://www.bradley.com>
> jsweeney@bradley.com<mailto:jsweeney@bradley.com>
> 202.719.8216
>
>
>
> From: Katz, Jennifer [mailto:jkatz@oag.state.md.us]
> Sent: Wednesday, January 31, 2018 5:01 PM
> To: Sweeney, John P.
> <JSweeney@bradley.com<mailto:JSweeney@bradley.com>>
> Cc: Scott, Robert
> <rscott@oag.state.md.us<mailto:rscott@oag.state.md.us>>; Cary Hansel
> <Cary@hansellaw.com<mailto:Cary@hansellaw.com>>; Woodward, Sky
> <SWoodward@bradley.com<mailto:SWoodward@bradley.com>>; Nardone, Marc
> <mnardone@bradley.com<mailto:mnardone@bradley.com>>; Porter, Jay
> <jporter@bradley.com<mailto:jporter@bradley.com>>
> Subject: RE: Depositions
>
> John,
>
> We will be in touch with the individuals identified and let you know the dates they are available.  Of the dates
you have proposed, March 7 and 8 will not work for us, with the possible exception of James Johnson's
deposition.  Further, we will need a specific list of topics to identify the 30(b)(6) representative(s) for MSP.
>
> We will provide a list of topics for Atlantic Guns within the next couple of days.
>
> Best,
> Jennifer
>
>

> Jennifer Katz
> Assistant Attorney General, Civil Division Office of the Attorney
> General
> 200 Saint Paul Place, 20th Floor
> Baltimore, Maryland 21202
> jkatz@oag.state.md.us<mailto:jkatz@oag.state.md.us>
> (410) 576-7005
>
> Please consider the environment before printing this email
>
> LEGAL DISCLAIMER - The information contained in this communication (including any attachments) may
be confidential and legally privileged. This email may not serve as a contractual agreement unless explicit
written agreement for this purpose has been made. If you are not the intended recipient, you are hereby notified
that any dissemination, distribution, or copying of this communication or any of its contents is strictly
prohibited. If you have received this communication in error, please re-send this communication to the sender
indicating that it was received in error and delete the original message and any copy of it from your computer
system.
>
>
>
> From: Sweeney, John P. [mailto:JSweeney@bradley.com]
> Sent: Wednesday, January 31, 2018 4:36 PM
> To: Katz, Jennifer
> <jkatz@oag.state.md.us<mailto:jkatz@oag.state.md.us>>
> Cc: Scott, Robert
> <rscott@oag.state.md.us<mailto:rscott@oag.state.md.us>>; Cary Hansel
> <Cary@hansellaw.com<mailto:Cary@hansellaw.com>>; Woodward, Sky
> <SWoodward@bradley.com<mailto:SWoodward@bradley.com>>; Nardone, Marc
> <mnardone@bradley.com<mailto:mnardone@bradley.com>>; Porter, Jay
> <jporter@bradley.com<mailto:jporter@bradley.com>>
> Subject: RE: Depositions
>
> Jennifer,
>
> We will wish to depose:
> A 30(b)(6) representative for MSP on the areas in our interrogatories
> to Defendant Pallozzi Col. William M. Pallozzi Captain Andrew Johnson
> Lieutenant Col. Dalaine Brady Chief James Johnson
>
> Please advise dates for those depositions. We can take them the weeks of  February 19 and March 5. If only
the week of March 5 works for Cary, I am sure we can get all five depositions done on March 6-8.
>
> February 2-28, March 2 do not work for me, and therefore will not work for Atlantic Guns.
>
> I will have someone else here cover your depositions of MSI and the individual plaintiffs on February 27-28
and March 2.
>
> I cannot imagine any legitimate reason for you to spend a day deposing Atlantic Guns. Please advise what
areas of testimony you are requesting of Atlantic Guns. I will find dates that work for me and Atlantic Guns.
>
> John Parker Sweeney

> Partner | Bradley<http://www.bradley.com>
> jsweeney@bradley.com<mailto:jsweeney@bradley.com>
> 202.719.8216
>
>
>
> From: Katz, Jennifer [mailto:jkatz@oag.state.md.us]
> Sent: Wednesday, January 31, 2018 4:04 PM
> To: Cary Hansel <Cary@hansellaw.com<mailto:Cary@hansellaw.com>>;
> Sweeney, John P. <JSweeney@bradley.com<mailto:JSweeney@bradley.com>>;
> Woodward, Sky <SWoodward@bradley.com<mailto:SWoodward@bradley.com>>;
> Nardone, Marc <mnardone@bradley.com<mailto:mnardone@bradley.com>>;
> Porter, Jay <jporter@bradley.com<mailto:jporter@bradley.com>>
> Cc: Scott, Robert
> <rscott@oag.state.md.us<mailto:rscott@oag.state.md.us>>
> Subject: RE: Deposition of plaintiffs
>
> [External Email]
> Cary,
>
> We think that we can take 2 depositions per day of your clients and possibly a full day for Atlantic Guns. We
will also need to depose the 3 non-party individuals identified in MSI's response to Interrogatory Number 1,
which can be done in 2 days later in March, between March 20 and 30. Can you accept service of the
subpoenas on behalf of those individuals?
>
> Best,
> Jennifer
>
> Jennifer Katz
> Assistant Attorney General, Civil Division Office of the Attorney
> General
> 200 Saint Paul Place, 20th Floor
> Baltimore, Maryland 21202
> jkatz@oag.state.md.us<mailto:jkatz@oag.state.md.us>
> (410) 576-7005
>
> Please consider the environment before printing this email
>
> LEGAL DISCLAIMER - The information contained in this communication (including any attachments) may
be confidential and legally privileged. This email may not serve as a contractual agreement unless explicit
written agreement for this purpose has been made. If you are not the intended recipient, you are hereby notified
that any dissemination, distribution, or copying of this communication or any of its contents is strictly
prohibited. If you have received this communication in error, please re-send this communication to the sender
indicating that it was received in error and delete the original message and any copy of it from your computer
system.
>
>
>
> From: Cary Hansel [mailto:Cary@hansellaw.com]
> Sent: Wednesday, January 31, 2018 3:51 PM
> To: Katz, Jennifer

> <jkatz@oag.state.md.us<mailto:jkatz@oag.state.md.us>>; Sweeney, John
> P. <JSweeney@bradley.com<mailto:JSweeney@bradley.com>>;
> swoodward@bradley.com<mailto:swoodward@bradley.com>>; Nardone, Marc
> <mnardone@bradley.com<mailto:mnardone@bradley.com>>; Porter, Jay
> <jporter@bradley.com<mailto:jporter@bradley.com>>
> Cc: Scott, Robert
> <rscott@oag.state.md.us<mailto:rscott@oag.state.md.us>>
> Subject: RE: Deposition of plaintiffs
>
> How many would you like to take per day?  2?  3? 4?  If you can let me know how many you'd like to
schedule per day, it will help us all get these scheduled.
>
> As an aside, I am struggling to imagine what you might need from the individual defendants in a deposition.
Given the very limited nature of anything relevant they might have to say during their depositions, Is there a
more efficient mechanism to obtain whatever you may need?  Requests for admissions come to mind, for
instance.
>
> Also, before we lock in the dates, we need to hear from John's team.
>
> Thanks,
>
> Cary
>
>
>
> From: Katz, Jennifer [mailto:jkatz@oag.state.md.us]
> Sent: Wednesday, January 31, 2018 3:46 PM
> To: Cary Hansel <Cary@hansellaw.com<mailto:Cary@hansellaw.com>>;
> Sweeney, John P. <JSweeney@bradley.com<mailto:JSweeney@bradley.com>>;
> swoodward@bradley.com<mailto:swoodward@bradley.com>>; Nardone, Marc
> <mnardone@bradley.com<mailto:mnardone@bradley.com>>; Porter, Jay
> <jporter@bradley.com<mailto:jporter@bradley.com>>
> Cc: Scott, Robert
> <rscott@oag.state.md.us<mailto:rscott@oag.state.md.us>>
> Subject: RE: Deposition of plaintiffs
>
> Thank you, Cary.  The Feb. 27, 28 and March 2 dates work best for us.  Let's try to schedule as many
depositions as we can on those dates first.
>
> Best,
> Jennifer
>
> Jennifer Katz
> Assistant Attorney General, Civil Division Office of the Attorney
> General
> 200 Saint Paul Place, 20th Floor
> Baltimore, Maryland 21202
> jkatz@oag.state.md.us<mailto:jkatz@oag.state.md.us>
> (410) 576-7005
>
> Please consider the environment before printing this email

> 
> LEGAL DISCLAIMER - The information contained in this communication (including any attachments) may be confidential and legally privileged. This email may not serve as a contractual agreement unless explicit written agreement for this purpose has been made. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication or any of its contents is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender indicating that it was received in error and delete the original message and any copy of it from your computer system.
> 
> 
> 
> From: Cary Hansel [mailto:Cary@hansellaw.com]
> Sent: Wednesday, January 31, 2018 3:33 PM
> To: Katz, Jennifer
> <jkatz@oag.state.md.us<mailto:jkatz@oag.state.md.us>>; Sweeney, John
> P. <JSweeney@bradley.com<mailto:JSweeney@bradley.com>>;
> swoodward@bradley.com<mailto:swoodward@bradley.com>; Nardone, Marc
> <mnardone@bradley.com<mailto:mnardone@bradley.com>>; Porter, Jay
> <jporter@bradley.com<mailto:jporter@bradley.com>>
> Cc: Scott, Robert
> <rscott@oag.state.md.us<mailto:rscott@oag.state.md.us>>
> Subject: RE: Deposition of plaintiffs
> 
> I would like to clear dates with counsel first before checking with the clients.  With that objective in mind, I am personally available on January 27, 28 and March 2 within the timeframe you provided.  Although it falls slightly outside of your time period, I am also available March 6,7 and 8.
> 
> Jennifer and John, please let me know which of these dates fit with your schedules and I will reach out to my clients.
> 
> Best regards,
> 
> Cary
> 
> 
> CARY J. HANSEL
> HANSEL LAW, PC
> 2514 North Charles Street
> Baltimore, MARYLAND 21218
> Direct Dial:  301-461-1040
> FACSIMILE:    443-451-8606
> Statement of Confidentiality:  The contents of this e-mail message and its attachments are intended solely for the addressee(s) hereof.  In addition, this e-mail transmission may be confidential and it may be subject to legal privilege(s) protecting communications between attorneys and their clients or amongst attorneys and/or their staff.  If you are not the named addressee, or if this message has been addressed to you in error, you are directed not to read, disclose, reproduce, distribute, disseminate, or otherwise use this transmission and to please notify the sender immediately.
> Delivery of this message to any person other than the intended recipients is not intended in any way to waive privilege or confidentiality.  If you have received this transmission in error, please alert the sender by reply e-mail; we also request that you immediately delete this message and its attachments, if any.  Thank you.
> _____

>
>
>
>
> From: Katz, Jennifer [mailto:jkatz@oag.state.md.us]
> Sent: Wednesday, January 31, 2018 2:39 PM
> To: Cary Hansel <Cary@hansellaw.com<mailto:Cary@hansellaw.com>>;
> Sweeney, John P. <JSweeney@bradley.com<mailto:JSweeney@bradley.com>>;
> swoodward@bradley.com<mailto:swoodward@bradley.com>; Nardone, Marc
> <mnardone@bradley.com<mailto:mnardone@bradley.com>>; Porter, Jay
> <jporter@bradley.com<mailto:jporter@bradley.com>>
> Cc: Scott, Robert
> <rscott@oag.state.md.us<mailto:rscott@oag.state.md.us>>
> Subject: Deposition of plaintiffs
>
> Counsel,
>
> Defendants would like to schedule the plaintiffs' depositions between February 20 and March 2, 2018.  Please provide dates during this time that plaintiffs are available.
>
> Best,
> Jennifer
>
> Jennifer Katz
> Assistant Attorney General, Civil Division Office of the Attorney
> General
> 200 Saint Paul Place, 20th Floor
> Baltimore, Maryland 21202
> jkatz@oag.state.md.us<mailto:jkatz@oag.state.md.us>
> (410) 576-7005
>
> Please consider the environment before printing this email
>
> LEGAL DISCLAIMER - The information contained in this communication (including any attachments) may be confidential and legally privileged. This email may not serve as a contractual agreement unless explicit written agreement for this purpose has been made. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication or any of its contents is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender indicating that it was received in error and delete the original message and any copy of it from your computer system.
>
>
>
> _____
>
> Confidentiality Notice: This e-mail is from a law firm and may be protected by the attorney-client or work product privileges. If you have received this message in error, please notify the sender by replying to this e-mail and then delete it from your computer.
> <Designation of Areas of MSP Testimony.pdf>
>

**Sweeney, John P.**

| | |
|---|---|
| **From:** | Katz, Jennifer <jkatz@oag.state.md.us> |
| **Sent:** | Tuesday, February 20, 2018 5:08 PM |
| **To:** | Sweeney, John P.; Woodward, Sky; Nardone, Marc; Porter, Jay; 'Cary Hansel' |
| **Cc:** | Scott, Robert |
| **Subject:** | RE: MSI v. Hogan, follow-up to Feb. 2 meet and confer |
| **Attachments:** | Pallozzi's Supplemental Interrogatory Responses.pdf |

John,

Good afternoon. Attached to this email are supplemental responses to interrogatories 5, 7, and 9 that we had previously discussed Col. Pallozzi would serve.  In addition, please find below responses to the follow-up questions that you sent on February 13, 2018.  I have general availability tomorrow afternoon or all day Thursday to meet and confer by phone.

Interrogatory No. 1: Upon further review, there are significant discrepancies in the MAFSS data contained in MSP3206, and MSP is investigating the cause.  We will get back to you when we have an answer and will provide answers to your other questions about the MAFSS data at that time.

Interrogatory No. 2:  We continue to object to this interrogatory on the ground that the reasons for disapproval of applications to transfer regulated firearms is not relevant to any party's claims or defenses, insofar as it seeks information about disapproval of regulated firearm transfers that have no relation to the HQL requirement that is the subject of this lawsuit.  We have provided the number of applications denied annually for lack of an HQL since the inception of the Firearm Safety Act.  Without waiving that objection, MSP has provided the definitions of the codes contained in the 2013 disapproval log as stated in the table below.

| DISAPPROVAL CODES | |
|---|---|
| SM | State Misdemeanor |
| SF | State Felony |
| FP | Federal Prohibitor |
| CL | Common Law |
| FG | Fugitive |
| AD | Adjudicated Delinquent |
| M | Mental |
| IA | Illegal Alien |
| UA | Under Age |
| SP | Supervised Probation |
| DV | Domestic Violence |
| CO | Court Order |
| SG | Stolen Gun |
| O | Other |
| Admin | Administrative |
| PO | Protective Order |

**EXHIBIT 4**

Interrogatory No. 4: MSP has provided the definitions of the codes contained in the 2013 disapproval log as stated in the table above.   Further, MSP is working to provide notations for HQL disapprovals in 2013, and any information discovered through a reasonable search of MSP's records will be produced.   In regard to documents identified as MSP001176-1217, in July 2015, MSP began to track applications that were submitted as final but found to have administrative deficiencies and, thus, were administratively denied.  This log is reflected at MSP1176-1217.   As the data contained in this log demonstrates, in the vast majority of cases, these deficiencies are corrected and the application is approved if the applicant is not otherwise prohibited from obtaining an HQL.  If the application ultimately is formally disapproved, the disapproval is captured on the disapproval logs that have been produced to you at MSP001130-1146, MSP1147-1167, MSP1176-1192.

Interrogatory No. 18: As described above, MSP maintains a log of applications with administrative deficiencies.  These deficiencies can be related to the HQL training requirement.  Some notations on the document refer to "instructor signed off training" or "training verified" to indicate when the deficiency was resolved.  These notations, however, do not indicate that "a Firearms Safety Course instructor failed to provide verification to support an HQL application."  On the contrary, the notations indicate that the training has been verified and, unless the applicant is prohibited from obtaining an HQL for other reasons, the application has been approved.  Moreover, the document in question does not indicate, and MSP does not track, the specific cause of the deficiency, which can arise for a number of reasons including that the applicant has not submitted the proper instructor verification code in an application, the applicant has not yet received the required training, the applicant is exempt from training but completed the standard application form, or that a Firearms Safety Course instructor has not yet verified that the applicant has undergone the required training at the time MSP began to process the application.  As stated in Col. Pallozzi's initial answer, MSP does not possess the information sought through this interrogatory.

Best,
Jennifer


Jennifer Katz
Assistant Attorney General, Civil Division
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
jkatz@oag.state.md.us
(410) 576-7005

Please consider the environment before printing this email

LEGAL DISCLAIMER - The information contained in this communication (including any attachments) may be confidential and legally privileged. This email may not serve as a contractual agreement unless explicit written agreement for this purpose has been made. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication or any of its contents is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender indicating that it was received in error and delete the original message and any copy of it from your computer system.


From: Sweeney, John P. [mailto:JSweeney@bradley.com]
Sent: Tuesday, February 13, 2018 9:34 AM
To: Katz, Jennifer <jkatz@oag.state.md.us>
Cc: Scott, Robert <rscott@oag.state.md.us>; Woodward, Sky <SWoodward@bradley.com>; Nardone, Marc

<mnardone@bradley.com>; Porter, Jay <jporter@bradley.com>; 'Cary Hansel' <Cary@hansellaw.com>
**Subject:** RE: MSI v. Hogan, follow-up to Feb. 2 meet and confer

Thank you, Jennifer, for your email below regarding Col. Pallozzi's discovery deficiencies outlined in Atlantic Guns' Motion to Compel and his forthcoming supplemental responses. I agree our meet and confer call was productive and your commnets below are very helpful. My responses are below.

Interrogatory No. 1: Thank you for supplementing this response with MSP3206. We believe this document requires additional explanation. First, please confirm what the categories Gun Types A, R, S, X, and O signify. Second, does any governmental agency track the number of firearm transfers between non-dealers? If yes, please supplement your response accordingly. Additionally, please supplement the response to Document Request No. 2 to include not only MSP3206, but all other documents Col. Pallozzi considered, reviewed, or relied upon in making his supplemental response that will be served next week.
There are very significant discrepancies among the transfer data provide in Kolbe, the application data previously provided in this case and the MAFFS data provided with MSP3206. We simply cannot rely upon that summary document when these differences are so glaring and remain unexplained.

Interrogatory No. 2:  Upon a review of those documents, it appears that for the year 2013, the reasons for disapproval are primarily in code. (see, e.g., MSP1090–1109 (listing inter alia "SP" "SM" and "Admin" as "Disapproval Code"). We cannot determine what these codes mean. Please supplement your response for year 2013 to provide the written reason for disapproval where there is none or interpretation of the disapproval codes.

Interrogatory No. 4:  As we discussed, we have received the MSP Weekly Reports.  Upon a review of these documents (MSP1090-1167), it appears that for the year 2013, there are primarily only codes listed for disapproval of HQLs nearing year-end.  We ask that you supplement your response for year 2013 to provide the written reason for disapproval where there is none or interpretation of the disapproval codes.  For the years 2014–2017, written reasons for disapproval are provided and so do not appear to require any further interpretation at this time.  As to the documents identified as MSP001176–1217 (undated disapprovals), however, we ask for additional information as to the reason(s) for denial.  For example, the reason listed is only a single-word such as "livescan" or "training" or "instructor."  Please elaborate on the reason(s) for denial. I am happy to discuss this further, as needed, but we otherwise look forward to Col. Pallozzi's supplemental response.

Interrogatory No. 5: We look forward to Col. Pallozzi's supplemental response.

Interrogatories Nos. 6, 11, 15, and 17: We acknowledge receipt of emails appearing to correspond with the aforementioned interrogatories. We are reviewing these documents to ensure responsiveness. Please note that these discovery requests are ongoing. Col. Pallozzi must supplement his response timely if he receives additional responsive documents.

Interrogatory No. 7: We believe that Col. Pallozzi is withholding information. Col. Pallozzi's response indicates that he knows that at least two applications have been processed the same business day they were received and that no application has taken longer than 30 days to process. It necessarily follows that he has information regarding every application and therefore can provide the requested information. Col. Pallozzi cannot simultaneously disclaim knowledge and provide a substantive response. Please supplement this response accordingly. Additionally, Col. Pallozzi must supplement his response to Document Request No. 2 to include the applications he relied upon to provide both his response and supplemental response.

Further, MSP3196 references a "Licensing Portal" run by MSP that "has received and processed 52,356 applications" since January 1, 2017. This portal tracks appears to track the date each application is received and how quickly MSP processed each application (i.e., "HQL currently has (0) zero applications over 15 days"). MSP appears to have kept this information since at least August 1, 2012 (see MSP00578), as it kept information regarding the date applications were received and whether they were held or disapproved.

Interrogatory No. 16: We received Bates stamped documents MSP1290–1411. We are reviewing these documents to ensure responsiveness. Please note that these discovery requests are ongoing. Col. Pallozzi must supplement his response timely if he receives additional responsive documents.

Interrogatory No. 18: Please refer to Atlantic Guns' deficiency statement in its Motion to Compel. It appears that the MSP does indeed possess this information. Please supplement this response and the response to Document Request No. 2 accordingly.

Document Request No. 2:
- Interrogatory No. 1: See above.
- Interrogatory No. 5: We look forward to Col. Pallozzi's supplemental response and will address any deficiencies at that time.
- Interrogatory No. 7: See above.
- Interrogatory No. 16: See above.

Best regards,

**John Parker Sweeney**
Partner | Bradley
jsweeney@bradley.com
202.719.8216

From: Katz, Jennifer [mailto:jkatz@oag.state.md.us]
Sent: Friday, February 09, 2018 4:34 PM
To: Sweeney, John P. <JSweeney@bradley.com>; Woodward, Sky <SWoodward@bradley.com>; Nardone, Marc <mnardone@bradley.com>; Porter, Jay <jporter@bradley.com>; 'Cary Hansel' <Cary@hansellaw.com>
Cc: Scott, Robert <rscott@oag.state.md.us>
Subject: MSI v. Hogan, follow-up to Feb. 2 meet and confer

**[External Email]**

Counsel,

After a very productive meet-and-confer call on February 2, I wanted to clarify whether any disputes remain concerning discovery responses served by Col. Pallozzi that require a substantive response to your motion to compel.  So that we have adequate time to address any remaining issues prior to the deadline for responding to your motion, I request that you kindly respond to this email by Tuesday, February 13, 2018.

Interrogatory No. 1:
We discussed that the supplemental response to Interrogatory 1, which will be served next week, will reflect that Col. Pallozzi has produced document Bates number MSP003206 (attached to this email), which consists of the data obtained from MAFSS reflecting the number of firearm transfers, broken down by type of firearm, from 2000 through 2017.   Additionally, we discussed that the weekly reports produced contain the annual number of firearm transfer applications received by MSP, and the number of those applications that are disapproved.

Interrogatory No. 2:
We discussed that the disapproval logs produced in discovery and referenced in Col. Pallozzi's answer contained the information sought in Interrogatory 2 for the years 2013-2017. I believe you were going to inform me whether, as your motion contends, those documents were inadvertently not produced or lacked the Bates numbers indicated in the responses.  Having not heard from you, I assume that you are in possession of these documents.  We further discussed

that to the extent you needed to follow up to discern any notations on these disapproval logs, we can work with you to provide that information.

Interrogatory No.4:
We discussed that the documents referenced in this answer contain all of the data requested in this interrogatory. I believe you were going to inform me whether, as your motion contends, those documents were inadvertently not produced or lacked the Bates numbers indicated in the responses. Having not heard from you, I assume that you are in possession of these documents. We further discussed that to the extent you needed to follow up to discern any notations on the disapproval logs provided in response, we can work with you to provide that information.

Interrogatory No. 5:
We discussed that, in response to your clarification as to the number of applications which were started in the MSP system but were never submitted as final to the MSP, MSP does not have access to these documents because they have not yet been submitted as final. A supplemental answer addressing the clarification will be produced next week.

Interrogatories 6, 11, 15, and 17:
We discussed that all of the responsive documents located through MSP's reasonably diligent search were produced by first-class mail on January 12, 2018 after the Court entered the stipulated confidentiality order. I believe you were going to be in contact with us if you were unable to locate or identify those documents. Having not heard from you, I assume that you are in possession of these documents.

Interrogatory No. 7:
We discussed that MSP does not track and is not able to identify the average length of time it has taken to process applications since the statute's inception. You stated that you would test the information provided in this answer during depositions of MSP personnel. Given that MSP is not withholding any information from your client, there is no dispute as to this matter. If you believe that not to be the case, please let me know the basis for that dispute.

Interrogatory No. 16:
We discussed that these documents were produced to you by first-class mail on January 12, 2018 after the Court entered the stipulated confidentiality order. I believe you were going to be in contact with us if you were unable to locate or identify those documents. Having not heard from you, I assume that you are in possession of these documents.

Interrogatory No. 18:
Based on my notes, it appears as though we may not have discussed the substance of this dispute in our call. As stated in our response, MSP does not have possession of the information sought by this interrogatory.

Request for Production of Documents 2:
Interrogatory 1: as noted above, the supplemental document Bates number MSP003206 is attached to this email; Interrogatory 5: MSP does not have documents responsive to this request and did not identify responsive documents; Interrogatory 7: MSP does not have documents responsive to this request and did not identify responsive documents; Interrogatory 16: as noted above, these documents were produced to you by first-class mail on January 12, 2018 after the Court entered the stipulated confidentiality order.

In addition, although not contained within your motion, in response to inquiries made in emails sent on January 30, 2018, Col. Pallozzi responds as follows:

A supplemental response to Interrogatory No. 9, which will be served next week, will reflect that Col. Pallozzi has produced document Bates number MSP003197 (attached to this email) and Bates number MSP001518 (served with the initial production), which contain data reflecting the cost to process an HQL application.

Unrelated to your motion, also attached to this email are documents (1) Bates numbered MSP003198-3200 and MSP003201-3205, two news articles which will be listed on forthcoming supplemental disclosures; and (2) Bates numbered MSP003189-3192 and MSP003193-3196, which consist of the Licensing Division Weekly Reports to close out 2017.

I look forward to hearing from you.

Best,
Jennifer

Jennifer Katz
Assistant Attorney General, Civil Division
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
jkatz@oag.state.md.us
(410) 576-7005

Please consider the environment before printing this email

LEGAL DISCLAIMER - The information contained in this communication (including any attachments) may be confidential and legally privileged. This email may not serve as a contractual agreement unless explicit written agreement for this purpose has been made. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication or any of its contents is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender indicating that it was received in error and delete the original message and any copy of it from your computer system.

Confidentiality Notice: This e-mail is from a law firm and may be protected by the attorney-client or work product privileges. If you have received this message in error, please notify the sender by replying to this e-mail and then delete it from your computer.

## Sweeney, John P.

| | |
|---|---|
| **From:** | Katz, Jennifer <jkatz@oag.state.md.us> |
| **Sent:** | Wednesday, February 28, 2018 2:47 PM |
| **To:** | Sweeney, John P.; Scott, Robert |
| **Cc:** | Cary Hansel (cary@hansellaw.com); Woodward, Sky; Porter, Jay; Blair, Connor |
| **Subject:** | RE: MSI v. Hogan discovery conference summary |
| **Attachments:** | MSP003207-MSP003207.pdf |

[External Email]

John,

Thank you for this summary.  We have made significant progress.  Please see below our responses.

- Interrogatory No. 1: Through consultation with the IT department at the Department of Public Safety, MSP was able to obtain updated data from the MAFSS database.  That spreadsheet (MSP003207) is attached to this email.  This updated information should resolve any need to depose a MAFSS corporate designee.  This data reflects transfers by licensed firearms dealers and secondary sales.  Further, the columns in the spreadsheet contain the following codes by firearm type:

| MAFSS Code | Firearm Type |
|---|---|
| A | Semi-Automatic handgun |
| R | Revolver |
| S | Single Shot handgun |
| X | Assault Weapon |
| O | Other (Frames/Receivers/Short Barrel Rifles) |

- Interrogatory Nos. 4 and 18: To follow-up on your previous question about the 4 disapprovals coded as "Admin" in 2013 that lacked explanatory notation, 3 were disapproved because the applicant was not a Maryland resident and 1 was disapproved because of the applicant's juvenile record.  MSP has verified that the disapprovals coded as "Admin." or "Administrative" on documents MSP001090-1109, 1110-1129, and 1130-1146 do not include any applications that were disapproved because a firearms safety instructor did not verify that the applicant had undergone the required training.

- Interrogatory No. 5: Col. Pallozzi has explained that the information you are seeking cannot be demonstrated through the raw number of initiated applications located on the MSP server that have not been submitted as final.  There are several reasons for this.  First, an application that is currently incomplete may ultimately be submitted as final.  Second, as demonstrated in the emails produced to you, many applicants begin one type of application and then ultimately submit another type of application.  For example, many individuals initiate a "standard" application even though they are exempt from the training component of the HQL requirement; thus, these individuals initiate a second, "training-exempt" application.  Third, many individuals create multiple accounts through the MSP server because, for example, they forgot their username and/or password, and this also accounts for many initiated applications that are never submitted.  Fourth, it is not possible to discern whether the individual who initiated an application ever intended to submit the application.  For example, MSP personnel have initiated various applications for testing purposes.  Once an application has been initiated on the server, it cannot be deleted.  Further, as you have explained, Atlantic Guns is seeking this information to evidence plaintiffs' claim that the HQL application process has deterred individuals from purchasing handguns.  However, for the reasons discussed above, it is not possible for MSP to produce the number of *individuals* who have initiated and not submitted an application.  Moreover, the raw data that MSP can produce

**EXHIBIT 5**

would not provide any insight into whether any of the initiated but not completed applications were left incomplete because an applicant was deterred from purchasing a handgun because of the HQL requirements. For all of these reasons, the raw numbers MSP is able to produce are not responsive to the inquiry and are not relevant to the claims and defenses in this lawsuit. Further, it is unduly burdensome and disproportionate to the needs of the lawsuit to require the Licensing Division's IT employee to obtain these raw numbers. It is estimated that to produce these raw numbers, it will take approximately 7 to 10 business days, because of the large volume of work that the IT personnel are responsible for completing in any given week. The total time spent on this task alone would approximate 12 hours. It is unreasonable to require MSP to collect these raw numbers given that they are not relevant to the plaintiffs' claims. Accordingly, Col. Pallozzi will stand on his objections and not be producing this data absent a court order. To the extent this communication has not resolved the dispute, Col. Pallozzi will respond to the motion to compel as to this discovery dispute and will attach an affidavit setting forth the factual basis for his objections.

- Interrogatory No. 7: It is important to clarify that the Licensing Division personnel who process applications are aware of the 30-day statutory deadline and ensure compliance with that deadline.

- With respect to documents, we are ensuring that all non-privileged, responsive documents that are relevant to any party's claims or defenses have been or will be produced.

In addition, with respect to Atlantic Guns' response to Defendants' discovery requests:

- You stated that "Atlantic Guns confirms that it has no additional non-privileged documents responsive to Request Regarding Request for Production of Documents No. 6." During our call, we asked to make this confirmation as to Defendants' RFP No. 7, not No. 6. Please confirm in writing that Atlantic Guns has no documents responsive to RFP No. 7.

Best,

Jennifer

Jennifer Katz
Assistant Attorney General, Civil Division
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
jkatz@oag.state.md.us
(410) 576-7005

Please consider the environment before printing this email

LEGAL DISCLAIMER - The information contained in this communication (including any attachments) may be confidential and legally privileged. This email may not serve as a contractual agreement unless explicit written agreement for this purpose has been made. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication or any of its contents is strictly prohibited. If you have received this communication in error, please re-send this communication to the sender indicating that it was received in error and delete the original message and any copy of it from your computer system.

From: Sweeney, John P. [mailto:JSweeney@bradley.com]
Sent: Thursday, February 22, 2018 4:05 PM
To: Katz, Jennifer <jkatz@oag.state.md.us>; Scott, Robert <rscott@oag.state.md.us>

**Cc:** Cary Hansel (cary@hansellaw.com) <cary@hansellaw.com>; Woodward, Sky <SWoodward@bradley.com>; Porter, Jay <jporter@bradley.com>; Blair, Connor <CBlair@bradley.com>
**Subject:** MSI v. Hogan discovery conference summary

Jennifer and Rob,

Thank you for another productive meet-and-confer telephone meeting today regarding our respective clients' discovery responses.

Below is a summary of what was discussed and what we agreed upon:

Atlantic Guns' responses to Defendants' discovery requests

- As we noted in our discovery responses, Atlantic Guns was prepared to produce several responsive documents containing confidential proprietary information related to its handgun sales subject to the entry of an additional protective order providing for an "Attorney's Eyes Only" confidentiality designation. After your assurances to us, we reached a tentative agreement as to the scope of the present Stipulated Confidentiality Order, subject to obtaining our client's approval, as follows:

  - Documents marked CONFIDENTIAL may be viewed only by the parties (Governor Hogan and Col. Pallozzi, in their official capacities) and their attorneys (attorneys and employees of the Attorney General's Office). Any other individual or entity whose access is authorized by the Stipulated Confidentiality Order, including as appropriate employees of Maryland State Police, may gain access to a CONFIDENTIAL document only after signing a non-disclosure agreement.

  - After our client approves the above understanding, we will produce promptly and before Atlantic Guns' deposition, the confidential documents we were prepared to produce as Attorney's Eyes Only CONFIDENTIAL.

- With the exception of our firm's attorney work-product and privileged communications with our client and co-counsel Atlantic Guns is not withholding documents on the basis of privilege.

- Atlantic Guns confirms that it has no additional non-privileged documents responsive to Request Regarding Request for Production of Documents No. 6.

Defendants' responses to Atlantic Guns' discovery requests

- Regarding Interrogatory No. 1, you confirmed that you are working to resolve the discrepancies mentioned in your February 20, 2018 email. We discussed the importance of this information to our claims and the possibility of deposing a MAFSS corporate designee. You agreed to follow up on this possibility with your clients.

- Regarding Interrogatory Nos. 4 and 18, you will confirm that if an application is disapproved because a firearms safety course instructor has not yet verified that the applicant has undergone the required training, that this disapproval reason is listed as "Admin."

- In response to Interrogatory No. 5, you confirmed that it would take 7–10 business days to provide us with the responsive information. We discussed the importance of this information to our case, that Atlantic Guns cannot otherwise access this information, and that we will wait 7–10 days for it. Further, I noted that you have not objected to this Interrogatory as overly burdensome. In response, you agreed to follow up with MSP to get a better sense of what collecting and producing this information will require.

- Regarding Interrogatory No. 7, we discussed the importance of this information to our case. In response, you offered to produce for deposition an individual who is familiar with the process and the MSP's compliance with the 30-day deadline. You also reiterated that MSP does not have data on the average time it takes to process an HQL application and stated that MSP does not readily have information regarding how many applications take longer than 30 days to process. You also stated that MSP has produced weekly reports stating the number of applications then pending for more than 15 days.

- You stated that you would confirm to us that you have produced all non-privileged documents in your possession that are responsive to our document requests.

- As a final matter, we discussed scheduling upcoming deposition dates for Chief Johnson in the first half of March and for the MSP witnesses March 21-23. We will continue to work together to schedule depositions.

Please advise if I have misstated or omitted any material part of our conversation.

Best regards,

**John Parker Sweeney**
Partner | Bradley
jsweeney@bradley.com
202.719.8216

Confidentiality Notice: This e-mail is from a law firm and may be protected by the attorney-client or work product privileges. If you have received this message in error, please notify the sender by replying to this e-mail and then delete it from your computer.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF MARYLAND**

MARYLAND SHALL ISSUE, INC., *et al.*,   *

    *Plaintiffs,*   *

    v.   *       Civil Case No. 16-cv-3311-MJG

LAWRENCE HOGAN, *et al.*,   *

    *Defendants.*   *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MARYLAND STATE POLICE'S OBJECTIONS TO RULE 30(B)(6)
DEPOSITION NOTICE AND ACCOMPANYING SUBPOENA DUCES TECUM**

The Maryland State Police ("MSP"), through undersigned counsel and pursuant to the

Federal Rules of Civil Procedure, hereby objects to the Rule 30(b)(6) Notice of Deposition

to the Maryland State Police (the "Notice") and to the accompanying subpoena duces

tecum, both served on March 6, 2018 by Plaintiff Atlantic Guns, Inc. as follows:

1. MSP objects to Topic 1 in the Notice to the extent it seeks testimony in the

possession of another State agency.  MSP is not responsible for maintaining the database

that tracks the number of firearms transfers in Maryland each year.  Records pertaining to

the number of handgun transfers that could be obtained from another State agency have

been produced in discovery by defendant, William Pallozzi, the Superintendent of MSP.

MSP will produce a witness who can testify as to how those records were obtained by MSP

and the contents of those records.

2. MSP objects to Topic 6 in the Notice on the grounds that it is overly broad, unduly

burdensome, and not proportionate to the needs of the case because it seeks testimony on

EXHIBIT
6

all citizen reports dating back to October 2013.  MSP records pertaining to this topic that could be located through a diligent search of MSP records have been produced in discovery by Col. Pallozzi.  MSP will produce a witness who can testify generally about the contents of citizen reports, how reports are addressed by MSP personnel, and the personnel generally responsible for responding to citizen reports.

3.  MSP objects to Topic 7 in the Notice to the extent it concerns "the average amount of time taken to process an application" on the grounds that it is overly broad, unduly burdensome, not proportionate to the needs of the case, and not relevant to any party's claims or defenses under Rule 26(b)(1).  MSP does not track the amount of time it takes to process each individual application nor does it track the average amount of time to process HQL applications.  In order to collect this information retrospectively, it would require an examination of each individual application, of which there have been more than 90,000, to determine the amount of time that elapsed between the date the application was received by MSP and the date that application was approved or disapproved in order to then calculate the average time across all of the applications processed by MSP.  Further, given the 30-day statutory period for processing HQL applications and that the processing of each HQL application is subject to numerous factors that can be associated with any given application, the average time to process an HQL is not relevant to any party's claim or defense in this case.  MSP will produce a witness who can testify generally about the time it takes to process an application.

4.   MSP objects to Topic 9 in the Notice on the ground that the information sought is not relevant to any party's claim or defense.  MSP further objects to the extent it seeks to invade the deliberative process privilege and attorney-client privilege.

5.   MSP objects to Topic 10 in the Notice on the grounds that it is overly broad, unduly burdensome, and not proportionate to the needs of the case because it seeks testimony on all citizen requests dating back to October 2013.  MSP records pertaining to this topic that could be located through a diligent search of MSP records have been produced in discovery by Col. Pallozzi.  MSP will produce a witness who can testify generally about these documents reflecting citizen requests to pay for the HQL application by something other than a credit card and how those requests were addressed by MSP personnel.

6.   MSP objects to Topic 12 in the Notice on the ground that MSP does not offer LiveScan fingerprinting services to the public.  MSP will not be producing a witness to testify as to this topic.

7.   MSP objects to Topic 13 in the Notice on the ground that MSP does not receive fingerprints submitted with an HQL application and, thus, does not retain or dispose of fingerprints submitted with an HQL application. MSP will not be producing a witness to testify as to this topic.

8.   MSP objects to Topic 14 in the Notice on the grounds that it is overly broad, unduly burdensome, and not proportionate to the needs of the case because it seeks testimony on all citizen requests dating back to October 2013.  MSP records pertaining to this topic that could be located through a diligent search of MSP records have been produced in discovery

3

by Col. Pallozzi.  MSP will produce a witness who can testify generally about how requests

for reimbursement are responded to by MSP.

9.   MSP objects to Topic 15 in the Notice on the grounds that it is overly broad, unduly

burdensome, and not proportionate to the needs of the case because it seeks testimony on

all application submitted in person or on paper dating back to October 2013.  MSP further

objects because paper applications are not processed and, thus, there is no disposition of

such applications.  MSP further objects because it is not possible to discern the disposition

of an application submitted in-person by an individual who used the computer terminal at

MSP headquarters because MSP did not record the identities of individuals who submitted

their applications in this manner.  MSP records pertaining to this topic that could be located

through a diligent search of MSP records have been produced in discovery by Col. Pallozzi.

MSP will produce a witness who can testify generally about these documents reflecting

HQL applications submitted either in person or on paper and how MSP handled these

applications.

10.   MSP objects to Topic 16 in the Notice on the grounds that it is overly broad, unduly

burdensome, and not proportionate to the needs of the case because it seeks testimony on

any instances in which a Firearms Safety Course trainer failed to provide verification of

course completion dating back to October 2013.  MSP records pertaining to HQL

application disapprovals that could be located through a diligent search of MSP records

have been produced in discovery by Col. Pallozzi.  MSP will produce a witness who can

testify that no MSP records were located reflecting that any HQL application was

4

disapproved on the basis that a Firearms Safety Course trainer failed to provide verification of course completion.

11. MSP objects to Topic 17 in the Notice on the ground that the information sought is not relevant to any party's claim or defense. MSP further objects to the extent it seeks to invade the deliberative process privilege and attorney-client privilege.

12. MSP objects to Topic 18 in the Notice on the ground that the information sought is not relevant to any party's claim or defense. MSP further objects to the extent it seeks to invade the deliberative process privilege and attorney-client privilege. MSP further objects because it does not track the number of HQL applications where simunition has been used to satisfy the Live Fire requirement and will not be producing a witness to testify as to the number of applications.

13. MSP objects to Topic 19 in the Notice because MSP as an agency is not responsible for tracking the number of unintentional/accidental shootings occurring in Maryland each year from 2008 through 2017. MSP will produce a witness to testify on this topic to the extent MSP has any information within its custody that can be located from a reasonably diligent search.

14. MSP objects to Topic 21 in the Notice because MSP as an agency is not responsible for tracking the number of arrests and prosecutions for illegal straw purchases of handguns in Maryland each year from 2008 through the present. MSP records pertaining to this topic that could be located through a diligent search of MSP records have been produced in discovery by Col. Pallozzi. MSP will produce a witness who can testify generally as to these documents.

5

15.  MSP objects to Topic 22 in the Notice because MSP as an agency is not responsible for tracking the number of handguns used in crime recovered in Maryland each year from 2008 through 2017.  MSP will produce a witness to testify on this topic to the extent MSP has any information within its custody that can be located from a reasonably diligent search.

16.  MSP objects to Topic 23 in the Notice on the grounds that it is overly broad, unduly burdensome, and not proportionate to the needs of the case.  MSP further objects on the ground that the term "the HQL's effect on handgun sales" is vague, undefined and ambiguous. MSP further objects because as a State agency it is not responsible for tracking the HQL's effect on handgun sales in Maryland from 2013 through 2017. MSP further objects because this topic seeks information more appropriately discoverable through expert discovery.  MSP will not be producing a witness to testify as to this topic except as to testify generally about the number of applications to transfer regulated firearms that have been received by MSP in the years following implementation of the HQL requirement.

17.  MSP objects to Topic 24 in the Notice on the ground that as a State agency, MSP is not responsible for maintaining the database that tracks the number of firearms transfers in Maryland each year, including those by Atlantic Guns. MSP will produce records it is reasonably able to obtain from the Department of Public Safety and Correctional Services pertaining to this topic.

18.  MSP objects to Topic 25 in the Notice on the ground that it is overly broad, unduly burdensome, and not proportionate to the needs of the case because it would require an exhaustive, time-consuming and burdensome search of MSP records and the production of

6

documents in an unreasonably short time frame and amounts to an end run around the discovery rules.   Under the direction of Col. Pallozzi, and in response to discovery propounded on him in his official capacity as Superintendent of MSP, MSP has already undergone an exhaustive search of records in response to the 30 requests for the production of documents served on him in his official capacity, the maximum number permitted under L.R. 104.1, and the 25 Interrogatories served on him in his official capacity, the maximum number permitted under Rule 33(a)(1). MSP will not be producing a witness to testify as to this topic.

19.   MSP objects to Topic 30 in the Notice to the extent it seeks communications that are protected by attorney-client, deliberative process, or work-product privileges.   MSP further objects on the ground that it is overly broad, unduly burdensome, and not proportionate to the needs of the case because it would require an exhaustive search of MSP records and the production of documents in an unreasonably short time frame and amounts to an end run around the discovery rules.   Under the direction of Col. Pallozzi, and in response to discovery propounded on him in his capacity as Superintendent of MSP, MSP has already undergone an exhaustive search of records in response to the 30 requests for the production of documents served on him in his official capacity, the maximum number permitted under L.R. 104.1, and the 25 Interrogatories served on him in his official capacity, the maximum number permitted under Rule 33(a)(1). MSP further objects on the ground that the term "the HQL's effect on the purchase and acquisition of handguns in Maryland" is vague, undefined and ambiguous. MSP further objects on the ground that the

information sought is not relevant to any party's claims or defenses. MSP will not be producing a witness to testify as to this topic.

20. MSP objects to Topic 31 in the Notice on the grounds that it is overly broad, unduly burdensome, and not proportionate to the needs of the case. MSP further objects because "the impact of the HQL on the purchase and acquisition of handguns" is vague and ambiguous, and concerns information more appropriately discoverable through expert discovery. MSP further objects because as a State agency it is not responsible for tracking the impact of the HQL on the purchase and acquisition of handguns. MSP further objects because this topic would require an exhaustive search of the MAFSS database, which is not maintained by MSP, in an unreasonably short time frame and amounts to an end run around the discovery rules. Under the direction of Col. Pallozzi, and in response to discovery propounded on him in his capacity as Superintendent of MSP, MSP has already undergone an exhaustive search of records in response to the 30 requests for the production of documents served on him in his official capacity, the maximum number permitted under L.R. 104.1, and the 25 Interrogatories served on him in his official capacity, the maximum number permitted under Rule 33(a)(1). MSP will not be producing a witness to testify as to this topic.

21. MSP objects to Topic 33 in the Notice on the ground that the term "individuals in Maryland who purchased handguns without being correctly identified" is vague and ambiguous. MSP further objects on the grounds that it is overly broad, unduly burdensome, and not proportionate to the needs of the case because it does not contain a time period, and because it would require an exhaustive search of MSP records and the production of

documents in an unreasonably short time frame and amounts to an end run around the discovery rules.   Under the direction of Col. Pallozzi, and in response to discovery propounded on him in his capacity as Superintendent of MSP, MSP has already undergone an exhaustive search of records in response to the 30 requests for the production of documents served on him in his official capacity, the maximum number permitted under L.R. 104.1, and the 25 Interrogatories served on him in his official capacity, the maximum number permitted under Rule 33(a)(1). MSP further objects on the ground that the testimony sought is not relevant to any party's claims or defenses. MSP will not be producing a witness to testify as to this topic.

22.   MSP objects to Topic 34 in the Notice on the ground that the term "individuals in Maryland who purchased handguns without being correctly identified" is vague and ambiguous.  MSP further objects on the grounds that it is overly broad, unduly burdensome, and not proportionate to the needs of the case because it would require an exhaustive search of MSP records and the production of documents in an unreasonably short time frame and amounts to an end run around the discovery rules.   Under the direction of Col. Pallozzi, and in response to discovery propounded on him in his capacity as Superintendent of MSP, MSP has already undergone an exhaustive search of records in response to the 30 requests for the production of documents served on him in his official capacity, the maximum number permitted under L.R. 104.1, and the 25 Interrogatories served on him in his official capacity, the maximum number permitted under Rule 33(a)(1). MSP further objects on the ground that the testimony sought is not relevant to any party's claims or defenses. MSP will not be producing a witness to testify as to this topic.

9

23. MSP objects to Topic 35 in the Notice on the ground that it is overly broad, unduly burdensome, and not proportionate to the needs of the case, because it seeks detailed information on tens of thousands of HQL applications disapproved by MSP based on the fingerprint background check. MSP records pertaining to HQL application disapprovals that could be located through a diligent search of MSP records have been produced in discovery by Col. Pallozzi. MSP will produce a witness who can testify generally as to the reasons for disapproval reflected in those documents and the benefits of the fingerprint background check both in processing HQL applications and detecting subsequent criminal activity that renders a licensee ineligible.

24. MSP objects to Topic 36 in the Notice to the extent it seeks information more appropriately discoverable through expert testimony.

25. MSP objects to Topic 38 in the Notice because it is overly broad, unduly burdensome, and not proportionate to the needs of the case, because it lacks a time frame and is not limited to specific actions taken by MSP.

26. MSP objects to Topic 39 in the Notice because it is overly broad, unduly burdensome, and not proportionate to the needs of the case, because it lacks a time frame and is not limited to specific actions taken by MSP.

27. MSP objects to Topic 40 in the Notice on the ground that it is overly broad, unduly burdensome, and not proportionate to the needs of the case because it seeks testimony on any instance in which an HQL requirement or element was waived, altered, amended, or changed for any individual or group of individuals dating back to October 2013. MSP records pertaining to this topic that could be located through a diligent search of MSP

10

records have been produced in discovery by Col. Pallozzi.   MSP will produce a witness who can testify generally about how MSP responds to requests to waive, alter, amend, or change an HQL requirement or element.

28.   MSP objects to Topic 41 in the Notice on the ground that it is overly broad, unduly burdensome, and not proportionate to the needs of the case because it seeks testimony on any requests for special accommodations of any type in connection with the HQL requirement dating back to October 2013.   MSP records pertaining to this topic that could be located through a diligent search of MSP records have been produced in discovery by Col. Pallozzi.   MSP will produce a witness who can testify generally about how MSP responds to requests for special accommodations in connection with the HQL requirement.

29.   MSP objects to Topic 42 in the Notice to the extent it seeks communications that are protected by attorney-client, deliberative process, or work-product privileges.   MSP further objects on the ground that it is overly broad, unduly burdensome, and not proportionate to the needs of the case because it would require an exhaustive search of MSP records and the production of documents in an unreasonably short time frame and amounts to an end run around the discovery rules.   Under the direction of Col. Pallozzi, and in response to discovery propounded on him in his capacity as Superintendent of MSP, MSP has already undergone an exhaustive search of records in response to the 30 requests for the production of documents served on him in his official capacity, the maximum number permitted under L.R. 104.1, and the 25 Interrogatories served on him in his official capacity, the maximum number permitted under Rule 33(a)(1). MSP further objects on these grounds because there is no time limit.  MSP further objects on the ground that this

topic seeks testimony that is not relevant to any party's claim or defenses.  MSP will not produce a witness to testify as to this topic.

30.  MSP objects to Topics 44-52 in the Notice on the ground that MSP is not the State agency responsible for maintaining the MAFSS database and to the extent the topics seek information solely within the custody of the Maryland Department of Public Safety and Correctional Services.  MSP further objects on the ground that these topics are overly broad, unduly burdensome, and not proportionate to the needs of the case, because none of these topics contains a timeframe.  MSP further objects because the term "calculations performed within MAFSS or by MAFSS" in Topic 52 is vague and ambiguous.  MSP will produce a witness who will testify generally as to, since the implementation of the HQL requirement, who within MSP is responsible for entering data into MAFSS, the process by which MSP personnel enter data into MAFSS and request information from MAFSS, MSP personnel who have access to revise data once it is inputted into MAFSS, firearms categorizations within MAFSS, MSP efforts to ensure accuracy of the information entered into the MAFSS database, and any audits about which MSP has knowledge.

31.  MSP objects to Topic 53 in the Notice on the grounds that it is overly broad, unduly burdensome, and not proportionate to the needs of the case, because it would require an exhaustive search of MSP records and the production of documents in an unreasonably short time frame and amounts to an end run around the discovery rules.  Under the direction of Col. Pallozzi, and in response to discovery propounded on him in his capacity as Superintendent of MSP, MSP has already undergone an exhaustive search of records in response to the 30 requests for the production of documents served on him in his official

capacity, the maximum number permitted under L.R. 104.1, and the 25 Interrogatories served on him in his official capacity, the maximum number permitted under Rule 33(a)(1). MSP further objects because this topic seeks confidential information of the identity of individuals who submitted application information to MSP.   MSP further objects on the ground that this topic seeks testimony that is not relevant to any party's claims or defenses. MSP will not produce a witness to testify as to this topic.

32.   MSP objects to Topic 54 in the Notice on the grounds that it is overly broad, unduly burdensome, and not proportionate to the needs of the case, because it would require an exhaustive search of MSP records and the production of documents in an unreasonably short time frame and amounts to an end run around the discovery rules.  Under the direction of Col. Pallozzi, and in response to discovery propounded on him in his capacity as Superintendent of MSP, MSP has already undergone an exhaustive search of records in response to the 30 requests for the production of documents served on him in his official capacity, the maximum number permitted under L.R. 104.1, and the 25 Interrogatories served on him in his official capacity, the maximum number permitted under Rule 33(a)(1). MSP further objects because this deposition seeks confidential information of the identity of individuals who submitted applications information to MSP.   MSP further objects on the ground that this topic seeks testimony that is not relevant to any party's claims or defenses.  MSP will not produce a witness to testify as to this topic.

33.   MSP objects under Rule 45(d)(2)(B) to the Designation of Documents contained in Attachment B, which includes "All documents not previously produced that are responsive to the requests for production served on Defendant Col. Pallozzi in this matter"

and "All documents not previously produced that are related to the designated areas of testimony listed in Attachment A . . . ." MSP objects on the grounds that these designations are overly broad, unduly burdensome, and not proportionate to the needs of the case, because they seek all documents and would require an exhaustive search of MSP records and the production of documents in an unreasonably short time frame and amount to an end run around the discovery rules.  Under the direction of Col. Pallozzi, and in response to discovery propounded on him in his capacity as Superintendent of MSP, MSP has already undergone an exhaustive search of records in response to the 30 requests for the production of documents served on him in his official capacity, the maximum number permitted under L.R. 104.1, and the 25 Interrogatories served on him in his official capacity, the maximum number permitted under Rule 33(a)(1). MSP further objects on the ground that Col. Pallozzi, in his official capacity as Superintendent of MSP has stated various objections to producing MSP records in his responses to the requests for production of documents that have not been challenged by Atlantic Guns.  Col. Pallozzi, in his official role as Superintendent of MSP, has produced thousands of pages of records responsive to Atlantic Guns' requests for production of documents and Interrogatories, and MSP will not be producing additional documents at the organizational deposition.

BRIAN E. FROSH
Attorney General


/s/ Jennifer L. Katz
JENNIFER L. KATZ (Fed. Bar # 28973)
ROBERT A. SCOTT (Fed. Bar # 24613)
Assistant Attorney General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-7005 (tel.); 410-576-6955 (fax)
jkatz@oag.state.md.us

Dated: March 12, 2018                    Attorneys for Defendants

15

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 12th day of March, 2018, a copy of the foregoing

Maryland State Police's Objections to Rule 30(B)(6) Deposition Notice and

Accompanying Subpoena Duces Tecum was served by electronic mail on:

John Parker Sweeney, Esq. (JSweeney@bradley.com)
T. Sky Woodward, Esq. (SWoodward@bradley.com)
Bradley Arant Boult Cummings LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036

Cary J. Hansel (cary@hansellaw.com)
2514 N. Charles Street
Baltimore, MD 21218


_/s/ Jennifer L. Katz_____
Jennifer L. Katz

16

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MARYLAND SHALL ISSUE, INC., *et al.*,     \*

     *Plaintiffs,*               \*

     v.                       \*         Civil Case No. 16-cv-3311-MJG

LAWRENCE HOGAN, *et al.,*      \*

     *Defendants.*            \*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## DEFENDANT WILLIAM M. PALLOZZI'S ANSWERS TO PLAINTIFF ATLANTIC GUNS, INC.'S FIRST SET OF INTERROGATORIES

Defendant, William M. Pallozzi, by his attorneys, hereby responds as follows to Plaintiff Atlantic Guns, Inc.'s First Set of Interrogatories served upon him and states as follows:

A.      The word usage and sentence structure used in these answers is that of the attorneys who in fact prepared these answers and the language does not purport to be the exact language of the executing party.

B.      The Interrogatories have been interpreted and answered in accordance with the Federal Rules of Civil Procedure.

C.      Defendant Col. Pallozzi expressly reserves the right to supplement these answers at a later date should it become necessary to do so.

## GENERAL OBJECTIONS

1.      Col. Pallozzi objects to every Interrogatory to the extent it seeks information and/or documents protected by the attorney-client and/or work product privileges.

EXHIBIT
7

2.      Col. Pallozzi objects to the extent that the Interrogatories, including subparts, exceed the number permitted under the Federal Rules of Civil Procedure.

3.      Col. Pallozzi objects to the extent the Interrogatories seek information in possession of parties other than Col. Pallozzi or the Maryland State Police ("MSP"). These answers are based solely on the knowledge and information in the possession of Col. Pallozzi and MSP, and not on knowledge or information possessed by any other person or entity.

4.      Subject to and without waiving the foregoing general objections, Col. Pallozzi responds to the Interrogatories as follows:

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:**      Identify the number of handgun transfers in Maryland each year from 2012 through 2016.

**ANSWER:**   Col. Pallozzi states that MSP does not maintain records of the number of handgun transfers each year in Maryland. Rather, MSP maintains records of the number of applications made to transfer regulated firearms in Maryland each year, and pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Col. Pallozzi is producing business from which this information can be derived at Bates range MSP000578-1089. Col. Pallozzi further states that MSP has requested data from the Maryland Automated Firearms Services System, maintained by the Maryland Department of Public Safety and Correctional Services, which tracks the number of handgun transfers that are not disapproved in

2

Maryland each year, and Col. Pallozzi will supplement this answer pursuant to Rule 26(e) of the Federal Rules of Civil Procedure when that data is received.

**INTERROGATORY NO. 2:**    Identify the number of handgun transfers disapproved in Maryland each year from 2012 through 2016, including the reasons for disapproval and the number of disapprovals for each reason.

**ANSWER:**   Col. Pallozzi objects to this interrogatory on the ground it is vague and ambiguous and seeks discovery of matters that are not relevant to any party's claims or defenses under Rule 26(b)(1), insofar as it seeks information about disapproval of regulated firearm transfers that have no relation to the HQL requirement that is the subject of this lawsuit.  Without waiving these objections, Col. Pallozzi states that MSP does not maintain records of the number of handgun transfers in Maryland that are disapproved each year.   Rather, MSP maintains records of the number of applications made to transfer regulated firearms that are disapproved, and pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Col. Pallozzi is producing business from which this information can be derived at Bates range MSP1090-1175.  Col. Pallozzi further states that the number of applications for regulated firearm transfers that were disapproved due to the applicant not having an HQL from 2012 through 2016 are as follows:  40 in 2014, 49 in 2015, and 7 in 2016.

**INTERROGATORY NO. 3:**    Identify the number of HQLs issued each year from 2013 through 2017.

3

**ANSWER:**   Pursuant to Rule 33(d) of the Federal Rule of Civil Procedure, Col. Pallozzi will produce business records from which the information sought by this interrogatory can be derived at Bates range MSP000578-1089.

**INTERROGATORY NO. 4:**      Identify the number of HQL applications denied each year from 2013 through 2017, including the reasons for any such denial, including the instances in which a person was denied an HQL solely because of information obtained from fingerprints.

**ANSWER:**   Pursuant to Rule 33(d) of the Federal Rule of Civil Procedure, Col. Pallozzi will produce business records from which the information sought by this interrogatory can be derived at Bates range MSP000578-1089, 1090-1167, 1176-1217.

**INTERROGATORY NO. 5:**      Identify the number of HQL applications not completed each year from 2013 through 2017.

**ANSWER:**   Col. Pallozzi objects to this interrogatory on the ground that the term "not completed" is undefined, vague and ambiguous.  Without waiving these objections, Col. Pallozzi states that MSP does not have this information within its possession.

**INTERROGATORY NO. 6:**      Identify   all   citizen   inquiries   into   the burden/difficulty in meeting HQL requirements.

**ANSWER:**   Col. Pallozzi objects to this interrogatory on the ground that it is overly broad, unduly burdensome and seeks information that is not proportionate to the needs of the case.  Col. Pallozzi also objects on the ground that this interrogatory does not contain a timeframe.  Without waiving his objections, Col. Pallozzi states that he will produce copies of written inquiries that the MSP received from citizens relating to the

4

burden/difficulty in meeting HQL requirements from October 1, 2013 to the present, if any, that can be located through a reasonably diligent search of MSP's records.

**INTERROGATORY NO. 7:** Identify the shortest, longest, and average amount of time to process an HQL application.

**ANSWER:** Col. Pallozzi objects to this interrogatory on the ground that it does not contain a timeframe and is therefore overly broad and unduly burdensome. Col. Pallozzi further objects on the ground that this interrogatory is vague and ambiguous. Without waiving his objections, Col. Pallozzi states that the amount of time it takes to process an HQL application is fact-dependent and varies based on a number of factors that can be associated with any given application, including but not limited to: an applicant providing the incorrect authorization code to a fingerprint vendor; awaiting transmission of fingerprints from the vendor to the Department of Public Safety and Correctional Services; awaiting an applicant's submission of certification of prior training for a training-exempt HQL application; the lack of a disposition listed on an applicant's criminal history for a potential disqualifying charge, and any follow-up investigation to determine that disposition; the number of applications received on a particular day; an applicant providing incorrect answers on an application; awaiting verification from a qualified handgun instructor that the applicant completed the necessary training; an applicant's incorrect submission of a qualified handgun instructor's verification code; among other factors.

Col. Pallozzi further states that HQL applications have been processed the same business day that they are received, and that MSP has complied with the statutory provision that the processing period not exceed 30 days.

5

**INTERROGATORY NO. 8:**     Identify the shortest, longest, and average amount of time to notify an applicant of HQL approval.

**ANSWER:**  Col. Pallozzi objects to this interrogatory on the ground that it does not contain a timeframe and is therefore overly broad and unduly burdensome.  Col. Pallozzi further objects on the ground that this interrogatory is vague and ambiguous. Without waiving his objections, Col. Pallozzi states that, generally, once an application is approved, the HQL is printed within 24 hours of the approval, and the HQL is placed in the mail to the applicant within 24 hours of printing.

**INTERROGATORY NO. 9:**     Identify the cost of processing each HQL application.

**ANSWER:**  Col. Pallozzi objects on the ground that this interrogatory does not contain a timeframe.  Without waiving his objection, Col. Pallozzi states that the current cost of processing each HQL application is at least $51.34.   Col. Pallozzi further states that this cost accounts for the salaries, benefits, and overtime costs to employ the civilian and sworn personnel who process HQL applications, and the materials required to create an HQL, including the cards, printers, ink, and laminate. Col. Pallozzi further states that this cost figure does not take into account the salary and benefits of MSP Command staff who routinely deal with HQL issues; the computers and computer software used to process the applications; equipment for sworn personnel, including vehicles, fuel, and other costs; and infrastructure costs related to MSP's Licensing Division, including building expenses, electricity, and telephone service, among other expenses.  Factoring in these other costs, the cost of processing each HQL exceeds $51.34

6

**INTERROGATORY NO. 10:** Identify all individuals involved in the MSP decision to set the HQL application fee at $50.00, and any documents related to the $50.00 application fee requirement, and state the reasons for that decision.

**ANSWER:** Col. Pallozzi objects to this interrogatory to the extent it seeks information protected by the deliberate process privilege or attorney-client privilege. Without waiving those objections, Col. Pallozzi identifies former Director of MSP's Planning and Research Division, Thomas Williams; former Assistant Commander of MSP's Licensing Division, Lt. John Cook; and former MSP Fiscal Impact Analyst, Sgt. Graham Lange. Col. Pallozzi further states that the decision to set the HQL application fee at $50.00 was based on a fiscal analysis that was performed to prepare the Fiscal Note Summary for the Firearm Safety Act, showing that the estimated cost to process an HQL application was in excess of $50.00 and is being produced at Bates range MSP001228-1289.

**INTERROGATORY NO. 11:** Identify all requests from citizens to accept alternative means of payment for the HQL application fee other than credit or debit card, and whether MSP accepted alternative means of payment, such as cash, check, or money order.

**ANSWER:** Col. Pallozzi objects to this interrogatory on the ground that it is overly broad, unduly burdensome and seeks information that is not proportionate to the needs of the case. Col. Pallozzi also objects on the ground that this interrogatory does not contain a timeframe. Without waiving his objections, Col. Pallozzi states that he will produce copies of written inquiries that the MSP received from citizens from October 1,

7

2013 to the present to accept alternative means of payment for the HQL application fee other than credit or debit card that can be located through a reasonably diligent search of MSP's records. Col. Pallozzi further states that MSP does not accept alternative means of payment for the HQL application fee other than credit or debit card. Col. Pallozzi further states that to the best of his knowledge all of the individuals who have attempted to pay for the HQL application fee using alternate means of payment, of which he is aware, ultimately submitted electronic applications along with payment by credit or debit card for the application fee.

**INTERROGATORY NO. 12:** Identify all requests from citizens to waive the HQL's Maryland driver's license identification requirement, and whether MSP accepted alternative forms of identification, such as a Maryland non-driver identification card.

**ANSWER:** Col. Pallozzi objects to this interrogatory on the ground that the term "HQL's Maryland driver's license identification requirement" is undefined, vague and ambiguous. Without waiving his objections, Col. Pallozzi states that there is no statutory requirement that an individual possess a Maryland driver's license to obtain an HQL, and that COMAR 29.03.01.28 requires that the HQL application shall include the applicant's "driver's license or photographic identification soundex number."

**INTERROGATORY NO. 13:** Identify the location, availability (in hours), and cost of all Law Enforcement fingerprinting services, and state which of these are open to members of the public to use for an HQL application.

**ANSWER:** The MSP does not have this information in its possession, but does provide a link on its website to the Maryland Department of Public Safety & Correctional

8

Services' webpage that lists fingerprinting service providers throughout the State. *See* http://mdsp.maryland.gov/Organization/Pages/CriminalInvestigationBureau/LicensingDivision/Fingerprinting.aspx.

**INTERROGATORY NO. 14:** Identify how MSP uses and/or disseminates fingerprints received with HQL applications, and whether, when, and how the fingerprint data is destroyed.

**ANSWER:** Col. Pallozzi objects to this interrogatory on the ground that the term "fingerprint data" is undefined, vague and ambiguous. Without waiving his objections, Col. Pallozzi states that the MSP does not receive or disseminate fingerprints in connection with HQL applications. Rather, MSP receives the State or federal identification number that corresponds with an individual's fingerprints and uses that data to conduct a background investigation prior to issuance of an HQL. MSP also generates regular reports using the State or federal identification numbers that correspond with licensees' fingerprints to determine whether a licensee is subsequently convicted of a disqualifying offense after obtaining an HQL.

**INTERROGATORY NO. 15:** Identify all requests from citizens to waive or reimburse fees for HQL applications, fingerprinting, and/or Firearms Safety Course training requirements.

**ANSWER:** Col. Pallozzi objects to this interrogatory on the ground that it is overly broad, unduly burdensome and seeks information that is not proportionate to the needs of the case. Col. Pallozzi also objects on the ground that this interrogatory does not contain a timeframe. Without waiving his objections, Col. Pallozzi states that he will

produce copies of written inquiries that the MSP received from citizens from October 1, 2013 to the present to waive or reimburse fees for HQL applications, fingerprinting, and/or Firearms Safety Course training requirements, if any, that can be located through a reasonably diligent search of MSP's records.

**INTERROGATORY NO. 16:** Identify applications submitted in person, on paper, or otherwise non-electronically, for each year from 2013 through 2017 and state the ultimate disposition of the applications.

**ANSWER:** MSP does not accept HQL applications in non-electronic form. Col. Pallozzi states that an applicant may apply in-person at MSP's Licensing Division located at 1111 Reisterstown Road, Pikesville, Maryland, 21208, by using a computer located there to prepare and submit the electronic application, but that MSP does not track the number of applications submitted in this manner. Col. Pallozzi further states that he is producing copies of written correspondence with individuals who attempted to submit paper copies and/or payment by personal check or money order at Bates range MSP001290-1411. Col. Pallozzi further states that to the best of his knowledge, all of the individuals who have attempted to submit paper copies of the HQL application and/or pay for the initial HQL application fee by personal check or money order, of which he is aware, ultimately submitted electronic applications. The disposition of these applications is as follows: 2 were approved in 2014; 1 was approved in 2015; 6 were approved in 2016 and 1 was denied in 2016 due to the applicant's criminal record; 2 were approved in 2017.

**INTERROGATORY NO. 17:** Identify all requests from citizens to waive the fingerprinting, Firearms Safety Course training, and/or "Live Fire" requirements.

**ANSWER:**  Col. Pallozzi objects to this interrogatory on the ground that it is overly broad, unduly burdensome and seeks information that is not proportionate to the needs of the case.  Col. Pallozzi also objects on the ground that this interrogatory does not contain a timeframe.  Without waiving his objections, Col. Pallozzi states that he will produce copies of written inquiries that the MSP received from citizens from October 1, 2013 to the present to waive the fingerprinting, Firearms Safety Course training, and/or "Live Fire" requirements, if any, that can be located through a reasonably diligent search of MSP's records.

**INTERROGATORY NO. 18:** Identify any and every instance a Firearms Safety Course instructor failed to provide verification to support an HQL application.

**ANSWER:**  Col. Pallozzi objects to this interrogatory on the ground that it is overly broad, unduly burdensome and seeks information that is not proportionate to the needs of the case.  Col. Pallozzi also objects on the ground that this interrogatory does not contain a timeframe.  Without waiving his objections, Col. Pallozzi states that the MSP does not have this information in its possession.

**INTERROGATORY NO. 19:** Identify all individuals involved in the MSP decision to require "Live Fire" training and any documents related to the "Live Fire" requirement, and state the reasons for that decision.

**ANSWER:**  Col. Pallozzi objects to the extent this interrogatory to the extent it seeks information protected by the deliberative process privilege or attorney-client privilege.  Without waiving these objections, Col. Pallozzi identifies former Director of MSP's Planning and Research Division, Thomas Williams; and former Assistant

11

Commander of MSP's Licensing Division, Lt. John Cook. Col. Pallozzi further states that the decision to require "Live Fire" training arose from the statutory requirement that applicants receive firearms safety training that includes "a firearms orientation component that demonstrates the person's safe operation and handling of a firearm," such that completing one round of live fire is a demonstration of the applicant's basic orientation in the operation of a firearm.

**INTERROGATORY NO. 20:** Identify any public safety advancement identified by MSP obtained through each of the HQL-specific requirements of fingerprinting, Firearms Safety Course training, "Live Fire" requirement, and Maryland driver's license identification requirement.

**ANSWER:** Col. Pallozzi objects to this interrogatory on the ground that the term "public safety advancement" is undefined, vague and ambiguous. Col. Pallozzi further objects because there is no requirement that an applicant have a Maryland driver's license to obtain an HQL. In addition, Col. Pallozzi objects to this interrogatory because "contention interrogatories are more appropriate after a substantial amount of discovery has been conducted." *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 110 (D.N.J. 1990); *see also In re Convergent Techs. Secs. Litig.*, 108 F.R.D. 328, 336 (N.D. Cal. 1985) ("the wisest general policy is to defer propounding and answering contention interrogatories until near the end of the discovery period."). Discovery (fact and expert) is not complete, and therefore, Col. Pallozzi reserves the right to rely on any legal theories, facts, documents, testimony, or evidence which may come to light during fact and expert discovery.

12

Subject to and without waiving his objections, Col. Pallozzi states that the HQL-specific requirements of fingerprinting, Firearms Safety Course training, and "Live Fire" promote public safety by, among other things, reducing the likelihood that an individual prohibited from possessing a firearm will gain access to handguns; enhancing and promoting safe handling, operation, and storage of handguns and other firearms owned or possessed by those who have undergone the training and live fire requirements; and thereby reducing the incidence of accidental and/or intentional injury and death caused by improper use of handguns and other firearms and reducing the use of firearms in criminal activity.

Col. Pallozzi further states that Maryland's requirement that HQL applicants obtain a set of fingerprints for purposes of conducting enhanced background checks substantially serves the State's interest in promoting public safety by making it more difficult for a prohibited person to obtain access to a firearm. *See Heller v. District of Columbia*, 801 F.3d 264, 276-77 (D.C. Cir. 2015) ("*Heller III*") (holding the District could reasonably conclude that the fingerprint requirement would "advance public safety by preventing at least some ineligible individuals from obtaining weapons"). Robust background checks animate the State's policy of keeping firearms out of the possession of felons, a "presumptively lawful" and longstanding firearms restriction. *District of Columbia v. Heller*, 554 U.S. 570, 626-27 & n.26 (2008) ("*Heller I*"). Further, "background checks using fingerprints are more reliable than background checks conducted without fingerprints, which are more susceptible to fraud." *Heller III*, 801 F.3d at 276. An investigation conducted by the U.S. General Accounting Office ("GAO") revealed that undercover agents using counterfeit driver's licenses succeeded, without exception, in

13

purchasing firearms from federally-licensed firearms dealers. *Id.* The report "concluded that federal background checks conducted by the firearm dealers [without fingerprinting] 'cannot ensure that the prospective purchaser is not a felon or other prohibited person whose receipt and possession of a firearm would be unlawful.'" *Id.* (quoting GAO–01–427, Firearms Purchased from Federal Firearm Licensees Using Bogus Identification 2 (2001)).

The State's interest in promoting public safety is particularly acute when it comes to keeping handguns out of the hands of criminals. Handguns are the firearms most frequently used by criminals in Maryland. *Woollard v. Gallagher*, 712 F.3d 865, 877 (4th Cir.), *cert. denied*, 134 S. Ct. 422 (2013). According to data collected by the FBI, there were 430 murders in Maryland in 2016, 328 of which involved a firearm. Of those 328, 309 involved handguns. Federal Bureau of Investigation, 2016 Crime in the United States, Table 12, Murder by State, Types of Weapons, 2016, *available at* https://ucr.fbi.gov/crime-in-the-u.s/2016/crime-in-the-u.s.-2016/tables/table-12 (last visited December 19, 2017). Thus, murders with handguns comprised more than 94% of murders with firearms and more than 71% of all murders in Maryland. *Id.*

Further, empirical studies of the effects of laws that require individuals to obtain a license to purchase a firearm and pass a background check based on fingerprints have found that these laws are associated with a reduction in the flow of guns to criminals.[1] A study

---

[1] Daniel Webster *et al.*, *Preventing the Diversion of Guns to Criminals through Effective Firearm Sales Laws*, in *Reducing Gun Violence in America: Informing Policy with Evidence and Analysis* 109-22 (Webster, *et al.*, eds., Johns Hopkins Univ. Press 2013).

of Connecticut's law – which includes requirements for enhanced background checks with fingerprints and completion of an approved handgun safety course, Conn. Gen. Stat. § 29-36(f), (g) – found that the licensing requirement to purchase a firearm was associated with a statistically significant reduction in Connecticut's firearm homicide rates during the first decade that the law was in place, with no similar reduction in non-firearm homicides.[2]

Similarly supportive is the experience of Missouri, which went in the opposite direction after it repealed its handgun licensing requirement. After repeal, firearm-related homicide rates increased abruptly, with no similar increase in surrounding states or the nation, and the state experienced an increase in the percentage of crime guns recovered by police that had been originally sold by in-state retailers.[3] Studies of Missouri's and Connecticut's experiences also have found the presence of firearm licensing laws to be associated with lower rates of firearm-related suicides.[4]

Further, common sense supports the General Assembly's conclusion that Maryland's requirement that HQL applicants receive training in the proper and safe operation, handling, and storage of a handgun, will lead to a decrease in accidental deaths by firearm. Handguns are necessarily and purposely dangerous, and requiring minimal training in how to avoid unintended harm from their ownership promotes public safety.

---

[2] Kara E. Rudolph, *et al.*, *Association Between Connecticut's Permit-to-Purchase Handgun Law and Homicides*, 105 Am. J. of Public Health 8, e49 (Aug. 2015).

[3] Daniel Webster, *et al.*, *Effects of the Repeal of Missouri's Handgun Purchaser Licensing Law on Homicides*, 91 J. of Urban Health 2, 293 (2014).

[4] Cassandra K. Crifasi, *et al.*, *Effects of Changes in Permit-to-Purchase Handgun Laws in Connecticut and Missouri on Suicide Rates*, 79 Preventive medicine 43 (2015).

*See Heller III*, 801 F.3d at 278-79 (holding District's mandatory firearms safety training was constitutional based on the District's presentation of "substantial evidence from which it could conclude that training in the safe use of firearms promotes public safety by reducing accidents involving firearms"). Indeed, in Maryland, law enforcement officers are required to receive extensive training on the operation, handling, and storage of handguns, including in the home. *See* COMAR 12.04.02.03 − .05; 12.04.02.03.10(D). These longstanding training requirements strongly support the utility of the relatively brief, four hours of training that civilian handgun purchasers must receive. *See Heller III*, 801 F.3d at 279 & n.3 (relying on "anecdotal evidence showing the adoption of training requirements 'in most every law enforcement profession that requires the carrying of a firearm' and a professional consensus in favor of safety training"). Given the popularity of handguns for in-home self-defense, *see Heller I*, 554 U.S. at 628, and the potential dangers that arise when handguns are improperly stored or handled in the home, Maryland's requirement of a four-hour training course bolsters the State's goal of reducing firearm-related deaths.

Col. Pallozzi further states that the public safety benefits of the HQL requirements are the subject of testimony supporting the Firearms Safety Act before the General Assembly, and are discussed in the academic journal articles and other documents that are being produced in discovery.

**INTERROGATORY NO. 21:** Identify all requests from citizens to define, explain, or clarify "Receive" or "Receipt" received by MSP.

**ANSWER:** Col. Pallozzi objects to this interrogatory on the ground that it is overly broad, unduly burdensome and seeks information that is not proportionate to the needs of the case. Col. Pallozzi also objects on the ground that this interrogatory does not contain a timeframe. Without waiving his objections, Col. Pallozzi states that he will produce copies of written inquiries that the MSP received from citizens from October 1, 2013 to the present to define, explain, or clarify "Receive" or "Receipt," if any, that can be located through a reasonably diligent search of its records.

**INTERROGATORY NO. 22:** Identify all arrests and disposition of any charges for an illegal "Receipt."

**ANSWER:** Col. Pallozzi objects to this interrogatory on the ground that it is vague, overly broad, unduly burdensome, and seeks information that is not relevant to any party's claim or defense in this action, nor proportionate to the needs of the case. Without waiving these objections, Col. Pallozzi states that he is not aware of any arrest or disposition of any charges arising solely from a violation of the law requiring that an individual, not otherwise prohibited from possessing a firearm, obtain an HQL prior to receiving or being in receipt of a handgun.

**INTERROGATORY NO. 23:** Identify all arrests and disposition of any charges for false statements on an HQL application or Form 77R, or for "straw purchase" of a handgun.

**ANSWER:** Col. Pallozzi objects to this interrogatory on the ground that it is overly broad, unduly burdensome, contains no timeframe, and seeks information that is not relevant to any party's claim or defense in this action, nor proportionate to the needs of the

17

case. Without waiving these objections, Col. Pallozzi states that pursuant to Rule 33(d) of the Federal Rule of Civil Procedure, he will produce business records from which the information sought by this interrogatory can be derived at Bates range MSP001437-1492.

**INTERROGATORY NO. 24:** Identify any deterrent effect of the HQL fingerprinting requirement to an individual attempting to make a "straw purchase" of a handgun identified by MSP.

**ANSWER:** Col. Pallozzi objects to this interrogatory as unduly burdensome to the extent that it seeks the premature disclosure of expert witness materials in violation of the Court's scheduling order. In addition, Col. Pallozzi objects to this interrogatory because "contention interrogatories are more appropriate after a substantial amount of discovery has been conducted." *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 110 (D.N.J. 1990); *see also In re Convergent Techs. Secs. Litig.*, 108 F.R.D. 328, 336 (N.D. Cal. 1985) ("the wisest general policy is to defer propounding and answering contention interrogatories until near the end of the discovery period."). Discovery (fact and expert) is not complete, and therefore, Col. Pallozzi reserves the right to rely on any legal theories, facts, documents, testimony, or evidence which may come to light during fact and expert discovery.

Subject to and without waiving these objections, Col. Pallozzi states that evidence and experience of law enforcement personnel demonstrates that by requiring potential handgun purchasers to undergo a fingerprint background check they are less willing to act as a straw purchaser, thus reducing the incidence of straw purchases. Col. Pallozzi further

identifies testimony supporting the Firearms Safety Act before the General Assembly, and the academic journal articles and other documents that are being produced in discovery.

**INTERROGATORY NO. 25:** Identify each and every reason and fact relied upon by you to support the utility of each of the HQL requirements in promoting public safety and reducing the negative effects of firearms violence.

**ANSWER:** Col. Pallozzi objects to this interrogatory as unduly burdensome to the extent that it seeks the premature disclosure of expert witness materials in violation of the Court's scheduling order. In addition, Col. Pallozzi objects to this interrogatory because "contention interrogatories are more appropriate after a substantial amount of discovery has been conducted." *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 110 (D.N.J. 1990); *see also In re Convergent Techs. Secs. Litig.*, 108 F.R.D. 328, 336 (N.D. Cal. 1985) ("the wisest general policy is to defer propounding and answering contention interrogatories until near the end of the discovery period."). Discovery (fact and expert) is not complete, and therefore, Col. Pallozzi reserves the right to rely on any legal theories, facts, documents, testimony, or evidence which may come to light during fact and expert discovery.

Subject to and without waiving these objections, Col. Pallozzi refers to his answers to Interrogatories 20 and 24. Col. Pallozzi further identifies the testimony supporting the Firearms Safety Act before the General Assembly, and the academic journal articles and other documents that are being produced in discovery.

19

BRIAN E. FROSH
Attorney General

/s/ Jennifer L. Katz
JENNIFER L. KATZ (Fed. Bar # 28973)
ROBERT A. SCOTT (Fed. Bar # 24613)
Assistant Attorney General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-7005 (tel.); 410-576-6955 (fax)
jkatz@oag.state.md.us

Dated: December 29, 2017                    Attorneys for Defendants

## **VERIFICATION**

I, Col. William M. Pallozzi hereby execute these answers to interrogatories in my official capacity as Superintendent of the Maryland State Police. Some of the information set forth in these answers was collected by others and such information is not necessarily within my personal knowledge. However, in my official capacity, I solemnly affirm under the penalties of perjury that the foregoing Answers to Interrogatories are true to the best of my knowledge, information and belief.

_12/29/17_
Date

_Wm. Pallozzi_
Signature

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 29th day of December, 2017, a copy of the

foregoing Defendant's Responses to Interrogatories was sent by first class mail, postage

pre-paid, and e-mail to:

Cary J. Hansel (cary@hansellaw.com)
2514 N. Charles Street
Baltimore, MD 21218

John Parker Sweeney, Esq. (JSweeney@bradley.com)
T. Sky Woodward, Esq. (SWoodward@bradley.com)
Bradley Arant Boult Cummings LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036

_____
Robert A. Scott

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

MARYLAND SHALL ISSUE, INC., *et al.*,   *

    *Plaintiffs,*   *

    v.   *       Civil Case No. 16-cv-3311-MJG

LAWRENCE HOGAN, *et al.,*   *

    *Defendants.*   *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**DEFENDANT WILLIAM M. PALLOZZI'S SUPPLEMENTAL ANSWERS TO
PLAINTIFF ATLANTIC GUNS, INC.'S FIRST SET OF INTERROGATORIES**

    Defendant, William M. Pallozzi, by his attorneys, hereby supplements his responses to Plaintiff Atlantic Guns, Inc.'s First Set of Interrogatories and states as follows:

    A.    The word usage and sentence structure used in these answers is that of the attorneys who in fact prepared these answers and the language does not purport to be the exact language of the executing party.

    B.    The Interrogatories have been interpreted and answered in accordance with the Federal Rules of Civil Procedure.

    C.    Defendant Col. Pallozzi expressly reserves the right to supplement these answers at a later date should it become necessary to do so.

## GENERAL OBJECTIONS

    1.    Col. Pallozzi objects to every Interrogatory to the extent it seeks information and/or documents protected by the attorney-client and/or work product privileges.

**EXHIBIT
8**

2.      Col. Pallozzi objects to the extent that the Interrogatories, including subparts, exceed the number permitted under the Federal Rules of Civil Procedure.

3.      Col. Pallozzi objects to the extent the Interrogatories seek information in possession of parties other than Col. Pallozzi or the Maryland State Police ("MSP"). These answers are based solely on the knowledge and information in the possession of Col. Pallozzi and MSP, and not on knowledge or information possessed by any other person or entity.

4.      Subject to and without waiving the foregoing general objections, Col. Pallozzi responds to the Interrogatories as follows:

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 5:**      Identify the number of HQL applications not completed each year from 2013 through 2017.

**ANSWER:**   Col. Pallozzi objects to this interrogatory on the ground that the term "not completed" is undefined, vague and ambiguous.  Without waiving these objections, Col. Pallozzi states that MSP does not have this information within its possession.

**SUPPLEMENTAL ANSWER:**  In response to Atlantic Guns' clarification that this interrogatory seeks "information on the number of HQL applications which were started in the MSP system . . . but were never submitted as final to the MSP," Col. Pallozzi objects to this interrogatory on the grounds that it seeks information that is not relevant to any party's claims or defenses under Rule 26(b)(1) nor proportional to the needs of the case, and is overly broad and unduly burdensome.  In support of these objections,

2

Col. Pallozzi states that although this information is not currently tracked by MSP, it would be possible for the Licensing Division's information technology personnel to capture the raw number of applications that have been initiated through MSP's website and the raw number of applications that have been submitted as final.  Given the large number of applications on the server, it would take approximately one week to 10 days just to capture this raw data.  Moreover, this raw data would not indicate whether an applicant who initiated an application that has not yet been submitted as final intends to submit the application in the future.  Further, because an application cannot be deleted once it has been initiated, this raw data would not indicate if an applicant began one type of application (a standard application, a training-exempt application, or a permit-exempt application) and then began another type of application, thus never submitting the initial application.  Nor would this raw data indicate why an application was initiated but not submitted as final.

**INTERROGATORY NO. 7:** Identify the shortest, longest, and average amount of time to process an HQL application.

**ANSWER:**  Col. Pallozzi objects to this interrogatory on the ground that it does not contain a timeframe and is therefore overly broad and unduly burdensome.  Col. Pallozzi further objects on the ground that this interrogatory is vague and ambiguous. Without waiving his objections, Col. Pallozzi states that the amount of time it takes to process an HQL application is fact-dependent and varies based on a number of factors that can be associated with any given application, including but not limited to: an applicant providing the incorrect authorization code to a fingerprint vendor; awaiting transmission of fingerprints from the vendor to the Department of Public Safety and Correctional

3

Services; awaiting an applicant's submission of certification of prior training for a training-exempt HQL application; the lack of a disposition listed on an applicant's criminal history for a potential disqualifying charge, and any follow-up investigation to determine that disposition; the number of applications received on a particular day; an applicant providing incorrect answers on an application; awaiting verification from a qualified handgun instructor that the applicant completed the necessary training; an applicant's incorrect submission of a qualified handgun instructor's verification code; among other factors.

Col. Pallozzi further states that HQL applications have been processed the same business day that they are received, and that MSP has complied with the statutory provision that the processing period not exceed 30 days.

**SUPPLEMENTAL ANSWER:** In response to plaintiff's clarification that this request seeks "information on the amount of time for processing once an application for an HQL has been submitted to MSP," Col. Pallozzi objects to this interrogatory on the grounds that it seeks information that is not relevant to any party's claims or defenses under Rule 26(b)(1) nor proportional to the needs of the case, and is overly broad and unduly burdensome. In support of these objections, Col. Pallozzi further states that other than each Licensing Division employee who processes applications ensuring that HQL applications are processed within the 30-day statutory time period, MSP does not track the amount of time it takes to process each individual application nor does it track the average amount of time to process HQL applications. In order to collect this information retrospectively, it would require an examination of each individual application, of which there have been more than 90,000, to determine the amount of time that elapsed between the date the

application was received by MSP and the date that application was approved or disapproved in order to then calculate the average time across all of the applications processed by MSP. Further, given the 30-day statutory period for processing HQL applications and that the processing of each HQL application is subject to the myriad factors listed above, the average time to process an HQL is not relevant to any party's claim or defense in this case.

**INTERROGATORY NO. 9:**     Identify the cost of processing each HQL application.

**ANSWER:**  Col. Pallozzi objects on the ground that this interrogatory does not contain a timeframe. Without waiving his objection, Col. Pallozzi states that the current cost of processing each HQL application is at least $51.34.  Col. Pallozzi further states that this cost accounts for the salaries, benefits, and overtime costs to employ the civilian and sworn personnel who process HQL applications, and the materials required to create an HQL, including the cards, printers, ink, and laminate. Col. Pallozzi further states that this cost figure does not take into account the salary and benefits of MSP Command staff who routinely deal with HQL issues; the computers and computer software used to process the applications; equipment for sworn personnel, including vehicles, fuel, and other costs; and infrastructure costs related to MSP's Licensing Division, including building expenses, electricity, and telephone service, among other expenses. Factoring in these other costs, the cost of processing each HQL exceeds $51.34

**SUPPLEMENTAL ANSWER:** Without waiving his objection stated above, Col. Pallozzi states that the current cost of processing each HQL application is at least $50.49.

5

By way of further explanation, Col. Pallozzi states that the majority of this cost accounts for the salaries, benefits, and overtime costs to employ the civilian and sworn personnel who process HQL applications. As identified in MSP001518, the annual total cost of compensation for sworn and civilian personnel in the HQL section of MSP's Licensing Division is $1,158,136.84. As identified in MSP003193-96, in 2017, MSP received 23,888 HQL applications, of which only 566 were disapproved. Dividing the total cost of compensation for HQL personnel by the total number of processed applications, the average cost to review each HQL application is $48.48. Further, as identified in MSP003197, the cost to produce each HQL is $2.06, which accounts for the costs of the cards, printers, ink, and laminate, and amounted to approximately $48,043 to process the 23,322 non-disapproved HQL applications in 2017. Spreading that cost of production over the total number of applications received, the production cost approximates $2.01 per HQL application. Accounting solely for the HQL personnel and card production costs, the cost per HQL in 2017 was at least $50.49. Col. Pallozzi further states that this cost figure does not take into account the salary and benefits of MSP Command staff who routinely deal with HQL issues; the computers and computer software used to process the applications; equipment for sworn personnel, including vehicles, fuel, and other costs; and infrastructure costs related to MSP's Licensing Division, including building expenses, electricity, and telephone service, among other expenses. Factoring in these other costs, the cost of processing each HQL exceeds $50.49.

BRIAN E. FROSH
Attorney General


/s/ Jennifer L. Katz
JENNIFER L. KATZ (Fed. Bar # 28973)
ROBERT A. SCOTT (Fed. Bar # 24613)
Assistant Attorney General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-7005 (tel.); 410-576-6955 (fax)
jkatz@oag.state.md.us

Dated: February 20, 2018                    Attorneys for Defendants

## VERIFICATION

I, Col. William M. Pallozzi hereby execute these supplemental answers to interrogatories in my official capacity as Superintendent of the Maryland State Police. Some of the information set forth in these answers was collected by others and such information is not necessarily within my personal knowledge.  However, in my official capacity, I solemnly affirm under the penalties of perjury that the foregoing Answers to Interrogatories are true to the best of my knowledge, information and belief.

2/20/18
Date

Signature

8

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 20th day of February, 2018, a copy of the foregoing Defendant's Supplemental Responses to Interrogatories was sent by electronic mail to:

John Parker Sweeney, Esq. (JSweeney@bradley.com)
T. Sky Woodward, Esq. (SWoodward@bradley.com)
Bradley Arant Boult Cummings LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036

Cary J. Hansel (cary@hansellaw.com)
2514 N. Charles Street
Baltimore, MD 21218


___/s/ Jennifer L. Katz_____
Jennifer L. Katz