# EXHIBIT 4

United States General Accounting Office

# GAO

The Honorable Henry A. Waxman,
Ranking Minority Member, Committee on
Government Reform, House of
Representatives

March 2001

# FIREARMS

# Purchased From Federal Firearm Licensees Using Bogus Identification





GAO-01-427

MSP000314

MSP000315



**United States General Accounting Office**
**Washington, D.C. 20548**

March 19, 2001

The Honorable Henry A. Waxman
Ranking Minority Member
Committee on Government Reform
House of Representatives

Dear Mr. Waxman:

This report responds to your request and subsequent conversations with your office that we conduct an investigation that demonstrates the difficulty that law enforcement officials have in preventing the illegal purchase of firearms. The Brady Handgun Violence Prevention Act of 1993[1] required the Attorney General of the United States to establish the National Instant Criminal Background Check System, known as NICS. Referred to as an instant background check, NICS is a computerized system operated by the Federal Bureau of Investigation (FBI). Based on inquiries from federal firearm licensees (FFL),[2] NICS searches the backgrounds of prospective firearm purchasers for criminal or other information that would disqualify them from purchasing firearms.

Specifically, you asked that we attempt to purchase firearms, acting in an undercover capacity and using counterfeit identification, in states that rely on the instant background check and do not require fingerprinting or a waiting period[3] for such purchases. In addition, you requested that we determine how easily firearms can be purchased using the Internet.

The five states that we selected to purchase firearms in—Virginia, West Virginia, Montana, New Mexico, and Arizona—conformed to the Brady Act's minimum requirements, relying on an instant background check. They do not have additional requirements for fingerprinting or waiting periods. Some other states impose such requirements for purchasing

---

[1] 18 U.S.C. § 922(t).

[2] A federal firearm licensee (FFL) is a person licensed by the Bureau of Alcohol, Tobacco and Firearms (ATF) as a manufacturer, dealer, or importer of firearms. 28 C.F.R. § 25.2.

[3] A waiting period generally refers to the period of time between the date an individual applies to purchase a firearm and the date the individual is allowed to take delivery of it.

MSP000316

firearms in addition to those of the Brady Act. These requirements include, among others, the successful completion of firearm safety or training courses, approval of license applications by the local police commissioners or chiefs of police, waiting periods as long as 2 weeks, and fingerprinting.

To address your concerns, we created counterfeit state driver's licenses for the five states with fictitious names, dates of birth, and/or social security numbers using off-the-shelf software, a scanner, a laminator, and a color laser printer. Two special agents acting in an undercover capacity used the counterfeit driver's licenses in attempts to purchase firearms from gun stores and pawnshops that were licensed by the federal government to sell firearms in the five selected states. We selected these gun stores and pawnshops at random from the yellow pages of local telephone directories.

We also searched an Internet Web site that labels itself as a "directory service," contacted 10 advertisers of firearms, and attempted to purchase firearms from 2 individuals. Neither individual would send firearms through the mail, but both were willing to complete the transactions in person. As agreed with your office, we did not attempt to complete these transactions. We performed our investigation from late October 2000 through February 2001 in accordance with investigative standards established by the President's Council on Integrity and Efficiency.

## Results in Brief

We purchased firearms in five selected states—Virginia, West Virginia, Montana, New Mexico, and Arizona—using counterfeit driver's licenses with fictitious identifiers. In these states, the FFLs we contacted, with the possible exception of one, adhered to existing federal and state law regarding the mechanics of such a purchase. We will refer the matter relating to that FFL to the appropriate law enforcement agency.

Consistent with the Brady Act, in the five states we found that the instant background check does not positively identify purchasers of firearms. Rather, it is a negative check that cannot ensure that the prospective purchaser is not a felon or other prohibited person whose receipt and possession of a firearm would be unlawful. Similarly, in one state—Virginia—the additional step of requiring a state criminal history check was also a negative check. Further, in one state when we purchased a revolver,

MSP000317

the salesperson advised us that the NICS check was not required because the firearm had been manufactured over 100 years ago, in approximately 1893.[4]

We also easily made inquiries of private entities that advertised firearms on the Internet. Of the 10 advertisers we contacted, 2 individuals agreed to sell us their firearms with no identification required if we met face-to-face.

# Brady Act Requirements

The Brady Act requirement for instant background checks pertains to prospective purchasers of firearms that were manufactured after 1898, i.e., firearms that are not considered antiques. To accomplish this, the NICS Operations Center searches three separate databases:[5]

- the NICS Index, which contains records on persons known to be disqualified under federal law from possession of firearms;
- the National Crime Information Center, a computerized information system of criminal justice data established by the FBI, which contains records on protective orders, deported felons, and fugitives from justice; and
- the Interstate Identification Index, which contains criminal history records.

In certain states, a point-of-contact state agency serves as an intermediary between those licensed to sell firearms and the NICS. A state that is operating as a point of contact for NICS checks may simultaneously search available databases in state and local law enforcement agencies.

Bureau of Alcohol, Tobacco and Firearms (ATF) regulations implementing the Brady Act provide that before an FFL may sell or deliver a firearm, the prospective purchaser must provide photo-identification issued by a government entity. The identification must contain the purchaser's name, state of residence, age, gender, and race.[6] Because driver's licenses are

---

[4] Antique firearms, which include weapons manufactured before 1899, are not subject to NICS checks. 18 U.S.C. § 921(a)(3) and 27 C.F.R. § 178.11.

[5] 28 C.F.R § 25.6 (c)(1)(iii).

[6] 28 C.F.R. § 25.7.

issued by individual states, prospective purchasers of firearms frequently use them as a form of identification.

ATF regulations provide that prior to the transfer of a firearm to a prospective purchaser, the purchaser must complete, sign, and date section A of ATF Form 4473, "Firearms Transaction Record Part I –Over-the-Counter."[7] (See app. I.) The form requests the purchaser's name, gender, height, weight, race, residence address, birth date, and place of birth. It also requires "yes" or "no" answers to 12 personal background questions. To avoid misidentification of firearm purchasers as felons or other prohibited persons, the ATF form also solicits certain optional information about the purchaser, such as the purchaser's social security number.[8]

Upon receiving an FFL's request for an instant background check, the NICS Operations Center or state point of contact[9] must provide one of three responses:

- "Proceed" means that no disqualifying or negative information is in the system to indicate that a firearm purchase would be unlawful and the transaction may proceed.
- "Denied" means that the purchase would be unlawful and prohibits the FFL from transferring the firearm to the purchaser.
- "Delayed" means that the transferee must delay the transaction until contacted again by NICS or 3 business days have elapsed. [10] If NICS does not provide a response after 3 business days, the FFL may transfer the firearm.

Accordingly, if there is no disqualifying or negative information to indicate that the sale may be unlawful, the sale may take place.

---

[7] 27 C.F.R. § 178.124(a).

[8] 27 C.F.R. § 178.124(c)(2).

[9] In some instances, states acting as points of contact may use terms other than those used by NICS. For example, an "approve" response may be the equivalent of a "proceed" response, a "pended" response may be the equivalent of a "delayed" response, and a "non-approval" response may be equivalent to a "denied" response.

[10] An ATF official and several FFLs informed us that the most common reason for a delay is that the gun purchaser's name and identification are similar to the name and identification of a prohibited individual.

## Undercover Agents Purchased Firearms Using Counterfeit Driver's Licenses With Fictitious Identifiers

In Virginia, West Virginia, Montana, New Mexico, and Arizona, special agents acting in an undercover capacity purchased a total of seven firearms and a number of magazines. One firearm was a semiautomatic assault weapon, and some of the magazines exceeded 10 rounds of ammunition.[11] All purchases were made from FFLs at gun stores, pawnshops, and a sporting goods store. The agents used counterfeit driver's licenses with fictitious names and identifiers as identification. With the possible exception of one in New Mexico, the FFLs we contacted complied with both the Brady Act and respective state laws when they sold the firearms to the undercover agents.

## Virginia Purchase

An undercover agent, using a counterfeit Virginia driver's license and a counterfeit earnings and leave payroll statement[12] in the same fictitious name, purchased a Smith & Wesson Model 6906 9mm stainless steel semiautomatic pistol with two 12-round ammunition magazines from a gun store in Richmond, Virginia. (See fig. 1.) The salesperson told the agents that this firearm was part of a group of firearms sold to the gun store by a Virginia police department for resale.

---

[11] The sale of either semiautomatic assault weapons or magazines containing more than 10 rounds is illegal unless, as here, the weapons and magazines were manufactured before Sept. 13, 1994. 18 U.S.C. § 922(v) and (w); 27 C.F.R. § 178.40(a) and (b)(1); and 27 C.F.R. § 178.40a.

[12] Virginia state law requires two forms of identification. Virginia Code Ann. § 18.2-308.2:2 B.1.

MSP000320

**Figure 1:   Richmond, Virginia, Purchase**



Model 6906 Smith & Wesson 9mm Stainless Steel Semiautomatic Pistol With 12-Round Ammunition Magazine

The gun store salesperson requested that the agent complete ATF Form 4473 and a Virginia State Police firearm purchase form. After checking both forms to make sure information provided was identical and complete, the salesperson ran the standard instant background check on the fictitious name, date of birth, and social security number provided by the undercover agent. He also provided the same information to the Virginia State Police for a state criminal record check. The records checks by both NICS and the Virginia State Police immediately came back with a proceed-to-sell response, meaning that no criminal record was associated with the

information provided. The agent paid for the firearm and, with a fellow agent, departed the store, carrying the firearm and ammunition magazines.

Virginia requires an additional background check not required by the Brady Act. Under Virginia law, a prospective firearm purchaser must consent in writing to having an FFL telephone the Virginia State Police to check for a criminal history record.[13] In checking for a criminal history, the FFL must provide essentially the same identifying information to the Virginia State Police as it provides to the NICS. The state police are to inform the FFL whether the sale is prohibited or it may proceed with the sale. Under Virginia law, the state police are encouraged to provide a response "to the requesting dealer [FFL] during the dealer's call or by return call without delay." Also under Virginia law, an FFL may proceed with the sale of a firearm without penalty if the FFL has not heard from the Virginia State Police by the end of the next business day following the criminal history request. An FFL's ability to make the sale under this condition is contingent on NICS's having advised the FFL that it may proceed.

## West Virginia Purchase

An undercover agent used a counterfeit West Virginia driver's license with a fictitious name to purchase a Bresa .380 semiautomatic pistol and a box of .380 ammunition from a sporting goods store in Berkeley County, West Virginia. (See fig. 2.)

---

[13] Virginia Code Ann. § 18.2-308.2:2.

**Figure 2:   Berkeley County, West Virginia, Purchase**



.380 Bresa Semiautomatic Pistol With 8-Round Magazine and .380 Ammunition

The agent presented a counterfeit West Virginia driver's license and completed the ATF Form 4473. The initial NICS check by the salesperson came back with a delay response, indicating that the system was either down or that the name, date of birth, and/or social security number submitted was similar to ones associated with a criminal history. The salesperson told the agent that NICS had 3 business days from the time he called in the name-check to respond and that if NICS did not respond within that period, he could sell the firearm to the agent. During this transaction, the salesperson stated that his main concern about a delay notification from the NICS was the potential loss of the sale. In this case, the proceed-to-sell order came back from NICS in less than 24 hours. The agent returned to the sporting goods store, paid for the firearm and ammunition, and departed the store with the merchandise and a companion agent.

## Montana Purchases

An undercover agent purchased (1) a Russian Samozariadnyia Karabina Simonova (SKS) 7.62mm semiautomatic rifle with a bipod rest and a 4x scope and (2) a .22 caliber semiautomatic rifle with a folding stock, 4x scope, and a 10-shot magazine. (See fig. 3.) The agent purchased the firearms from a Billings, Montana, pawnshop and filled out the ATF Form

4473 using a counterfeit Montana driver's license. The initial NICS check by the salesperson came back as a delay, and the salesperson explained that he could sell the firearms to the agent if NICS did not respond after the required 3 business days. During this transaction, the salesperson told us that his main concern in getting the delay notification from the NICS was the potential loss of the sale. When the proceed-to-sell order came back from NICS, in less then 24 hours, the agent and a companion agent returned to the pawnshop, paid for the firearms and ammunition, and left with the merchandise.

At a second pawnshop in Billings, Montana, the two agents also purchased 2 boxes of 7.62mm Russian-made ammunition and a box of .22 caliber ammunition along with a 30-round "banana clip," or magazine, for the Russian SKS and 2 additional 10-shot magazines for the .22 caliber. No identification or paperwork was required to purchase the ammunition or magazines. (See fig. 3.)

**Figure 3:  Billings, Montana, Purchases**



7.62mm Russian-Manufactured Samozariadnyia Karabina Simonova Semiautomatic Rifle With Bipod Rest, 4x Scope, 30-Round Banana Clip, and 7.62mm Ammunition (Top)

.22 Caliber Semiautomatic Rifle With Folding Stock, 4x Scope, 3 10-Shot Magazines, and .22 Caliber Ammunition (Bottom)

MSP000324

## New Mexico Purchase

An undercover agent attempted to purchase an Intratec 9mm semiautomatic pistol, model AB-10, and a 32-shot magazine from a pawnshop in Santa Fe, New Mexico. New Mexico requires only a valid state photo-identification and the completion of the ATF Form 4473. On the first day, the salesman's attempt to contact NICS was unsuccessful because the circuits were busy. When the agent called the next day, the salesman told the agent that he had contacted NICS and received a delay message.

Later that same day, the undercover agent and a fellow agent returned to the pawnshop. At that time, the salesperson suggested that the individual accompanying the agent could purchase the firearm and transfer it to the first agent using a bill of sale. The second agent, also using a counterfeit New Mexico driver's license, filled out the ATF Form 4473. The salesperson checked the second agent's form against his license for accuracy and initiated the NICS background check, which came back immediately as a proceed-to-sell response. The first agent then used his credit card to purchase the previously selected firearm and magazine in the second agent's name. The first agent also used his credit card to purchase a box of 9mm 124-grain Hydra-Shok jacketed hollow-point ammunition. This purchase was based on the salesperson's statement that it was the best ammunition he had in stock to penetrate a bulletproof vest similar to those worn by police officers. (See fig. 4.)

**Figure 4:   Santa Fe, New Mexico, Purchase**



Model AB-10 Intratec 9mm Semiautomatic Pistol With 32-Shot Magazine
 and 9mm 124-Grain Hydra-Shok Jacketed Hollow-Point Ammunition

FFLs are required to make entries on the ATF Form 4473 for the sale of firearms and include on the form the name of the intended recipient of the firearm. Title 18 U.S.C. § 924(a) provides that whoever knowingly makes any false statement or representation in the records required to be kept for the sale of firearms shall be fined, imprisoned for 5 years, or both. Further, instructions for ATF Form 4473 warn that "[A] licensee who knowingly delivers a firearm to an individual who is not buying the firearm for himself or herself or as a gift violates the law by maintaining a false ATF F [Form] 4473." In this instance, the FFL may have violated the law by selling a firearm to an individual who he knew was not the intended recipient.

## Arizona Purchases

An undercover agent used a counterfeit Arizona driver's license to purchase (1) a Spanish-manufactured half-break .38 caliber 5-shot revolver, circa 1893, with a box of Smith & Wesson .38 caliber ammunition and (2) an

Italian-manufactured .25 caliber semiautomatic pistol from a gun store in Tucson, Arizona. (See fig. 5.)

**Figure 5:   Tucson, Arizona, Purchases**



.38 Caliber Spanish-Manufactured Half-Break 5-Shot Revolver, Circa 1893, With .38 Caliber Ammunition (Top)

Model GT27 Italian-Manufactured .25 Caliber Semiautomatic Pistol With 7-Shot Magazine (Bottom)

Prior to purchasing the firearms, the agent completed the ATF Form 4473. Arizona requires an individual wanting to purchase a firearm to show a valid photo-identification. The NICS check by the salesperson came back with a proceed-to-sell response. Because Arizona is a point-of-contact state, the salesperson contacted the Arizona Department of Public Safety for the NICS check. The department simultaneously searched available state and local law enforcement files. Both searches were negative, allowing the sale to proceed.

During the transaction, the salesperson stated that he was required to do an NICS check only on the .25 caliber semiautomatic handgun because the .38 caliber revolver was over 100 years old and was considered a "curio."

The agent paid for the weapons and ammunition, and he and a companion agent departed the store with the merchandise.

## Attempt to Purchase a Firearm Over the Internet

We also investigated the possibility of purchasing a firearm over the Internet by searching a Web site that labels itself a directory service.[14] An agent acting in an undercover capacity responded to 10 of 21 advertisements offering firearms for sale; 8 of the advertisers were FFLs and 2 were individuals. The FFL advertisers would ship the firearm offered for sale to only an FFL and refused to ship it to an individual. We also attempted to purchase firearms from the two advertisers we determined to be individuals but did not complete the transactions.

One individual, in Warner Robbins, Georgia, advertised a Smith & Wesson .45 caliber firearm for sale for $390. An agent acting in an undercover capacity contacted the individual by telephone and told him he was calling from the Northern Virginia area. After verifying that the firearm was for sale, the agent attempted to convince the individual to mail the firearm to him; but he refused to mail the firearm to anyone other than an FFL. The agent then told the individual that he would be in the Warner Robbins area in a few days, and the individual readily agreed to sell the firearm to the agent in a "face-to-face" transaction. The individual asked the agent if he was a criminal; the agent assured him that he was not and provided a fictitious name. The individual then agreed to sell the firearm for cash and stated that he would not require any identification. He then asked the agent to call him for directions to his home when he arrived in Warner Robbins.

In a second advertisement, an individual in Orlando, Florida, offered to sell a 9mm semiautomatic firearm for $339. An undercover agent telephoned the individual; stated that he was calling from the Washington, D.C., area; and verified that the firearm was for sale. The seller refused to send the firearm through the mail but agreed to meet the agent to complete the transaction. He stated that he would sell the firearm for cash and would not require identification.

---

[14] The site notes that it makes no warranty that the seller or the guns actually exist and that all gun transfers must comply with ATF and shipping regulations.

GAO-01-427 Firearms Purchased With Bogus Identification

MSP000328

As arranged with your office, unless you disclose its contents earlier, we plan no further distribution of this report until 30 days after the letter's date. At that time, we will send copies of the report to interested congressional committees, the Secretary of the Treasury, the Attorney General, and the Directors of the FBI and ATF. The report will also be available on GAO's home page at www.gao.gov. If you have any questions, please call Assistant Director Patrick Sullivan at (202) 512-6722. Senior Special Agents John Cooney, Woodrow Hunt, William McDaniel, and Thomas Wiley and Senior Attorney Barry Shillito made key contributions to this investigation and report.

Sincerely yours,

Robert H. Hast
Managing Director
for Special Investigations

GAO-01-427 Firearms Purchased With Bogus Identification
MSP000330

# Bureau of Alcohol, Tobacco and Firearms Form 4473

---

OMB NO. 1512-0129

**DEPARTMENT OF THE TREASURY**
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
**FIREARMS TRANSACTION RECORD PART I - OVER-THE-COUNTER**

TRANSFEROR'S TRANSACTION
SERIAL NUMBER

NOTE: Prepare in original only. All entries on this form must be in ink. **See Important Notices, Definitions and Instructions**

**SECTION A - MUST BE COMPLETED PERSONALLY BY TRANSFEREE (BUYER)**

1. TRANSFEREE'S *(Buyer's)* NAME *(Last, First, Middle)*   ☐ MALE  ☐ FEMALE  | 2. HEIGHT | 3. WEIGHT | 4. RACE

5. RESIDENCE ADDRESS *(No., Street, City, County, State, ZIP Code)* | 6. BIRTH DATE  MONTH  DAY  YEAR | 7. PLACE OF BIRTH *(City)*  STATE OR FOREIGN COUNTRY

8. **OPTIONAL INFORMATION** - The information requested in this item (8) is strictly **optional** but will help to ensure the lawfulness of the sale and avoid the possibility of being misidentified as a felon or other prohibited person.

SOCIAL SECURITY NUMBER | ALIEN REGISTRATION NUMBER  A___ ___ ___ ___ ___ ___ ___ | MISCELLANEOUS  NUMBER *(Military ID, etc.)*

9. CERTIFICATION OF TRANSFEREE *(Buyer)* - Questions a. through l.  must be answered with a "yes" or a "no" in the box at the right of the question.

a. Are you the actual buyer of the firearm indicated on this form? If you answer "no" to this question the dealer cannot transfer the firearm to you. *(See Important Notice 1.)*

g. Have you been discharged from the Armed Forces under **dishonorable** conditions?

b. Are you under indictment or information in any court for a crime for which the judge could imprison you for more than one year?  An information is a formal accusation of a crime made by a prosecuting attorney.

h. Are you an alien **illegally** in the United States?

c. Have you been convicted in any court of a crime for which the judge could have imprisoned you for more than one year, even if the judge actually gave you a shorter sentence? *(See Important Notice 5 and EXCEPTION.)*

i. Have you ever renounced your United States citizenship?

d. Are you a **fugitive** from justice?

j. Are you subject to a court order restraining you from , harassing, stalking, or threatening an intimate partner or child of such partner? *(See Important Notice 6 and Definition 4.)*

e. Are you an unlawful user of, or addicted to, marijuana, or any depressant, stimulant, or narcotic drug, or any other controlled  substance?

k. Have you been convicted in any court of a misdemeanor crime of domestic violence?  This includes any misdemeanor conviction involving the use or attempted use of physical force committed by a current or former spouse, parent, or guardian of the victim or by a person with a similar relationship with the victim.  *(See Definition 5.)*

f. Have you ever been adjudicated mentally defective or have you been committed to a mental institution?

l. Are you a citizen of the United States?

m. What is your State of residence? _____
*(State)*

If you are not a citizen of the United States, you have a State of residence only if you have resided in the State for at least 90 days prior to the date of this sale.  *(See Definition 7.)*

I CERTIFY THAT THE ABOVE ANSWERS ARE TRUE AND CORRECT. I UNDERSTAND THAT A PERSON WHO ANSWERS "YES" TO QUESTION 9b IS PROHIBITED FROM PURCHASING A FIREARM. I UNDERSTAND THAT A PERSON WHO ANSWERS "YES" TO ANY OF THE QUESTIONS 9c THROUGH 9k IS PROHIBITED FROM PURCHASING OR POSSESSING A FIREARM. I ALSO UNDERSTAND THAT THE MAKING OF A FALSE ORAL OR WRITTEN STATEMENT OR THE EXHIBITING OF ANY FALSE OR MISREPRESENTED IDENTIFICATION WITH RESPECT TO THIS TRANSACTION IS A CRIME PUNISHABLE AS A FELONY. I FURTHER UNDERSTAND THAT MY REPETITIVE PURCHASE OF FIREARMS FOR THE PURPOSE OF RESALE OR FOR LIVELIHOOD AND PROFIT WITHOUT A FEDERAL FIREARMS LICENSE IS A VIOLATION OF LAW. (SEE IMPORTANT NOTICE 7.)

TRANSFEREE'S *(Buyer's)* SIGNATURE | DATE

ATF F 4473  (5300.9)  PART I  (10-98)  PREVIOUS EDITIONS ARE OBSOLETE

## Ordering Information

The first copy of each GAO report is free. Additional copies of reports are $2 each. A check or money order should be made out to the Superintendent of Documents. VISA and MasterCard credit cards are accepted, also.

Orders for 100 or more copies to be mailed to a single address are discounted 25 percent.

Orders by mail:
U.S. General Accounting Office
P.O. Box 37050
Washington, DC  20013

Orders by visiting:
Room 1100
700 4th St. NW (corner of 4th and G Sts. NW)
U.S. General Accounting Office
Washington, DC

Orders by phone:
(202) 512-6000
fax: (202) 512-6061
TDD (202) 512-2537

Each day, GAO issues a list of newly available reports and testimony. To receive facsimile copies of the daily list or any list from the past 30 days, please call (202) 512-6000 using a touchtone phone. A recorded menu will provide information on how to obtain these lists.

Orders by Internet:
For information on how to access GAO reports on the Internet, send an e-mail message with "info" in the body to:

info@www.gao.gov

or visit GAO's World Wide Web home page at:

http://www.gao.gov

## To Report Fraud, Waste, or Abuse in Federal Programs

Contact one:

- Web site: http://www.gao.gov/fraudnet/fraudnet.htm
- e-mail: fraudnet@gao.gov
- 1-800-424-5454 (automated answering system)

PRINTED ON ♲ RECYCLED PAPER

MSP000332

**Appendix I**
**Bureau of Alcohol, Tobacco and Firearms**
**Form 4473**

MSP000333

MSP000334

**United States**
**General Accounting Office**
**Washington, D.C. 20548-0001**

**Official Business**
**Penalty for Private Use $300**

**Address Correction Requested**

**Presorted Standard**
**Postage & Fees Paid**
**GAO**
**Permit No. GI00**



MSP000335