# EXHIBIT 17

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF MARYLAND
 3
 4                                      )
 5   MARYLAND SHALL ISSUE, INC., et     )
 6   al.,                               )
 7              Plaintiffs,             )
 8      -vs-                            ) No. 16-cv-3311-MJG
 9   LAWRENCE HOGAN, et al.,            )
10              Defendants.             )
11
12
13              DEPOSITION OF MARK W. PENNAK
14                     MARCH 2, 2018
15                   BALTIMORE, MARYLAND
16                       10:30 A.M.
17
18
19
20   JOB NO.:  178306
21   PAGES:  1 - 59
22   REPORTED BY:  LAURA MAES, CSR 9836
```

1  handgun but who, due to the expense and
2  inconvenience of the HQL requirements, have been
3  deterred from purchasing a handgun?
4       A.   In my view, persons who do not have a
5  handgun having an urgent need -- in my view,
6  persons who may have one type of handgun may have
7  an urgent need for another type of handgun.  And
8  "urgent" is not a defined term, so, in my view,
9  all my members who need a handgun have an urgent
10 need for a handgun.
11      Q.   I'm asking you to identify by name all
12 members of MSI who have an urgent need for a
13 handgun but who, due to the expense and
14 inconvenience of the HQL requirements, have been
15 deferred from purchasing a handgun.
16           Can you give me those names?
17      A.   The answer to 2 would be the same thing
18 as the answer to No. 1.
19      Q.   Which is what?
20      A.   Well, again, the actual identity -- the
21 names of the people -- of certain persons who
22 have an urgent need for a handgun would be the

Transcript of Mark W. Pennak
Conducted on March 2, 2018                                          31

```
 1    persons who have a need for a handgun but are
 2    deterred from doing so by the expense and
 3    inconvenience of the HQL requirements.
 4        Q.   And I'm asking you to please tell me
 5    their names.
 6        A.   I don't have the names in front of me.
 7        Q.   You don't have them here today; is that
 8    right?
 9        A.   I do not have them with me today.
10    They're on my computer.
11        Q.   They're on your computer, and you don't
12    have an independent recollection of those names,
13    sitting here today; is that correct?
14        A.   I do not.
15             MR. HANSEL:  The problem is that MSI
16    doesn't track things like who --
17             MR. SCOTT:  Counsel, if you're going to
18    make a speaking objection, I ask that the witness
19    leave the room.  Otherwise, we're going to
20    proceed.
21        A.   And Counsel's explanation is absolutely
22    correct.  We do not track peoples' last known job
```

Transcript of Mark W. Pennak
Conducted on March 2, 2018

35

```
 1   BY MR. SCOTT:
 2      Q.   Let's look at Subject Matter No. 3 on
 3   the deposition notice.
 4           Can you identify by name any members of
 5   MSI who hunt for food and are in need of a
 6   handgun but who, due to the expense and
 7   inconvenience of HQL requirements, have then
 8   deferred from purchasing a handgun?
 9      A.   I don't know of anybody who would fall
10   into that category, but, again, MSI does not
11   track or request our members to provide that
12   information.
13      Q.   All right.  So you don't know?
14      A.   I don't know.
15      Q.   All right.  No. 4, can you identify any
16   members of MSI who live in an urban area with no
17   access to Maryland State Police certified handgun
18   trainers and/or a shooting range and are in need
19   of a handgun but who have been deterred from
20   purchasing a handgun by the HQL live-fire
21   requirements?
22      A.   In response to our interrogatory
```

```
 1    answers, we have provided information as to areas
 2    which are urban areas, in our view, and every MSI
 3    member living in those areas who does not have an
 4    HQL may well fall into that classification.
 5        Q.   And I'm asking for the names of those
 6    who fall into that classification.
 7             MR. HANSEL:  I don't believe the witness
 8    was done with his answer.
 9        Q.   Were you finished with your answer?
10        A.   No, I wasn't.
11        Q.   Please proceed.
12        A.   Every member of -- we have members of
13    MSI who live in all of those areas.  Those areas
14    include Baltimore, Montgomery County, Prince
15    George's County, and the like.
16             And we have members who do not have HQLs
17    who live in those areas.  Whether or not they
18    have been deterred from purchasing a handgun by
19    the live-fire requirement is something I've not
20    asked them.
21        Q.   So --
22        A.   I don't know the answer.
```

1      Q.   You do not know the answer to -- well,
2  strike that.
3           You're unable to identify by name any
4  members who live in an urban area with no access
5  to Maryland State Police certified handgun
6  trainers and/or a shooting range and are in need
7  of a handgun but have been deterred from
8  purchasing a handgun by a HQL live-fire
9  requirement; is that correct?
10     A.   I can't give you the names for the same
11 reason I couldn't give you them when I testified
12 earlier.
13     Q.   Okay.  No. 5, can you give me the name
14 of any members of MSI who live in an area with no
15 access to MSI-approved fingerprint vendors and
16 are in need of a handgun but who have been
17 deterred from purchasing a handgun by the HQL
18 LiveScan fingerprinting requirement?
19     A.   My response to that incorporates the
20 response to Interrogatory No. 10.
21     Q.   Are there any names in the response to
22 Interrogatory No. 10, names of individual MSI

```
 1    members?
 2        A.   No, there isn't.
 3        Q.   Can you identify any individual MSI
 4    members by name who live in an area with no
 5    access to MSP-approved fingerprint vendors and
 6    are in need of a handgun but who have been
 7    deterred from purchasing a handgun by the HQL
 8    LiveScan fingerprinting requirement?
 9        A.   We have MSI members in all these areas.
10    I do not know if they have been deterred by this
11    or not.  I have not asked them.
12        Q.   Can you give me any names of any MSI
13    members who have been so deterred?
14        A.   In response to --
15        Q.   Other than those identified in response
16    to Interrogatory No. 1?
17        A.   Other than those identified in response
18    to No. 1, no.
19        Q.   No?
20        A.   Correct.
21        Q.   No. 6, can you provide the name -- can
22    you identify by name any members of MSI who have
```

1  been deterred from obtaining an HQL because they
2  lacked access to the Internet?
3      A.   I do not know of such individuals.
4      Q.   Can you identify by name any members of
5  MSI who have been deterred from obtaining an HQL
6  because they lack access to a document scanner?
7      A.   I don't know the name of any such
8  individual.
9      Q.   Can you identify by name any member of
10 MSI who has been deterred from obtaining an HQL
11 because they lack access to a credit or debit
12 card?
13     A.   We do not ask for that information of
14 members.  I do not have that information.
15         MR. SCOTT:  All right.  Let's go off the
16 record and take a short break.
17         (Recess taken.)
18         MR. SCOTT:  Okay.  Back on the record.
19 BY MR. SCOTT:
20     Q.   It's true, isn't it, that MSI has
21 members who are handgun instructors who are
22 qualified to give firearm safety training

Transcript of Mark W. Pennak
Conducted on March 2, 2018                                40

```
 1    required to obtain a Maryland HQL?  Correct?
 2        A.    That is true.
 3        Q.    All right.  And have any of those
 4    individuals been asked -- any of those individual
 5    members been asked to provide firearm safety
 6    training at reduced cost?
 7        A.    I don't know.
 8        Q.    Have you made any effort to find out the
 9    answer to that prior to today?
10        A.    I have not asked my members that
11    question.
12        Q.    Have you made any other efforts to find
13    out the answer to that question prior to today?
14        A.    The answer to that is, no, I have not
15    made an effort.
16        Q.    Have any of the individual members of
17    MSI who are qualified to give firearm safety
18    training been asked to provide that training at a
19    reduced rate?
20        A.    I don't know.
21        Q.    Have you made any effort to find out the
22    answer to that question prior to today?
```

1  attorney?

2  A. Yes.

3  MR. HANSEL: Objection. Go ahead.

4  A. Yes, I have.

5  Q. Do you have any written communications
6  between you or anybody at MSI and the Maryland
7  State Police that you have not provided to your
8  attorney?

9  A. Not that I can recall.

10  MR. HANSEL: I believe they have all
11  been produced.

12  Q. Has the HQL requirement impeded MSI's
13  efforts to carry out its mission?

14  A. Very substantially.

15  Q. How?

16  A. MSI's mission incorporates within its
17  very core the right of armed self-defense inside
18  the home and outside the home. It is our belief
19  and mission that every law abiding individual has
20  a both moral and constitutional right towards
21  such armed self-defense. We promote it through
22  education. We promote it through testimony

Transcript of Mark W. Pennak
Conducted on March 2, 2018

44

1  before the General Assembly.  We promote it in
2  our meetings.  We promote it in communications to
3  the public.
4         HQL, in our view, stands as an obstacle
5  to the acquisition of firearms by the law abiding
6  for no other reason than to ration and prohibit
7  and obstruct the exercise of the constitutional
8  right to acquire a firearm.
9         And that is, in itself, an obstacle to
10 MSI's mission to educate and promote the
11 possession of firearms by law abiding individuals
12 to exercise their constitutional right and moral
13 right of self-defense.
14     Q.   Well, there's nothing in the HQL law
15 that prohibits or limits MSI's ability to attempt
16 to educate the public about firearms or rights to
17 own firearms, is there?
18     A.   Nothing in the statute says MSI can't
19 communicate.  That's correct.
20     Q.   And there's nothing in the statute that
21 says MSI can't promote its views concerning the
22 right to bear arms; correct?

1   A.   MSI's membership grows and prospers by
2   the exercise of these rights by law abiding
3   citizens because, as they acquire handguns for
4   the purposes of self-defense, they understand the
5   need for representatives such as MSI to defend
6   those rights in court proceedings, such as this
7   one, and proceedings before the General Assembly
8   and in proceedings before other administrative
9   bodies, including the Handgun Review Board, and
10  in informal discussions with representatives of
11  Maryland State Police.
12       So, yes, the reality is that the more
13  law abiding persons have handguns, the more
14  likely they are to become members of MSI and to
15  support MSI through contributions and volunteer
16  efforts.
17  Q.   But, again, my question was:  There's
18  not anything in the HQL statute that prohibits
19  MSI from promoting its point of view with respect
20  to gun ownership?
21  A.   Asked and answered.
22  Q.   And your answer is..?

```
1              MR. HANSEL:  You can answer it again.
2    Go ahead.
3         A.   The statute does not have anything in it
4    that says MSI may not promote its views.
5              (Discussion off the record.)
6              MR. SCOTT:  All right.  Back on the
7    record.
8    BY MR. SCOTT:
9         Q.   Let me show you what's been marked as
10   Exhibit 21.  This is a document that was produced
11   by MSI in discovery.
12             Have you seen this before?
13        A.   Yes.
14        Q.   Can you tell me what it is?
15             (Exhibit 21 was marked for identification and
16   retained by Counsel.)
17        A.   It is a rough survey conducted by one of
18   MSI's board members, Danny Carlin-Webber.
19        Q.   I'm sorry.  What's his name?
20        A.   Danny Carlin-Webber, hyphenated.
21        Q.   Is that K-a-r or C-a-r?
22        A.   C-a-r-l-i-n-Webber.
```