**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **MARYLAND SHALL ISSUE, INC., et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Case No. 16-cv-3311-ELH** |
| | ) |
| **LAWRENCE HOGAN, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**Plaintiffs' Reply in Support of Plaintiffs' Motion to Strike Opinions of**
**Defendants' Experts James Johnson, James Russell, and Daniel Webster**

This Court should strike certain portions of the expert opinions of Chief James Johnson, Captain James Russell, and Professor Daniel Webster under Federal Rule of Evidence 702. The opinions of these witnesses are inadmissible because they are irrelevant to Maryland's Handgun License Requirement and would not be helpful to the jury in its resolution of Plaintiffs' claims.

Specifically, Paragraphs 7–15 and 17–18 in Chief Johnson's Declaration (Doc. 59-21) and Paragraphs 13 and 17–25 in Captain Russell's Declaration (Doc. 59-20) should be struck because they are not "based on sufficient facts or data" under Federal Rule of Evidence 702. These witnesses base their opinions on generalized knowledge of and experience in the field of law enforcement, which is insufficient to support their opinions on the impact of Maryland's Handgun License Requirement. Likewise, Paragraphs 8–11 and 13–20 in Professor Webster's Declaration (Doc. 59-19) should be struck because his testimony does not fit the facts of this case. The data he uses to support his opinion is, by his own admission, unrelated to Maryland's Handgun License Requirement.

Under Rule 702, this Court should perform a rigorous gatekeeping function to ensure that the proffered expert testimony meets certain standards. *Giddings v. Bristol-Myers Squibb Co.*, 192

F. Supp. 2d 421, 425 (D. Md. 2002). In doing so, the Court should confirm that the testimony to be given "is more than mere speculation." *Id.* (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993)); *see also Hunt Valley Baptist Church, Inc. v. Baltimore County*, No. ELH-17-804, 2018 WL 2717834, at *3 (D. Md. June 6, 2018) ("[A] court should exclude testimony based on 'belief or speculation,' *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999), or when [it is] not supported by the record."). "Only relevant, reliable testimony that is based on scientific knowledge should be admitted." *Id.*

The requirement that expert testimony be relevant and reliable extends beyond scientific knowledge to include "expert testimony based on technical or other specialized knowledge" as well. *Peters v. Baltimore City Bd. of Sch. Comm'rs*, No. WMN-13-3114, 2014 WL 4187307, at *6 (D. Md. Aug. 21, 2014). The party offering expert testimony must establish its admissibility by a preponderance of the evidence. *Fireman's Fund Ins. Co. v. Tecumseh Prods. Co.*, 767 F. Supp. 2d 549, 553 (D. Md. 2011). Testimony that does not satisfy these standards is not admissible and should be stricken. *See Giddings*, 192 F. Supp. 2d at 425. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data by only the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 147 (1997).

I. **Despite their general law enforcement experience, neither Chief Johnson nor Captain Russell have specific experience that is relevant to Maryland's Handgun License Requirement sufficient to support their opinions on its impact.**

Chief Johnson's and Captain Russell's opinions are inadmissible because they are not "based on sufficient facts or data." *See* Fed. R. Evid. 702(b). Defendants argue that Chief Johnson and Captain Russell are qualified as expert witnesses under Rule 702 because of their "extensive knowledge, experience, and training in law enforcement generally, and firearm safety training in

particular." (Doc. 90 at 2.) Both witnesses have lengthy careers in law enforcement, vaguely boasting of "hundreds of hours" handling firearms or "thousands of hours" teaching firearms safety courses. (*Id.* at 4.) As a result of these general experiences, Chief Johnson and Captain Russell are offered to opine about the "potential public safety benefits" of Maryland's Handgun License Requirement. (*Id.* at 2–3.) At no point do Defendants detail Chief Johnson's or Captain Russell's specific, relevant expertise or how and when they came about these experiences. (*See id.* at 1–5.) Most tellingly, Defendants do not meaningfully connect Chief Johnson's or Captain Russell's general law enforcement experience to Maryland's Handgun License Requirement. (*Id.* at 3–5.)

Under Rule 702(b), expert testimony that is not "based on sufficient facts or data" is irrelevant and must be excluded. *See* Fed. R. Evid. 702(b). To satisfy the requirements of Rule 702(b), expert testimony cannot be based on generalized experience unconnected to the subject matter of the testimony. "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts [of the case]. This Court's gatekeeping function requires more than simply 'taking the expert's word for it." Fed. R. Evid. 702 Advisory Committee's Notes to 2000 Amendments (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995)).

It is well-settled that "general expertise is not sufficient to qualify [an expert] to testify on a matter that requires particularized knowledge, training, education, or experience." *See*, *e.g.*, *Ruark v. BMW of N. Am., LLC*, No. CIV.A. ELH-09-2738, 2014 WL 351640, at *3 (D. Md. Jan. 30, 2014); *Smith v. Central Admixture Pharm. Servs., Inc.*, 2010 WL 1137507, at *3 (D. Md. Mar. 19, 2010); *Fitzgerald v. Smith & Nephew Richards, Inc.*, No. JFM-95-3870, 1999 WL 1489199, at *3 (D. Md. Dec. 30, 1999). Under Rule 702, that a proposed witness is an expert in one area

"does not *ipso facto* qualify him to testify as an expert in all related areas." *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391 (D. Md. 2001); *see also 1325 "G" Street Associates, LP v. Rockwood Pigments NA, Inc.*, No. DKC 2002-1622, 2004 WL 2191709, at *12 n.30 (D. Md. Sept. 7, 2004) (noting that "qualification to testify as an expert also requires that the area of the witness's competence matches the subject matter of the witness's testimony").

This Court has been presented with nothing more than Chief Johnson's and Captain Russell's "qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough." *See Daubert*, 43 F.3d at 1319. Contrary to the Advisory Committee's clear directive, Defendants failed to explain how Chief Johnson's and Captain Russell's experiences relate to the Maryland Handgun License Requirement or how those experiences form a sufficient basis for their opinions. *See* Fed. R. Evid. 702 Advisory Committee's Notes to 2000 Amendments.

None of Chief Johnson's work experience relates directly to Maryland's Handgun License Requirement. Chief Johnson broadly and vaguely opines that Maryland's Handgun License Requirement will "make Maryland safer" by reducing access to handguns by disqualified persons and by ensuring that handgun owners have been properly trained. (Doc. 59-21 at 3, ¶ 7.) He claims that, by requiring fingerprinting for a handgun purchase, Maryland can somehow reduce the amount of straw purchases. (*Id.* at 3, ¶¶ 8–9.) He also claims that the four-hour live-fire requirement may somehow encourage more responsible gun ownership. (*Id.* at 4, ¶ 10.) But Chief Johnson offers no concrete evidence, data, or experience to meaningfully connect these ethereal opinions with the practicality of the Maryland Handgun License Requirement. Despite being chair of the Law Enforcement Partnership, Chief Johnson has never studied or otherwise evaluated the utility of a fingerprinting requirement or a live-fire training component prior to issuing a permit to purchase a handgun. (Doc. 79-2 at 16:15–22.) He is unfamiliar with the Maryland State Police

4

standards for administering the Handgun License Requirement (*id*. at 33:22–34:10); knows of no studies evaluating the behavior of straw purchasers (*id*. at 41:4–7); and has no information relevant to whether the fingerprint requirement deters straw purchases at all (*id*. at 25:10–16). Chief Johnson's general experience is irrelevant to the impact and effectiveness of the Maryland Handgun License Requirement.

Despite his tenure as "Chief of the 20th largest police department in the United States" (Doc. 90 at 3), Chief Johnson lacks any meaningful knowledge of critical crime prevention data and other general statistics. He does not know how many accidental shootings occur annually in Maryland or nationwide. (Doc. 79-2 at 51:17–52:8). He knows nothing about how often firearms are used in self-defense in Baltimore County (*id*. at 85:4–86:6); the percentage of crime in Baltimore County involving the use of firearms (*id*. at 90:6–18); or whether Maryland's Handgun License requirement has reduced the level of firearm violence in Baltimore County (*id*. at 91:9–13). Chief Johnson cannot rely on his general law enforcement experience to excuse his lack of specific experience and knowledge relevant to the subject matter of this lawsuit.

So too with Captain Russell. Relying on his "21 years of law enforcement experience" (Doc. 90 at 4), Captain Russell believes that Maryland's Handgun License Requirement "enhances knowledge of and competence with State laws designed to promote public safety." (Doc. 59-20 at 4, ¶ 17.) He too broadly and vaguely claims that Maryland's Handgun License Requirement will promote the safe storage of firearms, (*id*. at 4, ¶ 18), and eliminate the possession of handguns by disqualified persons (*id*. at 4, ¶ 17). Despite his expansive opinions, Captain Russell has no information on whether Maryland's Handgun License Requirement has positively affected compliance with Maryland's firearms storage laws. (Doc. 79-3 at 136:18–21.) He has no idea whether Maryland's Handgun License Requirement has reduced the number of straw purchases or

the number of disqualified people in possession of firearms in Maryland. (*Id.* at 136:5–17.) Nor does he have a working knowledge of statistics relevant to the existence and prevention of crime in Maryland. (*See id.* at 166:10–14.)

This Court is not required to accept Chief Johnson's and Captain Russell's *ipse dixit* as substitute for the sufficient and relevant facts or data required under Rule 702. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 157–58 (1999). Their testimonies are not relevant and should be excluded.

II. **Professor Webster's testimony demonstrates that his opinions are based on studies that are not relevant to Maryland's Handgun License Requirement.**

As with the opinions of Chief Johnson and Captain Russell, Defendants mistakenly assume that Professor Webster's unrelated professional experience must perforce qualify him as an expert in this case. Defendants argue that Professor Webster may rely on his research on Missouri's and Connecticut's permit-to-purchase laws to analyze Maryland's Handgun License Requirement because it may enable him "to opine on the effect of such laws generally." (Doc. 90 at 6.) But, as with the opinions of Chief Johnson and Captain Russell, Professor Webster's opinion is only relevant if it is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *See Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 341 (D. Md. 2011) (quoting *Daubert*, 509 U.S. at 591). If the expert's opinion does not "fit" the facts of the case, the testimony "is not relevant and, ergo, non-helpful." *Id.*

Defendants admit that Professor Webster's research is limited to laws outside the State of Maryland. (Doc. 90 at 6.) Defendants rely instead on Professor Webster's ability to extrapolate from his extraneous research to make predictive judgments about the effect of Maryland's Handgun License Requirement. (Doc. 90 at 6–7.) They also tout Professor Webster's academic and professional qualifications, detailing his research and publications. (Doc. 90 at 8.) However

accomplished Professor Webster may be, Defendants wholly fail to contradict the plain fact that his research is unrelated to the subject matter of this lawsuit. (*See* Doc. 90 at 5–9.) Professor Webster admits that the laws he studied share a nominal bond with Maryland's Handgun License Requirement—namely, that all three laws require something resembling a permit to purchase firearms. (Doc. 79-4 at 189:9–13.) But that is all that he has been able to demonstrate those schemes have in common. Unlike Maryland, Missouri's permit-to-purchase law requires no fingerprinting or safety training. (*Id*. at 55:15–19.) Connecticut's permit-to-purchase law requires fingerprinting and safety training, but the execution of these requirements in Connecticut differs markedly from their application in Maryland. For example, unlike Maryland, Connecticut requires that the fingerprinting be done by a law enforcement agency (*id*. at 45:6–10), and Connecticut requires an eight-hour training course instead of a four-hour course (*id*. at 44:15–20). The differences in these laws are numerous and substantive enough to take Professor Webster's opinion outside the scope of appropriate and helpful testimony in this case.

Defendants' reliance on *Kolbe v. O'Malley*, 42 F. Supp. 3d 768, 779 (D. Md. 2014), is misplaced. In *Kolbe*, the plaintiffs challenged the admissibility of expert testimony on the grounds that it was not based on "a reasonable degree of scientific certainty." *Id*. The Court determined that the legislature may make certain predictive judgments based on "reasonable inferences and deductions based on substantial evidence." *Id*. As Defendants noted, Plaintiffs here do not challenge Professor Webster's credentials or the efficacy of his research methodology. (*See* Doc. 90 at 5–6.) Plaintiffs simply take issue with the fact that Professor Webster studied the wrong thing to enable him to opine on the impact of Maryland's Handgun License Requirement. Had he studied the Maryland law—or a law sufficiently similar—the Court may be able to use his testimony to

7

predict the effect of the Maryland Handgun License Requirement. Because he did not, his testimony does not fit the facts of this case, is irrelevant, and should be excluded.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court strike from the record and preclude Defendants from relying on the opinions contained in Paragraphs 7–15 and 17–18 in Chief Johnson's Declaration (Doc. 59-21); Paragraphs 13 and 17–25 in Captain Russell's Declaration (Doc. 59-20); and Paragraphs 8–11, 13–20 in Professor Webster's Declaration (Doc. 59-19).

Dated: December 7, 2018                                  Respectfully submitted,


                                                         */s/ John Parker Sweeney*
                                                         John Parker Sweeney
                                                         T. Sky Woodward
                                                         James W. Porter, III
                                                         Marc A. Nardone
                                                         Bradley Arant Boult Cummings LLP
                                                         1615 L Street N.W., Suite 1350
                                                         Washington, DC 20036
                                                         P: 202-719-8316
                                                         jsweeney@bradley.com

                                                         Cary Johnson Hansel, III
                                                         Hansel Law, P.C.
                                                         2514 North Charles Street
                                                         Baltimore, MD 21218
                                                         P: 301-461-1040
                                                         cary@hansellaw.com

                                                         *Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 7, 2018, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the District of Maryland by using the CM/ECF system, which will provide service to all counsel of record, who are registered CM/ECF users.

Respectfully submitted,

*/s/ John Parker Sweeney*
John Parker Sweeney
*Counsel for Plaintiffs*