IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARYLAND SHALL ISSUE, INC., *et al.*,   *

    *Plaintiffs*,   *

v.   *   No. 1:16-cv-03311-ELH

LAWRENCE HOGAN, *et al.*   *

    *Defendants*.   *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE OPINIONS OF PLAINTIFFS' LAY WITNESS MARK PENNAK AND EXPERTS GARY KLECK AND CARLISLE MOODY**

**I.   MARK PENNAK'S OPINIONS SHOULD BE STRICKEN.**

The plaintiffs admit that Mr. Pennak's opinions are based on his experience and training as a "certified handgun instructor" (ECF 94 at 2), yet wrongly argue that his testimony relating to the public safety benefits of the live-fire requirement is lay opinion testimony simply because his opinions are "predicated on his previous experience." (*Id.* (quoting *Lord & Taylor, LLC v. White Flint, L.P.*, 849 F.3d 567, 576 (4th Cir. 2017), *as amended* (Mar. 7, 2017).)  The plaintiffs misread both the governing rule of evidence and the Fourth Circuit case on which they chiefly rely.

The plaintiffs completely ignore the critical foundation requirement of Federal Rule of Evidence ("Rule") 701 that lay opinion testimony "not [be] based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Rule 701(c). "The purpose of this . . . requirement is to prevent a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying

the reliability standard for expert testimony set forth in Rule 702 and the pre-trial disclosure requirements set forth in . . . [Federal Rule of Civil Procedure] 26." *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005); *see also United States v. Johnson*, 617 F.3d 286, 293 (4th Cir. 2010) (excluding law enforcement officer's testimony not limited to the witness's perceptions in particular investigation but based on the witness's specialized "experience and training"); *United States v. Oriedo*, 498 F.3d 593, 603-04 (7th Cir. 2007) (excluding testimony where officer "brought the wealth of his experience as a narcotics officer to bear on [his] observations and made connections for the jury based on that specialized knowledge"). "[T]he distinction between lay and expert witness testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" Rule 701, Advisory Committee Notes to 2000 Amendments (citation omitted).

The Fourth Circuit relied on this distinction in *Lord & Taylor*, which held that the district court did not abuse its discretion by permitting an employee of a business to opine under Rule 701 on a "projection of construction costs" related to the business "based on [his] first-hand experience on the job." 849 F.3d at 575-76. The Fourth Circuit relied on the Advisory Committee's Note to Rule 701 that recognizes that "most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert." Rule 701, Advisory Committee Notes to 2000 Amendments. Such testimony is admissible as lay witness opinion testimony under Rule 701 because it is based

not on "experience, training or specialized knowledge within the realm of an expert," but on "the particularized knowledge that the witness has by virtue of his or her position in the business." *Id.*  In contrast, Mr. Pennak's purported expertise, training, and specialized knowledge as a firearm safety trainer formed the basis of his (heavily disputed) opinion that "[f]iring one live round accomplishes no training objective at all" (ECF 77-2 ¶ 9).[1]

Unlike the company employee in *Lord & Taylor* whose lay testimony concerned the cost of a potential renovation based on his personal knowledge of previous, similar renovation projects, the plaintiffs offer Mr. Pennak's testimony to challenge the policy decision of the Secretary of the Maryland State Police to require a live-fire component as part of the Handgun Qualification License statutory training requirement.  He based his opinions not solely on his perceptions, but "brought the wealth of his experience as a [firearms safety trainer] to bear on [his] observations and made connections . . . based on that specialized knowledge."  *Oriedo*, 498 F.3d at 603-04.

The plaintiffs' insistence that they intended to offer Mr. Pennak's opinions as lay witness testimony also is belied by their failure to identify Mr. Pennak in their initial disclosures, through which they were required to identify "each individual likely to have

---

[1] Again, the plaintiffs misleadingly cite to former Baltimore County Police Chief James Johnson's testimony that firing one round of live ammunition is "not adequate" to show proficiency at discharging a handgun (ECF 89-3, tr. of Johnson dep. 52:14-17), a showing that is not actually required under the HQL statutory training requirement.  *See* Md. Code Ann., Pub. Safety § 5-117.1(d)(3)(iii) (requiring "a firearms orientation component that demonstrates the person's safe operation and handling of a firearm").  Chief Johnson and Maryland State Police Captain James Russell, the State's properly-disclosed experts, both testified that the live-fire requirement accomplishes training objectives and promotes public safety in numerous ways.  (*See* ECF 89 at 37-39.)

3

discoverable information—along with the subject of that information—that [they] may use to support [their] claims . . . ." Fed.R.Civ.P. 26(a)(1)(A)(i). (*See* Ex. 4, Pls.' Amended Rule 26(a)(1)(A) Disclosures.) Mr. Pennak's designation as the organizational deponent for Maryland Shall Issue, Inc., under Federal Rule of Civil Procedure 30(b)(6) did not provide the requisite disclosure that the plaintiffs intended to use Mr. Pennak as a witness for any other purpose such that the defendants were able to cross-examine Mr. Pennak on the subject matter of his opinions in this case. The failure to identify Mr. Pennak as a potential fact witness prejudiced the defendants and the plaintiffs have offered no justification for their failure. *See* Fed. R. Civ. P 37(c)(1) (providing that a party who fails to identify a witness as required by Rule 26 "is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless"). Thus, whether offered as expert or lay opinion testimony, paragraphs 7-9, 11, and 13-18 of his declaration (ECF 77-2) should be stricken.

## II.   CARLISLE MOODY'S OPINIONS SHOULD BE STRICKEN.

The plaintiffs assert that Professor Moody's testimony is admissible despite his failure to account for the civil unrest following the death of Freddie Gray in his analysis of Maryland's homicide rate. As the defendants pointed out in their opening memorandum, Professor Moody's failure to account for the historical event surrounding the death of Freddie Gray in police custody in Baltimore City is particularly problematic given that the data on which Professor Moody relies demonstrates that the firearm homicide rate decreased in Maryland after the Firearm Safety Act was enacted in 2013 and then rose

steeply in 2015 after the death of Freddie Gray and ensuring unrest. (*See* ECF 77-23, Decl. of Carlisle Moody at 2, Figure 1: Firearm Homicide Rate, Maryland, 1970-2016).) The plaintiffs have no answer to this showing, other than to inexplicably and erroneously accuse the defendants of "not advis[ing] the Court . . . that Professor Moody's research evaluates the time period beginning after the Handgun License Requirement took effect in 2013, which included data from before the 2015 death of Freddie Gray." (ECF 94 at 6.) The defendants, of course, did so advise the court, and the pre-2015 data demonstrate the unreliability of Professor Moody's analysis of Maryland's homicide rate during that time period.

The plaintiffs' defend Professor Moody's failings by suggesting that he accounted for the "Ferguson effect," which began a year earlier than "the Freddie Gray incident in Baltimore." (ECF 94 at 6.) The plaintiffs have no response, however, to the defendants' showing that when questioned at deposition Professor Moody provided no explanation for how he accounted for the "Ferguson effect" in his study of Maryland's homicide rate, other than to "compare[] the percent change in the homicide rate after 2013 for Maryland and for states that did not have permit to purchase laws . . . ." (ECF 89-11, tr. of Moody dep. 55:17-19.) Professor Moody failed to account at all for how the rise in violent crime rates following the death of individuals in police custody may have impacted these rates. (*See id.* at 37-38, 56-57.) His reliance on a single Wikipedia page to support his purported analysis demonstrates that his testimony is not based on reliable information, rendering his research "so incomplete as to be inadmissible as irrelevant." *Bazemore v. Friday*, 478 U.S.

385, 400 n.10 (1986); *cf. id.* at 400 (finding regression analysis admissible where it accounted for "major factors" affecting salary levels).

### III. GARY KLECK'S OPINIONS SHOULD BE STRICKEN.

The plaintiffs' response to defendants' motion to strike Professor Kleck's testimony is that the lack of peer review for his research goes to the weight of his testimony and not its admissibility. (ECF 94 at 9.) They assert that striking Professor Kleck's testimony is not the proper remedy in this case because any conflicts between Professor Kleck's opinions and those of defense expert Professor Daniel Webster can be "'aired out in front of the jury and tested by the crucible of cross-examination.'" (*Id.* (quoting *Tampa Bay Water v. HDR Engineering, Inc.*, 731 F.3d 1171, 1185 (11th Cir. 2013).) If plaintiffs are correct, then this Court also should deny plaintiffs' motion to strike the testimony of Professor Webster and two other defense experts (ECF 79) based on this same principle.

The plaintiffs also ignore the fact that Professor's Kleck's testimony is not relevant. The sole subject of Professor Kleck's opinions is that Professor Webster's research methodology is somehow flawed. The issue in this case, however, is whether there is substantial evidence in the record that supports the General Assembly of Maryland's predictive judgment that enacting the HQL law would further public safety. *See Kolbe v. Hogan*, 849 F.3d 114, 140 (4th Cir. 2017) (en banc). Professor Kleck's criticisms of the methodology employed by Professor Webster do not bear on this question and are therefore not relevant to this issue in this case.

Moreover, Professor Kleck has admitted he does not know whether the HQL requirement reduced the amount of gun crime in Maryland. (ECF 91-4, tr. of Kleck dep. 30.) Professor Kleck also does not know whether the FSA has reduced (1) the number of handguns in Maryland possessed by convicted felons or other persons who are not qualified to possess handguns, (2) accidental shootings in Maryland, (3) illegal straw purchases of handguns in Maryland, (4) improper storage of handguns in the home or (5) the number of suicides by handguns in Maryland. (*Id.* at 20-31.) Accordingly, his opinions do not "help the trier of fact to understand the evidence or to determine a fact in issue" under Rule 702 and should be stricken.

## CONCLUSION

This Court should strike paragraphs 7-9, 11, and 13-18 of Mark Pennak's declaration (ECF 77-2), and strike the declarations of Carlisle Moody (ECF 77-23) and Gary A. Kleck (ECF 77-24).

Respectfully Submitted,

BRIAN E. FROSH
Attorney General

  /s/ Jennifer L. Katz
JENNIFER L. KATZ (Fed. Bar #28973)
ROBERT A. SCOTT (Fed. Bar #24613)
Assistant Attorneys General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-7005 (tel.); 410-576-6955 (fax)
jkatz@oag.state.md.us

Dated: December 21, 2018              Attorneys for Defendants