███████████████████████████████████████████████ *See* ECF 84-1;
ECF 84-2 [SEALED]. The records show ███████████████████████████████
███████████████████████████████████ *Id.* [SEALED]. At least in the Silver
Spring Atlantic Guns store, the sales numbers ████████████████ *Id.* [SEALED].
Excluding the two aberrant years of ████████ Atlantic Guns averaged more than ████
annual handgun sales from 2000 to 2017. ECF 84-1 [SEALED]. ████████████████
████████████ *Id.* [SEALED].

Moreover, what appears to be ████████████████████████████████ are not
explained by the FSA. For example, in 2016 the Rockville store derived ██████ in gross revenue
from handgun sales, but the following year, 2017, it derived ████████ Both years followed
the HQL requirement. ECF 84-2 [SEALED]. Similarly, in the Silver Spring store, again excluding
the two aberrant years, the average annual gross revenue from 2009 through 2017 was
████████ and that number ███████████████████████ *Id.* [SEALED].

Even assuming, *arguendo*, that Atlantic Guns could establish that its business has declined since the HQL took effect, it has not adduced evidence to create a genuine issue of material fact that the decline is attributable to any regulatory burden placed on its customers' Second Amendment rights. In the other third party standing cases discussed above, the businesses' customers or some identified class of customers, were completely prohibited from availing themselves of the businesses' services. Here, the HQL requirement does not impose any categorical prohibition that constricted Atlantic Guns' buyers' market.

To be sure, the HQL licensing scheme requires customers to take certain steps before purchasing a handgun from Atlantic Guns. But, Atlantic Guns has not demonstrated that any customers who would have qualified ultimately decided against a purchase as a result of the

**EXHIBIT A**