# EXHIBIT 14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF MARYLAND

| | | |
|---|---|---|
| MARYLAND SHALL ISSUE, INC., *et al.*, | * | |
| *Plaintiffs,* | * | |
| v. | * | Civil Case No. 16-cv-3311-ELH |
| LAWRENCE HOGAN | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### DECLARATION OF JAMES W. JOHNSON

I, James W. Johnson, under penalty of perjury, declare and state:

1. I am the former Chief of the Baltimore County Police Department. I am more than 18 years of age and am competent to testify to the matters stated below.

2. I joined the Baltimore County Police Department as a cadet at the age of 20 in January 1979, and have held every sworn rank in the Department, including police officer, corporal, sergeant, lieutenant, captain, major, and colonel. I was Chief of the Police Department from May 31, 2007 until my retirement in January 2017. During my tenure as chief, the Baltimore County Police Department was the 20th largest police department in the United States.

3. During the past 20 years, I have conducted hundreds of presentations on firearm safety, including trainings on the safe handling, cleaning, unlocking, securing, transporting, storing, and firing of firearms. Most recently, I provided in-service training on how to reduce accidental discharges and how to properly safeguard a service weapon.

1

4.	During my 39-year career in law enforcement, I have spent hundreds of hours handling various types of handguns. Also, during my time as Chief and as a Chairman of the National Law Enforcement Partnership to Prevent Gun Violence, I have spent hundreds of hours studying firearms issues related to public safety. Based on my experience and common sense, I have concluded that proper training in the storage, handling, and operation of firearms and the State's firearms laws is critical to public safety and reducing the negative effects of gun violence. My expertise in these issues arises from my experience with the Baltimore County Police Department, hundreds of hours of research into issues related to gun violence, attendance at law enforcement meetings and conferences, and hundreds of conversations with other law enforcement officers regarding their experience.

5.	I understand that the plaintiffs in this lawsuit are challenging the HQL provision of the Firearm Safety Act, which requires that most Marylanders seeking to purchase, rent, or receive a handgun must first obtain an HQL. I understand that in order to obtain an HQL most people must submit their fingerprints for a robust background check and receive four hours of firearm safety training, which includes demonstrating the safe operation of a handgun by safely firing one round of ammunition.

6.	I testified in front of the General Assembly in support of the HQL provision in the Firearm Safety Act. My testimony centered on the critical importance of adopting a fingerprint requirement for the background investigation in order to obtain an HQL and the deterrent effect that the training requirement would have on straw purchases.

7. For the reasons given in my testimony before the General Assembly and discussed below, it is my opinion that Maryland's HQL law will make Maryland safer by reducing access of handguns to criminals, minor children, and other persons not eligible to possess firearms; and reducing accidental discharges of handguns by ensuring that handgun owners have been properly trained on the safe handling and operation of a firearm.

8. Requiring the submission of fingerprints allows for a more robust background investigation because it enables the Maryland State Police to positively identify an applicant for an HQL. Based on my law enforcement experience and conversations with other law enforcement personnel, it is my opinion that an individual who has to render a set of fingerprints to obtain an HQL will be deterred from falsely identifying him or herself during the application process. In contrast, a background investigation based solely on photographic identification can be defeated with false identification.

9. As I testified in front of the General Assembly, obtaining a set of fingerprints is not an inconvenience for law-abiding Marylanders. Based on my experience, however, it is my opinion that an individual who knows they have to render a set of fingerprints to obtain an HQL is less likely to engage in a straw purchase on behalf of a disqualified individual. In my experience, individuals who have criminal intent are more concerned than law-abiding individuals about presenting their fingerprints to a law enforcement agency.

3

10. I am aware that the four-hour firearm safety training that is required to obtain an HQL covers critical components of firearm safety, including State firearm law, home firearm safety, proper storage of handguns, and handgun mechanisms and operation. It also requires that trainees demonstrate the safe operation and handling of a handgun. This training encourages responsible gun ownership and has many public safety benefits.

11. Based on my 39 years of law enforcement experience, it is my opinion that instructing individuals on State firearms laws concerning straw purchases will deter straw purchases in Maryland. I am aware of cases in Baltimore County involving straw purchases of handguns for prohibited persons prior to the HQL law going into effect. Based on my law enforcement experience, it is my opinion that these straw purchasers would have been deterred if they had been required to comply with the HQL requirements of submitting their fingerprints and taking a four-hour firearms safety training that included an overview of State firearms law.

12. Deterring straw purchases promotes public safety generally and also aids law enforcement because it reduces access of handguns to criminals, who in my experience are more likely to commit crimes of violence than individuals who are not disqualified from possessing a handgun. Armed criminals pose significant risks of injury and death to law enforcement officers, who are charged with confronting and disarming armed criminals.

13. During my 39 years of experience in law enforcement, I received and conducted numerous trainings on firearm safety and worked closely with firearms safety

trainers. Based on this experience, it is my opinion that certified firearm safety trainers will responsibly verify that HQL applicants who have attended firearm safety training have complied with all of the training requirements, including a demonstration of the safe operation and handling of a firearm.

14. During my career in law enforcement, I was aware of numerous incidents of accidental discharges of handguns in Maryland, some of which were fatal, and responded to many such incidents involving police officers and private citizens. Many accidental discharges resulted from the individual pulling the trigger of a semiautomatic firearm without having realized that there was a round chambered in the weapon after the ejection of the magazine. It is my opinion that the HQL training requirement that a person demonstrate the safe firing of one round of live ammunition can prevent such accidental discharges because it teaches the operation of the weapon including how to clear the weapon after firing.

15. In my experience as a law enforcement officer, training handgun owners on the proper storage of their handguns furthers public safety. I am aware of at least two instances in which minors accessed improperly-stored firearms within the home, brought the weapons to school, and discharged them at school. Proper storage also reduces the likelihood of theft, which reduces the diversion of guns to criminals and can deter gun violence.

16. Proper training on the lawful transport of firearms also furthers public safety because it reduces the likelihood that individuals will improperly transport

firearms in their vehicles, for example transporting a loaded weapon in a glove box, which can lead to confrontations with law enforcement.

17. I am aware that prior to the enactment of the HQL requirement, purchasers of handguns were required to view a video that, in my opinion, did not amount to training on the safe operation and handling of a firearm. Based on my 39-year career in law enforcement, I do not consider merely watching a video to be training. Proper training is done in a classroom setting with an instructor that involves hands-on experience and allows for dialogue between the instructor and the student, such that students can ask questions. A further advantage of classroom training is that an instructor can verify that an individual attended the training, as opposed to watching a video, which cannot be verified.

18. The addition of the training requirement that applicants demonstrate the safe firing of one round of ammunition also promotes public safety by ensuring that applicants have handled a handgun and demonstrated an ability to safety fire and clear the weapon.

I declare and affirm under penalty of perjury that the foregoing is true and correct.

Date: Aug. 14. 18                                            _____
                                                              James W. Johnson