IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARYLAND SHALL ISSUE, INC., *et al.*, | * | |
| *Plaintiffs*, | * | |
| v. | * | No. 1:16-cv-03311-ELH |
| LAWRENCE HOGAN, *et al.* | * | |
| *Defendants*. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE OPINIONS OF PLAINTIFFS' LAY WITNESS MARK PENNAK AND EXPERTS GARY KLECK AND CARLISLE MOODY**

In support of their cross-motion for summary judgment, plaintiffs rely on inadmissible opinion testimony from lay witness Mark Pennak and experts Gary Kleck and Carlisle Moody. The plaintiffs failed to designate Mr. Pennak as an expert in this case, yet have relied on Mr. Pennak's opinions that are based on his specialized knowledge as a firearm safety instructor in violation of Federal Rule of Civil Procedure ("Rule") 701. Further, the plaintiffs' experts' opinions do not satisfy the criteria set forth in Rule 702.

**ARGUMENT**

**I.    MARK PENNAK'S OPINION LAY OPINION TESTIMONY BASED ON HIS SPECIALIZED KNOWLEDGE IS NOT ADMISSIBLE UNDER RULE 701 AND SHOULD BE STRICKEN.**

The plaintiffs did not identify Mr. Pennak, the President of plaintiff Maryland Shall Issue, Inc., as an expert witness in this case. (*See* Ex. 1, Pls.' Rule 26(a)(2) Disclosures.) Yet, in support of their motion for summary judgment, the plaintiffs improperly rely on the

opinions offered by Mr. Pennak in paragraphs 8-10, 13 and 15-23 of his declaration (ECF 135-3) that are based on his specialized knowledge as a firearms safety instructor.

Rule 701 provides

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

As the Fourth Circuit has recognized, Rule 701 was amended in 2000 to include subsection (c), which amendment was designed "to prohibit the inappropriate admission of expert opinion under Rule 701 . . . ." *United States v. Perkins*, 470 F.3d 150, 155 n.8 (4th Cir. 2006) (quoting *United States v. Garcia*, 291 F.3d 127, 139 n.8 (2d Cir. 2002)). "A critical distinction between Rule 701 and Rule 702 testimony is that an expert witness 'must possess some specialized knowledge or skill or education that is not in possession of the jurors.'" Through this distinction, "Rule 701 forbids the admission of expert testimony dressed in lay witness clothing." *United States v. Johnson*, 617 F.3d 286, 293 (4th Cir. 2010) (citation omitted) (rejecting purported lay opinion testimony based on police officer's "experience and training").

The opinions offered in paragraphs 8-10, 13, 15-17, 18-19 and 21-23 of Mr. Pennak's declaration are based on his specialized knowledge of firearm safety training and, thus, are not properly admissible as Rule 701 lay opinion testimony. In paragraphs 8-10 and 13, Mr. Pennak based on his experience as a firearms instructor, (1) opines that the

2

orientation component of the training requirement under § 5-117.1(d)(3)(iii) of the Public Safety Article "has never required or involved the use of live ammunition," that "a student achieves a full orientation concerning the functionality and the safe operation and handling of all these types of handguns without live ammunition," and that "bans on live ammunition in the classroom is a matter of basic safety and are standard operating procedures in firearms instruction" (ECF 135-3 ¶ 8); (2) opines on the composition and functioning of "snap cap" dummy rounds and the effectiveness of using such rounds in place of live ammunition in firearms safety training (*id.* ¶ 9); (3) opines that he does not find it necessary for a student to fire a round of live ammunition in order to demonstrate safe operation and handing of a firearm and that "[f]iring one live round accomplishes no training objective at all" (*id.* ¶ 10); and (4) opines that the live-fire requirement "requires the use of a firing range, as firing even one live round of ammunition can only be done safely on a properly constructed range" (*id.* ¶ 13).  Mr. Pennak also offers his opinion, based on his specialized knowledge of simunition rounds and his experience as a firearms trainer (1) concerning the "safe" use and training purposes of simunition rounds (*id.* ¶ 15-17); (2) modifications required to fire simunition rounds (*id.* ¶ 16); and (3) the purported effect of local ordinances on the use of simunition rounds and the live-fire requirement (*id.* ¶¶ 18-19; 21-23).

      All of these opinions are based on Mr. Pennak's specialized knowledge as a firearm safety trainer and, thus, cannot be offered as opinion testimony of a lay witness under Rule 701.  Because the plaintiffs failed to disclose Mr. Pennak as an expert witness in this case and instead waited to offer his opinions, based on specialized knowledge, in support of their cross-motion for summary judgment, the defendants had no opportunity to cross-

3

examine Mr. Pennak on his credentials, training, or experience, or the reliability or relevance of his opinions. For these reasons, this Court should strike paragraphs 8-10, 13, 15-17, 18-19 and 21-23 of Mr. Pennak's declaration (ECF 135-3).

## II. CARLISLE MOODY'S TESTIMONY IS NOT BASED ON SUFFICIENT FACTS OR DATA, IS NOT THE PRODUCT OF RELIABLE PRINCIPLES, AND SHOULD BE STRICKEN.

This Court should strike the expert testimony of Carlisle Moody (ECF 135-24), because it fails to satisfy the requirements of Rule 702. Under the rule:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Professor Moody's opinion testimony fails to satisfy the requirements of Rule 702 because it is not based on sufficient facts or data and is not the product of reliable principles and methods. Professor Moody purported to rely on the increased homicide rate in Maryland since the FSA went into effect in 2013 to opine that the HQL was not effective in reducing firearms-related homicides. However, he failed to account for justifiable homicides, homicides committed with long guns, or the effect of the events in 2015 surrounding the death of Freddie Gray in his analysis. (*See* Ex. 2, Tr. of Carlisle Moody Dep. 29-35.)

Indeed, Professor Moody acknowledged that he was "not very" familiar with the events involving Freddie Gray, and had not controlled for those events or analyzed them in any way in forming his expert opinions. (*Id.* at 33-35.) Although Professor Moody claimed to have attempted to control for the "Ferguson effect" in Maryland, which he "presume[d] . . . was sufficient to control for the Freddie Gray incident" (*id.* at 35), this purported analysis was limited to "compar[ing] the percent change in the homicide rate after 2013 for Maryland and for states that did not have permit to purchase laws . . . ." (*Id.* at 55.) Professor Moody acknowledged that he did no analysis of firearm homicide rates in urban areas where there had been high-profile police killings of suspects during the study period. (*Id.* at 56-57). Moreover, Professor Moody's only source of information about the "Ferguson effect" was a Wikipedia article, which he "assumed" was accurate, but he did not know who had authored the article, when it was last updated, and had not read any of the cited sources. (*Id.* at 36-37.) Professor Moody was not aware of any empirical facts or data showing "whether the number of firearm homicides increased in Maryland as a result of the Ferguson effect," and relied only on a "hunch" that the rise in homicides in general "had something to do with police killings and Black Lives Matter and the response." (*Id.* at 38.)

Professor Moody's failure to account for the impact that the death of Freddie Gray in police custody and the ensuing civil unrest in Baltimore City had on the homicide rate in Maryland after 2015 renders his analysis wholly unreliable. His reliance on a Wikipedia article and his presumptions and hunches about the "Ferguson effect" further undermine his methodology and reasoning in this case. Professor Moody's failure to account for this

5

historical event in Baltimore City is particularly problematic given that the data on which Professor Moody relies demonstrates that the firearm homicide rate decreased in Maryland after the FSA was enacted in 2013 and then rose steeply in 2015 after the death of Freddie Gray and ensuring unrest.  (*See* ECF 135-24, Decl. of Carlisle Moody at 2, Figure 1: Firearm Homicide Rate, Maryland, 1970-2016.)

Moreover, it is "well-documented that dramatic civil unrest prompted by actions taken by police are often followed by sharp increases in violent crime." (ECF 125-11, Decl. of Daniel Webster Ex. 2 at 16.)   Thus, Professor Moody has "utterly fail[ed] to consider alternative causes" for the increase in homicides in Maryland post-2015, and this Court "is justified in excluding [his] testimony."  *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 202 (4th Cir. 2001).  Given the substantial gaps in Professor Moody's analysis of Maryland's homicide rate, his opinions do not make it past this Court's "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993); *see also Milward v. Acuity Specialty Prods. Grp., Inc.,* 639 F.3d 11, 15 (1st Cir. 2011) ("[T]rial judges may evaluate the data offered to support an expert's bottom-line opinions to determine if that data provides adequate support to mark the expert's testimony as reliable." (quotation marks and alteration omitted)).

For these reasons, this Court should strike the expert testimony of Professor Moody.

### III. GARY KLECK'S OPINIONS ARE NOT BASED ON PEER-REVIEWED RESEARCH, HAVE NOT BEEN WIDELY ACCEPTED, ARE IRRELEVANT TO THE ISSUES IN THIS CASE, AND SHOULD BE STRICKEN.

The Court should also strike the expert testimony of Gary A. Kleck (ECF 135-25 and 125-29). Plaintiffs offer Professor Kleck's testimony for the sole purpose of purporting to show that defendants' expert, Professor Daniel Webster, based his opinions on flawed methodology.[1] (ECF 135-25 and 135-29.) As shown below, Professor Kleck's testimony is not based on peer-reviewed research, has not been widely accepted, and is irrelevant to this issues in this case.

Professor Kleck takes issue with the methodology that Professor Webster has used in his empirical, peer-reviewed research. But the studies and research upon which Professor Kleck relies are not peer-reviewed and have not been widely accepted in the scientific community. *See Daubert*, 509 U.S. at 593 (a "pertinent consideration" of whether a proffered expert's opinions are scientifically valid "is whether the theory or technique has been subjected to peer review and publication"; "submission to the scrutiny of the scientific community is a component of 'good science,' in part because it increases the likelihood that substantive flaws in methodology will be detected"). For example, Professor Kleck relies primarily on a law review article that he co-authored and that appeared in the UCLA Law Review in 2009 for his assertion that ATF gun "trace data" is not a reliable indicator of straw gun purchases. (ECF 135-25, Decl. of Gary A. Kleck ¶ 7.)

---

[1] Defendants hereby incorporate by reference herein their memorandum in support of their motion for summary judgment (ECF 125-1), their reply in further support of their motion for summary judgment (ECF 140) and their opposition to plaintiffs' motion to strike defendants' expert testimony (ECF 142).

Unlike Professor Webster's research, however, that law review article was not peer-reviewed for scientific validity. (Ex. 3, Tr. of Gary A. Kleck Dep. 36-37.) Moreover, Professor Kleck's criticisms of the use of firearm trace data as an indicator of straw purchases have been discredited in a peer-reviewed article authored by the leading social science experts who study gun violence. (ECF 140-2, Daniel Webster Supp. Decl. ¶¶ 8-10.)

Professor Kleck also criticizes Professor Webster's reliance on studies of similar handgun permit laws in Connecticut and Missouri, (ECF 135-25, Kleck Decl. ¶¶ 13-21), and argues that "the most direct measure" of whether the availability of guns to criminals is the "percent of homicides committed with guns" (*id.* ¶ 8.) Again, Professor Kleck cites no peer-reviewed research in support of these dubious propositions. (*Id.* ¶¶ 8, 13-21; *see also* ECF 140-2, Webster Suppl. Decl. ¶¶ 10-12.)

Moreover, Professor Kleck's opinions concerning the appropriateness of Professor Webster's methodology, and the methodology of the studies on which Professor Webster relies, are irrelevant. The issue in this case whether there is substantial evidence in the record to support the General Assembly of Maryland's predictive judgment that enacting the HQL law would further public safety. *See Kolbe v. Hogan*, 849 F.3d 114, 140 (4th Cir. 2017) (en banc). Professor Kleck's criticisms of Professor Webster's methodology do not bear on of the question of whether the General Assembly's predictive judgment that the enactment of FSA would "have the desired effects," *Kolbe v. O'Malley*, 42 F. Supp. 3d 768, 779 (D. Md. 2014), *aff'd sub nom. Kolbe v. Hogan*, 849 F.3d 114, and are therefore not relevant to this issue in this case.

8

Finally, Professor Kleck admitted in his deposition testimony that he *does not know* whether the HQL requirement reduced the amount of gun crime in Maryland:

> [QUESTION:]   And in light of your testimony, you would you don't know one way or the other whether the enactment of Maryland's HQL law has reduced the amount of gun crime in Maryland; correct?
>
> MR. SWEENEY:        Objection.
>
> [ANSWER:]            Yes.

(Ex. 3, Tr. of Kleck Dep. at 30.)  Professor Kleck also admitted that he has not conducted any studies to determine, and therefore does not know, whether the FSA has reduced the number of handguns in Maryland possessed by convicted felons or other persons who are not qualified to possess handguns.  (*Id.* at 24.)  He also admitted that he does not know what effect the FSA has had on accidental shootings in Maryland, illegal straw purchases of handguns in Maryland, improper storage of handguns in the home or the number of suicides by handguns in Maryland.  (*Id.* at 20-31.)  Accordingly, his opinions do not "help the trier of fact to understand the evidence or to determine a fact in issue" under Rule 702 and should be stricken.

## CONCLUSION

For the foregoing reasons, the Court should strike paragraphs 8-10, 13, 15-17, 18-19 and 21-23 of Mark Pennak's declaration (ECF 135-3) and strike the declarations of Carlisle Moody (ECF 135-24) and Gary A. Kleck (ECF 135-25 and ECF 135-29).

Respectfully Submitted,

BRIAN E. FROSH
Attorney General

 */s/ Robert A. Scott*
ROBERT A. SCOTT (Fed. Bar #24613)
RYAN R. DIETRICH (Fed. Bar #27945)
Assistant Attorneys General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-7005 (tel.); 410-576-6955 (fax)
rscott@oag.state.md.us

Dated: March 8, 2021                    Attorneys for Defendants