Prepared Testimony of Mark W. Pennak In Opposition to SB 281 and SB 445
1316 Brentland Road
Knoxville, MD 21758
(301) 834 8854
m.pennak@comcast.net
February 6, 2013

## Summary

First, who I am. I am married, a father of two children, a 14-year-old daughter and a 19-year-old son, and a stepfather to a 13-year-old boy, a 20-year-old young man and 21-year-old young woman. I am the protector of my family. I am also a life-long registered Democrat. I have voted in every primary and every general election since I became a voter in 1971. I have also been a lawyer for 38 years and my litigation practice is at the highest levels in the federal courts. I am also a life-long hunter and owner of rifles, shotguns and handguns. I fully support effective gun control, designed to keep firearms out of the hands of people who should not have them and I support the mental health reporting provisions of SB 281 for that reason. However, I do not support the remaining parts of SB 281, which will serve only to promote years of litigation, result in massive criminalization of otherwise law-abiding people, and not effectively protect me or my family from violence. I also oppose the new restrictions imposed on holders of concealed weapons permits by SB 445. This letter is written solely on my own behalf, as a private citizen.

Given that others will focus on the SB 281's ban on scary looking rifles (aka "assault weapons"), I would like to limit my remarks here to three aspects of SB 281 and make one point as to gun free zones created by SB 445. First, SB 281 places substantial time and financial burdens on law-abiding persons who wish only to exercise their Second Amendment right to purchase a handgun. Those burdens are, *in toto*, among the most severe in the Nation and are of dubious constitutionality. Second, SB 281 effectively bans the mere possession of any type of ammunition by persons under the age of 21, thereby banning possession of ammunition by persons between the ages of 18-21 (including my son and stepson) even though these persons may lawfully purchase and possess long guns in this state. It effectively bans hunting by any person under the age of 21, including minors who are otherwise expressly permitted by state law to possess firearms at any age if they earn a hunter safety certificate. This ban on ammunition is irrational in its scope and impact and will not survive review in the courts. Third, SB 281 imposes a very short time to register the guns that the Bill bans (so called "assault weapons") and then imposes extreme legal sanctions on those who miss that short deadline. These provisions are grossly unreasonable and serve only to convert law-abiding citizens into criminals, who would then be subjected to a permanent, lifetime ban on the possession of any firearm under federal law. Fourth, SB 445 creates and perpetuates gun-free-zones and yet these zones are magnets for the deranged. If the State is going to mandate gun free zones, as our schools are currently designated, then the State has an affirmative obligation to protect those persons in those zones who are legally disarmed and thus prevented from protecting themselves.

**EXHIBIT 2**

## The Burden On the Constitutional Right to Purchase A Handgun

The Bill would require the prior registration of all handgun buyers who must obtain a "handgun qualification license" in order to purchase or rent a handgun. To obtain such a license, a person must pay a $100 application fee, "the fee authorized under § 10–221(B)(7)," and the "mandatory processing fee" for NICS checks. The applicant must also submit "two complete sets of the applicant's legible fingerprints," and "proof of satisfactory completion of a firearms safety training course approved by the Secretary" that must consist of "a minimum of 8 hours of instruction by a qualified handgun instructor" on specified subjects. The applicant bears the cost of all of these requirements. These costs are substantial. The Secretary of the State Police demands LiveScan computer fingerprinting, which costs a minimum of $75.00. The specified training course of 8 hours is roughly equivalent to the NRA's Basic Pistol course, which costs approximately $100, plus the cost of any ammunition that may be used for a personally owned pistol. The Bill does not set any limit on the cost that the Secretary may impose for this training and there is no statutory assurance that the NRA course will be deemed sufficient. The license. itself, is good only for five years, at which time the applicant must redo the entire process. The total cost of these requirements is roughly $385.00, every five years.

There can be little dispute that these requirements would substantially burden a law-abiding citizen's constitutional right to keep and bear arms under the Second Amendment, as construed by the Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008) (the Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home"). This right is so fundamental that it has been incorporated into the Due Process Clause of the 14th Amendment and thus made applicable to the States. See *McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010)("citizens must be permitted to use handguns for the core lawful purpose of self defense"). The burden is on the State to justify any burden on this core constitutional right, and SB 281 articulates no such justification and none is apparent. See *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) (holding that Illinois ban on public possession of handguns outside the home was not supported by sufficient legislative facts).

Indeed, all handguns and so called assault weapons are heavily regulated by existing Maryland law. In Maryland, such purchases of handguns and "assault weapons" already require a separate form, a 7-day waiting period and a background check by the State Police of federal and state databases. MD Code, Public Safety, § 5-101. State law already requires the purchaser to complete a firearms course. MD Code, Public Safety, § 5-118. Maryland already requires background checks and a waiting period for sales of all regulated firearms by private sales. MD Public Safety Article, § 5-124. Maryland permits only one purchase of a handgun every 30 days. MD Code, Public Safety, § 5-128. Straw purchases are already banned under State law. MD Code, Public Safety, § 5-136. These provisions effectively prevent "gun-running" and other types of illegal sales. Few "gun-runners" or "straw purchasers" will endure a 7 day waiting period or accept the 30-day restriction between each individual purchase. There is no evidence that straw purchases are a significant problem in Maryland.

There is also no evidence that the restrictions imposed by SB 281 on handgun purchases will be more effective in preventing any straw purchases that do occur. The lack of real evidence is of constitutional dimension. The State is not entitled to any presumption of constitutionality for this legislation as *Heller* directly holds that the "rational basis" test is off the table. Rather, the burden will be on the State to produce real evidence supporting these requirements. These requirements may well be subjected to strict scrutiny as they directly burden the right to be armed with a handgun in the home. But, even under a more relaxed standard of intermediate scrutiny, "the **government bears the burden** of demonstrating (1) that it has an important governmental 'end' or 'interest' and (2) that the end or interest is substantially served by enforcement of the regulation. *United States v. Carter*, 669 F.2d 411, 417 (4th Cir. 2012) (citations omitted). The State will face great difficulty in satisfying even this relaxed standard.

In fact, the new requirements appear only designed to discourage and burden the right to own and possess a handgun. That is not a legitimate or legally permissible justification. See, e.g., *Woollard v. Sheridan*, 863 F.Supp.2d 462 (D. Md. 2012), appeal pending, No. 12-1437 (4th Cir.) (argued Oct. 24, 2012) (holding that Maryland's restrictive gun licensing standard was unconstitutional because it operated as "a rationing system . . . [that] aims . . . simply to reduce the total number of firearms"). The State may not seek to discourage, repress or tax the exercise of Second Amendment rights any more than it may seek to discourage, repress or tax other constitutional rights. See, e.g., *Murdock v. Pennsylvania*, 319 U.S. 105, 112 (1943) (holding invalid a "a flat license tax levied and collected as a condition to the pursuit of activities whose enjoyment is guaranteed by the First Amendment."); *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) ("prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights"). The principle is simple: states and localities may not charge people burdensome fees for the right to exercise their fundamental constitutional rights. People who exercise their constitutional right to own handguns are not some sort of subclass of humans, whom the state must oversee and supervise as potential miscreants.

Very few States impose any requirement to obtain a license to purchase a handgun. Such a license amounts to licensing the purchaser rather than any firearm and such a license requirement is itself of dubious constitutionality. See *Heller v. District of Columbia*, 670 F.3d 1244, 1248 (D.C. Cir. 2011) (*Heller II*) (remand for a factual determination on whether the District's attempts at "licensing the owner of the firearm" were supported by actual evidence under intermediate scrutiny). The $100 application and other fees are prohibitive, and taken together with the cost of the other new requirements, would be at or near the Nation's highest. Current Maryland law requires one to submit an application form and pay a $10 application fee prior to the purchase of a handgun. Md. Code Ann., Pub. Safety §§ 5-117, 5-118(a)(2). Training under current law is free. As noted above, the costs imposed by the Bill approximates $385, which would mean that the costs of satisfying state requirements would leap from $10 to $385.00. That is extreme by any measure.

These new requirements would also place Maryland on the outer most edge of extreme gun regulation in the Nation. The next highest cost is imposed by the City of New York, which, alone in New York State, imposes a $340 fee. That NYC fee has been challenged in litigation presently pending the federal court. *Kwong v. Bloomberg*, No. 12-1578 (2d Cir.) (argued Feb. 1, 2013). New York City's fees may well be struck down, but those fees are, in any event, limited to the City and do not apply state-wide, as SB 281 would here. Other residents of the State of New York pay only $10 (plus the $94.25 fingerprinting fee) to obtain a handgun license – and their licenses do not expire, unlike the five year life of the license created by SB 281. See N.Y. Penal Law § 400.00(10).

Similarly, Illinois also requires people to obtain licenses to keep handguns in their homes, but the fee is only $10 for a license and that license is valid for 10 years. See 430 Ill. Comp. Stat. 65/5, 65/7. The District of Columbia requires $25 to register a handgun for 3 years, plus $35 for fingerprinting and background checks. D.C. Code §§ 7-2502.03(d), 7-2502.05(b); 7-2502.07a(a); D.C. Mun. Regs. tit. 24, § 2320.3(c)(3), (g). D.C. requires a training class of only four hours, but provides that class for free. D.C. Code §§ 7-2502.03(a)(13). Even those fees and procedures are under constitutional attack in presently pending litigation, on remand from the D.C. Circuit's decision in *Heller II.* See *Heller v. D.C.*, No. 08-cv-01289 (D.D.C.). New Jersey requires a permit to purchase a handgun, but the cost of this permit is $2. N.J. Stat. Ann. § 2C:58-3(f). A person applying for the first time must submit fingerprints for an FBI background check, which costs an additional $60.25. N.J. Admin. Code §§ 13:54-1.4(d) & (g), 13:59-1.3. California requires a person to pay $25 to obtain a 5-year "handgun safety certificate" before purchasing a handgun, and to also pay background check fees totaling $14 any time they buy a gun. Cal. Penal Code §§ 27540(e), 28225(a), 31650(a). Plainly, the costs imposed by SB 281 on the right to buy a handgun are extreme, even as measured against the laws of other highly restrictive states.

The other burdens are also substantial. Under SB 281, the Secretary has a full 30 days to approve a license and there is no provision for expedited treatment of licenses. Given the staffing levels at the State Police, SB 281 would effectively impose a minimum 30 day waiting period just to obtain a license. Current Maryland law would still impose an additional 7 day waiting period to actually purchase the handgun. There are no consequences associated with a failure to issue a timely license and thus poor staffing levels would adversely affect the ability of the Secretary to meet even this 30 day standard. Since no handgun may be purchased without a license, a person is basically disarmed during any period of delay from employing the very firearm that *Heller* held was constitutionally protected. Unique among the states, SB 281 requires a full eight hours of training, including training that "demonstrates the person's proficiency and use of the firearm." By contrast, the D.C. government only requires only four hours of "firearms training and safety class provided free of charge by the Chief" and there are no requirement to show "proficiency."

Finally, under SB 281, there are very few limits on the Secretary's discretion. For example, the Secretary would be free to impose marksmanship requirements and other tests to demonstrate

"proficiency." The scope of discretion provided to the Secretary SB 281 in designing and administering the course is virtually unlimited, as is the cost that may be imposed on the applicant. Such unfettered administrative discretion over the exercise of a fundamental constitutional right is unconstitutional. See, e.g., *Staub v. City of Baxley*, 355 U.S. 313, 321 (1958). In sum, SB 281's restrictions on a simple purchase are unprecedented in American law. The burdens imposed by the Bill will quite likely draw immediate challenge in the courts. If the plaintiffs prevail, the State would be liable for substantial attorneys' fees and costs under federal civil rights law, 42 U.S.C. 1988. These fees can be quite substantial. For example, the City of Chicago has already paid in excess of $1.2 million in attorneys' fees to plaintiffs' counsel who have prevailed in Second Amendment litigation against the City.

### The Restrictions on Ammunition Possession Are Irrational On Their Face

SB 281 creates a new section, 5-133.1 in the Maryland Public Safety Article. That new provision imposes a total ban on possession of ammunition that would ban all hunters under the age of 21 from hunting. It would ban persons between the ages of 18-21 from possessing ammunition for long guns that may be legally purchased and/or possessed by otherwise qualified persons between the ages of 18-21. This ban is irrational and will not survive judicial scrutiny under any standard of review.

The Bill does this by banning the possession of any ammunition of any type by any person who is barred from possessing a regulated firearm. The term "ammunition" is defined extremely broadly to including any sort of ammunition, including hunting rounds, shotgun shells, even .22 rimfire cartridges. Here is the language of SB 281:

> (A) in this section, "ammunition" means a cartridge, shell, or any other device containing explosive or incendiary material designed and intended for use in a firearm.
> (B) a person may not possess ammunition if the person is prohibited from possessing a regulated firearm under § 5–133 of 5 this subtitle.

A regulated firearm is, of course, any handgun and any of the so-called "assault weapons" that SB 281 also seeks to ban. SB 281 also amends surreptitiously MD Code, Public Safety, § 5-133(d) (1). Under Section 5-133(d), of current law, no person under the age of 21 may possess a regulated firearm **or ammunition** that is **"solely designed for a regulated firearm"** (unless supervised by a person over 21). MD Code, Public Safety, § 5-133(d)(2). The full text of current law, Section 5-133(d)(1), (2) is:

> Possession by person under age of 21 years prohibited; exceptions
> (d)(1) Except as provided in paragraph (2) of this subsection, a person who is
>    under the age of 21 years may not possess a regulated firearm *or*
>    ***ammunition solely designed for a regulated firearm***.

>   (2) Unless a person is otherwise prohibited from possessing a regulated firearm, this subsection does not apply to:
>
>   (i) the temporary transfer or possession of a regulated firearm or ammunition solely designed for a regulated firearm if the person is:
>
>   1. under the supervision of another who is at least 21 years old and who is not prohibited by State or federal law from possessing a firearm; and
>
>   2. acting with the permission of the parent or legal guardian of the transferee or person in possession.
>
>   (Emphasis added).

The text of SB 281 modifies current section 5-133(d)(1) to delete the reference to ammunition "solely designed for a regulated firearm," **but it does so without so indicating with brackets or otherwise**. SB 281 retains the possession ban on persons under 21 currently in 5-133(d)(1). SB 281 then adds Section 5-133.1 to broadly define ammunition to include the categorical ban on possession of any ammunition by any person who may not legally possess a regulated firearm as defined in 5-133. In this way, SB 281 surreptitiously amends 5-133(d)(1) to delete the existing reference to ammunition "solely designed for a regulated firearm" and then adds 5-133.1 to flatly ban possession of **any** ammunition by anyone under the age of 21. Section 5-133.1 then adds a severe punishment for any such possession, providing that "(c) a person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 1 year or a fine not exceeding $1000 or both." SB 281 thus makes the mere possession of any ammunition by any person under 21 a serious criminal offense.

This total ammunition ban is flatly in conflict with existing Maryland law that SB 281 leaves untouched. Under current MD law, a person under the age of 16 may possess a firearm if that person has a hunter safety certificate. See MD Code, Criminal Law, § 4-104(b). Indeed, Maryland law expressly permits persons who are 18 years old to supervise the handling of firearms by persons who are not yet 16. See MD Code, Criminal Law, § 4-104(b) (allowing persons under the age of 16 to possess a firearm if supervised by a person 18 and older). There is no age restriction on obtaining a hunter safety certificate and such certification requires live fire. Yet, if SB 281 becomes law, a person under 21 with a hunter safety certificate may possess a firearm, but may not possess any ammunition for it. A person 18 years old could continue to supervise a person under 16 in the possession of firearms, but would not able to shoot or supervise the live fire of such firearm, as both he and the person under 16 would be barred from possessing any ammunition. The possession of a single round of .22 rimfire ammunition or one shotgun shell by a person under 21 could result in up to a year in prison and the imposition of a large fine. An arrest or conviction for this offense could also adversely affect such a person's future opportunities, such as education and employment, as well as greatly impair the ability of that person to join the military or hold a security clearance.

It gets worse. Under both federal and Maryland law, persons between the ages of 18 and 21 may legally purchase long guns. See 18 U.S.C. 922(x)(5). Indeed, the Governor has stated in promoting this legislation, that he did not intend to restrict the purchase of hunting rifles and

shotguns. Indeed, Maryland only requires a person to be 21 to purchase **a regulated** firearm. MD Code, Public Safety, § 5-118. Nothing in Maryland law purports to limit the possession of long guns by persons between 18 and 21. SB 281, if enacted, would mean that such persons could continue to purchase long guns and yet may not possess any ammunition for the long gun thus purchased, thus effectively disarming such individuals in their homes. Such persons between the age of 18-21 have Second Amendment rights. See *National Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms*, 700 F.3d 185, 207 (5th Cir. 2012) (sustaining federal age requirement of 21 for handgun purchases, but noting that this restriction did not unduly burden the self-defense Second Amendment rights of 18-21 year olds because, *inter alia*, "they may possess, use, and purchase long-guns."). Banning ammunition possession by such persons would effectively and completely disarm these individuals, thus stripping them of their Second Amendment rights.

The Bill would thus disarm and ban my 19 year old son and my 20 year old stepson, both legal adults, who may legally buy and possess any unregulated rifle or shotgun, from any possession of any sort of ammunition. By extension, the Bill would thus ban them both from hunting, even though my son is part of his college's ROTC unit, an experienced hunter and has a hunter safety certificate. A bill this irrational will not survive challenge.

### The Registration Requirements Are Onerous and the Penalties Severe

SB281 amends subtitle 3 of Article 4 of the Maryland criminal code to include all assault weapons (not just pistols) and criminalizes mere continued possession of the banned, so called "assault weapons." Thus, under Section 4-303, as amended by the Bill, the statute would provide:

> (a) Except as provided in subsection (b) of this section, a person may not:
> (1) transport an assault [pistol] WEAPON into the State; or
> (2) **possess**, sell, offer to sell, transfer, purchase, or receive an assault 29 [pistol] WEAPON.

A violation of subtitle 3 is punishable under 4-306, which provides:

> (a) A person who violates this subtitle is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 3 years or a fine not exceeding $5,000 or both.

In addition, as amended by the Bill, Section 4-304 would provide that:

> A law enforcement unit may seize as contraband and dispose of according to regulation an assault [pistol] WEAPON transported, sold, transferred, purchased, received, or possessed in violation of this subtitle.

There are only two exceptions to this ban on mere possession of so called "assault weapons." First, existing Maryland owners of these banned long guns must "register" their guns. The Bill provides the only exception to this ban on possession and that is in Section 4-303, which provides:

> A person who lawfully possessed an assault long gun or a copycat weapon before October 1, 2013, and who registers the assault long gun or copycat weapon with the secretary of state police before November 1, 2013.

A new resident of Maryland is likewise given only 30 days to register if he wishes to possess lawfully the banned long guns. The Bill would provide in Section 5-143, as amended, as follows:

> A person who moves into the state with the intent of becoming a resident shall register all regulated firearms with the Secretary within 30 days after establishing residency

These provisions are severe. An existing Maryland resident who fails, for any reason, to register his banned long gun "before November 1, 2013," is not only subject to seizure of the banned gun as "contraband," but is also liable to a large fine and a 3 year prison term. A new Maryland resident who fails to register within 30 days of becoming a Maryland resident is subject to the same penalties. The Bill makes no allowance for excusable neglect or late registration, as the Bill does not allow any registration after the 30 day period. There is no specific intent or scienter requirement. Mere possession on or after November 1, 2013, by a current resident constitutes a major criminal offense. Indeed, an attempt to register after 30 days would presumably result in seizure and prosecution for illegal possession of the firearm. Yet, for existing Maryland residents, this registration requirement is redundant. These "assault weapons" have been treated as regulated firearms since 1996 in Maryland and the State Police already maintain a record of Maryland purchasers, rentals and transfers. See MD Code, Public Safety, § 5-123(d)(2) ("The Secretary shall maintain a permanent record of all notifications received of completed sales, rentals, and transfers of regulated firearms in the State").

Moreover, because the Bill provides that possession contrary to the Bill's provisions is "punishable" by imprisonment in excess of two years, conviction under these provisions would create federal disability under 18 U.S.C. 922(g)(1) for the possession of *any* firearm. See 18 U.S.C. 921(a)(20)(defining terms where the offense is a conviction for a state misdemeanor). Thus, a mere failure to register in time would mean that the owner would lose *all* of his or her modern firearms, rifles, handguns, shotguns, basically anything other than black powder. Violation of Section 922(g) is also punishable by imprisonment of up to five years under federal law. These extreme sanctions would obtain for a failure to register even in those cases in which the regulated firearm **was already registered** with the State Police under MD Code, Public Safety, § 5-123(d)(2).

Does the state truly wish to visit these incredibly severe consequences on otherwise law-abiding, productive citizens of the Maryland, who lawfully purchased and possessed these firearms prior to SB 281? Imagine, for example, a member of the military on active duty and deployed overseas, fighting in defense of our country. If that person failed to to register prior to November 1, 2013, because he was overseas, he or she would be, upon return to Maryland, immediately subject to prosecution under this Bill. Such person is accorded no way to cure his failure to register. He simply became a criminal on November 1, 2013, even though he was completely out of the country. That is quite a homecoming shock for those who put their lives on the line in defense of our liberty. The same conversion of law-abiding citizens into criminals would obtain for any other type of innocent failure to register within the 30 days. With all due respect, the penalties imposed by this Bill would constitute an abuse of the State's police power and should not be countenanced.

The Bill's intent to criminalize law-abiding citizens is all the more incomprehensible given the nature of the long guns banned by the Bill. For example, the Bill bans the AR-15 rifle, which is a semi-automatic rifle that fires the .223 Remington round. Yet, in terms of lethality, the AR-15 is utterly indistinguishable from the Ruger Mini 14 Ranch Rifle, which is also a semi-automatic rifle that fires the .223 Remington round. The AR-15 is banned and yet the Ruger is not. See MD Code, Public Safety, § 5-101(p)(2). The AR-15 has extended pistol grip and the Ruger Ranch Rifle has a conventional wooden stock and a regular pistol grip. Why the difference in treatment? Because the AR-15 looks scary. This emphasis on cosmetic differences obtains for other types of regulated long guns as well. See http://www.thetruthaboutguns.com/2012/11/foghorn/media-matters-thinks-cosmetic-differences-matter-for-an-assault-weapons-ban/. "Lethality" of a firearm is a function of the cartridge and the rate of fire. An extended pistol grip or a flash suppressor or an adjustable stock do not make a firearm more lethal.

The criminalization of citizens is even harder to understand in light of the fact, confirmed by the FBI, that rifles (any type of rifle) are the *least* likely weapon to be used in an actual crime. In Maryland in 2011, out of the 272 gun-related deaths, only two (2) were the caused by a rifle of any type. Accordingly to the FBI, Marylanders are more than 16 times more likely to die from "other weapons" (non-firearm) (34 deaths) than be killed by a rifle. See http://www.fbi.gov/about-us/cjis/ucr/crime-in-the-u.s/2011/crime-in-the-u.s.-2011/tables/table-20. Indeed, at 17 deaths, "hands and feet etc" caused more than eight times as many deaths as rifles. (Id.). In view of these hard numbers, the public safety justification for imprisoning the owners of these rifles simply disappears. Please do not make law-abiding, productive members of society into criminals.

### Gun Free Zones Are A Magnet For the Deranged

"John Lott, economist and gun-rights advocate, has extensively studied mass shootings and reports that, with just one exception, the attack on U.S. Rep. Gabrielle Giffords in Tucson, Arizona, in 2011, **every public shooting since 1950 in the U.S. in which more than three**

**people have been killed has taken place where citizens are not allowed to carry guns."**
http://www.cnn.com/2012/12/19/opinion/bennett-gun-rights/index.html.

Current Maryland law, MD Code, Criminal Law, § 4-102, creates a gun free zone for our schools, such as the middle school my daughter and my stepson attend. While SB 281 does not create more gun free zones, another bill pending before this Committee, SB 445, does create numerous additional gun free zones by mandating new restrictions on where a concealed weapon permit holder may legally carry the concealed weapon he is allowed to carry. In particular, SB 445 amends Section 5-306 of the Public Safety Article to provide:

> (A) a person who holds a permit may not wear, carry, or transport a handgun while the person is on the real property of:
> (1) a church or other place of worship;
> (2) an establishment licensed to serve alcoholic beverages;
> (3) a government building;
> (4) a hospital;
> (5) a private school, university, or college;
> (6) a public school, university, or college;
> (7) a public library;
> (8) a theater or movie theater; or
> (9) a youth center.
> (B) a person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 1 year or a fine not exceeding $1,000 or both.

Similarly, SB 281 would amend Criminal Law Section 4-203 to criminalize the carrying of a concealed handgun under a permit in places or circumstances not otherwise allowed under restrictions that Secretary may impose on permits under Section 5–307 of the Public Safety Article. That would allow the State to punish any deviation, innocent or otherwise, from any such restriction with imprisonment under Section 4-203. That would convert a mere, inadvertent license violation into a major criminal offense. Indeed, the sanctions imposed by Section 4-203 are severe, including mandatory jail time. On the very first conviction, a person "is subject to imprisonment for not less than 30 days and not exceeding 3 years or a fine of not less than $250 and not exceeding $2,500 or both." MD Code, Criminal Law, § 4-203(c)(2). A conviction for this offense imposes a life-time bar on firearms ownership under federal law, 18 U.S.C. 922(g). The proper sanction for a license violation is suspension or revocation, not mandatory prison time and a permanent firearms disability.

Maryland does little or nothing to provide armed security for the children who go to school in a state-mandated gun free zone. Similarly, SB 445 does nothing to protect the persons in these additional gun free zones. Creating gun free zones without protecting the persons in such zones simply creates more "free-fire" zones for crazy people, who are drawn to gun free zones precisely because they know full well that they will not encounter effective opposition. The

- 10 -   *Testimony of Mark W. Pennak*

state ought to be promoting responsible gun owners, not imprisoning and restricting them. The proper approach is actually taken in existing Maryland law, MD Code, Criminal Law, § 4-203, which exempts persons who have carry permits from the restrictions otherwise imposed on the possession and transport of handguns by Section 4-203. That exemption also applies to the ban imposed on handgun possession in schools otherwise imposed by Section 4-203(a)(1)(iii). Of course, such persons are still bound by the broad ban on "weapons" imposed by MD Code, Criminal Law, § 4-102. Section 4-102 should thus be amended to contain the same exemption for permit holders found currently in Section 4-203.

Properly trained and willing permit holders should be able to carry in school zones and other areas not guarded by armed police officers or other armed guards.. A recent article in the **Atlantic Monthly** has an excellent discussion on this point, noting that gun free zones become free fire zones for lawless mass killers. See http://www.theatlantic.com/magazine/archive/2012/12/the-case-for-more-guns-and-more-gun-control/309161/. That article was not written by the NRA or a gun advocate, but rather by a self-avowed liberal Democrat, Jeffrey Goldberg. The points made by the article are entirely rational. The Aurora killer picked that particular Cinemark theater for his evil rampage because it was the only theater in his area showing the Batman film that also imposed a ban on guns. http://www.foxnews.com/opinion/2012/09/10/did-colorado-shooter-single-out-cinemark-theate.

In light of the reality that mass killings occur almost exclusively in gun free zones, no sane person would openly advertise that his or her home was a gun free zone. Yet, current Maryland law (with respect to schools) and SB 445 would effectively put a public sign in front of every specified location saying exactly that. If the State is serious about preventing mass killings, then the State must sharply limit gun free zones to those places in which effective, armed security is available. Post a armed security guard in every school or allow someone to be trained and armed in the school. President Clinton had such a program in the 1990s (Cops in School) and, yet, inexplicably, that program was allowed to lapse. Currently, federal law on gun free zones for schools allows concealed carry permit holders to possess a gun in a school zone "if the individual possessing the firearm is licensed to do so by the State in which the school zone is located." 18 U.S.C. 922(q)(2)(B)(ii). Such permit holders are typically fingerprinted and undergo extensive background checks and are among the most lawful citizens in the country.[1] Indeed, the crime rate for permit holders is at or under the crime rate for sworn police officers.

---

[1] For example, Texas compiles detailed information tracking the proclivity of handgun carry license permit holders to commit crimes. In 2011, of 63,679 serious criminal convictions in Texas, only 120—-0.1884%— could be attributed to individuals licensed to carry handguns, though not all such crimes necessarily utilized guns, or used them in public settings. Conviction Rates for Concealed Handgun License Holders, http://www.txdps.state.tx.us/RSD/CHL/Reports/ConvictionRatesReport2011.pdf (last visited February 5, 2013).

A single armed permit holder could have prevented the slaughter at Newtown or Aurora or Virginia Tech, just as they have stopped similar attempts in other locales. A teacher or the principal at my daughter's and stepson's middle school could be similarly trained and armed. The mere prospect of such armed opposition would have a deterrent effect. Maryland should thus enact new concealed carry legislation that repeals the current, restrictive law limiting permits to those who can prove a "good and substantial reason" for carrying a concealed weapon, and allow such concealed carry permit holders, willing to do so, to be trained to carry in school zones and other places where they might be able to put a stop to these sorts of mass killings. Such an approach is embodied, in part, in SB 553, sponsored by Senator Jacobs. I support SB 553 for it at least has the potential of protecting my daughter and stepson in public school. Anything would be better than the current policy of free fire zones. If the State insists on disarming responsible individuals in gun free zones, then the state has an affirmative obligation to provide for armed guards for gun free zones. You simply cannot have it both ways. SB 445's creation of still more gun free zones creates an open, standing invitation to crazy people.

In sum, please resist the urge to "do something." Instead, do something effective that does not impair the right and ability of law-abiding citizens to defend themselves and their families. That something is legislation that keeps the guns out of the hands of crazy people by mental illness reporting to the NICS and protects our children with real security in the schools. Enact a state version of President Clinton's Cops in School program. Expand the availability of concealed weapon permits and abolish gun free zones for trained, permit holders. And please, don't create new gun free zones. Any legislatively created gun free zone should be guarded by armed security provided by the State. Banning scary looking rifles, and criminalizing law-abiding gun owners does nothing to protect me or my children.

Thank you. Mark W. Pennak, Frederick County Maryland.